1
2
3
4

**Paul Arons, State Bar #84970**
**685 Spring Street, #104**
**Friday Harbor, WA 98250**
**Tel:  (360) 378-6496**
**Fax: (360) 378-6498**
**lopa@rockisland.com**

5
6
7
8

**Ronald Wilcox, State Bar #176601**
**LAW OFFICE OF RONALD WILCOX**
**2160 The Alameda, 1st Flr., Suite F**
**San Jose, CA 95126**
**(408) 296-0400**

9

**Attorneys for Plaintiffs**

10

**(Additional plaintiffs' counsel on last page)**

11
12

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13
14
15
16
17
18
19
20

| | |
|---|---|
| **BRANDY HUNT and BRIAN CASTILLO, et al, on behalf of themselves and others similarly situated,**<br><br>                  **Plaintiffs,**<br><br>**vs.**<br><br>**IMPERIAL MERCHANT SERVICES, d/b/a CHECK RECOVERY SYSTEMS,**<br><br>                  **Defendants.** | **Case No. 05-04993 MJJ**<br>**Case No. 06-02037 MJJ**<br><br>**CLASS ACTION**<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Date: October 24, 2006**<br>**Time: 9:00 a.m.**<br>**Courtroom 11** |

21
22
23

          Pursuant to Federal Rule of Evidence 201 plaintiffs respectfully request that this Court take judicial notice of the following documents

24
25
26
27

**Exhibit 1:**  California Department of Consumer Affairs, Legal Guide K-5, "*California's Bad Check Law*" (1998), an official publication of the California Department of Consumer Affairs.

28

**Exhibit 2:**  Legislative History of A.B. 1226 (1983) as set forth in the Declaration of

**PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE: Page 1**

Timothy C. Nunnemaker, previously filed in *Palmer v. Stassinos,* Civ. No. 04-3026 (N.D. Cal.).

**Exhibit 3:**  Cal. Civil Code § 1719, including the statutory history, as set forth in Deering's Annotated California Codes.

**Exhibit 4:**  Legislative History of A.B. 2463 (1996) as set forth in the Declaration of Timothy C. Nunnemaker, previously filed in *Palmer v. Stassinos*, Civ. No. 04-3026 (N.D. Cal.).


DATED: September 19, 2006                    LAW OFFICES OF PAUL ARONS


                                             By  s/ Paul Arons
                                                Paul Arons
                                                Attorney for Plaintiffs
                                                BRANDY HUNT and BRIAN CASTILLO

**Additional Plaintiffs' Counsel**

Irving L. Berg (CA Bar No. 36273)
THE BERG LAW GROUP
433 Town Center, No. 493
Corte Madera, California 94925
(415) 924-0742
(415) 891-8208 (Fax)

O. Randolph Bragg, Ill. Bar #06221983
HORWITZ, HORWITZ & ASSOCIATES
25 East Washington, Suite 900
Chicago, IL 60602
(312) 372-8822

**PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE: Page 2**

-1-

**STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY**      Arnold Schwarzenegger, Governor



State of
California
Department of
**Consumer
Affairs**

# LEGAL AFFAIRS
400 R STREET, SUITE 3090
SACRAMENTO, CA 95814-6200



*Legal Guide K-5*

# CALIFORNIA=S BAD CHECK LAW

### *October, 1998*

## A
## OVERVIEW OF BAD CHECK LAW

### 1. Claim for Statutory Penalty

Under California's Bad Check Law,[1] a person who has written a check to another person or business can be required to pay the amount of the check and either a service charge or a penalty if the check is returned by the bank due to insufficient funds.  The person who wrote the check is called the Adrawer@ and the person or business who accepted the check is called the Apayee.@

More particularly, the Bad Check Law states that the drawer must pay to the payee the following amounts:

(a) the face amount of the check, plus a statutory service charge; or, if the drawer does not pay this total in full, then --

(b) upon the payee=s proper written demand for payment, the face amount of the check, plus a statutory service charge, plus the costs to mail the demand for payment; or, if the drawer does not pay this total in full within 30 days, then --

(c) if the payee has made a proper written demand for payment, and the drawer has not paid to the payee, within 30 days of the demand, the total at (b), then --

(i) the face amount of the check, plus

(ii) a statutory penalty of three times the face amount of the check, but not less than $100 nor more than $1,500.[2]  (See pages 2-3 on the effect of a partial payment made during the 30 days.)

Several limits apply:  (a)  The payee of the check cannot recover both a service charge and a statutory penalty.  (b)  The payee cannot recover either of these unless certain conditions described in this Legal Guide have been met.  (c)  Only one statutory penalty can be recovered with respect to the same check.  (d)  Interest cannot be claimed if either a service charge or a penalty is claimed.  (e)  Multiple recoveries for the same loss are not allowed.

See the detailed discussion of the statutory penalty in part B., pages 2-6.

### 2. Claim for Service Charge

The payee of a check that has been returned for insufficient funds can require the drawer to pay the payee the face amount of the check and a service charge of up to $25 for the first check and up to $35 for each subsequent check to that payee that is returned for insufficient funds.[3]

However, the drawer of the check is not liable for a service charge in any of the following situations:

! Bank error -- if the drawer presents the payee with written confirmation from the drawer=s bank that the check was returned to the payee due to the bank=s error.[4]

! Delay in automatic deposit -- if the drawer provides the payee with written evidence that the drawer=s account had insufficient funds due to a delay  in the regularly scheduled transfer or posting of a direct deposit of a social security or government benefit assistance payment.[5]

! Service charge already imposed -- if a service charge has already been charged with respect to that check.

The drawer also is not liable for a service charge if the payee has mailed the drawer a proper written demand for a statutory penalty under the Bad Check Law, and the drawer has failed to pay the amount of the check, the service charge and the mailing costs within 30 days after the mailing.  Instead, the drawer is liable for the

-2-

amount of the check and the statutory penalty.

See the detailed discussion of the service charge in part C., pages 6-7.

## B
## CLAIM FOR STATUTORY PENALTY

### 1. Payee=s Right to Statutory Penalty

a. General Rule

A drawer who passes a check on insufficient funds, and who fails to pay the payee, within 30 days after the payee mails the drawer by certified mail a proper written notice demanding payment (see c., below), is liable to the payee for the <u>face amount of the check</u> and a <u>statutory penalty</u> if all of the statutory prerequisites (discussed below) are met.[6]

If the payee makes a proper written demand to the drawer of the check, and the drawer does not pay, within the 30 days, the total of the face amount of the check, the service charge, and the costs to mail the written demand, then the drawer is liable to the payee for --

(1) the face amount of the check, minus any partial payments toward the amount of the check or the service charge, made within 30 days of the written demand, plus

(2) a statutory penalty equal to three times the balance in (1), but not less than $100 nor more than $1,500.[7]

Only one statutory penalty is recoverable with respect to the same check.[8]

b. "Insufficient Funds" Defined

A statutory penalty is available when a check is "passed on insufficient funds." This means that the drawer has written a check that the bank has refused to honor for any of the following reasons: (1) lack of funds or credit in the drawer's account; (2) absence of an account; or, (3) the drawer's stop payment order.[9]

The payee must follow different procedures depending on the reason that the check was returned. (See page 4 (lack of funds or credit, or absence of an account), and pages 4-6 (stop payment order).)

c. Written Demand by Certified Mail Required

A drawer of a check that is returned for insufficient funds[10] is liable for a statutory penalty under the Bad Check Law only if the payee sends

a proper written demand to the drawer by certified mail, requesting payment within 30 days.[11] If the demand is properly addressed and mailed, the drawer need not actually receive it.

The function of the written demand for payment is to encourage the drawer of the check to promptly pay the face amount of the check (plus a service charge, and the costs of mailing the demand) and thereby avoid liability for the statutory penalty.

The required contents of the written demand for payment are discussed at page 4 (where check returned for lack of funds or credit, or absence of an account) and at pages 4-6 (if drawer stopped payment).

d. Credit for Timely Partial Payments

If the drawer makes any partial payment toward the amount of the check or the service charge within the 30 days, the base on which the statutory penalty is calculated becomes the face amount of the check <u>minus</u> any partial payment made.[12]

A partial payment made <u>after</u> the 30-day period reduces the payee's claim for the face amount of the check, but not the statutory penalty.

e. Formulas for Calculating Amounts

(1) <u>Statutory penalty</u>. The statutory penalty (subject to the $1,500 ceiling and $100 floor) can be calculated as follows: (a) begin with the face amount of the check, then (b) subtract any payments made by the drawer within 30 days of mailing the demand for payment, and then (c) multiply the remainder by three. If the product is over $1,500, reduce it to $1,500; if the product is under $100, increase it to $100.

(2) <u>Total payment to payee</u>. The total payment to the payee (the face amount of the check plus the statutory penalty) can be calculated as follows:

(A) for checks up to $33.33: check + $100;

(B) for checks from $33.34 to $500: 4 times the check;

(C) for checks over $500: check + $1,500.

f. <u>No Judgment for Payee's Service Charge and Other Losses</u>

If the payee has mailed a proper written demand by certified mail, and the drawer of the check has not paid, within 30 days, the total of the

face amount of the check, the service charge payable to the payee, and the costs to mail the written demand, the drawer is obligated to pay a statutory penalty, but not a service charge or the costs of mailing the demand.[13]

The statutory penalty is not only a penalty. It also compensates the payee for any losses for which the service charge provided compensation, such as (1) delay in receiving payment, (2) the returned check fee paid by the payee to its own financial institution, (3) the inconvenience and added expense of processing the returned check, and (4) any other losses.

### g. Double Recoveries Barred

The law generally bars multiple recoveries for the same loss. For instance: (1) the face amount of a check can only be recovered once; (2) once the drawer is obligated to pay a statutory penalty, no other charges (other than the face amount of the check) can be recovered from the drawer; (3) only one service charge can be recovered from the drawer with respect to the same check; (4) if a service charge is recovered, all other damages are barred; and (5) a payee cannot recover a statutory penalty, and also a service charge, interest or compensation for other losses.

### h. Criminal Sanctions

The liability for the statutory penalty is in addition to any criminal penalties that may be imposed.[14]

### 2. Timely Payment Avoids Statutory Penalty

The following examples illustrate the application of the Bad Check Law when the drawer makes timely payment of the returned check:

● Timely payment of $100 check: If (a) the returned check was for $100, (b) the payee imposed a $15 service charge, (c) the costs to mail the written demand by certified mail totaled $1.42 ($.32 postage + $1.10 fee for certified mail), and (d) the payee requested these amounts in a proper written demand sent to the drawer by certified mail, the drawer could escape liability for a statutory penalty only by paying the payee $116.42 within 30 days of the date the payee mailed the written demand by certified mail ($100 check + $15 service charge + $1.42 mailing costs).[15]

● Timely payment of $10 check: If (a) the returned check was for $10, (b) the payee

imposed a $15 service charge, (c) the costs to mail the written demand by certified mail totaled $1.42 ($.32 postage + $1.10 fee for certified mail), and (d) the payee requested these amounts in a proper written demand sent to the drawer by certified mail, the drawer could escape liability for a statutory penalty only by paying the payee $26.42 within 30 days of the date the payee mailed the written demand by certified mail ($10 check + $15 service charge + $1.42 mailing costs).[16]

### 3. Consequences of Failure to Pay Amount Demanded

The drawer's failure to make the payment required by the Bad Check Law to avoid liability for a penalty has the following consequences:

● Failure to cover $10 check: If (a) the returned check was for $10, (b) the payee imposed a $15 service charge, (c) the costs to mail the written demand by certified mail totaled $1.42 ($.32 postage + $1.10 fee for certified mail), (d) the payee requested these amounts (totaling $26.42) in the mailed demand, and (e) the drawer did not pay the $26.42 within 30 days after the demand was mailed, the drawer would be liable for $110 ($10 check + $100 minimum statutory penalty).[17]

● Failure to cover $100 check: If (a) the returned check was for $100, (b) the payee imposed a $15 service charge, (c) the costs to mail the written demand by certified mail totaled $1.42 ($.32 postage + $1.10 fee for certified mail), (d) the payee requested these amounts (totaling $116.42) in the mailed demand, and (e) the drawer did not pay the $116.42 within 30 days after the demand was mailed, the drawer would be liable for $400 ($100 check + $300 statutory penalty).[18]

● Failure to cover $100 check -- $25 **timely** partial payment: If (a) the returned check was for $100, (b) the payee imposed a $15 service charge, (c) the costs to mail the written demand by certified mail totaled $1.42 ($.32 postage + $1.10 fee for certified mail), (d) the payee requested these amounts (totaling $116.42) in the mailed demand, and (e) the drawer made a partial payment of $25 within 30 days after the demand was mailed, but did not pay the remaining $91.42 at any time, the drawer would be liable for $300 ($75 balance of check + $225 statutory penalty).[19]

● Failure to cover $100 check -- $25 **untimely** partial payment: If (a) the returned

-4-

check was for $100, (b) the payee imposed a $15 service charge, (c) the costs to mail the written demand by certified mail totaled $1.42 ($.32 postage + $1.10 fee for certified mail), (d) the payee requested these amounts (totaling $116.42) in the mailed demand, and (e) the drawer made a partial payment of $25 later than 30 days after the demand was mailed but before the payee files suit, but did not pay the remaining $91.42 at any time, the drawer would be liable for $375 ($75 balance of check + $300 statutory penalty).[20]

In 1996, the Legislature eliminated a prior statutory requirement that the drawer's payment to the payee be in cash. Now, no medium of payment is specified in the Bad Check Law.[21] While payment by cash, a cashier's check, a credit or debit card, or another check, probably meets the statute's requirements, the payee has the same option to insist on cash or its equivalent as any person who is entitled to receive payment.

A cash payment is still required by the statute in stop payment situations.[22]

On occasion, a returned check is re-deposited. If the same check is again returned, only one service charge or statutory penalty is recoverable.[23]

**4. Written Demand: Contents, Mailing, and Evidence of Mailing**

Most claims for a statutory penalty result from either lack of funds or credit in the drawer's account, or absence of an account. The rules that apply to the payee's written demand in those common situations are discussed immediately below. (If the drawer has stopped payment, special rules apply (see 5, below).)

a. Written Demand Required

A person who writes a check that is returned for lack of funds or credit, or absence of an account, is liable for a statutory penalty only if the payee has mailed the drawer a written demand for payment by certified mail.[24]

The statute does not require that the drawer actually receive a demand for payment that is properly addressed and mailed. The address appearing on the drawer's check ordinarily would be an acceptable address unless it was not the most recent address provided by the drawer to the payee.[25]

b. Contents of Written Demand

The contents of the written demand are prescribed by statute. The written demand must inform the drawer of (1) "the amount of the check," (2) "the amount of the service charge payable to the payee,"(3) if the payee desires to request mailing costs, the "costs to mail the written demand, and, (4) "the provisions of" the Bad Check Law.[26] While a literal interpretation of the statute would require the payee to replicate the entire text of the statute, that would confuse rather than inform most drawers. Hence, that would not be a sensible interpretation.

The text, context and purposes of the Bad Check Law suggest that the written demand should include a clear statement of all of the following: (1) the name of the drawer (the person who wrote the check and to whom the demand is addressed); (2) the name of the payee (the person or business to whom the check was made payable); (3) the amount of the check (its face amount); (4) the drawer's potential liability (the fact that the drawer may be liable to the payee for (a) the amount of the check, minus any partial payments made within 30 days after the payee mailed the demand for payment, plus (b) a statutory penalty equal to treble that amount, but not less than $100 nor more than $1,500); (5) what the drawer must do to avoid liability (the fact that the drawer will be liable for the total in (4) unless the drawer pays to the payee, at the address given in the demand for payment, within 30 days after the payee mailed the demand, the total of (a) the amount of the check, (b) the amount of the service charge payable to the payee, and (c) the costs to mail the written demand); and (6) the address of the payee (where payment can be either mailed or delivered). The demand should itemize the elements and state their total.

While the Bad Check Law provides no sample written demand for use in an "insufficient funds" situation,[27] the statutory form required for use in "stop payment" situations[28] can serve as a guide (see Appendix A, pages 9 and 10).[29] Generally speaking, a properly designed and transmitted demand will assure that the drawer has all of the information that the drawer needs to avoid liability for a statutory penalty.

c. Evidence of Mailing Written Demand

In order to recover a statutory penalty, the payee must demonstrate that the payee sent to the drawer by certified mail a written notice that complies with the Bad Check Law.[30] The payee also must offer evidence of any partial payments received, or that no partial payments were

received.[31]  The statute does not require that the drawer actually receive a written demand that was properly addressed and mailed.

Certified mail service provides the sender with a mailing receipt, and a delivery record is kept at the post office of the addressee.  No record is kept at the office from which certified mail is mailed.  Evidence of mailing takes the form of a Receipt for Certified Mail (PS Form 3800), which bears (1) the addressee's name and address, (2) the certified mail number, (3) a breakdown and total of the mailing costs ($.32 postage + $1.10 certified fee = $1.42)[32] and (4) a postmark.

In order to recover a statutory penalty, the payee need only submit a copy of the written demand and a completed and postmarked Receipt for Certified Mail (PS Form 3800).  (Contrast the rule on stop payment checks, discussed at page 5 below.)[33]  If the drawer did not receive the mailed demand because the address to which the payee mailed the demand was not the most recent address provided by the drawer to the payee, or if the payee failed to follow any of the other statutory requirements, the statutory prerequisites may not have been met.

**5.  Special Rules for "Stop Payment" Checks**

a.  Special Protection to Drawer of Check

Special rules apply if the drawer of a check has stopped payment.[34]  These rules preserve the right of a drawer to stop payment for any legitimate reason.[35]  If a drawer exercises the right to stop payment in order to resolve a good faith dispute with the payee, no statutory penalty can be imposed, even if the court later deter-mines that the drawer is obligated to pay the obligation for which the check was given.[36]  See e., below, for the circumstances in which a drawer has the right to stop payment.

The special rules for "stop payment" situations are discussed in the rest of this section.

b.  Special Written Demand Required

The text of the demand for payment where the drawer has stopped payment is prescribed by statute.[37]  The prescribed form is reproduced in Appendix A on page 10.  This demand form is designed for situations where the drawer has stopped payment, and differs from the written demand that must be mailed in other situations (lack of funds or credit, or absence of an account).  For instance, in contrast to the written demand in other situations, the drawer must pay cash.  Also,

the payee must send the notice to the drawer by certified mail, but, in contrast to other situations, a return receipt must be requested.[38]

c.  Mailing and Evidence of Mailing of Special Written Demand

In order to recover a statutory penalty after payment has been stopped, the special written demand must be mailed by certified mail (return receipt requested), addressed to the drawer at "the drawer's last known address."[39]  (At a court hearing, the payee must be able to introduce into evidence a copy of the written demand and a signed certified mail receipt shoring delivery or attempted delivery.[40])

Return receipt service provides a mailer with evidence of delivery -- a Domestic Return Receipt (PS Form 3811) signed by the addressee or the addressee's agent.[41]  (If the addressee signs for the delivered mail, the completed and signed Domestic Return Receipt is returned to the payee, who must produce this in any court action to enforce the penalty.)

