1  LAW OFFICES OF CLARK GAREN,
   CLARK GAREN, CALIF. BAR #50564
2  P. O. BOX 1790,
   PALM SPRINGS, CALIFORNIA 92263
3  STREET ADDRESS-NO MAIL: 17100 N. INDIAN, PALM SPRINGS, CA. 92258
   TELEPHONE:     (760) 323-4901
4  Fax:           (760) 288-4080
   clarkgaren@msn.com
5
   ATTORNEYS FOR PLAINTIFFS
6  IMPERIAL MERCHANT SERVICES, a California
   corporation, doing business as
7  CHECK RECOVERY SYSTEMS

8              UNITED STATES DISTRICT COURT

9      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

10

11

12  BRANDY HUNT and BRIAN CASTILLO,    )   Case No. C 05-4993 MJJ
    on behalf of herself              )   Case No. C 05 2037 MJJ
    and others similarly situated,    )
13                                     )   DEFENDANTS OPPOSITION TO
                    Plaintiff,         )   PLAINTIFF'S MOTION FOR
14                                     )   PARTIAL SUMMARY JUDGMENT
                                       )
15  -vs-                               )
                                       )
16                                     )
    CHECK RECOVERY SYSTEMS, INC.,      )
17  et. al.,                           )
                                       )
18              Defendants.            )
                                       )
19                                     )
                                       )   Date: October 24, 2006
20                                     )   Time: 9:30 A.M.
    _____)       Place: Courtroom 11
21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**
**TABLE OF CONTENTS**

| CHAPTER | TITLE | PAGE |
|---|---|---|
| I | INTRODUCTION | 1 |
| II | THERE IS NO BINDING PRECEDENT THAT PRE-JUDGMENT INTEREST MAY NOT BE RECOVERED IN ADDITION TO THE REMEDIES AVAILABLE UNDER *CIVIL CODE SECTION* 1719, AND ONLY ONE TRIAL COURT CASE ON THE ISSUE | 2 |
| III | WHAT WAS THE LEGISLATIVE INTENT WHEN *CIVIL CODE SECTION* 1719 WAS ENACTED? | 4 |
| IV | PRE-JUDGMENT INTEREST IS AN ELEMENT OF DAMAGES THAT IS INCLUDED IN A NEW REMEDY CREATED BY THE LEGISLATURE UNLESS THE LEGISLATURE SPECIFICALLY EXCLUDES IT | 8 |
| V | INTEREST IS AWARDED ON LIQUIDATED DAMAGE AWARDS | 11 |
| VI | DEFENDANT WOULD NOT RECEIVE A DOUBLE OR MULTIPLE RECOVERY | 11 |
| VII | ALL OF THE RIGHTS OF SAFEWAY WERE ASSIGNED TO DEFENDANT | 14 |
| VIII | PLAINTIFF CREATED FOUR THEORIES OF RECOVERY BY A SINGLE WRONG. THE FIRST THEORY OF RECOVERY WAS UNDER *CIVIL CODE* 1719 FOR ISSUING A DISHONORED CHECK; THE SECOND THEORY OF RECOVERY WAS FOR A BREACH OF THE CONTRACT EVIDENCED BY THE DISHONORED CHECK; A THIRD THEORY OF RECOVERY WAS FOR THE COMMON COUNT OF GOODS, WARES, AND MERCHANDISE HAD AND RECEIVED BY THE PLAINTIFF; AND THE FOURTH THEORY WAS FOR RECOVERY UNDER DIVISION 2 OF THE CALIFORNIA COMMERCIAL CODE GOVERNING SALES | 15 |
| IX | EFFECT OF ALTERNATIVE REMEDIES | 19 |
| X | PLAINTIFF IS EXCUSED FROM LIABILITY UNDER 15 U.S.C. 1692k | 22 |
| XI | CONCLUSION | 23 |

# TABLE OF AUTHORITIES

**FEDERAL CASES:**                                    **PAGE**

*Abels vs. Boyajian*,
434 F. Supp.2d 763 (2006)                    14, 15

*Ballard vs. Equifax Check Services, Inc.*,    14
27 F. Supp 3d 1206-1207

*Newman vs. Checkrite*, 912 F. Supp 1354      16, 17

*Palmer vs. Stassinos*, (2004),
348 F. Supp. 2d 1070,                         3, 4, 5, 22,

*Palmer vs. Stassinos*, (2005,
419 F. Supp. 2d 1151,                         13, 18,

*Wichita Eagle and Beacon Publishing
Company, Inc. v. Pacific National Bank of
San Francisco*, (1974), 493 F.2d 1285, 1287   11

**FEDERAL STATUTES:**

15 U.S.C. 1692k                               22,

**STATE CASES:**

*Curie vs. Workmen's Compensation
Appeals Board*, (2001), 24 Cal. 4th 1109,     1, 2, 9, 10,

*Kaufman & Broad vs. City &
Surburban Mortgage Co.*, (1970),
10 Cal. App.3d 206, 215, 88 Cal.Rptr. 858,    15,

*Lara vs. Board of Supervisors*, (1976),
59 Cal. App. 3d 399, 408-409,                 5,

*Long v. Cuttle Construction Co.*, (1998),
60 Cal. App. 4th 834, 70 Cal. Rptr. 2d 698    21,

**STATE STATUTES:**

*California Civil Code Section 1717.5*        13, 15, 20,

*California Civil Code Section 1719*          5, 6, 7, 9, 11, 12,
                                              13, 17, 18, 20, 22,
                                              23

*California Civil Code Section 3287*          6, 7, 9, 10, 11,
                                              12,13, 15, 20,

*California Commercial Code 2710*             15, 16, 17, 18, 20,

*California Commercial Code 3310*             2, 19, 20, 21, 22,

1

**TABLE OF AUTHORITIES (Continued)**

2    **FEDERAL RULES:**                              **PAGE**

3    F.R.C.P. Rule 56(b)                             23

4    **OTHER AUTHORITIES:**

5    1, *Witkin, Summary of California*
     *Law*, *9th Edition* 832                        15
6
     3, *Witkin, California Procedure,*
7    *4th Edition* Actions §7, pages 60              8

