1  LAW OFFICES OF CLARK GAREN,
   CLARK GAREN, CALIF. BAR #50564
2  P. O. BOX 1790,
   PALM SPRINGS, CALIFORNIA 92263
3  STREET ADDRESS-NO MAIL: 17100 N. INDIAN, PALM SPRINGS, CA. 92258
   TELEPHONE:    (760) 323-4901
4  Fax:          (760) 288-4080
   clarkgaren@msn.com
5
   ATTORNEYS FOR PLAINTIFFS
6  IMPERIAL MERCHANT SERVICES, a California
   corporation, doing business as
7  CHECK RECOVERY SYSTEMS

8                    UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

10

11

12  BRANDY HUNT and BRIAN CASTILLO,    )   Case No. C 05-4993 MJJ
    on behalf of herself              )   Case No. C 05 2037 MJJ
13  and others similarly situated,    )
                                      )   DEFENDANTS OPPOSITION TO
14              Plaintiff,            )   PLAINTIFF'S MOTION FOR
                                      )   CLASS CERTIFICATION
15  -vs-                              )
                                      )
16                                    )
    CHECK RECOVERY SYSTEMS, INC.,     )
17  et. al.,                          )
                                      )
18              Defendants.           )
                                      )
19                                    )
                                      )   Date: October 24, 2006
20                                    )   Time: 9:30 A.M.
    _____  )   Place: Courtroom 11
21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**
**TABLE OF CONTENTS**

| CHAPTER | TITLE | PAGE |
|---|---|---|
| I | INTRODUCTION | 1 |
| II | PLAINTIFF AS NO STANDING TO REPRESENT THE PROPOSED CLASS | 1 |
| III | NO EQUITABLE RELIEF IS AVAILABLE TO AN INDIVIDUAL CLAIMANT OR IN A CLASS ACTION UNDER THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT | 5 |
| IV | PLAINTIFFS HAVE NOT SATISFIED THEIR BURDEN TO SHOW THAT THE CLAIMS OF THE NAMED REPRESENTATIVES ALIGN WITH THE INTERESTS OF THE PROPOSED CLASS | 9 |
| V | PLAINTIFFS MUST SATISFY THE CRITERIA OF ONE OF THE THREE SUBSECTIONS OF F.R.C.P. RULE 23(b) FOR CLASS CERTIFICATION | 12 |
| VI | THE PLAINTIFFS PROPOSED CLASS DOES NOT SATISFY THE CRITERIA OF FRCP RULE 23(b)(2) | 12 |
| VII | THE PLAINTIFFS PROPOSED CLASS DOES NOT SATISFY THE CRITERIA OF FRCP RULE 23(b)(3) | 14 |
| VIII | CONCLUSION | 16 |

1

# TABLE OF AUTHORITIES

2

**FEDERAL CASES:**                                    **PAGE**

3

*City of Los Angeles vs. Lyons*, (1983),
461 U.S. 91, 103 S. Ct. 1660                      3, 4

4

*Flast vs. Cohen*, 392 U.S. 83, 99-100;
5   88 S. Ct. 1942, 1952, 20 L. Ed. 2d 947           3

6   *Palmer vs. Stassinos*, (2004),
348 F. Supp. 2d 1070,                             1,

7

*Palmer vs. Stassinos*, (2006),
8   233 F.R.D. 546,                                   1, 7, 9, 10, 11, 12,
13, 14, 15,

9

*Sadoski v. Mosley*, (9th Cir,. 2006)
10  435 F. 3d 1076, 1080                              2

11  *Securities and Exchange Commission
vs. First Pacific Bancorp,*
12  (9th Cir., 1998) 142 F. 3d 1186, 1191           8
*Wichita Eagle and Beacon Publishing
13  Company, Inc. v. Pacific National Bank of
San Francisco*, (1974), 493 F.2d 1285, 1287

14

**FEDERAL STATUTES:**

15

16  15 U.S.C. 1692k                                    5, 6, 7,

17  **STATE STATUTES:**

18  *California Business and Professions Code
Section 17200*                                    15

