Paul Arons, State Bar #84970
685 Spring Street, #104
Friday Harbor, WA 98250
Tel:  (360) 378-6496
Fax: (360) 378-6498
lopa@rockisland.com

Ronald Wilcox, State Bar #176601
LAW OFFICE OF RONALD WILCOX
2160 The Alameda, 1st Flr., Suite F
San Jose, CA 95126
(408) 296-0400

Attorneys for Plaintiffs

(Additional plaintiffs' counsel on last page)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDY HUNT and BRIAN CASTILLO, et al, on behalf of themselves and others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>IMPERIAL MERCHANT SERVICES, d/b/a CHECK RECOVERY SYSTEMS,<br><br>　　　　　Defendants. | Case No. 05-04993 MJJ<br>Case No. 06-02037 MJJ<br><br>CLASS ACTION<br><br>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Date: October 24, 2006<br>Time: 9:00 a.m.<br>Courtroom 11 |

## I. INTRODUCTION

The parties have filed cross-motions for summary judgment. One thing that the parties agree upon is that the central liability issue is whether a debt collector, such as Imperial Merchant Services, Inc. [Imperial] may demand the express specific statutory remedies for dishonored checks provided for in Cal. Civil Code § 1719(a), [Section 1719] and also demand interest pursuant to the general statute, Civil Code § 3287. Plaintiffs already have discussed this issue in their opening memorandum, filed September 19, 2006, which they incorporate herein by this reference. In this memorandum, plaintiffs will restrict their response to new issues raised in defendant's opening memorandum.

Contrary to defendant's hyperbole, the great majority of people who write checks that are returned because there are insufficient funds in their bank account are not "robbers" who "steal goods, wares and merchandise without paying for them." They are people who had sufficient financial means to open a checking account. Then, because of mistakes in balancing a checkbook, the failure of a deposit to clear when anticipated, an unrecorded ATM withdrawal by a spouse, and sometimes through malfeasance, they write a check that does not clear. As Congress recognized when enacting the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. [FDCPA]:

> One of the most frequent fallacies concerning debt collection legislation is the contention that the primary beneficiaries are "deadbeats." In fact, however, there is universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is miniscule. . . .When default occurs, it is nearly always due to an unforeseen event . . . . Senate Report No. 95-382, 95th Cong., 1st Sess. 12, *reprinted* in (1977) *U.S.News Cong. & Admin.News* 1695.

Consequently, in enforcing the FDCPA, Congress did not make a distinction between "good" debtors and "bad" debtors. Congress designed the FDCPA to protect consumers from unscrupulous collectors, *whether or not there is a valid debt. Emphasis added*, *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982); *Joseph v. J.J. Mac Intyre Cos., L.L.C.,* 281 F. Supp. 2d 1156, 1162 (N.D. Cal. 2003). Thus, when

**MEMO IN OPP. TO DEFENDANT'S MOT. FOR SUMMARY JUDGMENT: Page 1**

defendant in this case calls check writers "robbers", it is attempting to inflame the Court and appeal to prejudice. The focus of the FDCPA is on conduct of the debt collector in attempting to collect the debt, not the conduct of the debtor in incurring the debt. *Newman v. Checkrite,* 912 F.Supp.2d 1354, 1376 (E.D. Cal. 1995). Thus, the central issue in this lawsuit is whether an overzealous debt collector is adding unlawful collection fees when it collects both a service charge and interest on returned checks.

**II. THE AUTOMATIC SERVICE CHARGE AUTHORIZED BY SECTION 1719 IS ONLY AVAILABLE TO THE MERCHANT WHO DECIDES TO FOREGO PROVING ACTUAL DAMAGES**

A merchant who receives an unpaid check in exchange for merchandise has essentially two options.

(1) It may seek Section 1719 remedies, which include a service charge or treble damages;

(2) It may seek to enforce the underlying obligation, pursuant to Cal. Comm. Code § 3310(b)(3), and recover its actual damages.