If the written demand is not accepted by the drawer, the payee must be able to provide two documents:  (1) the Receipt for Certified Mail (PS Form 3800), completed to show (a) the drawee's name and address, (b) postage, (c) certified mail fee, (d) return request fee, and (e) postmark, plus (2) the unsigned Domestic Return Receipt, with evidence of the attempted delivery and the drawer's refusal to accept it.

d.  Good Faith Dispute:  Drawer not Liable

A drawer who acts in good faith can exercise his or her right to stop payment without incurring the risk of liability for the statutory penalty, a service charge or mailing costs.  Even if it turns out that the drawer was obligated to make the payment for which the check was given, the payee cannot recover a service charge, mailing costs or statutory penalty, if the drawer stopped payment in good faith.  In that event, the court might award the payee the face amount of the check and any allowable damages, such as prejudgment interest (if there is no defense to payment).

e.  "Good Faith Dispute" Defined

A "good faith dispute" is one in which the court finds that the drawer had "a reasonable belief of his or her legal entitlement to withhold payment."[42]  The statute states that "[g]rounds for the entitlement include, but are not limited to, the following:  services were not rendered, goods were not delivered, goods or services purchased

are faulty, not as promised, or otherwise unsatisfactory, or there was an overcharge."[43]

The existence of a "good faith dispute" is "determined by the trier of fact" (in small claims court, the judge).[44] It is an issue of fact, not law.

### f. Evidence of Lack of Good Faith Dispute

If the drawer has stopped payment, the payee must prove, by clear and convincing evidence, that there was no good faith dispute in order to recover a service charge and costs to mail the written demand, or statutory penalty.

The payee must prove a negative -- the absence of a good faith dispute -- and must prove it by clear and convincing evidence. Hence, any reasonable doubt about whether the dispute was in fact a good faith dispute is resolved in favor of the drawer. On the other hand, a stop payment order that was not made in the context of a real dispute regarding the underlying obligation or its amount -- for instance, a stop payment done simply to try to avoid paying for goods or services purchased -- would not qualify for the exemption from a statutory penalty.

As explained in the next subdivision, the payee also must make and provide evidence of reasonable efforts to resolve the dispute informally.

### g. Informal Settlement Efforts Required of Payee

A payee who plans to seek a court judgment for a statutory penalty in a stop payment situation must attempt to reconcile and resolve the dispute before filing the action.[45] If the drawer has stopped payment, it is not sufficient for the payee just to mail the drawer a written demand. The payee must reach out to the drawer and make a good faith effort to attempt to resolve the problem. The statute urges the drawer to contact the payee to try to resolve the dispute.[46]

In any court action, the payee must be able to produce evidence of the payee's settlement efforts. The payee must "show to the satisfaction of the trier of fact that [the payee made] . . . a reasonable effort . . . to reconcile and resolve the dispute prior to pursuing the dispute through the courts."[47] The payee must be prepared to describe what settlement efforts were made, apart from sending the prescribed notice.

### 7. Claim by Government Payee

See Appendix B, pages 10 and 11.

### 8. Court Action to Recover Statutory Penalty

The original payee of a check that is returned for insufficient funds can file a claim for damages in the small claims court if the total amount of the claim does not exceed the small claims court's jurisdictional limit.[48] A claim for damages alternatively may be filed in any other court having jurisdiction.

### a. Inquiry by Judge

At the outset of a small claims court action in which a plaintiff (payee) is asserting a claim for a statutory penalty against the defendant (drawer), the judge ordinarily will first ask the plaintiff for a copy of the written demand for payment, as well as evidence of its mailing by certified mail. If there is no proper written demand for payment, or no evidence that the written demand was mailed by certified mail, the plaintiff has no right to a statutory penalty under the Bad Check Law.[49]

Ordinarily, if these documents are not available for submission to the judge, the claim for a statutory penalty will be dismissed or the hearing on that claim will be postponed. However, judgment for the face amount of the check and other allowable damages (e.g., prejudgment interest (see page 8)) can still be awarded without a new court action, provided that the drawer does not establish a defense to payment (see pages 8-9).

### b. Judgment

If the payee has mailed the required written demand by certified mail, and the drawer has not paid the payee the payment necessary to avoid liability for a statutory penalty within 30 days after the demand was mailed, the payee can recover the face amount of the check, and a statutory penalty.[50]

### c. Statutes of Limitations

The following limitation periods apply, after which a court action cannot be filed: (1) action to enforce the drawer's obligation to pay the face amount of a returned check -- three years;[51] (2) action to enforce a statutory service charge -- three years;[52] and, (3) action to enforce a statutory penalty -- one year.[53]

### d. Judicial Discretion

The court's discretion in administering a statutory penalty award has certain limits. The Legislature has declared that "[t]he requirements of [the Bad Check Law] in regard to remedies are

mandatory upon a court."[54]  This reflects the key legislative purpose of the statute -- to deter the writing of a check on a bank account that has insufficient funds on deposit to pay it.   As one court has said, "[t]he manifest purpose of [the Bad Check Law] is to discourage the issuance of bank checks, drafts or orders when the drawer's funds are insufficient.  By increasing the stakes for a defendant it serves as a statutory incentive to refrain from the writing of bad checks."[55]

While the court cannot decline to award a penalty if the payee is legally entitled to it, the Bad Check Law[56] does not impose strict liability on the drawer of a check.  The drawer can assert the same legal defenses against the payee that can be asserted in other simple contract actions.  (See discussion of drawer≥s defenses, pages 8-9.)

### e.  Assignment of Payee≥s Claim for Damages

Only the original payee of a returned check can file in small claims court to recover the face amount of a check and a statutory penalty under the Bad Check Law.[57]  However, the payee may transfer or assign a claim under the Bad Check Law,[58] and the transferee or assignee may file an action under the Bad Check Law in municipal or justice court.[59]

## C
## CLAIM FOR SERVICE CHARGE

### a.  General Rule

The Bad Check Law also provides for the recovery of a service charge in certain situations (see page 1).

Only one service charge is recoverable with respect to the same check.[60]  The right to a service charge is lost once the payee becomes entitled to a penalty after mailing a demand under the Bad Check Law.[61]

### b.  When Statutory Service Charge Cannot be Imposed

The Legislature has declared that the drawer of the check is not liable for a service charge in any of the situations listed on page 1.

### c.  Advance Disclosure of Amount of Service Charge

The Bad Check Law sets an upper limit on the amount of the service charge that the payee may charge when the drawer≥s check is returned for insufficient funds.  However, the Bad Check Law does not require that the payee to inform the drawer of the existence or the amount of the service charge before the drawer writes the check.

While the statute does not explicitly require advance notice of the fact or the amount of the service charge, the Legislature may have contemplated that prevailing practices would continue -- that is, that buyers would be informed by signs at retailers' cash registers or in contract disclosures that a specific amount will be charged for returned checks -- so that consumers can enter into transactions knowingly and decline to patronize retailers whose charges seem high.  While the Legislature≥s expectation would not create a statutory obligation to give advance notice, it might influence the application of other existing laws.

### d.  Service Charge is Now Statute-Based

The new statute-based service charge apparently replaces the traditional contract-based service charge, the validity of which was challenged in Newman v. Checkrite California, Inc. [62]  In that case, the drawer argued that the posting of a retailer's service charge policy did not result in an agreement to pay the service charge.  While the legislative intent is not clear and the Bad Check Law is ambiguous on many points, the 1996 revision to the law seems to have made the right to impose a service charge statute-based rather than contract-based, and also to cap the amount of any agreed service charge or similar damage claim.

The purpose of the traditional service charge for returned checks was to compensate the retailer for the resulting losses, such as delay in receiving payment, any returned check fee paid to the retailer's bank, and the inconvenience and added expense of processing the returned check.  Most retailers still follow past practice, and notify customers making purchases and paying by check that a service charge will be imposed if a check is returned for insufficient funds.  That usually is accomplished by a prominent sign at retailers' cash registers, or by clauses in order forms or other written contracts between retailers and customers.

The posting of a returned check policy, or an order form or some other agreement, still may technically result in a contract-based service charge.  However, the 1996 version of the Bad Check Law[63] seems to limit the amount of the agreed service charge regardless of its characterization.  For the reasons given in subsection e., a payee should not be able to recover both the statute-based service charge and a service charge based on the parties' agreement.

### e. Double Recoveries Barred

The payee's statutory right to a service charge for a returned check[64] is part of a statutory scheme, adopted in 1996,[65] in which drawers who fail to the pay the amount of the returned check, the amount of the service charge, and the costs of mailing a written demand for payment, become obligated to pay the amount of the check plus a statutory penalty. Just as the payee of a check cannot recover both the face amount of the check and the underlying obligation,[66] the payee of a check who imposes a statutory service charge is barred from seeking duplicate recoveries on the following grounds:

! New statutory remedy is exclusive: The effect of the 1996 revision was to give the payee a new statutory right (to receive a check whose return would give rise to a statutory service charge) and a new statutory remedy (court enforcement of the service charge). The courts have declared that unless the Legislature has declared otherwise, a new statutory remedy is exclusive, and other remedies are barred.[67]

! "Compensatory damages:" Damages only compensate for loss and must be reasonable; a plaintiff cannot profit from a breach, and forfeitures and penalties are disallowed. "The general theory of compensatory damages bars double recovery for the same wrong."[68] The statutory service charge is a successor to and has the same functions as the traditional service charge. Hence, allowing a payee who seeks a statute-based service charge to also recover an agreed service charge, or damages for any of the other losses for which the traditional service charge may have served as compensation (e.g., prejudgment interest, the payee's own returned check fee, etc.), would result in double recoveries for the same loss, which is not permitted.

! Liquidated damages merger: If the parties to a check transaction agree that the drawer will pay a service charge in the event the drawer's check is returned, that agreement may constitute a liquidation of damages,[69] as a result of which other damages claims are merged in the agreed charge.

! Cumulative remedies not intended: Where the Legislature intends to create civil remedies that are cumulative and not exclusive, it typically says so.[70] There is no such expression in the statute governing actions for damages involving returned checks.

## D
## CLAIM FOR PREJUDGMENT INTEREST

### a. Right to Prejudgment Interest

The measure of damages for breach of an obligation to pay money only is "the amount due by the terms of the obligation, with interest thereon."[71] Therefore, the payee of a check that is returned unpaid has a right to prejudgment interest from the date of the check until the check is paid.[72] Unless otherwise agreed, interest accrues at the rate of 10 percent per annum.[73]

### b. When Interest Begins to Accrue

The obligation of the drawer of a check is a primary obligation, which is defined by the check's "terms at the time it was issued ...."[74] Since notice of dishonor or protest is not a prerequisite to the drawer's liability, interest ordinarily accrues on a check from the date of the check.[75]

### c. When Prejudgment Interest Not Available

Interest is a form of damages. Hence, if there is a valid liquidated damages agreement between the drawer and payee, the payee's claims for prejudgment interest and any other losses are merged in the agreed damages, and are no longer recoverable separately.[76]

The imposition of a service charge for a returned check may also bar recovery of prejudgment interest on the unpaid check, on the basis that it would result in a double recovery of damages (see page 7).

## E
## CLAIM FOR FACE AMOUNT OF CHECK

### a. Bases for Payee=s Claim

The Commercial Code gives the payee of a check returned by the bank for insufficient funds the right to enforce the check against the drawer.[77] A right to recover the face amount of a check returned for insufficient funds also is conferred by the Bad Check Law.[78]

A payee who can assert a claim based on a returned check[79] also may have an alternative claim based on the obligation for which the check was given in payment (e.g., the price of a sale of goods or services).[80]

As explained at c., below, double recoveries are barred.

### b. All "Simple Contract" Defenses Assertable

The drawer of a check may be able to establish the unenforceability of the underlying obligation, and, hence, the check, by asserting both "real" and "personal" defenses (see part F., below).

### c. Double Recoveries Barred

While a payee can sue on both (1) the check[81] and (2) the underlying claim, judgment can be given only on one theory or law, not both. There are three independent bases for this conclusion:

! If the check is dishonored, the law provides that the payee "may enforce either the instrument or the obligation ...."[82]

! Damages only compensate for a loss and must be reasonable; a plaintiff (the payee) cannot profit from a breach, and forfeitures and penalties are disallowed. "The general theory of compensatory damages bars double recovery for the same wrong."[83]

! Where the Legislature intends to create civil remedies that are cumulative and not exclusive, it typically says so.[84] There is no such expression in the law governing actions for damages involving returned checks.

### F
### DRAWER=S DEFENSES TO PAYMENT

#### a. Is the Payee a "Holder@ or a AHolder in Due Course?@

A payee who has received a check and who still holds it is called a Aholder.@ A holder of a check can enforce it in court.[85] A person to whom the payee assigns or transfers the check is also a Aholder.@ However, the person to whom the payee assigns or transfers the check may also qualify as a "holder in due course" (defined in endnote 86).[86] Whether the transferee of a check is a "holder" or a "holder in due course" determines what kinds of defenses the drawer can assert against the transferee's claim against the drawer for payment.

A holder in due course has greater rights to enforce payment of the check against the drawer than does a holder who is not a holder in due course. A holder who is also a holder in due course is said to take the check Afree@ of the "personal" defenses (see subsection b., below) that a drawer might assert against the original payee (or against some other holder who is not a Aholder-in-due-course).

#### b. Drawer Can Assert "Personal" Defenses Against a Holder

The drawer can assert a broad array of defenses, called Apersonal defenses@ against a holder -- such as the original payee -- who does not qualify as a holder in due course (see endnote 86). In legal terminology, a holder's right to enforce the obligation to pay an instrument is subject to "a defense of the [drawer] that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract."[87]

This means that the holder's right to enforce payment is also subject to "simple contract defenses," such as fraud in the inducement, misrepresentation, failure or lack of consideration, unconscionability, or breach of warranty. While the drawer can assert these so-called "personal" defenses against a holder, the drawer cannot assert them against a holder in due course.

#### c. Drawer Can Assert Only "Real" Defenses Against a Holder in Due Course

A holder who is a holder in due course is subject to fewer kinds of defenses than a holder who is not a holder in due course. Nonetheless, a holder in due course is subject to the defenses of: "(A) infancy of the [drawer] to the extent it is a defense to a simple contract, (B) duress, lack of legal capacity, or illegality ..., (C) fraud that induced the [drawer] to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (D) discharge of the [drawer] in insolvency proceedings."[88]

#### d. Drawer's "Article Three" Defenses

A holder's right to enforcement also is subject to "[a] defense of the [drawer] stated in [Article Three of the Uniform Commercial Code]."[89] These defenses include:[90] non-issuance of the instrument, conditional issuance, and issuance for a special purpose;[91] modification of the obligation by a separate agreement;[92] payment that violates a restrictive endorsement;[93] and, issuance without consideration or when promised consideration has not been given.[94]

***** 

**Prepared by:**
Legal Services Unit
October, 1998

**NOTICE: We attempt to make our Legal**

**Guides accurate as of the date of publication, but they are only guidelines and not definitive statements of the law. Questions about the law's application to particular cases should be directed to a specialist.**

This document is available on the Internet. See the Department of Consumer Affairs' homepage at www.dca.ca.gov.

This document may be copied if all of the following conditions are met: the meaning of the copied text is not changed; credit is given to the Department of Consumer Affairs; and all copies are distributed free of charge.

## ENDNOTES

1. Civil Code ' 1719, as amended by Stats. 1996, ch. 1000 (AB 2643).

2. Civil Code ' 1719(a)(1),(2).

3. Civil Code ' 1719(a)(1).

4. Civil Code ' 1719(a)(4).

5. Civil Code ' 1719(a)(5).

6. Civil Code ' 1719(a)(1),(2).

7. Civil Code ' 1719(a)(2).

8. Civil Code ' 1719(j)(2).

9. Civil Code ' 1719(a)(6).

10. Civil Code ' 1719(a)(6).

11. Civil Code ' 1719(a)(2).

12. Civil Code ' 1719(a)(2).

13. Civil Code ' 1719(a)(2).

14. Civil Code '' 1719(a)(1),(2).

15. Civil Code ' 1719(a)(2).

16. Civil Code ' 1719(a)(2).

17. Civil Code ' 1719(a)(2).

18. Civil Code ' 1719(a)(2).

19. Civil Code ' 1719(a)(2).

20. Civil Code ' 1719(a)(2).

21. Civil Code ' 1719(a)(2).

22. Civil Code ' 1719(c).

23. Civil Code ' 1719(j)(2).

24. Civil Code '' 1719(a)(2), (j)(1).

25. See Civil Code ' 1719(d).

26. Civil Code ' 1719(a)(2).

27. See Civil Code ' 1719.

28. See Civil Code ' 1719(c).

29. This is the advice given in California Forms of

Pleading and Practice, at Negotiable Instruments, Form 60, Comments.

30. Specifically, Civil Code ' 1719(a)(2).

31. Civil Code '' 1719(a)(2), (j)(1).

32. As of July, 1995.

33. Civil Code ' 1719(d), discussed below.

34. Civil Code '' 1719(a)(3),(b),(c),(d) and (e).

35. Civil Code '' 1719(a)(3),(b),(c),(d) and (e).

36. Civil Code ' 1719(a)(3).

37. Civil Code ' 1719(c).

38. Civil Code ' 1719(d).

39. Civil Code ' 1719(d).

40. Civil Code ' 1719(d).

41. The additional charge for a return receipt showing to whom delivered, and when, is $1.50, increasing the total mailing costs (as of 1996) to $2.92 ($.32 Postage + $1.10 certified mail fee + $1.50 return receipt fee).

42. Civil Code ' 1719(b).

43. Civil Code ' 1719(b).

44. Civil Code ' 1719(b).

45. Civil Code ' 1719(e).

46. Civil Code ' 1719(b).

47. Civil Code ' 1719(e).

48. Civil Code ' 1719(e).

49. Civil Code ' 1719(j)(1).

50. Civil Code ' 1719(a)(2),(e).

51. Commercial Code ' 3118(c).

52. Code of Civil Procedure ' 338(a).

53. Code of Civil Procedure ' 340(1).

54. Civil Code ' 1719(h). When the Legislature increased the maximum penalty from $500 to $1,500 in 1995, it declared: "The number of checks passed on insufficient funds, and the amounts of those checks, are increasing. Thus, the number of disputes taken to small claims court has increased. In enacting [the 1995 changes (Stats. 1995, ch. 134 (AB 522))[95]], the Legislature intends to deter any further expansion of the number of incidents of passing checks on insufficient funds, and thereby reduce the burden on small claims courts."[96] (Stats. 1995, ch. 134, ' 2.)

55. Mughrabi v. Suzuki (1988) 197 Cal.App.3d 1212 [243 Cal.Rptr. 438,440].

56. Civil Code ' 1719(a)(2).

57. Civil Code ' 1719(e).

58. Civil Code ' 1719(i). If the claim is transferred or assigned to a debt collection agency, the collection agency must file in superior, municipal or justice court. The debt collector must give the payee the amount of the penalty recovered in excess of the debt collector's flat charge. (Civil Code ' 1719(f).)