8    3, *Witkin, California Procedure,*
     *4th Edition* Actions §7, pages 62-63           1, 8, 9
9
     4, *Witkin, California Procedure,*
10   *4th Edition* 618                               16

11   *Blacks Law Dictionary, 4th Edition,*           20

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**I**
**INTRODUCTION**

2

3

4

May the recipient of a dishonored check may impose **both** the
returned check charge of up to $35.00 permitted by *Civil Code*
*Section* 1719 **and** prejudgment interest? There is no binding
precedent on this issue. There is **only** *one* published opinion
issued by a trial judge (Judge Whyte) that supports Plaintiff's
position

5

6

7

8

9

10

11

Counsel for Plaintiff argues that when a new right has been
created by statute and a new statutory remedy for its
infringement is provided, the statutory remedy is exclusive and
no other remedy will be allowed, including pre-judgment interest.
Counsel for Plaintiff sold this argument to Judge Whyte without
citing any cases to support it. The problem is that, except for
Judge Whyte's published opinion, there are no other published
cases that support Plaintiff's argument.

12

13

14

15

16

17

18

Furthermore, in 1947 the California Supreme Court repudiated
the legal theory upon which Plaintiffs and Judge Whyte relied.
(3, *Witkin, California Procedure, 4th Edition* Actions §7, pages
62-63.) In 2001, the California Supreme Court affirmed this
repudiation and ruled that pre-judgment interest on a new
statutory remedy is determined by the California general interest
statutes unless the new statute specifically contains specific
provisions regarding interest. The California Supreme Court said
requiring a separate provision addressing interest would be
"redundant, as the Legislature provided elsewhere, and generally,
in Civil Code section 3287...for the recovery of interest... the
right to recover which is vested in the claimant on a particular
day." (*Currie vs. Workers' Compensation Appeals Board* (2001), 24

19

20

21

22

23

24

25

26

27

28

1  Cal. 4th 1109, 1116, 104 Cal. Rptr. 2d 392, 398-399.)

2      Plaintiff also relies on the portion of Judge Whyte's

3  opinion that concluded "that permitting interest in addition to

4  the statutory remedies would permit a double recovery". There are

5  **no** circumstances where the $25.00 or $35.00 returned check charge

6  could possibly constitute a double recovery.

7      Plaintiff challenges the extent of Defendants assignment,

8  relying on case law based on creditors who purchased the

9  dishonored check instead of creditors like Defendant that

10 received an assignment of the entire account. The evidence before

11 this Court in this case is that Defendant received an assignment

12 from the original creditor of all its right, title, and interest

13 *in the account,* not just the dishonored check.

14     Finally, Plaintiff relies on *California Commercial Code*

15 *Section* 3310(b)(3) provisions that a creditor cannot enforce both

16 the instrument and the obligation. Plaintiff is wrong! *Commercial*

17 *Code Section* 3310(b)(3) prohibits the recipient of a dishonored

18 instrument from having a double recovery - one for the instrument

19 and one for the underlying obligation. It does not preclude a

20 victim from advancing multiple theories of recovery to obtain one

21 remedy, i.e. payment for the obligation along with all corollary

22 remedies available under each theory of recovery.

23                            **II**
   **THERE IS NO BINDING PRECEDENT THAT PRE-JUDGMENT INTEREST MAY NOT**
24 **BE RECOVERED IN ADDITION TO THE REMEDIES AVAILABLE UNDER** *CIVIL*
   *CODE SECTION* **1719, AND ONLY ONE TRIAL COURT CASE ON THE ISSUE**
25
26     Plaintiff, on page 6 of her P&A, in a very carefully worded

27 sentence, tries to create the impression that the Ninth Circuit

28

---

has adopted Plaintiff's interpretation of this issue. This is **not true**, as observed by Judge Whyte:

> "Plaintiffs cite this language as binding Ninth Circuit precedent. On its face, this citation demonstrates that defendants Stassinos and Far West violate the FDCPA by collecting interest not expressly authorized by the agreement creating debt or permitted by law.
>
> However, defendants point out that the citation upon which plaintiffs rely is taken from the background section of the Ninth Circuit opinion summarizing the findings of fact and conclusions of law in the District Court case. *Irwin v. Mascon*, 112 F. Supp. 2d 937 (N.D.Ca.,2000)(hereinafter *Irwin I*). The appeal in *Irwin II* concerned only a challenge to a contempt finding against the defendant's employee who violated an injunction issued in the case and the court explicitly stated it did not consider the merits of the underlying injunction as part of the appeal. *Id*. at 931. Appellants appeal the magistrate judge's finding that the violated the Injunction. Before considering their contention, however, it is important to note that we do not consider the merits of the underlying unappealed injunction. The text of the Ninth Circuit opinion in *Irwin II* is dictum on the matter of the availability of remedies in addition to those provided in *section* 1719, and, thus, is not precedential. The parties have not cited, nor has this court located, any other case directly addressing the availability of prejudgment interest in conjunction with *section* 1719.

> *Palmer vs. Stassinos*, (2004) 348 F. Supp. 2d 1070, 1078

Plaintiff also devotes two pages of her Points and Authorities to an interpretative bulletin published by the California Department of Consumer Affairs. They have included in their Points and Authorities because Judge Whyte properly refused to take Judicial Notice of it or even consider it in the *Palmer vs. Stassinos* case for the following reasons:

> "In opposition to defendants' motions to dismiss, plaintiffs in both cases request that the court judicial notice a legal guide produced by the Legal Affairs division of the California Department of Consumer Affairs. They assert that the document, *California's Bad Check Law*, is a matter of public record. Defendants oppose this request, contending

1
2
3

that the contents of the legal guide are not facts,
rather a person's interpretation of the law and
consequently subject to dispute. The court agrees that
the guide is not the proper subject of judicial notice,
nor is it binding on the court."

4      *Palmer vs. Stassinos*, (2004) 348 F. Supp. 2d 1070, 1077

5      Plaintiff has cited no binding precedent to guide this Court

6  **because there is *none!*** The only published opinion analyzing this

7  issue is the opinion of Judge Whyte in *Palmer vs. Stassinos*,

8  (2004) 348 F. Supp. 2d 1070. Therefore, this Court must conduct

9  its own independent analysis of the facts and the law and render

10 its own decision.