19

*California Civil Code Section* 1719               1,
20

**FEDERAL RULES:**

21

F.R.C.P. RULE 23b                                 12

22

F.R.C.P. RULE 23(b)(2)                            12, 17,

23

F.R.C.P. RULE 23(b)(3)                            14, 15, 17,

24

25

26

27

28

**I**
**INTRODUCTION**

The sole case upon which Plaintiff bases its claim that the recipient of a dishonored check may not impose **both** the returned check charge of up to $35.00 permitted by *Civil Code Section* 1719 **and** prejudgment interest is the 2004 published trial court opinion of Judge Ronald M. Whyte. (*Palmer vs. Stassinos*, (2004) 348 F. Supp. 2d 1070. It is significant that, in 2006, a published opinion by Judge Ronald M. Whyte denied class certification in the same case of *Palmer vs. Stassinos* upon which Plaintiffs base their claim of liability (*Palmer vs. Stassinos*, (2006), 233 F.R.D. 546). This opinion is significant because the liability and class action certification issues presented to Judge Whyte are identical to the liability and class action certification issues now before this court.

**II**
**PLAINTIFF HAS NO STANDING TO REPRESENT THE PROPOSED CLASS**

Plaintiff's Hunt and Castillo have discharged their debts to Defendant in their Chapter 7 bankruptcies. While Defendants have filed complaints in each bankruptcy proceeding to deny discharge, those proceedings have not yet been concluded. Therefore, for the purposes of this motion, Plaintiffs are not subject to any further legal collection proceedings. Any further activity outside the proceeding to deny discharge would be actionable as a violation of the permanent injunction issued in connection with their order of discharge.

The proposed class is:

> "All persons to whom defendant mailed a collection demand at any time since December 5, 2004, which (1) included a demand for both interest and a statutory

> service charge, on a dishonored check; (2) where the check was written in the State of California for personal, family or household purposes; and (3) whose mail was not returned as undeliverable."

Since Plaintiffs Hunt and Castillo have discharged their debt to Defendant in bankruptcy, they have no injury and no possibility of future injury. Therefore, they are unable to represent the proposed class.

This principle was stated a published opinion by the 9th Circuit in the case of *Sadoski v. Mosley*, 435 F.3d 1076 (2006). The Plaintiff had been illegally re-sentenced in violation of her double jeopardy rights, as had over 200 other individuals. After Plaintiff was freed, she filed a class action seeking an order compelling the State of Nevada, the Judge, the District Attorney, and the Director of Prisons to seek the freedom of the others who they had illegally incarcerated. The 9th circuit held that because Plaintiff had been freed, she had no standing to represent the class and the Court had no jurisdiction to hear the class action proceeding. The opinion held:

> "Because Sadoski is no longer incarcerated pursuant to an unlawfully modified sentence, her class action claims fail because, as the district court recognized, Sadoski no longer has a personal state in the outcome of this litigation. *See Flast v. Cohen*, 392 U.S. 83, 88 s. Ct. 1942, 20 L. Ed. 2d 947 (1968).
>
> *Sadoski vs. Mosley*, (9th Cir., 2006), 435 F. 3d 1076, 1080

In *Flast vs. Cohen*, Chief Justice Earl Warren explained the requirements for standing as follows:

> "The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated. The gist of the question of standing is whether the party seeking relief has alleged a

1
2
3
4
5

       personal stake in the outcome of the controversy as to assure that a concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions. (Citations omitted.) In other words, when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable."

6
7

       *Flast vs. Cohen*, 392 U.S. 83, 99-100; 88 S. Ct. 1942, 1952; 20 L. Ed. 2d. 947,

8
9
10
11
12
13
14
15
16

    The trial court in *Sadoski* relied on the case of *City of Los Angeles vs. Lyons*, (1983), 461 U.S. 91, 103 S. Ct. 1660, in which a Plaintiff was suing the Los Angeles Police Department over a choke hold. The United States Supreme Court held Plaintiff had no standing to maintain a class action to prohibit future use of the choke hold because there was no likeliehood that Plaintiff would again be placed in the choke hold, so the class action was dismissed for lack of jurisdiction. The United States Supreme Court held:

17
18
19
20
21
22
23
24

       "It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold requirement imposed by Article III of the Constitution by alleging an actual case or controversy. (Citations omitted.) Plaintiffs must demonstrate a personal stake in the outcome in order to assure that concrete adverseness which sharpens the presentation of issues necessary for proper resolution of constitutional questions. (Citation omitted.) Abstract injury is not enough. The plaintiff must show that he as sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical. (Citations omitted.)