As defendant acknowledges, the service charge expressly permitted by Section 1719 is intended to relieve the check payee[1] of the burden of having to prove its commercially reasonable actual damages. However, there is no indication that the Legislature intended that the service charge would cover any one particular category of actual damages. Instead, it appears to be intended to generally cover damages associated with a returned check. The service charge provision was added as a response to the ruling in *Newman v. Checkrite, supra,* 912 F.Supp.2d at 1368, that a merchant would have to prove its "actual damage."

The general rule under California law is that failure to pay or deliver money owed pursuant to a contract gives rise to no recoverable damages beyond the sum wrongfully withheld with interest during the time payment is delayed. *Puppo v. Larosa*, 194 Cal. 717, 720, 230 P. 439, 440 (1924), *Westervelt v. McCullough*, 68 Cal. App. 198,

---

1. Most frequently check payees, especially those who send unpaid checks to debt collectors, are retail merchants.

**MEMO IN OPP. TO DEFENDANT'S MOT. FOR SUMMARY JUDGMENT: Page 2**

206 228 P. 734, 737 (1924).  Thus, a merchant proceeding to enforce the underlying obligation, pursuant to Cal. Comm. Code § 3310(b)(3), would only be entitled is the amount of the check, plus interest.[2]  The merchant is not entitled to recover its third-party collection costs.  *Bondanza v. Peninsula Hospital & Medical Center,* 23 Cal. 3d 260, 268, 152 Cal. Rptr. 446 (1979*).*  Absent unusual circumstances, the merchant is not entitled to other damages.  Thus, as a substitute for actual damages, the Legislature amended Section 1719 to allow a merchant up to add a $35 service charge when collecting an unpaid check.  This amount more than compensates most merchants.  In the case of Donald Trump's hypothetical account at Home Depot, posited by defendant, Home Depot is free to forego the statutory service charge, and proceed to enforce the underlying obligation, recovering all the interest the law allows.  What Home Depot may not do, however, is stack its damages, and recover both interest and a service charge.

By adding sub-division (k) when it amended the statute in 1996, the Legislature made it clear that the service charge would be the only unpaid check remedy, other than those available under Division 3 of the Commercial Code,.  Defendant does not address this purpose of this sub-division.  In construing a statute, a construction making some words surplusage is to be avoided.  *Dyna-Med, Inc. v. Fair Employment & Housing Com.*, 43 Cal. 3d 1379, 1387, 241 Cal. Rptr. 67, 70  (1987).  If, as defendant argues, it is free to pursue a multitude of statutory and common law remedies, then the Commercial Code exception in Section 1719(k) would be meaningless.  To give meaning to that sub-division, defendant's interpretation must be rejected.

### III. SECTION 1719 SHOULD NOT BE INTERPRETED TO ALLOW THE PAYEE OF A RETURNED CHECK A DOUBLE RECOVERY

Imperial cannot dispute that the Legislature intended that the recipient of a returned check would be permitted proceed pursuant to Division 3 of the Commercial Code.  As noted previously, Cal. Comm. Code § 3310(b)(3) provides that: "the obligee may enforce either the instrument or the obligation."  Imperial may respond that this

---

2. A merchant seeking to enforce the underlying obligation, might also be able to recover the bank fee it was actually charged for the returned check.

**MEMO IN OPP. TO DEFENDANT'S MOT. FOR SUMMARY JUDGMENT: Page 3**

means that it may sue on both the check and the underlying sale, so long as it doesn't actually collect duplicative damages, *i.e.,* the check amount and the sales price. This construction, however, is contrary to the Commercial Code. The Official Commentary to this provision states:

> If the check or note is dishonored, *the seller may sue on either the dishonored instrument or the contract of sale* if the seller has possession of the instrument and is the person entitled to enforce it. *Emphasis added.*

This means what it says. Perhaps the seller may plead alternative claims, but before the issue is adjudicated, it will have to settle on one cause of action. Further, the Commercial Code requirement that the seller elect a remedy would be meaningless if the seller could add on other causes of action. Section 1719 provides a generous remedy. If a check does not clear, the merchant is automatically entitled to up to a $35 service charge, even if the check is re-deposited and clears the following day. If the merchant believes that the service charge remedy is inadequate, it may rely on the Commercial Code and sue either on the underlying sales transaction. The one thing the merchant may not do is stack remedies, so that it is getting damages for both the underlying sales transaction, and for a service charge.