59. Civil Code ' 1719(f).

60. Civil Code ' 1719(j)(2).

61. Civil Code ' 1719(a)(2).

62.  Newman v. Checkrite California, Inc. (E.D. Cal., 1995) 912 F. Supp. 1354, 1359.

63. At Civil Code ' 1719(a)(1).

64. At Civil Code ' 1719(a)(1).

65. Stats. 1996, ch. 1000 (AB 2643).

66. Commercial Code ' 3301(b)(3); see White & Summers, Uniform Commercial Code (4th ed. 1995), ' 16-14, p.135.

67.  "[W]hen a new right has been created by statute, and a statutory remedy for its infringement is provided, the statutory remedy is exclusive and no other remedy will be allowed." (3 Witkin, Cal. Proc. (4th ed. 1996) Actions, ' 7 (citations; emphasis in original).)

68. 6 Witkin, Sum. of Cal. Law (9th ed. 1988) Torts, ' 1322; see Greater Westchester Homeowners Assn. v. Los Angeles (1979) 26 Cal.3d 86, 103 [160 Cal.Rptr. 733, 741].

69. Civil Code ' 1671.

70. See, e.g., Civil Code ' 1752.

71. Civil Code ' 3302

72. Civil Code ' 3287(a).

73. Civil Code ' 3289(b).

74. Commercial Code ' 3414(b)(1).

75. See Com. Code ' 3414, Official Comment 2; 3 Witkin, Sum. of Cal. Law (9th ed. 1987) Negotiable Instruments, 1995 Supp. ' 235.

76. Civil Code ' 1671.

77. Com. Code ' 3414(b)(1); see 2 White & Summers, Uniform Commercial Code (4th ed. 1995), ' 16-6(a).

78. Civil Code ' 1719(a)(1).

79. Under Commercial Code ' 3414.

80. See Commercial Code '' 2708, 2709, 2730; 4 Witkin, Cal.Proc. (3d ed. 1985) Pleading, '' 504-506.

81. Under either Com. Code ' 3414(b)(1) or Civil Code ' 1719(a)(1).

82. Commercial Code ' 3310(b)(3); see White & Summers, Uniform Commercial Code (4th ed. 1995), ' 16-14, p. 135.

83. 6 Witkin, Sum. of Cal. Law (9th ed. 1988) Torts, ' 1322; see Greater Westchester Homeowners Assn. v. Los Angeles (1979) 26 Cal.3d 86, 103 [160 Cal.Rptr. 733, 741].

84. For instance, Civil Code ' 1752 declares that the remedies of the Consumers Legal Remedies Act are non-exclusive.

85. When the drawer of a check issues the check to the payee, the payee becomes the "holder" of the check.

(Commercial Code ' 3105(a); Commercial Code ' 3201, Official Comment 1.

86.  A "holder in due course" is the holder of a check (or other instrument) that appears to be authentic, who has taken the instrument from another for value, in good faith, without notice that the check has been dishonored, and without notice of other defects in the check (e.g., without notice that the check contains an unauthorized signature).  (Commercial Code ' 3302(a).)  Examples of a holder in due course include the bank where the payee of a check deposits it, and a grocery store that cashes a payroll check for a customer who is the payee of the check.  (See White & Summers, Uniform Commercial Code (4th ed. 1995), ch. 17; 3 Witkin, Sum. of Cal. Law (9th ed. 1987) Negotiable Instruments, '' 75-83.)  In a typical two-party check situation, the payee is the holder of the check. Technically, the payee of the check can also be a holder in due course.  However, the holder in due course doctrine "... applies only to cases in which more than two parties are involved,"[97] (Commercial Code ' 3305, Official Comment 2), and therefore is "irrelevant" in determining the rights between the two parties in a typical two-party check situation (see 2 White & Summers, Uniform Commercial Code (4th ed. 1995), ' 17-8, pp. 178-179 ("a typical drawer of a check can always assert its defense against its own payee...."); see 3 Witkin, Sum. of Cal. Law (9th ed. 1987) Negotiable Instruments, ' 75(b)).

87. Commercial Code ' 3305(a)(2); see this section and Official Comment 2 for details; 3 Witkin, Sum. of Cal. Law (9th ed. 1987) Negotiable Instruments, ' 72; 2 White & Summers, Uniform Commercial Code (4th ed. 1995), ' 17-10.

88. Commercial Code ' 3305(a)(1).

89. Commercial Code ' 3305(a)(2).

90. See Com. Code ' 3305, Official Comment 2.

91. Commercial Code ' 3105(b).

92. Commercial Code ' 3117.

93. Commercial Code ' 3206(f).

94. Commercial Code ' 3303(b).

95. Civil Code ' 1719, as amended by Stats. 1996, ch. 1000.

96. The person or business to whom the check is made out is said to be the Apayee@ of the check.

97. Commercial Code ' 3305, Official Comment 2).

**APPENDIX A**

**Payee's Notice to Drawer in**

**Stop-Payment Situations**

**Notice**

To: _____

(name of drawer)

_____ is the

(name of payee)

payee of a check you wrote for $_____.

(amount)

The check was not paid because you stopped payment, and the payee demands payment. You may have a good faith dispute as to whether you owe the full amount. If you do not have a good faith dispute with the payee and fail to pay the payee the full amount of the check in cash, a service charge of an amount not to exceed twenty-five dollars ($25) for the first check passed on insufficient funds and an amount not to exceed thirty-five dollars ($35) for each subsequent check passed on insufficient funds, and the costs to mail this notice with 30 days after this notice was mailed, you could be sued and held responsible to pay at least both of the following:

(1) The amount of the check.

(2) Damages of at least one hundred dollars ($100) or, if higher, three times the amount of the check up to one thousand five hundred dollars ($1,500).

If the court determines that you do have a good faith dispute with the payee, you will not have to pay the service charge, treble damages, or mailing cost. If you stopped payment because you have a good faith dispute with the payee, you should try to work out your dispute with the payee. You can contact the payee at:

_____    (name of payee)

_____    (street address)

_____    (telephone number)

You may wish to contact a lawyer to discuss your legal rights and responsibilities.

_____

(name of sender of notice)

[Civil Code ' 1719(c).]

## APPENDIX B

### Claim by Government Payee

The State of California, and each city and other government agency, may accept personal checks in payment for any license, permit, or fee, or in payment of any obligation owing to the public agency or trust deposit. (Gov. Code ' 6157 (a).) If a personal check offered in payment under this section is returned without payment for any reason, the public agency may impose a reasonable charge for the returned check to recover the public agency's processing and collection costs. This charge may not exceed the actual costs incurred by the public agency. (Gov. Code ' 6157 (b).) This charge is the economic equivalent of the service charge routinely assessed by retailers, but is based solely on statute, not contract.

The Bad Check Law does not limit its applicability to particular classes of payee, there is no reason that the statutory penalty that it authorizes is not recoverable by a government agency that meets the statute's prerequisites.

Special rules govern the contents and mailing of the demand for payment which is given by a municipal court payee as a prerequisite for the municipal court's claim for a statutory penalty under the Bad Check Law. (See Civil Code ' 1719 (g).)

-14-

## APPENDIX C

### TABLE

**Check Drawer=s Obligations and Options**

**At Successive Stages After Drawer's Check is Returned**

**(Assuming all Statutory Prerequisites are Met)**

| STAGE OF THE TRANSACTION (ADay X@ = Date of check payee=s written demand.) CHECK DRAWER MUST PAY AMOUNT BELOW: | STAGE I (Day O to Day X) After drawer assents to payee's policy on service charges, drawer gives payee the check in payment. Check is returned to payee by payee's bank for insufficient funds. Drawer owes the payee: | STAGE II (Day X to Day X+30) Payee has mailed drawer a written demand for payment by certified mail. In order to avoid a statutory penalty, drawer must pay the payee, within 30 days: | STAGE III (After Day X + 30) 30 days have expired after the written demand was mailed, and drawer has not fully paid the face amount of the check, service charge, and mailing costs. Drawer owes payee: |
|---|---|---|---|
| FACE AMOUNT OF CHECK | Yes | Yes | Yes |
| SERVICE CHARGE | Yes | Yes | No |
| MAILING COSTS | No | Yes | No |
| STATUTORY PENALTY | No | No | Yes |

Mark E. Ellis - 127159
June D. Coleman - 191890
MURPHY, PEARSON, BRADLEY & FEENEY
701 University Avenue, Suite 150
Sacramento, CA 95825
Telephone:     (916) 565-0300
Facsimile:     (916) 565-1636

Attorneys for Defendant
PAUL R. STASSINOS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| SUSANNE M. PALMER and SHARON HAMMER, on behalf of herself and all others similarly situated | Case No.: C04 03026 RMW |
| Plaintiff, | **DECLARATION OF TIMOTHY C. NUNNEMAKER RE: AB 1226** |
| v. | Date:          October 22, 2004 |
| PAUL R. STASSINOS, an Individual and DOES 1 through 20, | Time:          9:00 a.m. |
| Defendants. | Courtroom:          6 |

**Declaration of Timothy C. Nunnemaker**

**Regarding the Legislative History of**

**Civil Code Section 1719, As Added By**

**Chapter 522 Statutes of 1983, Assembly Bill 1226 - Katz**

I, TIMOTHY C. NUNNEMAKER, declare that I am competent to state and would testify to the following if called as a witness:

1. I am Vice President of the private research firm known as Legislative Research Incorporated (LRI) (formerly Legislative Research Institute) which was established in October, 1983. Legislative Research Incorporated specializes in the research and analysis of historical legislative records surrounding the enactment of California State statutes, regulations and constitutional provisions for use in the construction of statutes pursuant to Code of Civil Procedure Section 1859 which states in pertinent part:

> "In the construction of a statute the intention of the Legislature ... is to be pursued, if possible ..."

2. Since 1989 I have participated at a substantive level in the research of enactments involving California statutes, administrative regulations or constitutional provisions for approximately 1,000 clients from a wide variety of firms and governmental entities.

3. I, or other members of my firm, have also submitted numerous declarations authenticating the nature and source of the documents researched by LRI.

4. I personally conducted the research on the legislative history surrounding Civil Code Section 1719, as added by Chapter 522, Statutes of 1983, Assembly Bill 1226 - Katz. The attached documents (as itemized in the accompanying attachment) are true and correct copies of records located from official State of California sources.

5. I declare under penalty of perjury that the foregoing is true and correct and that I could and would so testify in a court of law if called to be a witness.

1

1                      Executed this 9th day of June, 1997, at Sacramento, California.

2

3          _____

         TIMOTHY C. NUNNEMAKER

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                   2

1

2

3    Exhibit 78                              **AB 1226** (March 2, 1983)

4    Exhibit 79                              Assembly Committee on Judiciary, **Committee
                                            Analysis of AB 1226** (April 11, 1983)
5
     Exhibit 80                              **Senate Floor Analysis**, AB 1226 (June 14, 1983)
6

7

8

9    TAJ.10240687.doc

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CALIFORNIA LEGISLATURE—1983-84 REGULAR SESSION

# ASSEMBLY BILL

No. 1226

Introduced by Assemblymen Katz, Bane, Bergeson, Bronzan, Chacon, Costa, Davis, Elder, Farr, Frizzelle, Hannigan, Hayden, Herger, Johnston, Konnyu, La Follette, McClintock, Molina, Moorhead, O'Connell, Peace, Rogers, Sher, Tucker, Wright, and Young
(Coauthor: Senators Craven, Dills, Bill Greene, Johnson, Presley, Robbins, Speraw, Stiern, and Torres)

March 2, 1983

An act to add Section 1719 to the Civil Code, relating to commercial paper.

LEGISLATIVE COUNSEL'S DIGEST

AB 1226, as introduced, Katz. Bad checks: punitive damages.

Existing law makes it a crime to fraudulently write a bad check, knowing that it is made upon insufficient funds.

This bill would create a cause of action for punitive damages to fail to pay upon a dishonored check, in cash, within 30 days of demand for payment, as specified.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

The people of the State of California do enact as follows:

1    SECTION 1.    Section 1719 is added to the Civil Code,
2  to read:
3    1719.   In addition to any penal sanctions which may
4  apply, any person who makes, utters, draws, or delivers
5  any check, or draft, or order upon any bank or depository,
6  or person, or firm, or corporation, for the payment of
7  money, which refuses to honor same for lack of funds or

99  50

---

Ch. 227                                    — 2 —

(b) to Section 1939 of the Financial Code to provide information which shall be available to the public on the foreign lending activities of banking institutions in order to permit investors and depositors to assess the risks and exercise their business judgment with respect to funding the activities of such financial institutions. In addition, such disclosure would permit self-regulation in the marketplace as governmental regulation decreases. Increased disclosure would also tend to encourage banks to assess the prudence of their foreign lending practices and to require greater risk diversification and adequate reserves as a condition for increased deposits and investments in the banks' equity and other securities.

EXHIBIT

78

AB 1226

— 2 —

1  credit to pay, or because the maker has no account with
2  the drawee, and who fails to pay the same amount in cash
3  to the payee within 30 days following a written demand
4  therefor delivered to the maker by certified mail, shall be
5  liable to the payee, in addition to the amount owing upon
6  such check or draft or order, as punitive damages the
7  greater of treble the amount so owing or the sum of one
8  hundred dollars ($100).
9      A cause of action under this section may be brought in
10  small claims court, if it does not exceed the jurisdiction of
11  that court, or in any other appropriate court.

ASSEMBLY COMMITTEE ON JUDICIARY                         AB 1226
ELIHU M. HARRIS, Chairman

*PROPERTY OF ASSEMBLY REPUBLICAN CAUCUS LIBRARY*

AB 1226 (Katz)  As introduced 03/02/83

SUBJECT

This bill is intended to create a specific cause of action for
failure to pay on a dishonored check.

DIGEST

This bill would provide that specified punitive damages would be
awarded in an action based on the failure to pay on a dishonored
check or draft within 30 days of the delivery of a written
demand.  Specifically, the bill would:

-   apply to a check or draft which is dishonored for lack
    of funds or credit to pay, or because the maker had no
    account with the drawee (e.g., the bank);

-   require that a written demand to pay be delivered to the
    maker by certified mail before the cause of action
    arises;

-   provide that, if the amount of the check is not paid
    within 30 days of the demand, the maker would be liable
    to the payee for the amount of the check and punitive
    damages of either 3 times the amount of the check or
    $100, whichever is greater.

Further, the bill also specifies that a cause of action arising
under its provisions, which does not exceed the court's
jurisdictional limit, may be brought in small claims court.

STAFF COMMENTS

1.  The author of this measure contends that existing laws have
    not served as an adequate deterrent to chronic bad check
    writers.  Bad checks written for small amounts, argues the
    author, cost more to collect in the civil courts than they
    are worth and are "low priority criminal matters" which
    district attorneys are reluctant to prosecute.  Further, the
    source of the bill suggests that in these hard economic times
    there has been an "explosion" of bad check writing.  The
    National Federation of Independent Business, contends that
    bad checks result in $1.5 billion being lost nationwide.

    The source argues that Oregon and Idaho have passed
    legislation with penalties similar to this bill and the

(CONTINUED)

EXHIBIT
79

Consultant R. R. Lopez                          AB 1226
04/11/83                                        Page 1

losses due to bad checks have been drastically reduced. This bill, argues the proponents, is necessary to deter bad check writing and the resulting losses to California business.

2. Under this bill, a person who writes a bad check would be liable to the payee for "punitive damages." Under existing law, when a civil defendant has been guilty of oppression, fraud, or malice, a plaintiff in addition to recovering actual damages, may be awarded punitive or exemplary damages.

There is a clear distinction between the nature and function of compensatory damages and exemplary or punitive damages. Compensatory damages are awarded to the plaintiff as compensation for the detriment actually sustained as a result of the defendant's wrongful act. The purpose of punitive damages is to punish the wrongdoer and thereby deter the commission of wrongful acts in the future. Normally there is no fixed standard by which punitive damages can be determined but rather the award and the amount are left to the trier of fact.

Existing law also provides that the wrongful act of the defendant may be subject to civil penalties imposed by statute. Statutory penalties may be imposed without regard to motive.

Does this bill actually impose a statutory civil penalty rather than punitive damages? Should the term "punitive damages" be deleted?

3. This bill specifically provides that a cause of action based on its provisions may be brought in small claims court, if it (the cause of action) does not exceed the jurisdiction of that court. This provision restates general law. Is this provision necessary?

4. Technical Amendment:

On page 2, strike lines 6 thru 8 and insert:

such check or draft or order, for punitive damage of treble the amount so owing or the sum of one hundred dollars ($100), whichever is greater.

SOURCE

Author and National Federation of Independent Business

SUPPORT

Committee staff has received numerous letters of support
from independent businesses.

OPPOSITION

Unknown

# SENATE REPUBLICAN CAUCUS
## SENATOR KENNETH L. MADDY, Chairman



**POSITIONS:**

SUPPORT: National Federation of Independent
Businesses; Calif. Chamber of Commerce; Calif.
Grocers Association; Calif. Retail Assn;
Independent Automobile Dealers Assn.

**BILL NUMBER:** AB 1226

**AUTHOR:** Katz, et al

AMENDED COPY: 6-14-83
MAJORITY VOTE
CONSENT CALENDAR

**Committee Votes:**



Senate Floor Vote:

Assembly Floor Vote:  70-0, Pg. 3438 (5-5-83)

## DIGEST

1  This bill provides that a payor's failure to pay within 30 days the
2  amount owing on a personal check or draft that was returned for
3  insufficient funds would allow the payee to recover treble damages not
4  to exceed $500, in addition to the original debt.
5
6  FISCAL EFFECT: Appropriation: No.  Fiscal Committee: No.  Local: No.
7
8  COMMENTS:
9  Existing law punishes as either a misdemeanor or a felony, depending
10 on the amount involved, the payment of a debt with a personal check or
11 bank draft knowing there are insufficient funds in the account to
12 cover the face amount of the check or draft.  Civil recovery for
13 breach of contract is also allowed.
14
15 The author's office reports that, according to the National Federation
16 of Independent Businesses, bad checks resulted in a $1.5 billion loss
17 to American business last year.  Bad checks written for small amounts
18 do not often justify either expensive criminal enforcement or the time
19 the small business owner would need to devote to appear in court in
20 order to collect on the debt.
21
22 The purpose of the bill is to provide a cost effective means for small
23 businesses to collect unpaid accounts, and to deter bad check writing.
24
25 Assembly Coauthors:  Bane, Bergeson, Bronzan, Calderon, Chacon, Clute,
26                      Costa, Davis, Elder, Farr, Frizzelle, Goggin,
27                      Hannigan, Harris, Hayden, Herger, Johnson,
28                      Johnston, Konnyu, La Follette, McAlister,
29                      McClintock, Mojonnier, Molina, Moorhead,
30
31                                              NEXT P.
32



**EXHIBIT**

tabbies®    80

ANALYSIS CONTINUED:                    PAGE: 2          BILL NUMBER: AB 1226

```
 1                     O'Connell, Peace, Rogers, Sher, Stirling, Tucker,
 2                     N. Waters, Wright and Young
 3
 4   Senate Coauthors:  Carpenter, Craven, Dills, Bill Greene, Johnson,
 5                     Presley, Roberti, Robbins, Speraw, Stiern and
 6                     Torres
 7
 8   6-14-83/DG/nf
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51
52
53
54
55
56
57
```

1 of 1 DOCUMENT

Deering's California Codes Annotated
Copyright © 2006 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2006 CH. 291, APPROVED 9/15/06 ***

CIVIL CODE
Division 3. Obligations
Part 3. Obligations Imposed by Law

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 1719 (2006)*

§ 1719. Passage of checks on insufficient funds; Liability for specified amounts including treble damages

(a)

(1) Notwithstanding any penal sanctions that may apply, any person who passes a check on insufficient funds shall be liable to the payee for the amount of the check and a service charge payable to the payee for an amount not to exceed twenty-five dollars ($25) for the first check passed on insufficient funds and an amount not to exceed thirty-five dollars ($35) for each subsequent check to that payee passed on insufficient funds.