11      The *Palmer* case, as well as the numerous other FDCPA cases

12 cited by Plaintiff, were not appealed to obtain binding precedent

13 because those defendants engaged in other unrelated and

14 reprehensible behavior constituting a clear violation of the

15 FDCPA. Since FDCPA liability for one violation is the same as it

16 is for 100 violations, a defendant has no reason to appeal the

17 portion of a decision that is legally incorrect when it is

18 accompanied by a decision that correctly imposes liability for

19 its illegal and reprehensible conduct.

20      The case now before this Court is different, in that the

21 only conduct at issue is whether the defendant can collect **both**

22 interest and the *Civil Code* 1719 returned check charge. No other

23 reprehensible conduct or other illegal collection tactics by the

24 Defendant are at issue in this case.

25                                    **III**
                  **WHAT WAS THE LEGISLATIVE INTENT WHEN**
26              ***CIVIL CODE SECTION* 1719 WAS ENACTED?**

27          * * * Unfortunately, section 1719 is silent as to the
            availability of interest in light of the service charge
28          and treble damages provisions...."

1          *Palmer vs. Stassinos*, (2004) 348 F. Supp. 2d 1070, 1078

2     In 1976, the California Supreme Court said:

3          "the well-settled rules of statutory construction that,
           if possible, the codes are to be read together and
4          blended into each other as though there was but a
           single statute, (citations omitted), and that the
5          existence of a particular statute does not negate the
           effect of a general statute unless there is a conflict.
6          (Citations omitted)."

7          *Lara vs. Board of Supervisors*, (1976),
           59 Cal. App. 3d 399, 408-409

8
9     Judge Whyte decided the legislature intended to force the

10    victim of a dishonored check writer to give the check writer an

11    interest free loan? Judge Whyte is wrong! There is utterly

12    evidence to ascribe this intent to the legislature.

13         To determine the legislative intent, the problem legislature

14    wanted to solve must be identified. A person who pays for goods,

15    wares, and merchandise from a merchant with a dishonored check

16    is, in effect, committing a robbery. The only difference between

17    the robber and the dishonored check writer is that the robber

18    uses a gun, while the dishonored check writer uses a ball point

19    pen. Both steal goods, wares, and merchandise from the merchant

20    without paying for them.

21         As Judge Whyte observed, *Civil Code §1719* itself is silent

22    on whether interest is allowed. Counsel for Plaintiff told Judge

23    Whyte silence meant the legislature intended to reward the

24    wrongful behavior of the dishonored check writer with an interest

25    free loan at the expense of the victim (*Palmer vs. Stassinos*,

26    (2004), 348 F. Supp. 2d 1070, 1078). Defendant argues the

27    legislature intended to require the dishonored check writer to

28    make full and complete restitution to the victim for the check

      writer's wrongful behavior, including a returned check

charge of up to $35.00 to offset the cost of processing the

dishonored check **and** the payment of interest on the debt to

compensate the victim for the loss of use of the victim's money.

After all, interest is just rent for the use of someone else's

money!

The California Bill Analysis dated August 20, 1996

concurring in the Senate Amendments to *Civil Code* §1719 (Judicial

Notice Exhibit 1) supports Defendants interpretation:

> "American Stores Company which operates over 650 Lucky,
> Super Saver and Sav-On retail stores in California
> supports this measure. They point out that **during 1995
> they had over 300,000 checks returned unpaid by the
> bank. The costs associated with attempting to make
> collection on these checks is enormous. It is both
> reasonable and fair that those who write bad checks pay
> the cost of collection. To the extent that they are not
> paid by the writers of these checks, they would be
> passed on to all consumers.**" (Emphasis added)"
>
> California Bill Analysis dated August 20, 1996
> concurring in the Senate Amendments to *Civil Code*
> § 1719 (Judicial Notice Exhibit 1)

This legislative analysis shows the legislature intended to

allow the recipients of dishonored checks to recover **all** the

costs from the dishonored check writers instead of the public.

This legislative analysis shows the legislature intended

that the dishonored check writer be required to **"pay the cost of

collection",** and did not intend to have **any part** of the cost of

collecting dishonored checks passed **"on to all consumers"**. The

interpretation sought by Plaintiff, which is to deny a merchant

who receives a dishonored check interest on the debt, has the

effect of transferring a large part of the cost of the dishonored

check initially to the merchant and eventually to all consumers.

Instead of passing the costs onto the dishonored

1  check writer, Plaintiff wants to pass the costs onto the merchant

2  and eventually to **all** consumers. This is the opposite of the

3  result the legislature said it intended to achieve.

4      The facts in this case illustrate the completely **unjust**

5  result that Plaintiff Hunt advocates and illustrates why Judge

6  Whyte is **wrong.** Between June, 2004 and August, 2004, Plaintiff

7  Hunt wrote forty seven (47) consecutive dishonored checks.

8  (Defendants Request for Judicial Notice #2, Exhibit 2, Pages 46 -

9  52). The only thing that kept Plaintiff Hunt from writing any

10  more dishonored checks was that the Bank of America closed her

11  account. (Defendants Request for Judicial Notice #2, Exhibit 2,

12  Page 52). According to Plaintiff Hunt and Judge Whyte, the

13  legislature intended to force the victims of Plaintiff Hunt's

14  shopping spree to give Plaintiff Hunt forty seven (47) separate

15  interest free loans from the merchants she defrauded with

16  dishonored checks! There is no possibility the legislature intend

17  this result, and there is no possibility the legislature intended

18  to so reward this dishonest behavior of Plaintiff Hunt with

19  interest free loans!

20      The criminal intent of Plaintiff Hunt is further established

21  by her guilty plea to having embezzled more than $400.00 from her

22  employer (Mervyns) just four months after her shopping spree

23  using dishonored checks. (Defendants Request For Judicial Notice

24  #2, pages 55 - 57.)