25
26
27
28

       In *O'Shea v. Littleton*, 414 U.S. 488, 94 s. Ct. 669, 38 L. Ed. 2d 674 (1974), we dealt with a case brought by a class of plaintiffs claiming they had been subjected to discriminatory enforcement of the criminal law. Among other things, a county magistrate and judge were accused of discriminatory conduct in various respects, such as sentencing members of

---

plaintiff's class more harshly than other defendants. The Court of Appeals reversed the dismissal of the suit by the District Court, ruling that if the allegations were proved, an appropriate injunction could be entered.

We reversed for failure of the complaint to allege a case or controversy. 414 U.S., at 403, 94 s. Ct. At 674. Although it was claimed in that case that particular members of the plaintiff class had actually suffered from the alleged unconstitutional practices, we observed that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects. *Id.* at 495-496, 94 S. Ct. At 675-676. But the prospect of future injury rested on the likelihood that plaintiffs will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners. *Ibid*. The most that could be said for plaintiff's standing was that *if* plaintiffs proceed to violate an unchallenged law and *if* they are charged, held to answer, and tried in any proceedings before petitioners, they will be subjected to the discriminatory practices that petitioners are alleged to have followed. *Id.*, at 497, 94 s. Ct. At 676. We could not find a case or controversy in those circumstances; the threat to the plaintiffs was not sufficient real and immediate to show an existing controversy simply because they anticipate violating lawful criminal statutes and being tried for their offenses.... *Id.* at 496, 94 s. Ct. At 676. It was to be assumed that plaintiffs will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners. *Id.* At 497, 94 s. Ct. At 676."

*City of Los Angeles vs. Lyons*, (1983), 461 U.S. 91, 101-103;  103 S. Ct. 1660, 1065 - 1066

Each Plaintiff has discharged the subject debt in bankruptcy prior to the filing of the instant action, negating any future prospect they would be charged interest, or any other charges, on these bills. Neither Plaintiff has any standing to represent the proposed class because neither Plaintiff has an injury that entitles them to represent the class. In pleadings filed in the bankruptcy adversary proceedings, Attorney Berg and

1  Attorney Wilcox have stated that their clients had no injury and
2  no claim for actual damages, and that their claim was limited to
3  statutory damages. Under the rationale of the *Sadoski, Flast,* and
4  *Lyons* cases, statutory damages are not sufficient to constitute
5  an injury or to confer standing to represent the proposed class.
6  Since neither Plaintiff has standing to represent the proposed
7  class, this Court has no jurisdiction to certify this case as a
8  class action.

9      Jurisdiction is an issue that can be raised at any time,
10 even after judgment has been entered. Defendants concern is that
11 if this Court grants class action certification to a Plaintiff
12 who has no standing, the class action certification and result of
13 this litigation can be challenged at any time by any future
14 claimant wishing to present a claim. Defendant wants to be
15 certain that if class action certification is granted, any
16 judgment will be binding on all members of the class. Since
17 neither Plaintiff has standing, this Court has no jurisdiction to
18 grant class certification. Any judgment entered by this Court
19 will not be binding on the other members of the proposed class
20 because standing and jurisdiction were lacking.

21                              **III**
   **NO EQUITABLE RELIEF IS AVAILABLE TO AN INDIVIDUAL**
22     **CLAIMANT OR IN A CLASS ACTION UNDER THE**
          **FEDERAL FAIR DEBT COLLECTION PRACTICES ACT**
23
24     15 *United States Code* 1692k specifying what relief is
25 available for violations of the Federal Fair Debt Collection
   Practices Act. The statute reads as follows:
26
         **1692k. Civil liability**
27       (a) **Amount of damages.** Except as otherwise provided by
         this section, any debt collector who fails to comply
28       with any provision of this subchapter with respect to

---

any person is liable to such person in an amount equal to the sum of--

    (1) any actual damage sustained by such person as a result of such failure;

    (2)

        (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

        (B) in the case of a class action,
            (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and
            (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

    (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

(b) **Factors considered by court.** In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors--

    (1) in any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; or

    (2) in any class action under subsection (a)(2)(B) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

(c) **Intent.** A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(d) **Jurisdiction**. An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.
(e) **Advisory opinions of Commission**. No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the Commission, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or
determined by judicial or other authority to be invalid for any reason.