## IV. CIVIL CODE § 3287 DOES NOT APPLY, BECAUSE SECTION 1719 PRECLUDES ANY CIVIL REMEDIES OTHER THAN THOSE PROVIDED FOR IN THE STATUTE OR IN DIVISION 3 OF THE COMMERCIAL CODE

Relying on *Currie v. Workers' Comp. Appeals Bd.*, 24 Cal. 4th 1109, 1116-1117, 104 Cal. Rptr. 2d 392, 399 (2001), defendant argues that unless a statute expressly precludes an award of interest, it must be allowed. *Currie* does not stand for so broad a proposition. In *Currie*, the Supreme Court had to determine whether Cal. Labor Code § 132a, providing "reimbursement for lost wages" to a victim of discrimination, should include an award of prejudgment interest under the general interest provision in Civil Code § 3287. The Supreme Court considered the remedial purpose of the statute, along with the fact that the statute was silent on the issue of interest, and ruled that Civil Code § 3287 applied. To hold otherwise, the court reasoned, would be to make the employee less than whole in cases where the employer's failure to pay the wages at the times due

had diminished their value.  In Currie, there was an objectively calculable wage loss that clearly did not already include interest and a statute that did not expressly or impliedly indicate any restriction on other compensatory remedies.

Here, § 1719 expressly makes Division 3 of the Commercial Code an alternative remedy, and provides a service charge which already includes interest as a component.

## V.  THE WICHITA EAGLE CASE IS IRRELEVANT TO THE PENDING MOTION

In *Wichita Eagle & Beacon Publishing Co. v. Pacific Nat'l Bank*, 493 F.2d 1285, 1287 (9th Cir. 1974), the Ninth Circuit ruled that prejudgment interest was due as liquidated damages on a performance bond that required payment of $250,000.00 in the event of default.  From this brief ruling defendant concludes that "the Ninth Circuit Court of Appeals believes California law awards interest under Civil Code § 3287 on an award for a penalty."  Defendant's Memorandum, p. 14:22-24.  Defendant's conclusion is wrong, since a liquidated damages provision is generally not considered a penalty.  Cal. Civil Code § 1671.  Moreover, there is no obvious connection between *Wichita Eagle* and the current dispute.  In the present case, there is no contract, and there is no liquidated damages provision.  The service charge provision in Section 1719 is not a penalty, as opposed to the treble damage provision.  Whether interest may be awarded on a contractual liquidated damages award is irrelevant.

## VI.  DEFENDANT MAY NOT RELY ON THE BONA FIDE ERROR DEFENSE TO INSULATE ITSELF FROM LIABILITY FOR ATTEMPTING TO COLLECT UNLAWFUL CHARGES

The FDCPA is a strict liability statute.  The bona fide error defense, 15 U.S.C. § 1692k(c), is a narrow exception to strict liability.  It is a complete defense.  When this defense applies, the debt collector has no FDCPA liability.  To establish this defense, the debt collector has the burden of proving both that its error was unintentional, and that it maintained procedures designed to avoid errors of this type.  *Clark v. Capital Credit & Collection Servs., Inc.*, 2006 U.S. App. LEXIS 21594, *24 (9th Cir. 8/24/2006).