(2) Notwithstanding any penal sanctions that may apply, any person who passes a check on insufficient funds shall be liable to the payee for damages equal to treble the amount of the check if a written demand for payment is mailed by certified mail to the person who had passed a check on insufficient funds and the written demand informs this person of (A) the provisions of this section, (B) the amount of the check, and (C) the amount of the service charge payable to the payee. The person who had passed a check on insufficient funds shall have 30 days from the date the written demand was mailed to pay the amount of the check, the amount of the service charge payable to the payee, and the costs to mail the written demand for payment. If this person fails to pay in full the amount of the check, the service charge payable to the payee, and the costs to mail the written demand within this period, this person shall then be liable instead for the amount of the check, minus any partial payments made toward the amount of the check or the service charge within 30 days of the written demand, and damages equal to treble that amount, which shall not be less than one hundred dollars ($100) nor more than one thousand five hundred dollars ($1,500). When a person becomes liable for treble damages for a check that is the subject of a written demand, that person shall no longer be liable for any service charge for that check and any costs to mail the written demand.

(3) Notwithstanding paragraphs (1) and (2), a person shall not be liable for the service charge, costs to mail the written demand, or treble damages if he or she stops payment in order to resolve a good faith dispute with the payee. The payee is entitled to the service charge, costs to mail the written demand, or treble damages only upon proving by clear and convincing evidence that there was no good faith dispute, as defined in subdivision (b).

(4) Notwithstanding paragraph (1), a person shall not be liable under that paragraph for the service charge if, at any time, he or she presents the payee with written confirmation by his or her financial institution that the check was returned to the payee by the financial institution due to an error on the part of the financial institution.

(5) Notwithstanding paragraph (1), a person shall not be liable under that paragraph for the service charge if the person presents the payee with written confirmation that his or her account had insufficient funds as a result of a delay in the regularly scheduled transfer of, or the posting of, a direct deposit of a social security or government benefit assistance payment.

**EXHIBIT 3-Request for Judicial Notice**

(6) As used in this subdivision, to "pass a check on insufficient funds" means to make, utter, draw, or deliver any check, draft, or order for the payment of money upon any bank, depository, person, firm, or corporation that refuses to honor the check, draft, or order for any of the following reasons:

(A) Lack of funds or credit in the account to pay the check.

(B) The person who wrote the check does not have an account with the drawee.

(C) The person who wrote the check instructed the drawee to stop payment on the check.

(b) For purposes of this section, in the case of a stop payment, the existence of a "good faith dispute" shall be determined by the trier of fact. A "good faith dispute" is one in which the court finds that the drawer had a reasonable belief of his or her legal entitlement to withhold payment. Grounds for the entitlement include, but are not limited to, the following: services were not rendered, goods were not delivered, goods or services purchased are faulty, not as promised, or otherwise unsatisfactory, or there was an overcharge.

(c) In the case of a stop payment, the notice to the drawer required by this section shall be in substantially the following form:

NOTICE

(d) In the case of a stop payment, a court may not award damages or costs under this section unless the court receives into evidence a copy of the written demand that, in that case, shall have been sent to the drawer and a signed certified mail receipt showing delivery, or attempted delivery if refused, of the written demand to the drawer's last known address.

(e) A cause of action under this section may be brought in small claims court by the original payee, if it does not exceed the jurisdiction of that court, or in any other appropriate court. The payee shall, in order to recover damages because the drawer instructed the drawee to stop payment, show to the satisfaction of the trier of fact that there was a reasonable effort on the part of the payee to reconcile and resolve the dispute prior to pursuing the dispute through the courts.

(f) A cause of action under this section may be brought by a holder of the check or an assignee of the payee. A proceeding under this section is a limited civil case. However, if the assignee is acting on behalf of the payee, for a flat fee or a percentage fee, the assignee may not charge the payee a greater flat fee or percentage fee for that portion of the amount collected that represents treble damages than is charged the payee for collecting the face amount of the check, draft, or order. This subdivision shall not apply to an action brought in small claims court.

(g) Notwithstanding subdivision (a), if the payee is the court, the written demand for payment described in subdivision (a) may be mailed to the drawer by the court clerk. Notwithstanding subdivision (d), in the case of a stop payment where the demand is mailed by the court clerk, a court may not award damages or costs pursuant to subdivision (d), unless the court receives into evidence a copy of the written demand, and a certificate of mailing by the court clerk in the form provided for in subdivision (4) of *Section 1013a of the Code of Civil Procedure* for service in civil actions. For purposes of this subdivision, in courts where a single court clerk serves more than one court, the clerk shall be deemed the court clerk of each court.

(h) The requirements of this section in regard to remedies are mandatory upon a court.

(i) The assignee of the payee or a holder of the check may demand, recover, or enforce the service charge, damages, and costs specified in this section to the same extent as the original payee.

(j)

(1) A drawer is liable for damages and costs only if all of the requirements of this section have been satisfied.

(2) The drawer shall in no event be liable more than once under this section on each check for a service charge, damages, or costs.

(k) Nothing in this section is intended to condition, curtail, or otherwise prejudice the rights, claims, remedies, and defenses under Division 3 (commencing with *Section 3101) of the Commercial Code* of a drawer, payee, assignee, or holder, including a holder in due course as defined in *Section 3302 of the Commercial Code*, in connection with the enforcement of this section.

# EXHIBIT 3-Request for Judicial Notice

**HISTORY:**

Added Stats 1983 ch 522 § 1. Amended Stats 1985 ch 196 § 1; Stats 1986 ch 225 § 1, ch 708 § 1; Stats 1987 ch 4 § 1, effective March 17, 1987; Stats 1990 ch 599 § 1 (SB 2130); Stats 1994 ch 926 § 1 (AB 2533); Stats 1995 ch 134 § 1 (AB 522); Stats 1996 ch 1000 § 1 (AB 2643); Stats 1998 ch 931 § 14 (SB 2139), effective September 28, 1998.

**NOTES:**

Amendments:

1985 Amendment:

Amended the first paragraph by **(1)** substituting "mailed" for "delivered" after "demand therefor"; **(2)** substituting "that" for "such" after "owing upon"; **(3)** adding ", for" before "damages of"; and **(4)** adding ", plus the costs of mailing the written demand for payment".

1986 Amendment:

**(1)** Designated the former first paragraph to be the first sentence of subd (a); **(2)** amended the first sentence of subd (a) by adding **(a)** "or because the maker instructed the drawee to stop payment,"; and **(b)** "informing the maker of the provisions of this section,"; **(3)** added the second sentence of subd (a); **(4)** added subds (b)-(d); **(5)** designated the former second paragraph to be the first sentence of subd (e); and **(6)** added the second sentence of subd (e). (As amended by Stats 1986, ch 708, compared to the section as it read prior to 1986. This section was also amended by an earlier chapter, ch 225. See *Gov C § 9605*.)

1987 Amendment:

Added subd (f).

1990 Amendment:

Added ", or attempted delivery if refused," after "delivery" in subd (d).

1994 Amendment:

**(1)** Substituted "that" for "which" after "sanctions" in the first sentence of subd (a); **(2)** substituted "the" for "such" after "Grounds for" in subd (b); and **(3)** added subd (g).

1995 Amendment:

**(1)** Substituted subd (a) for former subd (a) which read: "(a) Notwithstanding any penal sanctions that may apply, any person who makes, utters, draws, or delivers any check, or draft, or order upon any bank or depository, or person, or firm, or corporation, for the payment of money, which refuses to honor the same for lack of funds or credit to pay, or because the maker has no account with the drawee, or because the maker instructed the drawee to stop payment, and who fails to pay the same amount in cash to the payee within 30 days following a written demand therefor informing the maker of the provisions of this section, mailed to the maker by certified mail, shall be liable to the payee, in addition to the amount owing upon that check or draft or order, for damages of treble the amount so owing, but in no case less than

**EXHIBIT 3-Request for Judicial Notice**

one hundred dollars ($100), and in no case more than five hundred dollars ($500), plus the costs of mailing the written demand for payment. However, there shall be no cause of action under this section if a maker stops payment in order to resolve a good faith dispute with the payee. The payee is entitled to the damages only upon proving by clear and convincing evidence that there was no good faith dispute, as defined in subdivision (b)."; **(2)** added the comma after "stop payment" in subd (b); **(3)** substituted "($1,500)" for "($500)" in subd (c)(2); and **(4)** added subd (h).


**1996 Amendment:**

   **(1)** Substituted subds (a)(1) and (a)(2) for former subds (a)(1) and (a)(2) which read: "(1) Notwithstanding any penal sanctions that may apply, any person who passes a check on insufficient funds is liable to the payee for the amount of the check minus any partial payment made within 30 days of the demand made pursuant to paragraph (2), plus damages equal to treble that amount, which damages shall not be less than one hundred dollars ($100) nor more than one thousand five hundred dollars ($1,500), plus the costs of mailing the written demand for payment.

   "(2)(A) A person shall only be liable under paragraph (1) if (i) a written demand for payment was sent by certified mail and informed the person of the provisions of this section, the amount of the check, and the amount of the bad check fee charged to the payee by his or her financial institution, if any, and (ii) the person failed to pay either the amount of the check or the bad check fee, in cash within 30 days of the demand.

   "(B) A person shall not be liable under paragraph (1) if he or she stops payment in order to resolve a good faith dispute with the payee. The payee is entitled to the damages only upon proving by clear and convincing evidence that there was no good faith dispute, as defined in subdivision (b)."; **(2)** added subds (a)(3)-(a)(5); **(3)** redesignated former subd (a)(3) to be subd (a)(6); **(4)** substituted "drawer" for "maker" wherever it appears in subds (b)-(e) and (g); **(5)** amended the introductory clause of the NOTICE in subd (c) by **(a)** adding ", a service charge of an amount not to exceed twenty-five dollars ($25) for the first check passed on insufficient funds and an amount not to exceed thirty-five dollars ($35) for each subsequent check passed on insufficient funds, and the costs to mail this notice"; and **(b)** substituting "all" for "both" after "pay at least"; **(6)** substituted "one hundred dollars ($100)" for "$100" in subd (1) of the NOTICE in subd (c); **(7)** substituted "one thousand five hundred dollars ($1,500)" for "$1,500" in subd (2) of the NOTICE in subd (c); **(8)** deleted former subd (3) of the NOTICE in subd (c) which read: "(3) The cost of mailing this notice."; **(9)** substituted "service charge, treble damages, or mailing cost" for "damages and mailing cost mentioned above" at the end of the first sentence in the second paragraph of the NOTICE in subd (c); **(10)** substituted "drawer's last known" for "maker's" after "written demand to the" in subd (d); **(11)** added "by the original payee" after "small claims court" in the first sentence of subd (e); **(12)** substituted "court by a holder of the check or" for "or justice court by" in subd (f); and **(13)** added subds (i)-(k).


**1998 Amendment:**

   **(1)** Substituted "that" for "which" after "the written demand" in subd (d); **(2)** amended subd (f) by **(a)** deleting "in municipal court" after "may be brought" in the first sentence; and **(b)** adding the second sentence; and **(3)** substituted "the" for "a municipal" before "court" wherever it appears in the first and second sentences of subd (g).


Note-

   Stats 1995 ch 134 provides:

   SEC. 2. The Legislature finds and declares that the number of checks passed on insufficient funds, and the amounts of those checks, are increasing. Thus, the number of disputes taken to small claims court has increased. In enacting Section 1 of this act, the Legislature intends to deter any further expansion of the number of incidents of passing checks on insufficient funds, and thereby reduce the burden on small claims courts.


# EXHIBIT 3-Request for Judicial Notice

Law Revision Commission Comments:

1998-

Subdivisions (f) and (g) of Section 1719 are amended to accommodate unification of the municipal and superior courts in a county. *Cal. Const. art. VI, § 5(e).*

A limited civil case is within the original jurisdiction of the municipal court or of the superior court in a county in which there is no municipal court. *Cal. Const. art. VI, § 10* (superior court jurisdiction); *Code Civ. Proc. §§ 85, 85.1* (limited civil cases). See also *Code Civ. Proc. §§ 91, 904.2, 1085* (trial procedures and writ and appellate jurisdiction for limited civil cases).

**EXHIBIT 3-Request for Judicial Notice**

1  Mark E. Ellis - 127159
   June D. Coleman - 191890
2  MURPHY, PEARSON, BRADLEY & FEENEY
   701 University Avenue, Suite 150
3  Sacramento, CA  95825
   Telephone:    (916) 565-0300
4  Facsimile:    (916) 565-1636

5  Attorneys for Defendant
   PAUL R. STASSINOS
6

7

8                   UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

10  SUSANNE M. PALMER and SHARON           Case No.: C04 03026 RMW
    HAMMER, on behalf of herself and all others
11  similarly situated                     **DECLARATION OF TIMOTHY C.
                                           NUNNEMAKER RE AB 2643**
12          Plaintiff,
                                           Date:        October 22, 2004
13  v.                                     Time:        9:00 a.m.
                                           Courtroom:       6
14  PAUL R. STASSINOS, an Individual and DOES
    1 through 20,
15
            Defendants.
16

17

18

19

20

21

22

23

24

25

26

27

28

Declaration of Timothy C. Nunnemaker

**Declaration of Timothy C. Nunnemaker**

**Regarding the Legislative History of**

**Civil Code Section 1719, As Amended By**

**Chapter 1000 Statutes of 1996, Assembly Bill 2643 - Bordonaro & Kaloogian**

I, TIMOTHY C. NUNNEMAKER, declare that I am competent to state and would testify to the following if called as a witness:

1. I am Vice President of the private research firm known as Legislative Research Incorporated (LRI) (formerly Legislative Research Institute) which was established in October, 1983. Legislative Research Incorporated specializes in the research and analysis of historical legislative records surrounding the enactment of California State statutes, regulations and constitutional provisions for use in the construction of statutes pursuant to Code of Civil Procedure Section 1859 which states in pertinent part:

> "In the construction of a statute the intention of the Legislature ... is to be pursued, if possible ..."

2. Since 1989 I have participated at a substantive level in the research of enactments involving California statutes, administrative regulations or constitutional provisions for approximately 1,000 clients from a wide variety of firms and governmental entities.

3. I, or other members of my firm, have also submitted numerous declarations authenticating the nature and source of the documents researched by LRI.

4. I personally conducted the research on the legislative history surrounding Civil Code Section 1719, as amended by Chapter 1000, Statutes of 1996, Assembly Bill 2643 - Bordonaro & Kaloogian. The attached documents (as itemized in the accompanying attachment) are true and correct copies of records located from official State of California sources.

5. I declare under penalty of perjury that the foregoing is true and correct and that

1

1    I could and would so testify in a court of law if called to be a witness.

2    Executed this 9th day of June, 1997, at Sacramento, California.

3

4

5    TIMOTHY C. NUNNEMAKER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    2

1

2

3    Exhibit 84                                      Assembly Committee on Judiciary, **Committee Analysis on AB 2643** (April 10, 1996)

4    Exhibit 85                                      Assembly Floor, **Assembly Floor Analysis on AB 2643** (April 11, 1996)

5

6    Exhibit 86                                      Senate Judiciary Committee, **Senate Judiciary Committee Analysis on AB 2643** (August 7, 1996)

7

8    Exhibit 87                                      Senate Rules Committee, **Office of Senate Floor Analysis on AB 2643** (August 20, 1996)

9    Exhibit 88                                      Assembly Floor **Concurrence in Senate Amendments Report on AB 2643** (August 21, 1996),

10

11   Exhibit 89                                      **AB 2643** (February 21, 1996) Legislative Digest

12   Exhibit 90                                      **AB 2643** (April 18, 1996) Legislative Digest

13   Exhibit 91                                      **AB 2643** (June 17, 1996) Legislative Digest

14   Exhibit 92                                      **AB 2643** (August 5, 1996) Legislative Digest

15   Exhibit 93                                      **AB 2643** (August 20, 1996) Legislative Digest
                                                     **1996 Cal. Stat. Ch. 1000** (amending **Cal. Civ.**
16   Exhibit 94                                      **Code §1719**)

17

18   TAJ.10240687.doc

19

20

21

22

23

24

25

26

27

28

Date of Hearing: April 10, 1996

ASSEMBLY COMMITTEE ON JUDICIARY
Bill Morrow, Chair

AB 2643 (Bordonaro) - The analysis reflects Authors amendments to be offered
in Committee

**SUMMARY:** Authorizes the payee of a check that has been returned for
insufficient funds, to assess and collect a bad check fee of up to $35.
Specifically, this bill:

1) Provides that, in addition to currently specified damages, a person who
   passes a bad check is liable to the payee for one payee check charge of
   $35 for each bad check or such lesser amount as charged by the payee;

2) Clarifies that an assignee of the payee shall have the same rights as the
   payee to collect the damages owed to the payee; and,

3) States that a person who passes a bad check may only be liable for treble
   damages upon failure to comply with a written demand for payment. The
   demand must be sent by certified mail informing the person of this
   provision and giving 30 days to pay the outstanding amount owed on the
   check plus the payee bad check charge.

**FISCAL EFFECT:** None

**EXISTING LAW:**

1) Provides that a payee of a check for insufficient funds may assess and
   collect a "commercially reasonable" service charge. (Commercial Code
   Section 2710.);

2) Provides that unless the check is made good within 30 days of demand, a
   person who passes a check on insufficient funds is liable to the payee for
   the amount of the check minus any partial payment within 30 days of demand
   plus damages equal to treble that amount up to $1500, plus the cost of
   mailing written demand for payment. (Code of Civil Procedure 1719.); and,

3) Does not specifically authorize an assignee of a payee to whom a bad check
   was written to collect damages including a service charge.

**BACKGROUND:** While California Commercial Code Section 2710 authorizes the
assessment and collection of a "commercially reasonable" service charge and
several California statutes relate to bad checks, none specifically authorize
the imposition of a fee by the retailer or other payee who has a check
returned.

A recent federal case dealing with the issue of the imposition of bad check
charges by merchants under California law, Newman v. Checkrite California,
Inc. (E.D.Cal. No. CIV. S-93-1557 LKK, December 19, 1995) suggests that
because state law only provides for a commercially reasonable charge,
merchants must prove that their charges are indeed commercially reasonable.
Merchants are concerned that this case may require some merchants to prove in
each case that their charge is "commercially reasonable."