25      When reading *Civil Code §*1719 and *Civil Code §*3287 together,

26  the only reasonable interpretation is the legislature

27  enacted *Civil Code §*1719 to allow the victim of the dishonored

28  check writer to receive all damages sustained from being given a

1   dishonored check, including interest or rent for the money the

2   dishonored check writer forced the victim to loan them. It is not

3   reasonable to believe the legislature intended to reward the

4   dishonored check writer with an interest free loan at the expense

5   of, and without the consent of, the victim.

**IV**
6
**PRE-JUDGMENT INTEREST IS AN ELEMENT OF DAMAGES**
7   **THAT IS INCLUDED IN A NEW REMEDY CREATED BY THE**
**LEGISLATURE UNLESS THE LEGISLATURE SPECIFICALLY EXCLUDES IT**
8

9       Plaintiff's counsel cites 3, *Witkin, California Procedure,*

10  *4th Edition* Actions §7, page 60 as legal authority to support his

11  contention that the creation of a new right and remedy by a

12  statute is exclusive and that no other remedy will be allowed.

13  Plaintiff's counsel should have read the entire topic through to

14  page 63. If he had read further, he would have discovered that

15  the California Supreme Court repudiated this doctrine in 1947. On

16  this subject, Professor Witkin states:

17          In *Orloff v. Los Angeles Turf Club*, (1947), 30 C. 2d
            110, 113, 180 P.2d 321, the court reexamined and
18          relaxed the supposed general rule of exclusiveness of a
            statutory remedy. The rule, said the court, "is a
19          corollary of, a consequence flowing from, or a specific
            application of, the general common law rule of
20          statutory construction that statutes, in derogation of
            the common law, will be strictly construed. . . . But
21          that rule **does not prevail in this state,** at least, as
            to the provisions of the four original codes". And, in
22          any event, the rule does not apply where the statutory
            remedy is *inadequate*. Accordingly, it was held that a
23          suit could be maintained for injunctive relief against
            defendants, who had refused to allow plaintiff access
24          to a public horse racing exhibition. The decision was
            on the ground that the statutory remedy of compensatory
25          damages plus $100 penalty under former C.C. 54 was not
            an adequate means of redress, since the actual damages
26          would be difficult to prove, and the penalty was
            relatively insignificant. (Citations omitted.)

27          It should be noted that the court in the *Orloff* case,
            correctly repudiating the doctrine of strict
28

---

1
2

> construction of new statutory remedies, indirectly disapproved of the reasoning on which may of the cases stating the general rule are based."

3
4

> 3, *Witkin, California Procedure, 4th Edition* Actions §7, pages 62-63

5

In 2001, the California Supreme Court again **rejected** the

6

same argument that it first repudiated in 1947 by holding that

7

the creation of a new right and a new statutory remedy by the

8

legislature is **not** exclusive and does **not** deprive the victim of

9

any other remedy, including interest. In *Currie vs. Workers'*

10

*Compensation Appeals Board* (2001), 24 Cal. 4th 1109, 104 Cal.

11

Rptr. 2d 392, the Plaintiff received an award of back pay under

12

*Labor Code* 132a. The Court of Appeal denied prejudgment interest

13

because "Section 132a provides for a comprehensive remedy, which

14

does not include interest..." (), which is the same argument now

15

advanced by Plaintiff. The California Supreme Court rejected this

16

argument, holding the enactment of a new right and statutory

17

remedy did not affect the general statutes regarding interest

**unless** the legislation specifically stated otherwise.

18

The California Supreme Court held that *Civil Code* §3287

19

applies to **any** award for unliquidated damages under a statute

20

unless the statute contains specific language denying interest.

21

Since *Civil Code* §1719 does **not** contain **any** language that even

22

addresses interest, the California Supreme Court said that the

23

law in California is that *Civil Code* §1719 requires that pre-

24

judgment interest be allowed under *Civil Code* §3287. The

25

pertinent portion of that opinion reads as follows:

26
27
28

1
2
3
4
5
6
7
8
9
10

> "WCAB awards of prejudgment interest under Civil Code Section 3287 are consistent with both the letter and the spirit of labor Code section 132a. Nothing in section 132a expressly or impliedly precludes such an award. Indeed, the statute's authorization of "reimbursement for lost wages" could reasonably be understood as impliedly authorizing accompanying interest, since, without such interest the employee will not be fully reimbursed for the value of the lost wages. (citation omitted) **The lack of express authorization for interest in section 132a is not significant.** "Such a provision would be redundant, as the Legislature provided elsewhere, and generally, in Civil Code section 3287...for the recovery of interest... the right to recover which is vested in the claimant on a particular day. (Citation omitted)."
>
> *Currie vs. Workers' Compensation Appeals Board* (2001), 24 Cal. 4th 1109, 1116, 104 Cal. Rptr. 2d 392, 398-399

11  The California Supreme Court rejected the primary basis

12  theory upon which Plaintiff's and Judge Whyte's rely. The

13  California Supreme Court said inserting such a provision would be

14  redundant and unnecessary since interest is governed by *Civil*

15  *Code* 3287.   The California Supreme Court went on to hold"

16
17
18
19
20
21
22
23
24
25
26

> "In summary, although Labor Code Section 132a does not itself expressly authorize the addition of prejudgment interest to an award of backpay to a victim of discrimination, Civil Code section 3287 requires such interest on damages due on a particular date, including awards of backpay, when they are certain or capable of being made certain by calculation. Neither section 5800 nor any other provision of the Labor Code cited to us or discovered in our research precludes addition of interest to a backpay award, and addition of interest would serve the remedial purpose of section 132a. Harmonizing the provisions of the Labor and Civil Codes to further the overall legislative goals, therefore, we conclude the WCAB may and must, when the criteria of Civil Code section 3287 are met, add to its awards reimbursing employees for lost wages and work benefits interest from the dates such wages and benefits would have become due had the employer not acted in violation of section 132a. Because the WCAB denied petitioner interest in the belief such an award was unauthorized, it must reconsider its award in this case.