15 *United States Code* 1692k

Actual and statutory damages, class action damages, and attorney fees are the **only** remedies available to either an individual Plaintiff or the members of a class for violations of the Federal Fair Debt Collection Practices Act. No injunctive, declaratory, or equitable relief of any kind or character is available, as Judge White explains:

"B. Nature of plaintiffs' remaining claims
[2] Congress explicitly provided private plaintiffs with monetary relief, both actual and statutory, in the FDCPA. See 15 *U.S.C.* § 1692k. No mention is made of injunctive relief for private plaintiffs, and the Third, Seventh, and Eleventh Circuits have found that **equitable relief is not available to an individual.** *Weiss v. Regal Collections*, 385 F.3d 337, 341 (3d Cir.2004); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir.2000); *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir.1982); and see *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 399 (E.D.N.Y.1998). The court is aware that injunctive relief has been granted in other suits involving the FDCPA, such as *Irwin v. Mascott*, 370 F.3d 924 (9th Cir.2004), but the availability of injunctive relief under the FDCPA was not challenged in *Irwin*. Based upon the language of the FDCPA and rulings outside this circuit, the court concludes that **plaintiffs cannot request injunctive or declaratory relief under the FDCPA.**

*Palmer vs. Stassinos,* 233 F.R.D. 546, 548 (2006)

The sole Cause of Action plead by Plaintiffs is an alleged

1   violation of the Federal Fair Debt Collection Practices Act.

2   Actual damages, statutory damages, and attorney fees are remedies

3   available **only** to a named Plaintiff. The members of a class

4   action are **not** entitled to receive actual damages, but can only

5   receive statutory class action damages of 1% of the debt

6   collectors net worth, along with reasonable attorney fees. No

7   form of equitable, declaratory, or injunctive relief is available

8   to either an individual Plaintiff or to **any** proposed class which

9   may be certified.

10      This issue is important because the Motion for Class

11  Certification is based on the class obtaining declaratory relief

12  and disgorgement of all the interest that Defendant received.

13  Disgorgement is an equitable remedy, as stated by the Ninth

14  Circuit Court of Appeal in the following passage:

15          "The district court has broad *equity* powers to order
            the disgorgement of ill-gotten gains obtained through
16          the violation of securities laws."

17          *Securities and Exchange Commission vs. First Pacific
            Bancorp*, (9th Cir., 1998, 142 F. 3d 1186, 1191
18

19      Since disgorgement is an **equitable** remedy, it, along with

20  declaratory and injunctive relief, is not a remedy that is

21  available to either Plaintiff or to any class which this Court

22  which this Court may choose to certify. Thus, if the Ninth

23  Circuit agrees with Plaintiff that Defendant cannot collect both

24  returned check charges and interest, the eventual judgment in

25  this case will be res judicata to any further litigation between

26  Defendant and the members of the proposed class to recover

27  damages. Since disgorgement and declaratory relief are equitable

28  remedies that are not available under the theory of recovery

1  plead by Plaintiff, certification of the proposed class will

2  invoke the Doctrine of Res Judicata to preclude the members of

3  the proposed class from **ever** being able to obtain a refund of

4  illegal interest they will have been found to have paid.

5      Counsel for Plaintiff could have filed an action for

6  disgorgement under the California Unfair Business Practices Act

7  if one of the representatives of the proposed class had actually

8  paid the interest charges Plaintiff's counsel claims to be

9  illegal. However, Plaintiff's counsel instead chose to make

10  Brandy Hunt the class representative, an individual who wrote 47

11  consecutive dishonored checks, paid absolutely nothing on them,

12  (Defendants Request for Judicial Notice #2, Pages 47-52) and them

13  discharged the entire debt in bankruptcy.

14      Since neither Brandy Hunt or Brian Castillo paid any

15  interest or sustained any actual damages, they have no injury and

16  are therefore ineligible to represent the proposed class in

17  either the F.D.C.P.A. action or an action under *California*

18  *Business and Professions Code Section* 17200.