**MEMO IN OPP. TO DEFENDANT'S MOT. FOR SUMMARY JUDGMENT: Page 5**

In the Ninth Circuit, the bona fide error defense applies only to clerical errors made by the debt collector. *Baker v. G.C. Services, Inc.,* 677 F.2d 775, 779 (9th Cir. 1982). Consistent with *Baker*, the majority of circuits have concluded that the bona fide error defense is limited to clerical errors. *See Johnson v. Riddle*, 305 F.3d 1110, 1121-1122, n. 14 (10th Cir. 2002). The bona fide error defense does not apply to attempts to collect unlawful fees, regardless of the debt collector's intent. In *Guzman v. U.S. Collections West, Inc.*, 2003 U.S. Dist. LEXIS 25189,*9 (D.Az. 2003), the debt collector sought to collect various lease fees that the court determined were unlawful. The court rejected defendant's bona fide error defense because, *inter alia*, the defense was only available for clerical errors. District courts in the Ninth Circuit have followed this rule. *See e.g., Westrienen v. Americontinental Collection Corp.*, 94 F. Supp. 2d 1087, 1101 (D.Or. 2000); *Reichert v. Nat'l Credit Sys.*, 2005 U.S. Dist. LEXIS 5784, *10 (D. Az. 2005); *Gostony v. Diem Corp.*, 320 F. Supp. 2d 932, 946 (D. Az. 2003), (The bona fide error defense "applies almost exclusively to clerical errors which somehow manage to slip through procedures designed to catch them"), quoting *Irwin v. Mascott,* 112 F. Supp. 2d 937, 959 (N.D. Cal. 2000). *See also*, *Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001), (a mistake of law or advice of counsel not sufficient to raise the bona fide error defense); *Martinez v. Albuquerque Collection Servs.*, 867 F. Supp. 1495, 1502-1503 (D. NM. 1994), (the purpose of the bona fide error defense is to allow debt collector to avoid liability for inadvertent clerical errors, not to shield it from liability for systemic abuses).

There is nothing unfair in holding a debt collector liable for allegedly inadvertent violations of the FDCPA. The FDCPA provides for both actual and statutory damages. The court has discretion to set the amount of statutory damages, based, in part, on the nature of the violation and the debt collector's intent. 15 U.S.C. § 1692k(b). If the debt collector's violation were an innocent error that occurred despite a conscientious effort to avoid the error, the court may award minimal statutory damages. However, there is no

**MEMO IN OPP. TO DEFENDANT'S MOT. FOR SUMMARY JUDGMENT: Page 6**

logic or fairness in allowing a debt collector to financially benefit from its mistake by keeping unlawful charges that it should not have collected.

In the present case, defendant has not met either element of the FDCPA. Far from being unintentional, Imperial was aware of the decision in *Palmer v. Stassinos*, issued in December 2004, and intentionally chose to ignore that case because it did not agree with the outcome.[3] In fact, defendant attacks the right of the federal judiciary to interpret state statutes.[4] Compounding its unabashed disregard of a court decision directly addressing the issue of prejudgment interest on returned checks, is defendant's failure to demonstrate that it had any procedures in place designed to avoid this error, the second prong of the bona fide error defense. In short, Imperial's bona fide error defense is that even if it intentionally ignored judicial precedent directly on point, it should be allowed to keep the unlawful fees that it collected, because it had a plausible legal theory justifying those fees. The bona fide error defense does not cover errors of law, especially where the error is nothing more than a debt collector's disagreement with a court ruling it knew of, but chose to disregard.

## VII. THERE IS NOT BE ANY BASIS FOR ENTERING PARTIAL JUDGMENT PURSUANT TO FED.R.CIV.P. 54(b), OR FOR CERTIFYING AN INTERLOCUTORY APPEAL

In what may be an unusual display of candor, defendant asks this Court to chart a path for its immediate appeal if it loses. This request should be denied. A partial judgment pursuant to Fed.R.Civ.P. 54(b) is not be possible. If the Court grants plaintiffs' motion for partial summary judgment, the issue of damages still will have to be resolved. Thus, there will not be a complete adjudication of any claim to appeal. On the other hand, if the Court grants defendant's motion for summary judgment, there will be no need

---

3. Although in his declaration, executive vice president Todd Shields provides his opinion that "advice of counsel" is not usually a valid defense, he does not testify that defendant was actually acting on advice of counsel. Declaration of Todd Shields, pp. 4-5, ¶ 8. Following the *Palmer* decision in 2004, competent counsel would not have advised a debt collector that it could collect interest without fear of violating the FDPCA.

4. Defendant's Memorandum, p. 23:5:10 ("[I]nterest is allowed under California law unless and until the Judicial Branch of the Federal Government inserts an additional provision into [Section] 1719 that provides otherwise.")