California courts have recognized the legality of fees in other contexts and

**EXHIBIT**

84

have not required that the merchant prove in each case that the charge be "commercially reasonable." Courts have held that requiring proof of the actual damage incurred by the company would be impractical, extremely difficult and expensive to determine. The charge should represent a reasonable endeavor to fix the probable loss resulting to the merchant and that the charge should bear a **reasonable** relation to such loss and be reasonable in amount.

ARGUMENTS IN SUPPORT: According to the sponsor of this measure, the California Retailers Association, the <u>Newman</u> case has caused concern among merchants about the validity of bad check fees charged by merchants.

This measure is intended to declare that the imposition of bad check fees by retailers and other payees is permissible under current law and to clarify that bad check fees of up to $35 are commercially reasonable. The figure of $35 was arrived at based upon a survey of California Retailers Association members and because the United States Supreme Court imposes a $35 charge for anyone bouncing a check payable to it.

American Stores Company which operates over 650 Lucky, Super Saver and Sav-On retail stores in California supports this measure. They point out that during 1995 they had over 300,000 checks returned unpaid by the bank. <u>The costs associated with attempting to make collection on these checks is enormous.</u> It is both reasonable and fair that those who write bad checks pay the cost of collection. To the extent that they were not paid by the writers of these checks, they would be passed on to all customers.

ARGUMENTS IN OPPOSITION: Consumers Union, the publishers of Consumer Reports magazine opposes this measure. <u>They state that a fee of $35 far exceeds</u> a <u>reasonable collection cost considering that the three major California banks charge a a small fee of $3 or $4 for deposited checks that are returned.</u>

The $35 fee would hurt people who do not get their paychecks on time for some reason beyond their control. Commonly this occurs with senior citizens' social security checks, with disability and welfare recipients, college students, and most recently federal employees.

COMMENTS: <u>The fact that banks typically charge a much smaller fee to merchants for the returned check does not account for the merchant's collection costs.</u>

The authors intent is not to make a person liable for the costs of mailing a demand letter that was never mailed. An amendment to clarify that the cost of mailing a written demand for payment is only recoverable if, in fact, such a written demand is sent is suggested.

REGISTERED SUPPORT / OPPOSITION:

| Support | Opposition |
|---|---|
| CA Retailers Assoc. (Sponsor) | Consumers Union |
| American Stores Company | Consumer Action |
| The Vons Companies | |
| Stater Brothers Markets | |

<u>Analysis prepared by</u>: Cliff Zall / ajud / 445-4560

ASSEMBLY THIRD READING
AB 2643 (Bordonaro)
As Amended April 11, 1996
Majority vote

JUDICIARY                    11-0

SUMMARY:  Authorizes the payee of a check that has been returned for
insufficient funds, to assess and collect a bad check fee of up to $35.
Specifically, this bill:

1)  Provides that, in addition to currently specified damages, a person who
    passes a bad check is liable to the payee for one payee check charge of
    $35 for each bad check or such lesser amount as charged by the payee.

2)  Clarifies that an assignee of the payee shall have the same rights as the
    payee to collect the damages owed to the payee.

3)  States that a person who passes a bad check may only be liable for treble
    damages upon failure to comply with a written demand for payment.  The
    demand must be sent by certified mail informing the person of this
    provision and giving 30 days to pay the outstanding amount owed on the
    check plus the payee bad check charge.

FISCAL EFFECT:  None

EXISTING LAW:

1)  Provides that a payee of a check for insufficient funds may assess and
    collect a "commercially reasonable" service charge.

2)  Provides that unless the check is made good within 30 days of demand, a
    person who passes a check on insufficient funds is liable to the payee for
    the amount of the check minus any partial payment within 30 days of demand
    plus damages equal to treble that amount up to $1500, plus the cost of
    mailing written demand for payment.

3)  Does not specifically authorize an assignee of a payee to whom a bad check
    was written to collect damages including a service charge.

BACKGROUND:  While California authorizes the assessment and collection of a
"commercially reasonable" service charge and several California statutes
relate to bad checks, none specifically authorize the imposition of a fee by
the retailer or other payee who has a check returned.

A recent federal case dealing with the issue of the imposition of bad check
charges by merchants under California law, Newman v. Checkrite California,
Inc. (E.D.Cal. No. CIV. S-93-1557 LKK, December 19, 1995) suggests that
because state law only provides for a commercially reasonable charge,
merchants must prove that their charges are indeed commercially reasonable.
Merchants are concerned that this case may require some merchants to prove in
each case that their charge is "commercially reasonable."



EXHIBIT

85

California courts have recognized the legality of fees in other contexts and have not required that the merchant prove in each case that the charge be "commercially reasonable." Courts have held that requiring proof of the actual damage incurred by the company would be impractical, extremely difficult and expensive to determine. The charge should represent a reasonable endeavor to fix the probable loss resulting to the merchant and that the charge should bear a reasonable relation to such loss and be reasonable in amount.

ARGUMENTS IN SUPPORT:  According to the sponsor of this measure, the California Retailers Association (CRA), the Newman case has caused concern among merchants about the validity of bad check fees charged by merchants.

This measure is intended to declare that the imposition of bad check fees by retailers and other payees is permissible under current law and to clarify that bad check fees of up to $35 are commercially reasonable.  The figure of $35 was arrived at based upon a survey of CRA members and because the United States Supreme Court imposes a $35 charge for anyone bouncing a check payable to it.

American Stores Company which operates over 650 Lucky, Super Saver and Sav-On retail stores in California supports this measure.  They point out that during 1995 they had over 300,000 checks returned unpaid by the bank.  The costs associated with attempting to make collection on these checks is enormous.  It is both reasonable and fair that those who write bad checks pay the cost of collection.  To the extent that they were not paid by the writers of these checks, they would be passed on to all customers.

ARGUMENTS IN OPPOSITION:  Consumers Union, the publishers of Consumer Reports magazine opposes this measure.  They state that a fee of $35 far exceeds a reasonable collection cost considering that the three major California banks charge a a small fee of $3 or $4 for deposited checks that are returned.

The $35 fee would hurt people who do not get their paychecks on time for some reason beyond their control.  Commonly this occurs with senior citizens' social security checks, with disability and welfare recipients, college students and most recently federal employees.

Analysis prepared by:  Cliff Zall / ajud / 445-4560

FN 023053

SENATE JUDICIARY COMMITTEE
Charles M. Calderon, Chairman
1995-96 Regular Session

A
B

2
6
4
3

AB 2643
Assemblymember Bordonaro
As amended on August 5, 1996
Hearing Date: August 7, 1996
Civil Code
JK:md

## RETURNED CHECKS: SERVICE CHARGE

### HISTORY

Source: California Retailers Association

Related Pending Legislation: AB 2459 (Mazzoni)

Prior Vote: Assembly Floor: 50 - 20
Assembly Judiciary: 12 - 0

[REFLECTS AUTHOR'S AMENDMENTS TO BE OFFERED IN COMMITTEE]

### KEY ISSUE

SHOULD THE LEGISLATURE MANDATE THAT A SERVICE CHARGE OF $25 DOLLARS FOR A RETURNED CHECK AND $35 DOLLARS FOR ANY SUBSEQUENT RETURNED CHECK BE DEEMED COMMERCIALLY REASONABLE?

A) IS THIS BILL NECESSARY?

### PURPOSE

The purpose of this bill is to clarify that a service charge of $25 dollars for a returned check and $35 dollars for any subsequent returned check is commercially reasonable.

Existing law provides that a payee of a check for insufficient funds may assess and collect a "commercially reasonable" service charge. (Commercial Code Section 2710)

EXHIBIT
86

This bill provides that any person who passes a check on insufficient funds shall be liable to the payee for the amount of the check and a service charge payable to the payee for an amount not to exceed $25 dollars for the first check passed on insufficient funds and an amount not to exceed $35 dollars for each subsequent check passed on insufficient funds.

A person shall not be liable for the service charge if he or she present the payee with written confirmation by his or her financial institution that the check was returned by the financial institution due to an error on the part of the financial institution or that his or her account had insufficient funds as a result of a delay in the regularly scheduled transfer of, or the posting of, a direct deposit of a social security or government benefit assistance payment.

Existing law provides that if a person receieves a written demand for payment, a person is only liable for the amount of the check, plus treble damages which shall not be less than $100 dollars nor more than $1,500 dollars, plus the costs of mailing the written demand for payment.

This bill provides that a person who had passed a check on insufficient funds shall have 30 days from the date the written demand was mailed to pay the amount of the check, the amount of the service charge, and the cost of mailing the written demand for payment. If the person fails to pay in full the amount of the check, the service charge, and the mailing costs within 30 days, this person is instead liable for the treble damages which shall not be less than $100 dollars nor more than $1,500 dollars. When a person becomes liable for treble damages, that person shall no longer be liable for any service charge for that check and any costs to mail the written demand; it is presumed to be included within the amount of the damages.

If the person has a good faith dispute with the payee, that person will not have to pay the service charge, treble damages and mailing cost.

This bill also clarifies that the assignee of the payee or a holder of the check have the same rights as the original payee to demand, recover, or enforce the service charge, damages, and costs specified in this section.

## COMMENT

Should the Legislature mandate that a service charge of $25 dollars for a returned check and $35 dollars for any subsequent returned check be deemed commercially reasonable?

   a) Is this bill necessary?

AB 2643 (Bordonaro)
Page 3

Commercial Code Section 2710 provides that a payee of a check for insufficient funds may assess and collect a "commercially reasonable" service charge. However, California statutory law has not defined what is a "commerically reasonable" service charge.

Recently, in the case of <u>Newman v. Checkrite California, Inc.</u>, three individuals filed suit against Checkrite challenging, among other things, the amount of the service charge for a returned check. <u>Newman v. Checkrite California, Inc</u> (E.D. Cal. No. CIV. S-93-1557 LKK, December 19, 1995) The plaintiffs wrote bad checks for retail purchases ranging in amount from $4 to $46. The checks were turned over to Checkrite, a debt collection agency who sent notices to the plaintiff demanding payment on the bounced checks and an additional service charge of $25 to $30.

The federal district court denied summary judgment on various grounds including defendant's failure to prove that the service charges were commercially reasonable.

This bill appears to be a reaction to this federal district unpublished opinion. California Retailers Association, the sponsor of this bill, is concerned that the case may require some merchants to prove in each case that their service charge is "commerically reasonable." This bill serves to provide certainty to the business community.

The bill originally had the fee set at $35 dollars, but due to strong opposition, the bill has been amended to be $25 dollars for the first bounced check and $35 dollars thereafter. In essence, this bill allows any merchant to charge a $25 dollar service fee without having to prove that the fee is reasonable. Any amount above $25 dollars is presumed unreasonable and if challenged, the merchant would have the burden of proving otherwise.

It appears that before the Checkrite case, all interested parties felt as if the current law was sufficient. If this bill is driven by one unpublished opinion, is this bill really necessary?

b) <u>Author's Amendments</u>

An amendment to clarify that the same defenses and remedies available to the drawer against the payee as to the payment of a check also apply to the service charge, damages, and costs specified therein.

An amendment to clarify that the service charge may increase up to $35 dollars only if the customer bounces a check more than once to the same payee.

AB 2643 (Bordonaro)
Page 4

c) <u>Suggested Amendment</u>

The bill provides that if a customer bounces one check he or she may be charged a service fee up to $25 dollars. If that same person bounces another check to the same payee, he or she may be charged a service fee up to $35 dollars.

Should there be a time period in which a customer may be purged of their first bad check? For example, if a year passes and the customer has not bounced a subsequent check, should the customer start out with a clean slate? Or is this a matter which should be left to the merchants?

Support:          Telecheck International, Inc.

Opposition:       None known

Prior Legislation:   None known

**************

**SENATE RULES COMMITTEE**                                    AB 2643
Office of Senate Floor Analyses
1020 N Street, Suite 524
(916) 445-6614  ·  Fax: (916) 327-4478

---

### THIRD READING

---

Bill No:    AB 2643
Author:     ¨ Bordonaro (R), et al
Amended:    8/20/96 in Senate
Vote:       21

---

SENATE JUDICIARY COMMITTEE:  8-0, 8/7/96
AYES: Lockyer, O'Connell, Petris, Sher, Solis, Wright, Leslie, Calderon
NOT VOTING: Haynes

ASSEMBLY FLOOR:  50-20, 5/6/96 - See last page for vote

---

**SUBJECT:**    Returned checks:  service charge

**SOURCE:**    California Retailers Association

---

**DIGEST:**    This bill clarifies that a service charge of $25 for a returned check and $35 for any subsequent returned check is commercially reasonable.

**ANALYSIS:**    Existing law provides that a payee of a check for insufficient funds may assess and collect a "commercially reasonable" service charge. (

This bill provides that any person who passes a check on insufficient funds shall be liable to the payee for the amount of the check and a service charge payable to the payee for an amount not to exceed $25 for the first check passed on insufficient funds and an amount not to exceed $35 for each subsequent check passed on insufficient funds.

A person shall not be liable for the service charge if he or she present the payee with written confirmation by his or her financial institution that the check was returned by the financial institution due to an error on the part

CONTINU

EXHIBIT

the financial institution or that his or her account had insufficient funds as a result of a delay in the regularly scheduled transfer of, or the posting of, a direct deposit of a social security or government benefit assistance payment.

Existing law provides that if a person receives a written demand for payment, a person is only liable for the amount of the check, plus treble damages which shall not be less than $100 nor more than $1,500, plus the costs of mailing the written demand for payment.

This bill provides that a person who had passed a check on insufficient funds shall have 30 days from the date the written demand was mailed to pay the amount of the check, the amount of the service charge, and the cost of mailing the written demand for payment. If the person fails to pay in full the amount of the check, the service charge, and the mailing costs within 30 days, this person is instead liable for the treble damages which shall not be less than $100 nor more than $1,500. When a person becomes liable for treble damages, that person shall no longer be liable for any service charge for that check and any costs to mail the written demand; it is presumed to be included within the amount of the damages.

If the person has a good faith dispute with the payee, that person will not have to pay the service charge, treble damages and mailing cost.

This bill also clarifies that the assignee of the payee or a holder of the check have the same rights as the original payee to demand, recover, or enforce the service charge, damages, and costs specified in this section.

**FISCAL EFFECT**: Appropriation: No   Fiscal Com.: No   Local: No

**SUPPORT**: (Verified 8/20/96)

California Retailers Association (source)
California Grocers Association
Telecheck International, Inc.

**ARGUMENTS IN SUPPORT**:   The California Grocers Association states, "Insufficient funds checks cost the grocery industry in California millions of dollars every year. This bill will allow grocers to recoup some of their costs associated with processing bad checks, including the cost of notifying the check writer and bank fees."

CONTINUED

ASSEMBLY FLOOR:

AYES: Ackerman, Aguiar, Alby, Alpert, Baldwin, Battin, Baugh, Boland, Bordonaro, Bowen, Bowler, Brewer, Brown, Brulte, Cannella, Conroy, Cortese, Cunneen, Davis, Firestone, Frusetta, Goldsmith, Granlund, Harvey, Hauser, Hawkins, Hoge, House, Kaloogian, Knight, Knowles, Kuykendall, Margett, Mazzoni, Miller, Morrissey, Morrow, K. Murray, W. Murray, Olberg, Poochigian, Rainey, Richter, Rogan, Setencich, Takasugi, Thompson, Weggeland, Woods, Pringle

NOES: Archie-Hudson, Baca, Bates, Burton, Bustamante, Campbell, Ducheny, Escutia, Friedman, Hannigan, Katz, Kuehl, Lee, Machado, Martinez, Migden, Napolitano, Speier, Sweeney, Villaraigosa

NOT VOTING: Caldera, Figueroa, Gallegos, Isenberg, Knox, McPherson, Tucker, Vasconcellos

RJG:lm 8/20/96  Senate Floor Analyses
                SUPPORT/OPPOSITION:  SEE ABOVE
                    **** END ****

CONCURRENCE IN SENATE AMENDMENTS
AB 2643 (Bordonaro)
As Amended August 20, 1996
Majority vote

ASSEMBLY: 50-20    (May 6, 1996)    SENATE:    25-2    (August 21, 1996)

Original Committee Reference:  JUD.

SUMMARY: Authorizes the payee of a check that has been returned for insufficent funds, to assess and collect a bad check fee of up to $25 for the first check and a bad check fee of up to $35 for each subsequent bad check to that same payee.

The Senate amendments:

1)  Decrease the maximum bad check fee that may be charged for the first bad check from $35 to $25.  The amendments also add provisions providing that a person shall not be liable for a bad check fee if he or she presents the payee with wrtitten confirmation that the check was returned due to an error on the part of the financial institution and that a person shall not be liable if the check was returned due to delay in the deposit of a goverment benefit assistance payment.

2)  Make technical, clarifying changes.

FISCAL EFFECT: None

EXISTING LAW:

1)  Provides that a payee of a check for insufficient funds may assess and collect a "commercially reasonable" service charge.

2)  Provides that unless the check is made good within 30 days of demand, a person who passes a check on insufficient funds is liable to the payee for the amount of the check minus any partial payment within 30 days of demand plus damages equal to treble that amount up to $1500, plus the cost of mailing written demand for payment.

3)  Does not specifically authorize an assignee of a payee to whom a bad check was written to collect damages including a service charge.

AS PASSED BY THE ASSEMBLY, this bill authorized the payee of a check that has been returned for insufficient funds, to assess and collect a bad check fee of up to $35 for each check.

BACKGROUND:  While California authorizes the assessment and collection of a "commercially reasonable" service charge and several California statutes relate to bad checks, none specifically authorize the imposition of a fee by the retailer or other payee who has a check returned.

A recent federal case dealing with the issue of the imposition of bad check charges by merchants under California law, Newman v. Checkrite California, Inc. (E.D.Cal. No. CIV. S-93-1557 LKK, December 19, 1995) suggests that because state law only provides for a commercially reasonable charge, merchants must prove that their charges are indeed commercially reasonable.  Merchants are concerned that this case may require some merchants to prove in each case that

EXHIBIT

their charge is "commercially reasonable."

California courts have recognized the legality of fees in other contexts and have not required that the merchant prove in each case that the charge be "commercially reasonable." Courts have held that requiring proof of the actual damage incurred by the company would be impractical, extremely difficult and expensive to determine. The charge should represent a reasonable endeavor to fix the probable loss resulting to the merchant and that the charge should bear a reasonable relation to such loss and be reasonable in amount.

ARGUMENTS IN SUPPORT: According to the sponsor of this measure, the California Retailers Association (CRA), the Newman case has caused concern among merchants about the validity of bad check fees charged by merchants.

This measure is intended to declare that the imposition of bad check fees by retailers and other payees is permissible under current law and to clarify that bad check fees of up to $35 are commercially reasonable. The figure of $35 was arrived at based upon a survey of CRA members and because the United States Supreme Court imposes a $35 charge for anyone bouncing a check payable to it.