27
28

> *Currie vs. Workers' Compensation Appeals Board* (2001), 24 Cal. 4th 1109, 1119, 104 Cal. Rptr. 2d 392, 400-401

1    Therefore, according to the California Supreme Court, *Civil*

2  *Code* §3287 applies to **any** award for unliquidated damages under a

3  statute unless the statute contains specific language to the

4  contrary. Since *Civil Code §*1719 does **not** contain **any** language

5  to the contrary, *Civil Code §*1719 requires that pre-judgment

6  interest be allowed under *Civil Code* §3287.

7                                **V**
                **INTEREST IS AWARDED ON LIQUIDATED DAMAGE AWARDS**

8
         Plaintiff claims imposing interest on a statutory penalty
9
   allows a double recovery. However, the law in the Ninth Circuit
10
   is that statutory penalties **do** bear interest.
11
         In 1974, the Ninth Circuit Court of Appeal considered a
12
   similar argument in connection with a liquidated damage award
13
   under a contract provision. The contract at issue in the case had
14
   a valid liquidated damage provision, and the Court held "since
15
   the claim is for a liquidated amount, plaintiff is also entitled
16
   to an award of interest from the date of the bank's refusal to
17
   honor the draft." (*Wichita Eagle and Beacon Publishing company,*
18
   *Inc. v. Pacific National Bank of San Francisco*, (1974), 493 F.2d
19
   1285, 1287). Therefore, the law in the Ninth Circuit Court of
20
   Appeals is that interest under *Civil Code §*3287 on an award for a
21
   penalty.
22
                               **VI**
23    **DEFENDANT WOULD NOT RECEIVE A DOUBLE OR MULTIPLE RECOVERY**

24         The rationale employed by Judge Whyte does not apply to the

25  facts of this case in which only a $35.00 returned check charge

26  and interest on the check were imposed on the dishonored check

27  writer. Allowing the victims of the Plaintiff to recover $137.15,

28  $35.00, and interest on the check **does not even** fully

1  compensate the victim for damages, let alone result in a double

2  or multiple recovery. The amounts sought by Defendant constitute

3  less than full restitution of all the damages caused by the

4  Plaintiff's wrongful act, **not** more!

5  In the Castillo matter, Defendant sought the returned check

6  charge of $25.00 permitted by *Civil Code* §1719, in addition to

7  the amount of the check and interest on the check. The $25.00

8  returned check charge was 9% of the principal balance, and was

9  intended by the legislature to compensate the victim of the

10  dishonored check writer for the costs of processing the

11  dishonored check, including the substantial bank charges that

12  Defendant's Assignor had to pay for the dishonored check.

13  Allowing a returned check charge of 9% of the principal balance

14  along with interest under *Civil Code* §3287 does **not** result in

15  either a double recovery or a multiple recovery for the same

16  loss. Not allowing interest requires the merchant, and eventually

17  the consumers, to pay a portion of the cost of Castillo's

18  dishonored check. If the check remains unpaid for 12 months, the

19  returned check charge imposed under *Civil Code* 1719 does not even

20  cover the merchant's damage for loss of use of his money, also

21  known as **interest.**

22  In the Hunt matter, Defendant sought the returned check

23  charge of $35.00 permitted by *Civil Code* §1719, in addition to

24  the amount of the check and interest on the check. The $35.00

25  returned check charge was 25% of the principal balance, and was

26  intended by the legislature to compensate the victim of the

27  dishonored check writer for the costs of processing the

28  dishonored check, including the substantial bank charges that

Defendant's Assignor had to pay for the dishonored check.

Allowing a returned check charge of 25% of the principal balance along with interest under *Civil Code §*3287 does **not** result in either a double recovery or a multiple recovery for the same loss. Not allowing interest requires the merchant, and eventually the consumers, to pay a portion of the cost of Hunt's dishonored check. If the check remains unpaid for two and one half years, the returned check charge imposed under *Civil Code* 1719 does not even cover the merchant's damage for loss of use of his money, also known as **interest**.

Finally, Judge Whyte clarified his original ruling in a subsequent published opinion, *Palmer vs. Stassinos*, (2005), 419 F. Supp. 2d 1151. While Judge White refused to reconsider his opinion that interest is not available, Judge Whyte said is opinion "was not intended to address or preclude attorney fees, post-judgment interest, and contractual damages". (*Palmer vs. Stassinos*, (2005), 419 F. Supp. 2d 1151, 1153.)

This subsequent ruling by Judge Whyte further illustrates the flaw of his analysis. Under Judge Whyte's ruling, *Civil Code Section* 1717.5 that allows for a recovery of attorney fees on a dishonored check is a remedy that is still available to a creditor who imposes charges under *Civil Code* 1719 while interest under *Civil Code Section* 3287 is a remedy that is not available. There is no rational or reasonable legal analysis that can support this distinction between the two remedies.

*Civil Code Section* 1717.5 permits a recovery for attorney fees on a dishonored check of 25%, to a maximum recovery of $660.00. Why does the recovery of interest constitute a double recovery if the recovery of 25% of the balance for attorney fees

1  does not? Judge Whyte's clarification illustrates why both the

2  clarification and the original opinion are completely

3  inconsistent and legally incorrect.

4                              **VII**
     **ALL OF THE RIGHTS OF SAFEWAY WERE ASSIGNED TO DEFENDANT**

5

6      Plaintiff cites *Ballard vs. Equifax Check Services, Inc.,*,

7  27 F. Supp 3d 1206-1207 for the principle that only the original

8  creditor, and not an assignee, can enforce all of the contract

9  rights. *Ballard* does not support this argument.

10     In *Ballard*, the Court reviewed the written contract between

11 the original creditor and the defendant debt collector. The Court

12 made factual findings that the defendant debt collector was a

13 check authorization business that had *purchased* the Plaintiff's

14 check and was the *holder* of the Plaintiff's check.

15 The Court found that the debt collector had not received an

16 assignment of the underlying account from the original creditor.