19                          **IV**
           **PLAINTIFFS HAVE NOT SATISFIED THEIR BURDEN TO SHOW**
20      **THAT THE CLAIMS OF THE NAMED REPRESENTATIVES ALIGN WITH**
                  **THE INTERESTS OF THE PROPOSED CLASS**
21
22      In *Palmer vs. Stassinos,* 233 F.R.D. 546 (2006), Judge Whyte

23  held that the documentation submitted by the Plaintiff's in this

24  case was insufficient to satisfy their burden of typicality.

   Judge Whyte held as follows:
25
26              "The typicality requirement serves to "assure that the
                interest of the named representative aligns with the
27              interests of the class." *Hanon v. Dataproducts Corp.*,
                976 F.2d 497, 508 (9th Cir.1992). "Typicality refers to
                the nature of the claim or defense of the class
28              representative, and not to the specific facts from
                which it arose or the relief sought." Id. The Ninth
                Circuit has noted that "the commonality and typicality

requirements of Rule 23(a) tend to merge." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir.2003). The hurdle imposed by the typicality requirement is not great. See *Hanlon*, 150 F.3d at 1020 (finding typicality in proposed class with many named representatives because "the broad composition of the representative parties vitiates any challenge founded on atypicality").

The plaintiffs' motions, however, give scant consideration to the typicality requirement. [FN3] Each motion contains the conclusory statement that "defendant(s) sent plaintiff(s) the same form letters that contain the same allegedly unlawful demands and representation that are contained in the form letters that defendants sent to the class as a whole." This indicates that Palmer (and Hammer) have issues in common with the class members, but does not show that Palmer (and Hammer) are typical members of the class.

Rule 23(a)(3) must mean something other than a court is to consider the issue of commonality twice, as plaintiffs appear to suggest. Plaintiffs have done nothing to address how the named plaintiffs compare to the other members of the proposed classes, and there is no indication whether the named plaintiffs are average members of the class for purposes of this litigation. Several questions spring to mind: How does the number of bad checks the named plaintiffs wrote compare to the number written by the members of the proposed class? How do the amounts of the checks compare? How many notices did the members of the proposed class receive from the defendants, and how many did the named plaintiffs receive?

The court would not be surprised to learn that Palmer and Hammer are not atypical members of the proposed classes. [FN4] To certify the class without some indication that this is true, however, would be to violate the command of *Falcon* to conduct a "rigorous analysis" and ensure "that the prerequisites of Rule 23(a) have been satisfied." See 457 U.S. at 161, 102 S. Ct. 2364. The burden of proving class certification is appropriate rests upon the plaintiffs. *Doninger*, 564 F.2d at 1308. "Mere repetition of the language of [Rule 23] is inadequate." *Gillibeau*, 417 F.2d at 432. Plaintiffs have not met the burden of showing they satisfy the typicality requirement in either case.

FN3. The plaintiffs' motions also contain significant citation errors. There are multiple references to Armstrong v. Davis, 275 F.3d 849 (9th Cir.2001), including a long block quotation in both motions' sections on typicality. See Mem. in Supp. of Pl.'s Mot. for Class Certification ("Pl.'s Far West Mot.") at 9; Mem. in Supp. of Pl.s' Mot. for Class Certification ("Pl.s' Stassinos Mot.") at 13. Neither

1   the block quotation nor anything resembling it appears
2   in Armstrong. It instead appears to be from a Seventh
    Circuit case: De La Fuente v. Stokely-Van Camp, Inc.,
3   713 F.2d 225, 232 (1983).

4   Elsewhere, the plaintiffs claim the sentence "A
    sufficient nexus is established if the claims or
5   defenses of the class and the class representatives
    arise from the same event or pattern or practice and
6   are based on the same legal theory" is from Armstrong,
    Pl.'s Far West Mot. at 7; Pl.s' Stassinos Mot. at 11,
7   but neither it nor anything resembling it appear in
    that case. The sentence and slight variations on it
    appear to be from cases originating primarily in
8   Florida. See, e.g., Kornberg v. Carnival Cruise Lines,
    Inc., 741 F.2d 1332, 1337 (11th Cir.1984); Cheney v.
9   Cyberguard Corp., 213 F.R.D. 484, 491 (S.D.Fla.2003).