**MEMO IN OPP. TO DEFENDANT'S MOT. FOR SUMMARY JUDGMENT: Page 7**

for a partial judgment. Defendant will have prevailed and will be entitled to a final judgment.

Further, an interlocutory appeal should not be certified pursuant to 28 U.S.C. § 1292(b)(2), because defendant has not shown either that there is a substantial ground for a difference of opinion, or that an immediate appeal will materially advance the ultimate termination of the litigation. The only reason there is a dearth of opinions on the issue of prejudgment interest on checks is that it is not frequently litigated. The only two courts of which plaintiffs are aware that have previously considered this issue have both ruled that a debt collector availing itself of Section 1719 remedies may not also collect interest.[5] *See Palmer v. Stassinos*, 348 F.Supp.2d 1070, 1083 (N.D.Cal. 2004), and *Irwin v. Mascott*, 112 F.Supp.2d 937, 947 (N.D. Cal. 2000). The California Department of Consumer Affairs agrees. Further, an interlocutory appeal will not materially advance the ultimate termination of this lawsuit. With or without class certification, if this Court grants plaintiffs' Motion for Partial Summary Judgment, the case will be close to its conclusion, since all that will remain will be calculation of actual and statutory damages. If a class is certified, this will require some additional discovery, and an examination of defendant's computerized records. The parties should be able to complete whatever remains to be done long before an appeal would be heard and decided by the Ninth Circuit.

Finally, defendant may be disingenuous when it asserts a need for binding precedent from the Ninth Circuit. To begin with, although it did not rule on the issue, in *Irwin v. Mascott*, 370 F.3d 924, 927 (9th Cir. 2004), the Ninth Circuit discussed, without any criticism, the district court's ruling the Section 1719 was the exclusive remedy for dishonored checks. Further, since defendant disputes the authority of the "Judicial Branch of the Federal Government" to interpret California statutes, there is no reason that it would feel more bound by a Ninth Circuit decision than by a district court ruling. And if

---

5. The other judgments referred to in *Palmer v. Stassinos* were all default judgments. As the *Palmer* court concluded: "the fact that default judgments that were previously obtained by Stassinos included interest does not mean that California law allows such collection." 348 F.Supp.2d at 1077.

**MEMO IN OPP. TO DEFENDANT'S MOT. FOR SUMMARY JUDGMENT: Page 8**

1  this case was in the state court system, defendant might insist that it needed a decision
2  from an appellate court, or even from the California Supreme Court, before it had to stop
3  charging interest.  An interlocutory appeal will delay, not advance, the ultimate
4  termination of this lawsuit.  Defendant has not provided any persuasive reason for
5  granting an interlocutory appeal.

**VIII.  CONCLUSION**

   The Fair Debt Collection Practices Act was enacted, in part, to deter debt collectors from overreaching.  Nonetheless, this defendant has not been deterred from seeking a double recovery by either of the district court decisions holding that a debt collector may not collect both interest and a service charge on a dishonored check.  Defendant criticizes Judge Whyte's very detail analysis of Section 1719 a leading to a "ridiculous" result that benefit's only plaintiff's lawyers.

   WHEREFORE, for the reasons stated above, debtor respectfully request that Imperial's motion for summary judgment be denied.

Dated:  October 3, 2006                LAW OFFICE OF PAUL ARONS

                                       By   s/Paul Arons
                                          Paul Arons
                                          Attorneys for Plaintiffs
                                          BRIAN CASTILLO and BRANDY HUNT

**Additional Plaintiffs' Counsel**

Irving L. Berg (CA Bar No. 36273)
THE BERG LAW GROUP
433 Town Center, No. 493
Corte Madera, California 94925
(415) 924-0742
(415) 891-8208 (Fax)

O. Randolph Bragg, Ill. Bar #06221983
HORWITZ, HORWITZ & ASSOCIATES
25 East Washington, Suite 900
Chicago, IL 60602
(312) 372-8822

**MEMO IN OPP. TO DEFENDANT'S MOT. FOR SUMMARY JUDGMENT: Page 9**