American Stores Company which operates over 650 Lucky, Super Saver and Sav-On retail stores in California supports this measure. They point out that during 1995 they had over 300,000 checks returned unpaid by the bank. The costs associated with attempting to make collection on these checks is enormous. It is both reasonable and fair that those who write bad checks pay the cost of collection. To the extent that they were not paid by the writers of these checks, they would be passed on to all customers.

ARGUMENTS IN OPPOSITION: None

Analysis prepared by: Cliff Zall / ajud / (916) 445-4560

FN 028506

CALIFORNIA LEGISLATURE—1995-96 REGULAR SESSION

ASSEMBLY BILL                    No. 2643

Introduced by Assembly Members Bordonaro and
Kaloogian

February 21, 1996

An act to amend Section 1719 of the Civil Code, relating to
commercial paper.

LEGISLATIVE COUNSEL'S DIGEST

AB 2643, as introduced, Bordonaro. Commercial paper:
insufficient funds.

Existing law creates a cause of action for the amount of a
check passed on insufficient funds minus any partial payment
made within 30 days of a specified written demand for
payment, damages equal to treble that amount, as specified,
plus the costs of mailing the written demand for payment only
if the person who passed the check failed to pay either the
amount of the check or the amount of the bad check fee
charged to the payee by his or her financial institution within
a prescribed period, except as specified.

This bill would revise and recast these provisions to create
a cause of action for the amount of the check and a $30 service
charge payable to the payee. The bill would provide that the
person shall have 12 days from the date a prescribed written
demand was mailed to pay either the amount of the check or
the bad check fee charged to the payee by the financial
institution of the payee. If the person fails to pay either one,
this person shall, in addition, be liable for specified amounts.

99

EXHIBIT

tabbies

89

AB 2643                    — 2 —

including the costs to prepare and mail the written demand.

The bill would make conforming changes.

The bill would, among other things, provide that the cause of action may be brought in small claims court, as specified, by an assignee of the payee and that the rights of, and duties imposed upon, a payee shall transfer to any assignee, subject to the same defenses that the maker of the check may assert.

The bill also would make a statement of legislative intent.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1  SECTION 1. Section 1719 of the Civil Code is
2  amended to read:
3  1719. (a) (1) Notwithstanding any penal sanctions
4  that may apply, any person who passes a check on
5  insufficient funds ~~is~~ *shall be* liable to the payee for the
6  amount of the check ~~minus any partial payment made~~
7  ~~within 30 days of the demand~~ pursuant to
8  ~~paragraph (2),~~ plus damages equal to treble that amount,
9  ~~which~~ damages shall not be less than one hundred dollars
10  ($100) nor more than one thousand five hundred dollars
11  ($1,500), ~~plus the costs of mailing the written demand for~~
12  ~~payment.~~
13  ~~(2) (A)~~ A person shall only be liable under ~~paragraph~~
14  ~~(1)~~ if ~~(i)~~ a written demand for payment was sent by
15  certified mail and informed the person of the provisions
16  of this section, the amount of the check, and the amount
17  of the bad check fee charged to the payee by his or her
18  financial institution, if any, and ~~(ii)~~ the person failed to
19  pay either the amount of the check or the bad check fee,
20  ~~in each~~ within 30 days of the demand *and a service charge*
21  *of thirty dollars ($30) payable to the payee. If a written*
22  *demand for payment is mailed by certified mail to the*
23  *person who had passed a check on insufficient funds and*
24  *the written demand informs this person of (A) the*
25  *provisions of this section, (B) the amount of the check,*
26  *(C) the thirty dollars ($30) service charge, and (D) the*
27  *amount of any bad check fee charged to the payee by his*

AB 2643                    — 3 —

1  *or her financial institution, the person who had passed a*
2  *check on insufficient funds shall have 12 days from the*
3  *date the written demand was mailed to pay either the*
4  *amount of the check or the bad check fee in cash. If this*
5  *person fails to pay either the amount of the check or the*
6  *bad check fee in cash within this period, this person shall,*
7  *in addition to the amount of the check minus any partial*
8  *payment made within 12 days after the demand was*
9  *mailed and the thirty dollar ($30) service charge, be*
10  *liable to the payee for damages equal to treble the*
11  *amount of the check, which shall not be less than one*
12  *hundred dollars ($100) nor more than one thousand five*
13  *hundred dollars ($1,500), the amount of any bad check*
14  *fee charged to the payee by his or her financial institution,*
15  *if any, and the costs to prepare and mail this written*
16  *demand for payment.*
17  ~~(B) 1~~
18  (2) Notwithstanding paragraph (1), a person shall not
19  be liable under ~~paragraph (1)~~ *that paragraph* if he or she
20  stops payment in order to resolve a good faith dispute
21  with the payee. The payee is entitled to the damages only
22  upon proving by clear and convincing evidence that
23  there was no good faith dispute, as defined in subdivision
24  (b).
25  (3) As used in this subdivision, to "pass a check on
26  insufficient funds" means to make, utter, draw, or deliver
27  any check, draft, or order for the payment of money upon
28  any bank, depository, person, firm, or corporation that
29  refuses to honor the check, draft, or order for any of the
30  following reasons:
31  (A) Lack of funds or credit in the account to pay the
32  check.
33  (B) The person who wrote the check does not have an
34  account with the drawee.
35  (C) The person who wrote the check instructed the
36  drawee to stop payment on the check.
37  (b) For purposes of this section, in the case of a stop
38  payment, the existence of a "good faith dispute" shall be
39  determined by the trier of fact. A "good faith dispute" is
40  one in which the court finds that the maker had a

AB 2643

— 4 —

1  reasonable belief of his or her legal entitlement to
2  withhold payment. Grounds for the entitlement include,
3  but are not limited to, the following: services were not
4  rendered, goods were not delivered, goods or services
5  purchased are faulty, not as promised, or otherwise
6  unsatisfactory, or there was an overcharge.
7  (c) In the case of a stop payment, the notice to the
8  maker required by this section shall be in substantially the
9  following form:
10
11                              NOTICE
12
13  To: _____
14        (name of maker)
15
16  _____ is the payee of a check you wrote
17        (name of payee)
18
19  for $_____. The check was not paid because
20        (amount)
21  you stopped payment, and the payee demands payment. You may
22  have a good faith dispute as to whether you owe the full amount.
23  If you do not have a good faith dispute with the payee and fail to
24  pay the payee *either the* full amount of the check *in cash or the*
25  *amount of the bad check fee* within ~~30~~ *12* days after this notice was
26  mailed, you could be sued and held responsible to pay at least all of
27  the following:
28  (1) The amount of the check.
29  (2) A *$30 service charge.*
30  (3) *The amount of any bad check fee charged to the payee by*
31  *his or her financial institution.*
32  *(4)* Damages of at least $100 or, if higher, three times the
33  amount of the check up to $1,500.
34  ~~~~
35  *(5)* The cost of ~~mailing~~ *to prepare and mail* this notice.
36  If the court determines that you do have a good faith dispute with
37  the payee, you will not have to pay the damages and mailing cost
38  mentioned above. If you stopped payment because you have a good
39  faith dispute with the payee, you should try to work out your dispute
40  with the payee. You can contact the payee at:

        (name of payee)

AB 2643

— 5 —

1
2                                  street address
3
4                                  (telephone number)
5  You may wish to contact a lawyer to discuss your legal rights and
6  responsibilities.
7
8                              (name of sender of notice)
9
10  (d) In the case of a stop payment, a court may not
11  award damages or costs under this section unless the
12  court receives into evidence a copy of the written
13  demand which, in that case, shall have been sent to the
14  maker and a signed certified mail receipt showing
15  delivery, or attempted delivery if refused, of the written
16  demand to the maker's address.
17  (e) A cause of action under this section may be
18  brought in small claims court, if it does not exceed the
19  jurisdiction of that court, or in any other appropriate
20  court. The payee shall, in order to recover damages
21  because the maker instructed the drawee to stop
22  payment, show to the satisfaction of the trier of fact that
23  there was a reasonable effort on the part of the payee to
24  reconcile and resolve the dispute prior to pursuing the
25  dispute through the courts.
26  (f) A cause of action under this section may be brought
27  *in small claims court, if it does not exceed the jurisdiction*
28  *of that court, or in* municipal ~~or justice court~~ by an
29  assignee of the payee. However, if the assignee is acting
30  on behalf of the payee, for a flat fee or a percentage fee,
31  the assignee may not charge the payee a greater flat fee
32  or percentage fee for that portion of the amount collected
33  that represents treble damages than is charged the payee
34  for collecting the face amount of the check, draft, or
35  order. ~~This subdivision shall not apply to an,~~ *unless the*
36  *action is brought in small claims court.*
37  (g) Notwithstanding subdivision (a), if the payee is a
38  municipal court, the written demand for payment
39  described in subdivision (a) may be mailed to the maker
40  by a municipal court clerk. Notwithstanding subdivision

AB 2643 — 6 —

1   (d), in the case of a stop payment where the demand is
2   mailed by a municipal court clerk, a court may not award
3   damages or costs pursuant to subdivision (d), unless the
4   court receives into evidence a copy of the written
5   demand, and a certificate of mailing by a municipal court
6   clerk in the form provided for in subdivision (4) of
7   Section 1013a of the Code of Civil Procedure for service
8   in civil actions. For purposes of this subdivision, in courts
9   where a single court clerk serves more than one court, the
10   clerk shall be deemed the court clerk of each court.
11   (h) The requirements of this section in regard to
12   remedies are mandatory upon a court.
13   *(i) The rights of, and duties imposed upon, a payee*
14   *pursuant to this section shall transfer to any assignee,*
15   *subject to the same defenses that the maker of the check*
16   *may assert against the original payee.*
17   SEC. 2.  It is the intent of the Legislature that any
18   person who charged any service charge between January
19   1, 1992, and January 1, 1997, for a check passed on
20   insufficient funds should not be held civilly liable
21   regarding that charge.

99

AMENDED IN ASSEMBLY APRIL 18, 1996

CALIFORNIA LEGISLATURE—1995-96 REGULAR SESSION

## ASSEMBLY BILL        No. 2643

Introduced by Assembly Members Bordonaro and Kaloogian

February 21, 1996

An act to amend Section 1719 of the Civil Code, relating to commercial paper.

### LEGISLATIVE COUNSEL'S DIGEST

AB 2643, as amended, Bordonaro. Commercial paper: insufficient funds.

Existing law creates a cause of action for the amount of a check passed on insufficient funds minus any partial payment made within 30 days of a specified written demand for payment, damages equal to treble that amount, as specified, plus the costs of mailing the written demand for payment only if the person who passed the check failed to pay either the amount of the check or the amount of the bad check fee charged to the payee by his or her financial institution within a prescribed period, except as specified.

This bill would revise and recast these provisions to create a cause of action for the amount of the check and a ~~$30~~ service charge ~~not to exceed $35,~~ payable to the payee. The bill would provide that the person shall have ~~10~~ *30* days from the date a prescribed written demand was mailed to pay ~~either~~ *the* amount of the check, *the service charge,* or the bad check fee charged to the payee by the financial institution of the payee.

98



EXHIBIT

90

tabbies

If the person fails to pay either *any* one, this person shall, in addition, be liable for specified amounts, including the costs to prepare and mail the written demand. The bill would make conforming changes.

The bill would, among other things, provide that the ~~cause of action may be brought in small claims court, as specified, by~~ an assignee of the payee and that the ~~rights of and duties imposed upon, a payee shall transfer to any assignee, subject to the same defenses that the maker of the check may assert~~ for purposes of the above provisions, the term "payee" includes an assignee or holder in due course.

~~The bill also would make a statement of legislative intent.~~

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1 SECTION 1. Section 1719 of the Civil Code is
2 amended to read:
3 1719. (a) (1) Notwithstanding any penal sanctions
4 that may apply, any person who passes a check on
5 insufficient funds shall be liable to the payee for the
6 amount of the check and a service charge ~~of thirty dollars~~
7 ~~($30) payable to the payee.~~ If a *written payable to the*
8 *payee for an amount determined by the payee not to*
9 *exceed thirty-five dollars ($35). If a written* demand for
10 payment is mailed by certified mail to the person who had
11 passed a check on insufficient funds and the written
12 demand informs this person of (A) the provisions of this
13 section, (B) the amount of the check, ~~(C) the thirty~~
14 ~~dollars ($30) service charge, and (D) the~~ *(C) the amount*
15 *of the service charge payable to the payee, and (D) the*
16 *amount of any bad check fee charged to the payee by his*
17 *or her financial institution,* the person who had passed a
18 check on insufficient funds shall have ~~12~~ *30* days from the
19 date the written demand was mailed to pay ~~either~~ the
20 amount of the check, *the amount of the service charge*
21 *payable to the payee,* or the bad check fee in cash. If this
22 person fails to pay ~~either~~ the amount of the check, *the*
23 *amount of the service charge payable to the payee, or the*

1 bad check fee in cash within this period, this person shall,
2 in addition to the amount of the check minus any partial
3 payment made within ~~12~~ *30* days after the demand was
4 ~~mailed and the thirty dollar ($30) service charge, be~~
5 *mailed and the amount of the service charge payable to*
6 *the payee,* be liable to the payee for damages equal to
7 treble the amount of the check, which shall not be less
8 than one hundred dollars ($100) nor more than one
9 thousand five hundred dollars ($1,500), the amount of
10 any bad check fee charged to the payee by his or her
11 financial institution, if any, and the costs to ~~prepare and~~
12 mail this written demand for payment.
13 (2) Notwithstanding paragraph (1), a person shall not
14 be liable under that paragraph if he or she stops payment
15 in order to resolve a good faith dispute with the payee.
16 The payee is entitled to the damages only upon proving
17 by clear and convincing evidence that there was no good
18 faith dispute, as defined in subdivision (b).
19 (3) As used in this subdivision, to "pass a check on
20 insufficient funds" means to make, utter, draw, or deliver
21 any check, draft, or order for the payment of money upon
22 any bank, depository, person, firm, or corporation that
23 refuses to honor the check, draft, or order for any of the
24 following reasons:
25 (A) Lack of funds or credit in the account to pay the
26 check.
27 (B) The person who wrote the check does not have an
28 account with the drawee.
29 (C) The person who wrote the check instructed the
30 drawee to stop payment on the check.
31 *(4) As used in this subdivision, "payee" includes an*
32 *assignee or holder in due course.*
33 (b) For purposes of this section, in the case of a stop
34 payment, the existence of a "good faith dispute" shall be
35 determined by the trier of fact. A "good faith dispute" is
36 one in which the court finds that the maker had a
37 reasonable belief of his or her legal entitlement to
38 withhold payment. Grounds for the entitlement include,
39 but are not limited to, the following: services were not
40 rendered, goods were not delivered, goods or services

AB 2643

## — 4 —

1 purchased are faulty, not as promised, or otherwise
2 unsatisfactory, or there was an overcharge.
3 (c) In the case of a stop payment, the notice to the
4 maker required by this section shall be in substantially the
5 following form:
6
7
8                NOTICE
9
10 To: _____
11      (name of maker)
12 _____ is the payee of a check you wrote
13  (name of payee)
14                   The check was not paid because
15 for $_____
16   (amount)
17 you stopped payment, and the payee demands payment. You may
18 have a good faith dispute as to whether you owe the full amount.
19 If you do not have a good faith dispute with the payee and fail to
20 pay the payee ~~either~~ the full amount of the check in cash, *a service*
21 *charge* ~~either~~ _____, *which shall not exceed thirty-five*
22 *dollars ($35), or the amount of* ~~the bad check fee within~~ it *any bad*
23 *check fee charged to the payee by his or her financial institution*
24 *within 30 days* after this notice was mailed, you could be sued and
25 held responsible to pay at least all of the following:
26 (1) The amount of the check.
27 ~~(2) A $25 service charge.~~
28 (2) *A service charge of* _____, *which shall not exceed*
29 *thirty-five ($35), payable to the payee.*
30 (3) The amount of any bad check fee charged to the payee by
31 his or her financial institution.
32 (4) Damages of at least $100 or, if higher, three times the
33 amount of the check up to $1,500.
34 (5) The cost ~~to prepare and mail~~ *of mailing* this notice.
35 If the court determines that you do have a good faith dispute with
36 the payee, you will not have to pay the damages and mailing cost
37 mentioned above. If you stopped payment because you have a good
38 faith dispute with the payee, you should try to work out your dispute
39 with the payee. You can contact the payee at:
40 _____
  (name of payee)

---

AB 2643

## — 5 —

AB 2643

1 _____
  (street address)
2
3 _____
  (telephone number)
4 You may wish to contact a lawyer to discuss your legal rights and
5 responsibilities.
6
7 _____
  (name of sender of notice)
8
9 (d) In the case of a stop payment, a court may not
10 award damages or costs under this section unless the
11 court receives into evidence a copy of the written
12 demand which, in that case, shall have been sent to the
13 maker and a signed certified mail receipt showing
14 delivery, or attempted delivery if refused, of the written
15 demand to the maker's address.
16 (e) A cause of action under this section may be
17 brought in small claims court, if it does not exceed the
18 jurisdiction of that court, or in any other appropriate
19 court. The payee shall, in order to recover damages
20 because the maker instructed the drawee to stop
21 payment, show to the satisfaction of the trier of fact that
22 there was a reasonable effort on the part of the payee to
23 reconcile and resolve the dispute prior to pursuing the
24 dispute through the courts.
25 (f) A cause of action under this section may be brought
26 ~~in small claims court, if it does not exceed the jurisdiction~~
27 ~~of that court, or in municipal by an~~ in municipal court by
28 an assignee of the payee. However, if the assignee is
29 acting on behalf of the payee, for a flat fee or a percentage
30 fee, the assignee may not charge the payee a greater flat
31 fee or percentage fee for that portion of the amount
32 collected that represents treble damages than is charged
33 the payee for collecting the face amount of the check,
34 draft, or ~~order, unless the action is~~ order. *This subdivision*
35 *shall not apply to an action* brought in small claims court.
36 (g) Notwithstanding subdivision (a), if the payee is a
37 municipal court, the written demand for payment
38 described in subdivision (a) may be mailed to the maker
39 by a municipal court clerk. Notwithstanding subdivision
40 (d). in the case of a stop payment where the demand is

98

AB 2643                          — 6 —

1  mailed by a municipal court clerk, a court may not award
2  damages or costs pursuant to subdivision (d), unless the
3  court receives into evidence a copy of the written
4  demand, and a certificate of mailing by a municipal court
5  clerk in the form provided for in subdivision (4) of
6  Section 1013a of the Code of Civil Procedure for service
7  in civil actions. For purposes of this subdivision, in courts
8  where a single court clerk serves more than one court, the
9  clerk shall be deemed the court clerk of each court.
10    (h) The requirements of this section in regard to
11  remedies are mandatory upon a court.
12    ~~(t) The rights of, and duties imposed upon, a payee~~
13  ~~pursuant to this section shall transfer to any assignee,~~
14  ~~subject to the same defenses that the maker of the check~~
15  ~~may assert against the original payee.~~
16    ~~SEC. 2.  It is the intent of the Legislature that any~~
17  ~~person who charged any service charge between January~~
18  ~~1, 1992, and January 1, 1997, for a check passed on~~
19  ~~insufficient funds should not be held civilly liable~~
20  ~~regarding that charge.~~

98

AMENDED IN SENATE JUNE 17, 1996

AMENDED IN ASSEMBLY APRIL 18, 1996

CALIFORNIA LEGISLATURE—1995–96 REGULAR SESSION

# ASSEMBLY BILL No. 2643

**Introduced by Assembly Members Bordonaro and Kaloogian**

February 21, 1996

An act to amend Section 1719 of the Civil Code, relating to commercial paper.