17     This distinction was recognized by Judge Ware in the case of

18 *Abels vs. Boyajian*, 434 F. Supp.2d 763 (2006). Judge Ware wrote:

19         "The relevant question in this case is whether
           Defendants took the place of Plaintiff's original
20         creditors as their assignee. Although the Court in
           *Ballard* held that a debt collector could not apply a
21         service charge as an incidental damage in place of a
           seller under *California Commercial Code* 2710, this
22         holding is distinguishable since defendant in that case
           only owned the face value of the check and not the
23         complete set of rights of the seller. *Id.* At 1207. If
           Defendants did acquire the rights of a seller through
24         assignment, whether the $25.00 service charge is
           commercially reasonable is dependent on what would have
25         been commercially reasonable for the merchant to charge
           within the context of the specific incident. *Newman*,
26         112 F. Supp. at 1368.

27         Similarly, under *California Civil Code* 3300, which
           awards damages for detriment proximately caused by a
28

1    breach of contract, Defendants are only permitted to
     impose a service charge if they were assignees of
2    Plaintiffs' original creditors, acquiring all the same
     rights under the contract."
3
     *Abels vs. Boyajian*, 434 F. Supp.2d 763, 765 (2006)
4
5    The Deposition of William Johnson, (Defendants Second Index

6    of Evidence, page 67:10 - 68:9; 69:13 - 70:5; 17:18 - 32:9;)

7    establishes that Safeway orally assigned **all** of its right, title,

8    and interest to the entire account of Plaintiff to Defendant

9    without any reservation. ("An assignment may be made *orally* in

10   every case except those in which a writing is expressly required

11   by statute.", 1, *Witkin, Summary of California Law, 9th Edition*

12   832). The assignment included the entire account, and not just

13   the obligation represented by the check. Therefore, Defendant

14   steps into the shoes of its assignor and can seek all damages

15   available to its assignor, Safeway, including incidental damages

16   under both *Commercial Code* 2710 and interest under *Civil Code*

17   3287.

18                            **VIII**
     **PLAINTIFF CREATED FOUR THEORIES OF RECOVERY BY A SINGLE WRONG.**
     **THE FIRST THEORY OF RECOVERY WAS UNDER *CIVIL CODE* 1719 FOR**
19   **ISSUING A DISHONORED CHECK; THE SECOND THEORY OF RECOVERY WAS**
     **FOR A BREACH OF THE CONTRACT EVIDENCED BY THE DISHONORED CHECK;**
20   **A THIRD THEORY OF RECOVERY WAS FOR THE COMMON COUNT OF GOODS,**
     **WARES, AND MERCHANDISE HAD AND RECEIVED BY THE PLAINTIFF; AND**
21   **THE FOURTH THEORY WAS FOR RECOVERY UNDER DIVISION 2 OF THE**
                  **CALIFORNIA COMMERCIAL CODE GOVERNING SALES**
22
23   "The essence of a cause of action is the existence of a
     primary right and one violation of that right.
24   (Citations omitted). The cause of action as it appears
     in the complaint will be the facts from which the
25   plaintiff's primary right and the defendant's
     corresponding duty have arisen, together with the *facts*
26   which constitute the defendant's delict or wrong.
     (Citations omitted)

27   The seeking of two different kinds of relief does not
     establish different causes of action."
28
     *Kaufman & Broad vs. City & Surburban Mortgage Co.*,
     (1970), 10 Cal. App.3d 206, 215, 88 Cal.Rptr. 858, 863

1
2
3
4
5
6
7

"The situation is different where the single cause of action (injury to plaintiff's primary right by defendant's wrong) gives rise to *alternative remedies or legal theories of recovery*. Thus, if defendant wrongfully takes plaintiff's goods, there is but one invasion of plaintiff's rights by one wrong, hence, only one cause of action. Plaintiff may, however, seek redress on alternative *legal theories* of conversion (tort) or quasi-contract (waiver of tort), and pray for alternative *remedies* of damages (for conversion), value of the goods (quasi-contract), or specific recovery of goods. (*See* 2 *Cal. Proc.* (4th), *Actions*, §160.)

8      4, *Witkin, California Procedure, 4th Edition* 618

9      *California Commercial Code Section* 2710 reads as follows:

10
11
12
13

"**Seller's Incidental Damages.** Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses, or commissions incurred in stopping delivery, in the transportation, care, and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach."

14      *California Commercial Code Section* 2710

15      In *Newman vs. Checkrite*, 912 F. Supp 1354, the debt

16   collector and their attorneys were successfully sued by

17   Plaintiffs attorneys for the reprehensible conduct of levying

18   charges on debtors for attorney fees and other clearly illegal

19   fees. Plaintiffs attorneys also challenged fees that the debt

20   collectors levied under *California Commercial Code Section* 2710.

21   Judge Karlton refused to find these charges illegal for the

22   following reasons:

23
24
25
26
27
28

"Upon dishonor of the checks, a merchant may recovery only commercially reasonable charges or expenses resulting from the breach. *Cal. Com. Code* 2710. Assuming, without deciding, that defendants have the right to collect service charges, they do so under the theory that they stand in the merchant's shoes when the impose a service charge. Thus, it follows that the defendants must prove that the amount of their service charges is a commercially reasonable incidental damage to the merchant. ...

* * *

1

> Nonetheless, because defendants may be able to adduce
> evidence at trial that the service charges were
> commercially reasonable incidental damages to the
> merchants or that plaintiffs intended to enter into
> contracts with the merchants, summary judgment for
> plaintiffs is denied as to violations of 1692f(1) and
> 1692e(2) for the twenty-five to thirty dollar service
> charges.

2

3

4

5

> *Newman vs. Checkrite*, 912 F. Supp 1354, 1368-1369

6

7

There is nothing in the language of *Civil Code Section* 1719

8

to indicate the legislature intended to deprive merchants of the

9

benefits of *Commercial Code Section* 2710 when they become victims

10

of a dishonored check writer. Indeed, the following excerpts from

11

the legislative history clearly indicate a contrary intent:

12

> "A recent federal case dealing with the issue of the
> imposition of bad check charges by merchants, (Newman
> v. Checkrite California, Inc. (E.D.Cal. No. CIV. 8-93-
> 1557 LKK, December 19, 1995) suggests that because
> state law only provides for a commercially reasonable
> charge, merchants must prove that their charges are
> indeed commercially reasonable. Merchants are concerned
> that this case may require some merchants to prove in
> each case that their charge is "commercially
> reasonable".