10  The court finds these errors of significance. Whether
    accidentally or intentionally, the plaintiffs have
11  twice (or four times, depending on whether one
    considers the two briefs to be independent of each
12  other) presented out-of-circuit authority as
    controlling.
13
    FN4. In his opposition to the plaintiffs' motion for
14  class certification, Stassinos argues that plaintiffs'
    showing of typicality is inadequate but does not argue
15  that plaintiffs are atypical members of the proposed
    class.
16
    *Palmer vs. Stassinos,* 233 F.R.D. 546, 549 - 550 (2006)
17
18      Plaintiffs seek to represent every person who received a

19  collection notice from Defendant demanding the payment of both

20  interest and a returned check charge. As Judge Whyte observed,

21  individuals who paid no interest are **not** typical of this class.

22  The only class that these Plaintiffs are typical of are

23  Plaintiffs who have written a dishonored check, paid no interest,

24  and then discharged their debt in bankruptcy.

25      Of course, this would raise another problem, because the

26  proceeds that would be payable to the proposed class members

27  would be assets of their bankrupt estates and belong to the

28  creditors of the dishonored check writers, not the dishonored

    check writers themselves. (In order for the recovery to belong

1  to the dishonored check writer, the check writer would have had

2  to have scheduled this claim on their Schedule of Bankruptcy

3  Exemptions)

4       Judge Whyte also wanted to know the number of bad checks

5  each class member and class representative wrote so he could

6  compare them, showing he was aware of the difference between a

7  class representative who made a bookkeeping mistake and a class

8  representative like Plaintiff Brandy Hunt who wrote 47

9  consecutive dishonored checks over two and one-half months. If

10  Judge Whyte knew that the result of his opinion was that he

11  granted dishonored check writer Plaintiff Brandy Hunt 47 separate

12  interest free loans, he might have re-considered his analysis of

13  the entire interest issue.

14       Neither Plaintiff Brandy Hunt or Brian Castillo satisfy the

15  requirement of typicality. Therefore, the motion for class

16  certification should be denied.

17  
18
### V
### PLAINTIFFS MUST SATISFY THE CRITERIA OF ONE OF THE THREE SUBSECTIONS OF F.R.C.P. RULE 23(b) FOR CLASS CERTIFICATION

19  
20
"To be certified, a class must satisfy the criteria of one of the three subsections of 552 Rule 23(b)"

21  
22
*Palmer vs. Stassinos,* 233 F.R.D. 546, 551 - 552 (2006)

### VI
### THE PLAINTIFFS PROPOSED CLASS DOES NOT SATISFY THE CRITERIA OF FRCP RULE 23(b)(2)

23  
24  In *Palmer vs. Stassinos,* 233 F.R.D. 546 (2006), Judge Whyte

25  held that the Plaintiff's class was not eligible for

26  certification under F.R.C.P. 23(b)(2) for the following reasons:

27
"A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby

28  making appropriate final injunctive relief or

---

corresponding declaratory relief with respect to the class as a whole." Rule 23(b)(2). The Advisory Committee notes to the original (1966) version of the rule state that the "subdivision does not extend to cases in which appropriate final relief relates exclusively or predominantly to money damages." The Supreme Court has noted that there "is at least a substantial possibility" that class actions seeking monetary damages can only be certified under Rule 23(b)(3). *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121, 114 S. Ct. 1359, 128 L. Ed.2d 33 (1994). The Court was concerned that it may be unconstitutional to certify a class action seeking monetary damages under either of the first two "mandatory" provisions of Rule 23(b); only the opt-out available to class members under Rule 23(b)(3) necessarily provides sufficient due-process protections to class members when money is at stake. Id. at 120, 114 S. Ct. 1359.

While the Ninth Circuit has declined to adopt a rule that class actions seeking monetary damages are per se certifiable only under Rule 23(b)(3) if at all, it has required a careful consideration of the facts of each case to ensure that a class certified under Rule 23(b)(2) is primarily seeking injunctive relief. *Molski v. Gleich*, 318 F.3d 937, 949-50 (2003). The court in Molski described this process as "similar" to the approach of the Second Circuit:

Although the assessment of whether injunctive or declaratory relief predominates will require an ad hoc balancing that will vary from case to case, before allowing (b)(2) certification a district court should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery. *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 165 (2001).