LEGISLATIVE COUNSEL'S DIGEST

AB 2643, as amended, Bordonaro. Commercial paper: insufficient funds.

Existing law creates a cause of action for the amount of a check passed on insufficient funds minus any partial payment made within 30 days of a specified written demand for payment, damages equal to treble that amount, as specified, plus the costs of mailing the written demand for payment only if the person who passed the check failed to pay either the amount of the check or the amount of the bad check fee charged to the payee by his or her financial institution within a prescribed period, except as specified.

This bill would revise and recast these provisions to create a cause of action for the amount of the check and a *specified* service charge ~~not to exceed $35~~, payable to the payee. The bill would provide that the person shall have 30 days from the date a prescribed written demand was mailed to pay the

EXHIBIT 91

AB 2643

— 2 —

amount of the check; and the service charge; or the bad check fee charged to the payee by the financial institution of the payee. If the person fails to pay any one *this amount in full*, this person shall, *in addition, instead* be liable for 'specified amounts, including the costs to mail the written demand *treble damages*. The bill would make conforming changes.

The bill would, among other things, provide that for purposes of the above provisions, the term "payee" includes an assignee or holder in due course.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

```
 1  SECTION 1. Section 1719 of the Civil Code is
 2  amended to read:
 3  1719. (a) (1) Notwithstanding any penal sanctions
 4  that may apply, any person who passes a check on
 5  insufficient funds shall be liable to the payee for the
 6  amount of the check and a service charge payable to the
 7  payee for an amount determined by the payee not to
 8  exceed thirty-five dollars ($35). If a written demand for
 9  payee for twenty-five dollars ($25) for the first check
10  passed on insufficient funds and thirty-five dollars ($35)
11  for each subsequent check passed on insufficient funds. If
12  a written demand for payment is mailed by certified mail
13  to the person who had passed a check on insufficient
14  funds and the written demand informs this person of (A)
15  the provisions of this section, (B) the amount of the
16  check, and (C) the amount of the service charge payable
17  to the payee, and (D) the amount of any bad check fee
18  charged to the payee by his or her financial institution,
19  the person who had passed a, the person who had passed
20  a check on insufficient funds shall have 30 days from the
21  date the written demand was mailed to pay the amount
22  of the check, the amount of the service charge payable to
23  the payee, or the bad check fee in cash. If this person fails
24  to pay the amount of the check; or the bad check fee in cash
25  charge payable to the payee; or the bad check fee in cash
26  within this period, this person shall, in addition to the
```

— 3 —

AB 2643

```
 1  amount of the check, minus any partial payment made
 2  within 30 days after the demand was mailed and the
 3  amount of the service charge payable to the payee, be
 4  liable to the payee for damages equal to treble the
 5  amount of the check, which shall not be less than one
 6  hundred dollars ($100) nor more than one thousand five
 7  hundred dollars ($1,500), the amount of any bad check
 8  fee charged to the payee by his or her financial institution,
 9  if any, and the costs to mail this written demand for
10  payment payable to the payee, and the costs to mail the
11  written demand for payment. If this person fails to pay in
12  full the amount of the check, the service charge payable
13  to the payee, and the costs to mail the written demand
14  within this period, this person shall then be liable instead
15  for the amount of the check, minus any partial payments
16  made toward the amount of the check or the service
17  charge within 30 days of the written demand, and
18  damages equal to treble the amount of the check, which
19  shall not be less than one hundred dollars ($100) nor more
20  than one thousand five hundred dollars ($1,500).
21  (2) Notwithstanding paragraph (1), a person shall not
22  be liable under that paragraph for the service charge or
23  treble damages if he or she stops payment in order to
24  resolve a good faith dispute with the payee. The payee is
25  entitled to the damages service charge or treble damages
26  only upon proving by clear and convincing evidence that
27  there was no good faith dispute, as defined in subdivision
28  (b).
29  (3) Notwithstanding paragraph (1), a person shall not
30  be liable under that paragraph if, at any time, he or she
31  presents the payee with written confirmation by his or
32  her financial institution that the check was returned to
33  the payee by the financial institution due to an error on
34  the part of the financial institution.
35  (4) As used in this subdivision, to "pass a check on
36  insufficient funds" means to make, utter, draw, or deliver
37  any check, draft, or order for the payment of money upon
38  any bank, depository, person, firm, or corporation that
39  refuses to honor the check, draft, or order for any of the
40  following reasons:
```

97

AB 2643

— 4 —

1 (A) Lack of funds or credit in the account to pay the
2 check.
3 (B) The person who wrote the check does not have an
4 account with the drawee.
5 (C) The person who wrote the check instructed the
6 drawee to stop payment on the check.
7 (4) ~~As used in this subdivision, "payee" includes an~~
8 ~~assignee or holder in due course.~~
9 (b) For purposes of this section, in the case of a stop
10 payment, the existence of a "good faith dispute" shall be
11 determined by the trier of fact. A "good faith dispute" is
12 one in which the court finds that the ~~maker~~ *drawer* had
13 a reasonable belief of his or her legal entitlement to
14 withhold payment. Grounds for the entitlement include,
15 but are not limited to, the following: services were not
16 rendered, goods were not delivered, goods or services
17 purchased are faulty, not as promised, or otherwise
18 unsatisfactory, or there was an overcharge.
19 (c) In the case of a stop payment, the notice to the
20 ~~maker~~ *drawer* required by this section shall be in
21 substantially the following form:

NOTICE

To: _____
   (name of ~~maker~~ *drawer*)

_____ is the payee of a check you wrote
(name of payee)

for $ _____ The check was not paid because
   (amount)

— 5 —

AB 2643

1 you stopped payment, and the payee demands payment. You may
2 have a good faith dispute as to whether you owe the full amount.
3 If you do not have a good faith dispute with the payee and fail to
4 pay the payee the full amount of the check in cash, a service ~~charge~~
5 ~~in the amount of $____, which shall not exceed thirty-five dollars~~
6 ~~($35), or the amount of any bad check fee charged to the payee by~~
7 ~~his or her financial institution~~ *charge of twenty-five dollars ($25)*
8 *for the first check passed on insufficient funds and thirty-five*
9 *dollars ($35) for each subsequent check passed on insufficient*
10 *funds* within 30 days after this notice was mailed, you could be sued
11 and held responsible to pay at least all of the following:
12 (1) The amount of the check.
13 ~~(2)~~ *A service charge of $____, which shall not exceed*
14 *thirty-five dollars ($35), payable to the payee.*
15 ~~(2) The amount of any bad check fee charged to the payee by~~
16 ~~his or her financial institution.~~
17 ~~(4)~~
18 *(2)* Damages of at least one hundred dollars ($100) or, if high-
19 er, three times the amount of the check up to one thousand five
20 hundred dollars ($1,500).
21 ~~(5) The cost of mailing this notice.~~
22 If the court determines that you do have a good faith dispute with
23 the payee, you will not have to pay the ~~damages~~ *service charge,*
24 *treble damages,* and mailing cost mentioned above. If you stopped
25 payment because you have a good faith dispute with the payee, you
26 should try to work out your dispute with the payee. You can contact
27 the payee at:

28
29 _____
   (name of payee)
30
31 _____
   (street address)
32
33 _____
   (telephone number)
34 You may wish to contact a lawyer to discuss your legal rights and
35 responsibilities.
36
37 _____
   (name of sender of notice)
38
39 (d) In the case of a stop payment, a court may not
40 award damages or costs under this section unless the

AB 2643 — 6 —

1 court receives into evidence a copy of the written
2 demand which, in that case, shall have been sent to the
3 ~~maker~~ drawer and a signed certified mail receipt showing
4 delivery, or attempted delivery if refused, of the written
5 demand to the ~~maker's~~ drawer's address.
6 (e) A cause of action under this section may be
7 brought in small claims court, if it does not exceed the
8 jurisdiction of that court, or in any other appropriate
9 court. The payee shall, in order to recover damages
10 because the ~~maker~~ drawer instructed the drawee to stop
11 payment, show to the satisfaction of the trier of fact that
12 there was a reasonable effort on the part of the payee to
13 reconcile and resolve the dispute prior to pursuing the
14 dispute through the courts.
15 (f) A cause of action under this section may be brought
16 in municipal court by an assignee of the payee. However,
17 if the assignee is acting on behalf of the payee, for a flat
18 fee or a percentage fee, the assignee may not charge the
19 payee a greater flat fee or percentage fee for that portion
20 of the amount collected that represents treble damages
21 than is charged the payee for collecting the face amount
22 of the check, draft, or order. This subdivision shall not
23 apply to an action brought in small claims court.
24 (g) Notwithstanding subdivision (a), if the payee is a
25 municipal court, the written demand for payment
26 described in subdivision (a) may be mailed to the ~~maker~~
27 drawer by a municipal court clerk. Notwithstanding
28 subdivision (d), in the case of a stop payment where the
29 demand is mailed by a municipal court clerk, a court may
30 not award damages or costs pursuant to subdivision (d),
31 unless the court receives into evidence a copy of the
32 written demand, and a certificate of mailing by a
33 municipal court clerk in the form provided for in
34 subdivision (4) of Section 1013a of the Code of Civil
35 Procedure for service in civil actions. For purposes of this
36 subdivision, in courts where a single court clerk serves
37 more than one court, the clerk shall be deemed the court
38 clerk of each court.
39 (h) The requirements of this section in regard to
40 remedies are mandatory upon a court.

97

— 7 — AB 2643

1 (i) The rights of the payee to recover the face amount
2 of the check as well as the service charge, damages, and
3 costs specified in this section, are subject to any applicable
4 claims and defenses that the drawer may assert against
5 the payee under Division 3 (commencing with Section
6 3101) of the Commercial Code.
7 (j) Nothing in this section is intended to condition,
8 curtail, or otherwise prejudice the rights and remedies of
9 a payee under Division 3 (commencing with Section
10 3101) of the Commercial Code.
11 (k) For purposes of this section, "payee" includes an
12 assignee or holder in due course, as defined in Section
13 3302 of the Commercial Code.
14 (l) The service charge authorized by the amendments
15 to this section adopted by the 1995–96 Regular Session of
16 the Legislature is declaratory of existing law.

97

Display 1995-1996 Bill Text - INFORMATION
BILL NUMBER: AB 2643
                              BILL TEXT


                          AMENDED IN SENATE    AUGUST 5, 1996
                          AMENDED IN SENATE    JUNE 17, 1996
                        AMENDED IN ASSEMBLY    APRIL 18, 1996

INTRODUCED BY  Assembly Members Bordonaro and Kaloogian

                        FEBRUARY 21, 1996


    An act to amend Section 1719 of the Civil Code, relating to commercial
paper.




                        LEGISLATIVE COUNSEL'S DIGEST


    AB 2643, as amended, Bordonaro.  Commercial paper:  insufficient funds.
    Existing law creates a cause of action for the amount of a check passed on
insufficient funds minus any partial payment made within 30 days of a
specified written demand for payment, damages equal to treble that amount, as
specified, plus the costs of mailing the written demand for payment only if
the person who passed the check failed to pay either the amount of the check
or the amount of the bad check fee charged to the payee by his or her
financial institution within a prescribed period, except as specified.
    This bill would revise and recast these provisions to create a cause of
action for the amount of the check and a specified service charge, payable to
the payee.  The bill would provide that the person shall have 30 days from the
date a prescribed written demand was mailed to pay the amount of the check and
the service charge.  If the person fails to pay this amount in full, this
person shall instead be liable for specified amounts, including treble
damages.  The bill would make conforming changes.
    The bill would, among other things, provide that for purposes of the above
provisions, the term "payee" includes an assignee or holder in due course
of the check.
    Vote:  majority.  Appropriation:  no.  Fiscal committee:  no.
State-mandated local program:  no.

EXHIBIT

92

Display 1995-1996 Bill Text - INFORMATION
BILL NUMBER: AB 2643
BILL TEXT

THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

SECTION 1.  Section 1719 of the Civil Code is amended to read:
1719.  (a) (1) Notwithstanding any penal sanctions that may apply, any
person who passes a check on insufficient funds shall be liable to the payee
for the amount of the check and a service charge payable to the payee for an
amount not to exceed twenty-five dollars ($25) for the first check passed
on insufficient funds and an amount not to exceed thirty-five dollars
($35) for each subsequent check passed on insufficient funds.  If a written
demand for payment is mailed by certified mail

(2) Notwithstanding any penal sanctions that may apply, any
person who passes a check on insufficient funds shall be liable to
the payee for damages equal to treble the amount of the check if
a written demand for payment is mailed by certified mail to the
person who had passed a check on insufficient funds and the written demand
informs this person of (A) the provisions of this section, (B) the amount of
the check, and (C) the amount of the service charge payable to the payee,
the person who had passed to the payee.  The person who had
passed a check on insufficient funds shall have 30 days from the date the
written demand was mailed to pay the amount of the check, the amount of the
service charge payable to the payee, and the costs to mail the written demand
for payment.  If this person fails to pay in full the amount of the check, the
service charge payable to the payee, and the costs to mail the written demand
within this period, this person shall then be liable instead for the amount of
the check, minus any partial payments made toward the amount of the check or
the service charge within 30 days of the written demand, and damages equal
to treble the amount of the check, which damages equal to treble
that amount, which shall not be less than one hundred dollars ($100) nor
more than one thousand five hundred dollars ($1,500).  When a person
becomes liable for treble damages for a check that is the subject
of a written demand, that person shall no longer be liable for
any service charge for that check and any costs to mail the
written demand.
{2}
(3) Notwithstanding paragraph (1), a person shall not be liable under
that paragraph for the service charge or treble damages if he or she stops
payment in order to resolve a good faith dispute with the payee.  The payee is
entitled to the service charge or treble damages only upon proving by clear
and convincing evidence that there was no good faith dispute, as defined in
subdivision (b).
{3}
(4) Notwithstanding paragraph (1), a person shall not be liable under

Display 1995-1996 Bill Text - INFORMATION
BILL NUMBER: AB 2643

BILL TEXT

that paragraph for the service charge if, at any time, he or she presents
the payee with written confirmation by his or her financial institution that
the check was returned to the payee by the financial institution due to an
error on the part of the financial institution.

{4}

(5) Notwithstanding paragraph (1), a person shall not be liable
under that paragraph for the service charge if the person presents
the payee with written confirmation that his or her account had
insufficient funds as a result of a delay in the regularly
scheduled transfer of, or the posting of, a direct deposit of a
social security or government benefit assistance payment.

(6) As used in this subdivision, to "pass a check on insufficient funds"
means to make, utter, draw, or deliver any check, draft, or order for the
payment of money upon any bank, depository, person, firm, or corporation that
refuses to honor the check, draft, or order for any of the following reasons:

(A) Lack of funds or credit in the account to pay the check.
(B) The person who wrote the check does not have an account with the
drawee.
(C) The person who wrote the check instructed the drawee to stop payment on
the check.

(b) For purposes of this section, in the case of a stop payment, the
existence of a "good faith dispute" shall be determined by the trier of fact.
A "good faith dispute" is one in which the court finds that the drawer had a
reasonable belief of his or her legal entitlement to withhold payment.
Grounds for the entitlement include, but are not limited to, the following:
services were not rendered, goods were not delivered, goods or services
purchased are faulty, not as promised, or otherwise unsatisfactory, or there
was an overcharge.

(c) In the case of a stop payment, the notice to the drawer required by
this section shall be in substantially the following form:


NOTICE


To: _____
        (name of drawer)
        _____ is the payee of a check you wrote
            (name of payee)
for $ _____.  The check was not paid because
            (amount)
you stopped payment, and the payee demands payment.  You may
have a good faith dispute as to whether you owe the full amount.
If you do not have a good faith dispute with the payee and fail
to pay the payee the full amount of the check in cash, a service
charge of an amount not to exceed twenty-five dollars ($25) for
the first check passed on insufficient funds and an amount not to
exceed thirty-five dollars ($35) for each subsequent check
passed on insufficient funds, and the costs to mail this notice
within 30 days after this notice was mailed, you could be sued

Display 1995-1996 Bill Text - INFORMATION
BILL NUMBER: AB 2643

BILL TEXT

and held responsible to pay at least a̶l̶l̶ <u>both</u> of the following:
   (1) The amount of the check.
   (2) Damages of at least one hundred dollars ($100) or, if
higher, three times the amount of the check up to one thousand
five hundred dollars ($1,500).
   If the court determines that you do have a good faith
dispute with the payee, you will not have to pay the service
charge, treble damages, and mailing cost mentioned above.  If
you stopped payment because you have a good faith dispute with
the payee, you should try to work out your dispute with the
payee.  You can contact the payee at:

---------------------------------------------------
                   (name of payee)

---------------------------------------------------
                  (street address)

---------------------------------------------------
                 (telephone number)

   You may wish to contact a lawyer to discuss your legal
rights and responsibilities.

                 --------------------------------------
                     (name of sender of notice)


   (d) In the case of a stop payment, a court may not award damages or costs
under this section unless the court receives into evidence a copy of the
written demand which, in that case, shall have been sent to the drawer and a
signed certified mail receipt showing delivery, or attempted delivery if
refused, of the written demand to the drawer's address.
   (e) A cause of action under this section may be brought in small claims
court <u>by the original payee</u>, if it does not exceed the jurisdiction of
that court, or in any other appropriate court.  The payee shall, in order to
recover damages because the drawer instructed the drawee to stop payment, show
to the satisfaction of the trier of fact that there was a reasonable effort on
the part of the payee to reconcile and resolve the dispute prior to pursuing
the dispute through the courts.
   (f) A cause of action under this section may be brought in municipal court
by <u>a holder of the check or</u> an assignee of the payee.  However, if the
assignee is acting on behalf of the payee, for a flat fee or a percentage fee,
the assignee may not charge the payee a greater flat fee or percentage fee for
that portion of the amount collected that represents treble damages than is
charged the payee for collecting the face amount of the check, draft, or
order.  This subdivision shall not apply to an action brought in small claims
court.
   (g) Notwithstanding subdivision (a), if the payee is a municipal court, the
written demand for payment described in subdivision (a) may be mailed to the
drawer by a municipal court clerk.  Notwithstanding subdivision (d), in the
case of a stop payment where the demand is mailed by a municipal court clerk,
a court may not award damages or costs pursuant to subdivision (d), unless the
court receives into evidence a copy of the written demand, and a certificate
of mailing by a municipal court clerk in the form provided for in subdivision

BILL TEXT

(4) of Section 1013a of the Code of Civil Procedure for service in civil actions.  For purposes of this subdivision, in courts where a single court clerk serves more than one court, the clerk shall be deemed the court clerk of each court.