13

14

15

16

17

> California courts have recognized the legality of fees
> in other contexts and have not required that the
> merchant prove in each case that the charge be
> "commercially reasonable." Courts have held that
> requiring proof of the actual damages incurred by the
> company would be impractical, extremely difficult and
> expensive to determine. **The charge should represent a
> reasonable endeavor to fix the probable loss resulting
> to the merchant and that charge should bear a
> reasonable relation to such loss and be reasonable in
> amount.** (Emphasis added.)

18

19

20

21

22

> ARGUMENTS IN SUPPORT: According to the sponsor of this
> measure, the California Retailers Association (CRA),
> the Newman case has caused concern among merchants
> about the validity of bad check fees charged by
> merchants.

23

24

25

26

> **This measure is intended to declare that the imposition
> of bad check fees by retailers and other payees is
> permissible under current law and to clarify that bad
> check fees of up to $35 are commercially reasonable.**
> (Emphasis added) The figure of $35.00 was

27

28

1                  arrived at based upon a survey of CRA members and
because the United States Supreme Court imposes a $35
2                  charge for anyone bouncing a check payable to it.

3                  California Bill Analysis dated August 20, 1996
concurring in the Senate Amendments to *Civil Code*
4                  § 1719 (Defendants Judicial Notice Exhibit 1)

5     The legislative history makes it clear that the legislature

6 intended to modify the portion of the ruling of Judge Karlton in

7 the *Newman* case by not requiring a merchant to prove incidental

8 damages in each case if the merchant levied the fees specified in

9 *Civil Code* 1719. It did not eliminate the ability of a merchant

10 to charge additional commercially reasonable charges, expenses,

11 or commissions under *Commercial Code* 2710 if the merchant were

12 able to prove those charges in a Court of law.

13     In order to prevail, Plaintiff must prove that there are no

14 circumstances under which Defendant could have sought to collect

15 the amount of the check, a returned check charge of $25.00 to

16 Plaintiff Castillo and $35.00 to Plaintiff Hunt, and interest.

17 Even if Defendant is prohibited from imposing both interest and

18 returned check charges under *Civil Code* 1719, Defendant still has

19 the ability to prove the $35.00 charge was a commercially

20 reasonable charge, expense, or commission under *Commercial Code*

21 2710. If those charges are reasonable under *Commercial Code* 2710,

22 Plaintiff will be unable to prove an F.D.C.P.A. violation.

23 Whether those charges are reasonable under *Commercial Code* 2710

24 is a question of fact which cannot be resolved by a summary

25 judgment. Judge Whyte even acknowledged that contractual damages

26 under *Commercial Code* 2710 were still available to the victims of

27 dishonored check writers in the clarification opinion discussed

28 above. (*Palmer vs. Stassinos*, (2005), 419 F. Supp. 2d 1151,

1153.)

1    Finally, it must be noted that the returned check charge in

2  this case was levied by Defendants assignor, Safeway. Therefore,

3  the discussion in some of the other cases about the ability of

4  the assignee to impose the returned check charge does not relate

5  to this case because the returned check charge was imposed by the

6  original creditor.

7                                  **IX**
                    **EFFECT OF ALTERNATIVE REMEDIES**
8

9    The pertinent portions of *Commercial Code Section* 3310 read

   as follows:
10

11            (b) Unless otherwise agreed and except as provided in
              subdivision (a), if a note or an uncertified check is
12            taken for an obligation, the obligation is suspended to
              the same extent the obligation would be discharged if
              an amount of money equal to the amount of the
13            instrument were taken, and the following rules apply:

14

15            (1) In the case of an uncertified check,
              suspension of the obligation continues until
16            dishonor of the check or until it is paid or
              certified. Payment or certification of the check
              results in discharge of the obligation to the
17            extent of the amount of the check.

18            * * *

19            (3) Except as provided in paragraph (4), if the
              check or note is dishonored and the obligee of the
20            obligation for which the instrument was taken is
              the person entitled to enforce the instrument, the
21            oblige may enforce either the instrument or the
              obligation. In the case of an instrument of a
22            third person which is negotiated to the oblige by
              the obligor, discharge of the obligor on the
23            instrument also discharges the obligation.

24            (4) If the person entitled to enforce the
              instrument taken for an obligation is a person
25            other than the oblige, the oblige may not enforce
              the obligation to the extent the obligation is
26            suspended. If the oblige is the person entitled to
              enforce the instrument but no longer has
27            possession of it because it was lost, stolen, or
              destroyed, the obligation may not be enforced to
28            the extent of the amount payable on the

1

2

> instrument, and to that extent the oblige's rights
> against the obligor are limited to enforcement of
> the instrument.

3     *California Commercial Code Section* 3310

4     Plaintiff asserts that this statute prohibits a merchant

5   from proceeding on both the dishonored check and the underlying

6   contractual obligation. Plaintiff is misinterpreting the effect

7   of the statute.

8     This statute uses the word "enforced", which, according to

9   Black's law Dictionary, Fourth Edition, is defined as:

10
11

> "to put into execution; to cause to take effect; to
> make effective; as to enforce a writ, a judgment, or
> the collection of a debt or fin; to compel obedience
> to."

12

13     Therefore, the plain meaning of the statute is that a

14   merchant cannot collect or obtain a judgment for **both** a check **and**

15   for the underlying contract. Thus, in the case of Brandy Hunt,

16   this statute means that Defendant is entitled to one recovery of

17   $137.15 for the check and the underlying obligation. Defendant

18   cannot seek two recoveries, one for $137.15 for the check and

19   another, separate recovery of $137.15 for the underlying

20   obligation, for a total of $274.30. This result is consistent

21   with our rules of pleading and practice. The statutory limitation

22   of one recovery for the debt does not preclude the creditor from

23   seeking the additional collateral remedies that are available

24   under each alternative theory of recovery, such as a returned

25   check charge under *Civil Code* 1719; a commercial reasonable

26   charge under *Commercial Code* 2710; attorney fees under *Civil Code*

27   1717.5, or interest under *C.C.* 3287, in addition to recovery of

28   the $137.15 debt itself.