Since the FDCPA does not allow private plaintiffs to obtain equitable relief, Rule 23(b)(2) does not support class certification in this suit. Furthermore, plaintiffs' assertions that they are primarily seeking injunctive relief are belied by their proposed class definitions. In their case against Stassinos, plaintiffs propose a class consisting of everyone "who wrote checks in California to whom defendant mailed collection demands concerning dishonored checks[ ] since July 27, 2000." In her case against Far West,

1

2          Palmer proposes a class of everyone "with a California
           address to whom defendant mailed a collection demand at
3          any time since July 27, 2000," that contained a claim
           for interest or threatened litigation. Both of the
           proposed classes are united primarily by the past
4          actions of one defendant towards the members. Nothing
           in these proposed class definitions relates to the
5          likelihood of future violations by a defendant.

6          The court does not see either class action as one
           primarily seeking injunctive relief; therefore, neither
7          proposed class is appropriate for
           certification under either Rule 23(b)(2) alone or in
8          conjunction with Rule 23(b)(3).

9          *Palmer vs. Stassinos,* 233 F.R.D. 546, 552 (2006)

10    Judge Whyte, in dealing with the same interest issue upon

11    which this case is based, found that "Since the FDCPA does not

12    allow private plaintiffs to obtain equitable relief, Rule

13    23(b)(2) does not support class certification...." *(Palmer vs.*

14    *Stassinos,* 233 F.R.D. 546, 552 (2006)). Therefore, Plaintiff is

15    not eligible for class certification under F.R.C.P. Rule

16    23(b)(2).

17                              **VII**
              **THE PLAINTIFFS PROPOSED CLASS DOES NOT**
18          **SATISFY THE CRITERIA OF FRCP RULE 23(b)(3)**

19    In *Palmer vs. Stassinos,* 233 F.R.D. 546 (2006), Judge Whyte

20    did not grant Plaintiff class certification under F.R.C.P.

21    23(b)(3) because:

22          "Rule 23(b)(3) requires two additional factors:
           predominance of common issues and superiority of the
23          class action. The Supreme Court has stated:
           "Rule 23(b)(3) includes a nonexhaustive list of factors
24          pertinent to a court's "close look" at the predominance
           and superiority criteria: "(A) the interest of members
25          of the class in individually controlling the
           prosecution or defense of separate actions; (B) the
26          extent and nature of any litigation concerning the
           controversy already commenced by or against members of
27          the class; (C) the desirability or undesirability of
           concentrating the litigation of the claims in the
28          particular forum; (D) the difficulties likely to be
           encountered in the management of a class

action." In setting out these factors, the Advisory
Committee for the 1966 reform anticipated that in each
case, courts would "consider the interests of
individual members of the class in controlling their
own litigations and carrying them on as they see fit."
They elaborated: "The interests of individuals in
conducting separate lawsuits may be so strong as to
call for denial of a class action. On the other hand,
these interests may be theoretic rather than practical;
the class may have a high degree of cohesion and
prosecution of the action through representatives would
be quite unobjectionable, or the
amounts at stake for individuals may be so small that
separate suits would be impracticable." *Amchem Prods.,
Inc. v. Windsor*, 521 U.S. 591, 615-16, 117 S. Ct. 2231,
138 L. Ed.2d 689 (1997) (citations omitted).

*Palmer vs. Stassinos,* 233 F.R.D. 546, 552-553 (2006)

Plaintiffs Hunt and Castillo are unable to satisfy the
requirement of F.R.C.P. 23(b)(3) in this case also. Rule
23(b)(3) requires that this Court take a close look at the
interest of members of the class in individually controlling the
prosecution or defense of separate actions. If the Ninth Circuit
ultimately agrees with Plaintiff, each proposed member of
Plaintiffs class would be eligible to bring an individual action
seeking a refund of any interest paid, together with statutory
damages of $1,000.00 and reasonable attorney fees if class
certification is **denied.** Furthermore, once the Ninth Circuit
publishes an opinion in this case accepting Plaintiff's theory of
liability, any individual who actually sustained damages by
making an interest payment could obtain representation and file a
class action under *California Business and Professions Code
Section* 17200 in which disgorgement of any payment made within
the last four (4) years would be an available remedy, but **only if**
this Court **denies** Plaintiff class certification.