(h) The requirements of this section in regard to remedies are mandatory upon a court.

~~(i) The rights of the payee to recover the face amount of the check as well as the service charge, damages, and costs specified in this section, are subject to any applicable claims and defenses that the drawer may assert against the payee under Division 3 (commencing with Section 3101) of the Commercial Code.~~

~~(j) Nothing in this section is intended to condition, curtail, or otherwise prejudice the rights and remedies of a payee under Division 3 (commencing with Section 3101) of the Commercial Code.~~

~~(k) For purposes of this section, "payee" includes an assignee or holder in due course, as defined in Section 3302 of the Commercial Code.~~

~~(l) The service charge authorized by the amendments to this section adopted at the 1995-96 Regular Session of the Legislature is declaratory of existing law.~~

(i) The assignee of the payee or a holder of the check may demand, recover, or enforce the service charge, damages, and costs specified in this section to the same extent as the original payee.

(j) (1) A drawer is liable for damages and costs only if all of the requirements of this section have been satisfied.

(2) The drawer shall in no event be liable more than once on each check for a service charge, damages, or costs.

(k) Nothing in this section is intended to condition, curtail, or otherwise prejudice the rights, claims, remedies, and defenses of a drawer, payee, assignee, or holder, including a holder in due course as defined in Section 3302 of the Commercial Code, in connection with enforcing payment of a check.

AMENDED IN SENATE AUGUST 20, 1996
AMENDED IN SENATE AUGUST 5, 1996
AMENDED IN SENATE JUNE 17, 1996
AMENDED IN ASSEMBLY APRIL 18, 1996

CALIFORNIA LEGISLATURE—1995–96 REGULAR SESSION

## ASSEMBLY BILL        No. 2643

Introduced by Assembly Members Bordonaro and
Kaloogian

February 21, 1996

An act to amend Section 1719 of the Civil Code, relating to commercial paper.

LEGISLATIVE COUNSEL'S DIGEST

AB 2643, as amended, Bordonaro. Commercial paper: insufficient funds.

Existing law creates a cause of action for the amount of a check passed on insufficient funds minus any partial payment made within 30 days of a specified written demand for payment, damages equal to treble that amount, as specified, plus the costs of mailing the written demand for payment only if the person who passed the check failed to pay either the amount of the check or the amount of the bad check fee charged to the payee by his or her financial institution within a prescribed period, except as specified.

This bill would revise and recast these provisions to create a cause of action for the amount of the check and a specified

95

EXHIBIT

9S

tabbies

service charge, payable to the payee. The bill would provide that the person shall have 30 days from the date a prescribed written demand was mailed to pay the amount of the check ~~and,~~ the service charge, *and the cost to mail the demand.* If the person fails to pay this amount in full, this person shall instead be liable for specified amounts, including treble damages. The bill would make conforming changes.

The bill would, among other things, provide that for purposes of the above provisions, the term "payee" includes an assignee or holder of the check.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1　SECTION 1. Section 1719 of the Civil Code is
2　amended to read:
3　1719. (a) (1) Notwithstanding any penal sanctions
4　that may apply, any person who passes a check on
5　insufficient funds shall be liable to the payee for the
6　amount of the check and a service charge payable to the
7　payee for an amount not to exceed twenty-five dollars
8　($25) for the first check passed on insufficient funds and
9　an amount not to exceed thirty-five dollars ($35) for each
10　subsequent check *to that payee* passed on insufficient
11　funds.
12　(2) Notwithstanding any penal sanctions that may
13　apply, any person who passes a check on insufficient funds
14　shall be liable to the payee for damages equal to treble the
15　amount of the check if a written demand for payment is
16　mailed by certified mail to the person who had passed a
17　check on insufficient funds and the written demand
18　informs this person of (A) the provisions of this section,
19　(B) the amount of the check, and (C) the amount of the
20　service charge payable to the payee. The person who had
21　passed a check on insufficient funds shall have 30 days
22　from the date the written demand was mailed to pay the
23　amount of the check, the amount of the service charge
24　payable to the payee, and the costs to mail the written
25　demand for payment. If this person fails to pay in full the

1　amount of the check, the service charge payable to the
2　payee, and the costs to mail the written demand within
3　this period, this person shall then be liable instead for the
4　amount of the check, minus any partial payments made
5　toward the amount of the check or the service charge
6　within 30 days of the written demand, and damages equal
7　to treble that amount, which shall not be less than one
8　hundred dollars ($100) nor more than one thousand five
9　hundred dollars ($1,500). When a person becomes liable
10　for treble damages for a check that is the subject of a
11　written demand, that person shall no longer be liable for
12　any service charge for that check and any costs to mail the
13　written demand.
14　(3) Notwithstanding ~~paragraph (1)~~ *paragraphs (1)*
15　*and (2),* a person shall not ~~be liable under that paragraph~~
16　~~for the service charge or be liable for the service charge,~~
17　*costs to mail the written demand,* or treble damages if he
18　or she stops payment in order to resolve a good faith
19　dispute with the payee. The payee is entitled to the
20　service charge, *costs to mail the written demand,* or
21　treble damages only upon proving by clear and
22　convincing evidence that there was no good faith dispute,
23　as defined in subdivision (b).
24　(4) Notwithstanding paragraph (1), a person shall not
25　be liable under that paragraph for the service charge if,
26　at any time, he or she presents the payee with written
27　confirmation by his or her financial institution that the
28　check was returned to the payee by the financial
29　institution due to an error on the part of the financial
30　institution.
31　(5) Notwithstanding paragraph (1), a person shall not
32　be liable under that paragraph for the service charge if
33　the person presents the payee with written confirmation
34　that his or her account had insufficient funds as a result
35　of a delay in the regularly scheduled transfer of, or the
36　posting of, a direct deposit of a social security or
37　government benefit assistance payment.
38　(6) As used in this subdivision, to "pass a check on
39　insufficient funds" means to make, utter, draw, or deliver
40　any check, draft, or order for the payment of money upon

1 any bank, depository, person, firm, or corporation that
2 refuses to honor the check, draft, or order for any of the
3 following reasons:
4 (A) Lack of funds or credit in the account to pay the
5 check.
6 (B) The person who wrote the check does not have an
7 account with the drawee.
8 (C) The person who wrote the check instructed the
9 drawee to stop payment on the check.
10 (b) For purposes of this section, in the case of a stop
11 payment, the existence of a "good faith dispute" shall be
12 determined by the trier of fact. A "good faith dispute" is
13 one in which the court finds that the drawer had a
14 reasonable belief of his or her legal entitlement to
15 withhold payment. Grounds for the entitlement include,
16 but are not limited to, the following: services were not
17 rendered, goods were not delivered, goods or services
18 purchased are faulty, not as promised, or otherwise
19 unsatisfactory, or there was an overcharge.
20 (c) In the case of a stop payment, the notice to the
21 drawer required by this section shall be in substantially
22 the following form:
23
24                    NOTICE
25
26 To: _____
27        (name of drawer)
28 _____ is the payee of a check you wrote
29        (name of payee)
30 for $ _____ The check was not paid because
31        (amount)

1 you stopped payment, and the payee demands payment. You may
2 have a good faith dispute as to whether you owe the full amount.
3 If you do not have a good faith dispute with the payee and fail to
4 pay the payee the full amount of the check in cash, a service charge
5 of an amount not to exceed twenty-five dollars ($25) for the first
6 check passed on insufficient funds and an amount not to exceed
7 thirty-five dollars ($35) for each subsequent check passed on
8 insufficient funds, and the costs to mail this notice within 30 days
9 after this notice was mailed, you could be sued and held responsible
10 to pay at least both of the following:
11 (1) The amount of the check.
12 (2) Damages of at least one hundred dollars ($100) or, if
13 higher, three times the amount of the check up to one thousand
14 five hundred dollars ($1,500).
15 If the court determines that you do have a good faith dispute with
16 the payee, you will not have to pay the service charge, treble
17 damages, ~~and mailing cost mentioned~~ *above or mailing cost.* If you
18 stopped payment because you have a good faith dispute with the
19 payee, you should try to work out your dispute with the payee. You
20 can contact the payee at:
21
22 _____
23        (name of payee)
24 _____
25        (street address)
26 _____
27        (telephone number)
28 You may wish to contact a lawyer to discuss your legal rights and
29 responsibilities.
30 _____
31        (name of sender of notice)
32 (d) In the case of a stop payment, a court may not
33 award damages or costs under this section unless the
34 court receives into evidence a copy of the written
35 demand which, in that case, shall have been sent to the
36 drawer and a signed certified mail receipt showing
37 delivery, or attempted delivery if refused, of the written
38 demand to the drawer's *last known* address.
39 (e) A cause of action under this section may be
40 brought in small claims court by the original payee, if it

95

— 6 —

1 does not exceed the jurisdiction of that court, or in any
2 other appropriate court. The payee shall, in order to
3 recover damages because the drawer instructed the
4 drawee to stop payment, show to the satisfaction of the
5 trier of fact that there was a reasonable effort on the part
6 of the payee to reconcile and resolve the dispute prior to
7 pursuing the dispute through the courts.
8 (f) A cause of action under this section may be brought
9 in municipal court by a holder of the check or an assignee
10 of the payee. However, if the assignee is acting on behalf
11 of the payee, for a flat fee or a percentage fee, the assignee
12 may not charge the payee a greater flat fee or percentage
13 fee for that portion of the amount collected that
14 represents treble damages than is charged the payee for
15 collecting the face amount of the check, draft, or order.
16 This subdivision shall not apply to an action brought in
17 small claims court.
18 (g) Notwithstanding subdivision (a), if the payee is a
19 municipal court, the written demand for payment
20 described in subdivision (a) may be mailed to the drawer
21 by a municipal court clerk. Notwithstanding subdivision
22 (d), in the case of a stop payment where the demand is
23 mailed by a municipal court clerk, a court may not award
24 damages or costs pursuant to subdivision (d), unless the
25 court receives into evidence a copy of the written
26 demand, and a certificate of mailing by a municipal court
27 clerk in the form provided for in subdivision (4) of
28 Section 1013a of the Code of Civil Procedure for service
29 in civil actions. For purposes of this subdivision, in courts
30 where a single court clerk serves more than one court, the
31 clerk shall be deemed the court clerk of each court.
32 (h) The requirements of this section in regard to
33 remedies are mandatory upon a court.
34 (i) The assignee of the payee or a holder of the check
35 may demand, recover, or enforce the service charge,
36 damages, and costs specified in this section to the same
37 extent as the original payee.
38 (j) (1) A drawer is liable for damages and costs only
39 if all of the requirements of this section have been
40 satisfied.

— 7 —

1 (2) The drawer shall in no event be liable more than
2 once *under this section* on each check for a service
3 charge, damages, or costs.
4 (k) Nothing in this section is intended to condition,
5 curtail, or otherwise prejudice the rights, claims,
6 remedies, and defenses *under Division 3 (commencing*
7 *with Section 3101) of the Commercial Code* of a drawer,
8 payee, assignee, or holder, including a holder in due
9 course as defined in Section 3302 of the Commercial
10 Code, in connection with enforcing payment of a check
11 *the enforcement of this section.*

Assembly Bill No. 2643

CHAPTER 1000

An act to amend Section 1719 of the Civil Code, relating to commercial paper.

[Approved by Governor September 27, 1996. Filed with Secretary of State September 29, 1996.]

LEGISLATIVE COUNSEL'S DIGEST

AB 2643, Bordonaro.   Commercial paper: insufficient funds.

Existing law creates a cause of action for the amount of a check passed on insufficient funds minus any partial payment made within 30 days of a specified written demand for payment, damages equal to treble that amount, as specified, plus the costs of mailing the written demand for payment only if the person who passed the check failed to pay either the amount of the check or the amount of the bad check fee charged to the payee by his or her financial institution within a prescribed period, except as specified.

This bill would revise and recast these provisions to create a cause of action for the amount of the check and a specified service charge, payable to the payee. The bill would provide that the person shall have 30 days from the date a prescribed written demand was mailed to pay the amount of the check, the service charge, and the cost to mail the demand. If the person fails to pay this amount in full, this person shall instead be liable for specified amounts, including treble damages. The bill would make conforming changes.

The bill would, among other things, provide that for purposes of the above provisions, the term "payee" includes an assignee or holder of the check.

*The people of the State of California do enact as follows:*

SECTION 1.   Section 1719 of the Civil Code is amended to read:

1719.   (a)   (1) Notwithstanding any penal sanctions that may apply, any person who passes a check on insufficient funds shall be liable to the payee for the amount of the check and a service charge payable to the payee for an amount not to exceed twenty-five dollars ($25) for the first check passed on insufficient funds and an amount not to exceed thirty-five dollars ($35) for each subsequent check to that payee passed on insufficient funds.

(2) Notwithstanding any penal sanctions that may apply, any person who passes a check on insufficient funds shall be liable to the payee for damages equal to treble the amount of the check if a written demand for payment is mailed by certified mail to the person

EXHIBIT

9/

who had passed a check on insufficient funds and the written demand informs this person of (A) the provisions of this section, (B) the amount of the check, and (C) the amount of the service charge payable to the payee. The person who had passed a check on insufficient funds shall have 30 days from the date the written demand was mailed to pay the amount of the check, the amount of the service charge payable to the payee, and the costs to mail the written demand for payment. If this person fails to pay in full the amount of the check, the service charge payable to the payee, and the costs to mail the written demand within this period, this person shall then be liable instead for the amount of the check, minus any partial payments made toward the amount of the check or the service charge within 30 days of the written demand, and damages equal to treble that amount, which shall not be less than one hundred dollars ($100) nor more than one thousand five hundred dollars ($1,500). When a person becomes liable for treble damages for a check that is the subject of written demand, that person shall no longer be liable for any service charge for that check and any costs to mail the written demand.

(3) Notwithstanding paragraphs (1) and (2), a person shall not be liable for the service charge, costs to mail the written demand, or treble damages if he or she stops payment in order to resolve a good faith dispute with the payee. The payee is entitled to the service charge, costs to mail the written demand, or treble damages only upon proving by clear and convincing evidence that there was no good faith dispute, as defined in subdivision (b).

(4) Notwithstanding paragraph (1), a person shall not be liable under that paragraph for the service charge if, at any time, he or she presents the payee with written confirmation by his or her financial institution that the check was returned to the payee by the financial institution due to an error on the part of the financial institution.

(5) Notwithstanding paragraph (1), a person shall not be liable under that paragraph for the service charge if the person presents the payee with written confirmation that his or her account had insufficient funds as a result of a delay in the regularly scheduled transfer of, or the posting of, a direct deposit of a social security or government benefit assistance payment.

(6) As used in this subdivision, to "pass a check on insufficient funds" means to make, utter, draw, or deliver any check, draft, or order for the payment of money upon any bank, depository, person, firm, or corporation that refuses to honor the check, draft, or order for any of the following reasons:

(A) Lack of funds or credit in the account to pay the check.

(B) The person who wrote the check does not have an account with the drawee.

(C) The person who wrote the check instructed the drawee to stop payment on the check.

(b) For purposes of this section, in the case of a stop payment, the existence of a "good faith dispute" shall be determined by the trier of fact. A "good faith dispute" is one in which the court finds that the drawer had a reasonable belief of his or her legal entitlement to withhold payment. Grounds for the entitlement include, but are not limited to, the following: services were not rendered, goods were not delivered, goods or services purchased are faulty, not as promised, or otherwise unsatisfactory, or there was an overcharge.

(c) In the case of a stop payment, the notice to the drawer required by this section shall be in substantially the following form:

NOTICE

To: _____

(name of drawer)

_____ is the payee of a check you wrote

(name of payee)

for $ _____. The check was not paid because

(amount)

you stopped payment, and the payee demands payment. You may have a good faith dispute as to whether you owe the full amount. If you do not have a good faith dispute with the payee and fail to pay the payee the full amount of the check in cash, a service charge of an amount not to exceed twenty-five dollars ($25) for the first check passed on insufficient funds and an amount not to exceed thirty-five dollars ($35) for each subsequent check passed on insufficient funds, and the costs to mail this notice within 30 days after this notice was mailed, you could be sued and held responsible to pay at least both of the following:

(1) The amount of the check.

(2) Damages of at least one hundred dollars ($100) or, if higher, three times the amount of the check up to one thousand five hundred dollars ($1,500).

If the court determines that you do have a good faith dispute with the payee, you will not have to pay the service charge, treble damages, or mailing cost. If you stopped payment because you have a good faith dispute with the payee, you should try to work out your dispute with the payee. You can contact the payee at:

_____

(name of payee)

_____

(street address)

_____

(telephone number)

You may wish to contact a lawyer to discuss your legal rights and responsibilities.

_____

(name of sender of notice)

(d) In the case of a stop payment, a court may not award damages or costs under this section unless the court receives into evidence a copy of the written demand which, in that case, shall have been sent to the drawer and a signed certified mail receipt showing delivery, or attempted delivery if refused, of the written demand to the drawer's last known address.

(e) A cause of action under this section may be brought in small claims court by the original payee, if it does not exceed the jurisdiction of that court, or in any other appropriate court. The payee shall, in order to recover damages because the drawer instructed the drawee to stop payment, show to the satisfaction of the trier of fact that there was a reasonable effort on the part of the payee to reconcile and resolve the dispute prior to pursuing the dispute through the courts.

(f) A cause of action under this section may be brought in municipal court by a holder of the check or an assignee of the payee. However, if the assignee is acting on behalf of the payee, for a flat fee or a percentage fee, the assignee may not charge the payee a greater flat fee or percentage fee for that portion of the amount collected that represents treble damages than is charged the payee for collecting the face amount of the check, draft, or order. This subdivision shall not apply to an action brought in small claims court.

(g) Notwithstanding subdivision (a), if the payee is a municipal court, the written demand for payment described in subdivision (a) may be mailed to the drawer by a municipal court clerk. Notwithstanding subdivision (d), in the case of a stop payment where the demand is mailed by a municipal court clerk, a court may not award damages or costs pursuant to subdivision (d), unless the court receives into evidence a copy of the written demand, and a certificate of mailing by a municipal court clerk in the form provided for in subdivision (4) of Section 1013a of the Code of Civil Procedure for service in civil actions. For purposes of this subdivision, in courts where a single court clerk serves more than one court, the clerk shall be deemed the court clerk of each court.

(h) The requirements of this section in regard to remedies are mandatory upon a court.

(i) The assignee of the payee or a holder of the check may demand, recover, or enforce the service charge, damages, and costs specified in this section to the same extent as the original payee.

(j) (1) A drawer is liable for damages and costs only if all of the requirements of this section have been satisfied.

(2) The drawer shall in no event be liable more than once under this section on each check for a service charge, damages, or costs.

(k) Nothing in this section is intended to condition, curtail, or otherwise prejudice the rights, claims, remedies, and defenses under Division 3 (commencing with Section 3101) of the Commercial Code of a drawer, payee, assignee, or holder, including a holder in due course as defined in Section 3302 of the Commercial Code, in connection with the enforcement of this section.