---

1    *Commercial Code* 3310 was interpreted by the California Court

2    of Appeal in the case of *Long v. Cuttle Construction Co.*, (1998),

3    60 Cal. App. 4th 834, 70 Cal. Rptr. 2d 698. A judgment had been

4    entered against the Plaintiffs for $1,859,964.10. Plaintiffs sent

5    the Defendants checks totaling the judgment amount, which the

6    Defendants accepted and deposited into their account. The

7    Defendants bank placed a five (5) day hold on the checks, after

8    which the checks were paid by the Plaintiff's bank. The

9    Defendants then sought interest in the sum of 5,661.79 for the

10   five days funds were on hold, claiming the judgment accrued

11   interest until the funds cleared. The Court of Appeal disagreed,

12   basing its decision on Commercial Code 3310. The pertinent

13   portion of the opinion reads as follows:

14          "Subdivision (b)(1) provides that if an uncertified
            check is taken for an obligation, the obligation is
15          suspended "to the same extent" as if payment were made
            in money. Under the statutes related above, if payment
16          were made in money, interest would cease to accrue.
            Under section 3310, subsequent payment of the check
17          results in a discharge of the obligation. No interest
            accrues during the suspension of the obligation, which
18          extends until the point of discharge. Hence, no further
            interest is due and the discharge relates back to the
19          time of acceptance of the check."

20          *Long v. Cuttle Construction Co.*, (1998), 60 Cal. App.
            4th 834, 838, 70 Cal. Rptr. 2d 698, 700
21

22          The significance of the *Long* to this case is that the Court

23   recognized that a unpaid debt continues to accrues interest

     except during the period of suspension imposed under *Commercial*
24
     *Code* 3310, and then only if the check is paid. The implication of
25
     this opinion is that if the check is dishonored, the suspension
26
     is terminated and interest accrues from the date the suspension
27
     was initiated.
28

1

## X
## PLAINTIFF IS EXCUSED FROM LIABILITY UNDER 15 U.S.C. 1692k

2

3           "A debt collector may not be held liable in any
            action brought under this subchapter if the debt
            collector shows by a preponderance of evidence that
4           the violation was not intentional and resulted from
            bona fide error not withstanding the maintenance of
5           procedures reasonably adapted to avoid any such error

6           15 *United States Code* 1692k

7    Defendant believed that it was entitled to charge interest

8    because, as was judicially noted in *Palmer vs. Stassinos*, (2004),

9    348 F. Supp. 2d 1070, 1077, every Court in California allows

10   interest on an claim that is certain and is evidenced by a check

11   returned not sufficient funds with returned check charges imposed

12   under *California Civil Code Section* 1719. Until binding legal

13   precedent to the contrary is established in California, the

14   charging of interest, if illegal, is a violation that was not

15   intentional and resulted from a bona fide error notwithstanding

16   the maintenance of procedures reasonably adapted to avoid any

17   such error. Defendant is therefore excused from any liability to

18   Plaintiff pursuant to the provisions of 15 U.S.C. 1692k.

19   While advice of counsel and mistake of law usually does not

20   constitute a defense under the provisions of 15 U.S.C. 1692k, the

21   facts of this case are that interest is allowed under California

22   law unless and until the Judicial Branch of the Federal

23   Government inserts an additional provision into *California Civil*

24   *Code Section* 1719 to the contrary. The failure to recognize that

25   the Judicial Branch of the Federal Government would re-write a

26   California state statute by inserting a new

27

28

statutory provision based on a legal theory the California

Supreme Court **repudiated** in 1947 is a violation that is not

intentional and resulted from a bona fide error notwithstanding

the maintenance of procedures reasonably adapted to avoid any

such error. Therefore, Defendant **must** be excused from any

liability to Plaintiff pursuant to the provisions of 15 U.S.C.

1692k.

**XI**
**CONCLUSION**

Summary Judgment under F.R.C.P. 56(b) must be denied because

Plaintiff will be unable to provide any evidence of such a nature

that a reasonable jury could return a verdict in favor of the

Plaintiff because there is no evidence upon which a jury could

reasonably find that Defendant has any liability to Plaintiff.

Alternatively, there are issues of fact which cannot be resolved

on a Motion for Summary Judgment.


Dated: September 25, 2006          LAW OFFICES OF CLARK GAREN

                                   BY

                                   /s/ CLARK GAREN
                                   CLARK GAREN,
                                   ATTORNEY FOR DEFENDANT

PROOF OF SERVICE BY MAIL
(1013a, 2015.5 C.C.P.)

STATE OF CALIFORNIA          )
COUNTY OF RIVERSIDE          )  S.S.

    I am a citizen of the United States and a Resident of the
County Aforesaid; I am over the age of eighteen years and not a
party to the within entitled action; my business address is:
17100 NORTH INDIAN AVENUE, NORTH PALM SPRINGS, CALIFORNIA  92258

    On SEPTEMBER 25, 2006, I served the within DEFENDANTS
OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT on
the interested parties herein in said action by placing a true
copy thereof enclosed in a sealed envelope with postage thereon
fully prepaid, in the United States mail at PALM SPRINGS,
CALIFORNIA addressed as follows:

IRVING L. BERG,
THE BERG LAW GROUP,
433 TOWN CENTER, NO. 493,
CORTE MADERA, CALIFORNIA 94925

PAUL ARONS,
LAW OFFICES OF PAUL ARONS,
685 SPRINGS STREET,
#104,
FRIDAY HARBOR, WASHINGTON 98250

O. RANDOLPH BRAGG,
HORWITZ, HORWITZ & ASSOCIATES,
25 EAST WASHINGTON,
SUITE 900
CHICAGO, ILLINOIS 60602

RONALD WILCOX,
ATTORNEY AT LAW,
2160 THE ALAMEDA,
FIRST FLOOR,
SUITE F,
SAN JOSE, CALIFORNIA 95126


    I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS
TRUE AND CORRECT.

    EXECUTED ON SEPTEMBER 25, 2006 AT PALM SPRINGS, CALIFORNIA


                         /s/ CLARK GAREN
                         CLARK GAREN, DECLARANT