While the net worth of Defendant has not yet been established, the balance sheet on the Federal 1120S Income Tax Return filed by Defendant and provided in discovery showed a net worth of $456,151.00. If class certification is granted, the maximum class action recovery is limited to 1 per cent of the net worth, or $4,561.51. How can this Court justify a finding that it is in the best interests of the thousands of members of the proposed class to each receive a small fraction of $4,561.51 that will not even repay them the illegal interest they paid? This justification becomes even more difficult when an award of statutory damages, attorney fees, and court costs is considered.

Finally, if this class is not certified and the Ninth Circuit Court of Appeals accepts the Plaintiff's interpretation of the law, it would be incumbent upon the Defendant **voluntarily** refund all the illegal interest it collected to avoid any further legal liability for either damages, attorney fees, treble damages under the usury laws, or punitive damages. If this proposed class is certified, the rule of Res Judicata will eliminate any further exposure of the Defendant, and enable it to discharge a potential obligation of hundreds of thousands of dollars of illegal interest it collected by paying a mere $4,561.51 to the proposed class.

## VIII
### CONCLUSION

The Motion for class certification must be denied because:

(1) The FDCPA precludes the proposed class from obtaining any equitable, declaratory, or injunctive relief or disgorgement of interest, and the class is therefore not eligible for certification under Rule 23(b)(2);

1     (2) The proposed class is not eligible for class

2 certification under Rule 23(b)(3) because it is in the best

3 interests of the individual members of the class to individually

4 control the prosecution of a separate action because:

5          (A) The maximum possible recovery as a member of the

6          class is a **very small fraction** of the **actual damages**

7          each member of the proposed class **has sustained**;

8          (B) Individual prosecution is economically feasible

9          because each member will be able to recover their

10         actual damages, statutory damages, along with  attorney

11         fees and court costs for prosecution of an individual

12         action;

13         (C) Class certification will enable the Defendant to

14         claim protection under the Doctrine of Res Judicata,

15         which will enable the defendant to avoid liability for

16         hundreds of thousands of dollars of illegal interest it

17         has collected by paying a mere $4,561.51 to the members

18         of the class.

19         (D) Reserving individual control to each member of the

20         class and thus avoiding the application of the Doctrine

21         of Res Judicata will encourage the defendant to

22         voluntarily refund the illegal interest it has

23         collected to each member of the proposed class before

24         any further legal action is filed.

25

26 Dated: September 26, 2006     LAW OFFICES OF CLARK GAREN

27                        BY

28

_____

                            CLARK GAREN,
_____                  ATTORNEY FOR DEFENDANT

1

              PROOF OF SERVICE BY MAIL
                (1013a, 2015.5 C.C.P.)

2

STATE OF CALIFORNIA          )
COUNTY OF RIVERSIDE          )  S.S.

3

4      I am a citizen of the United States and a Resident of the
County Aforesaid; I am over the age of eighteen years and not a

5  party to the within entitled action; my business address is:
17100 NORTH INDIAN AVENUE, NORTH PALM SPRINGS, CALIFORNIA  92258

6

7      On SEPTEMBER 26, 2006, I served the within DEFENDANTS
OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION on the
interested parties herein in said action by placing a true copy

8  thereof enclosed in a sealed envelope with postage thereon fully
prepaid, in the United States mail at PALM SPRINGS, CALIFORNIA

9  addressed as follows:

10 IRVING L. BERG,
THE BERG LAW GROUP,

11 433 TOWN CENTER, NO. 493,
CORTE MADERA, CALIFORNIA 94925

12

PAUL ARONS,

13 LAW OFFICES OF PAUL ARONS,
685 SPRINGS STREET,

14 #104,
FRIDAY HARBOR, WASHINGTON 98250

15

O. RANDOLPH BRAGG,

16 HORWITZ, HORWITZ & ASSOCIATES,
25 EAST WASHINGTON,

17 SUITE 900
CHICAGO, ILLINOIS 60602

18

RONALD WILCOX,

19 ATTORNEY AT LAW,
2160 THE ALAMEDA,

20 FIRST FLOOR,
SUITE F,

21 SAN JOSE, CALIFORNIA 95126

22

23      I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS
TRUE AND CORRECT.

24      EXECUTED ON SEPTEMBER 26, 2006 AT PALM SPRINGS, CALIFORNIA

25

26                               _____

27                               CLARK GAREN, DECLARANT

28