Paul Arons, State Bar #84970
685 Spring Street, #104
Friday Harbor, WA 98250
Tel:  (360) 378-6496
Fax: (360) 378-6498
lopa@rockisland.com

Ronald Wilcox, State Bar #176601
LAW OFFICE OF RONALD WILCOX
2160 The Alameda, 1st Flr., Suite F
San Jose, CA 95126
(408) 296-0400

Attorneys for Plaintiffs

(Additional plaintiffs' counsel on last page)

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDY HUNT and BRIAN CASTILLO, et al, on behalf of themselves and others similarly situated,<br><br>          Plaintiffs,<br><br>vs.<br><br>IMPERIAL MERCHANT SERVICES, d/b/a CHECK RECOVERY SYSTEMS,<br><br>          Defendants. | Case No. 05-04993 MJJ<br>Case No. 06-02037 MJJ<br><br>CLASS ACTION<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Date: October 24, 2006<br>Time: 9:00 a.m.<br>Courtroom 11 |

1

2  **I.  INTRODUCTION**

3         Plaintiffs have already addressed many of the arguments that defendants

4  make in opposition to this motion, in their opposition to defendant's cross-motion for

5  summary judgment.  Plaintiffs incorporate their opposition memorandum, and will

   address additional points that defendant raise in opposition to plaintiffs' motion.
6

7  **II.  IT IS DEFENDANT'S BURDEN TO PROVE THAT ITS INTEREST CHARGES ARE
        PERMITTED BY LAW**

8         As noted in plaintiffs' opening brief, defendant has the burden of proving

9  that its charges are permitted by law.  *Newman v. Checkrite Cal.*, 912 F. Supp. 1354,

10 1368 (E.D. Cal. 1995).  Contrary to defendant's assertion in its opposition memorandum,

   Opp. Memo, p. 18:13-15, it is not plaintiffs' burden to disprove defendant's right to
11
   collection fees.  When Imperial filed its motion for summary judgment, it claimed that
12
   there were three theories of recovery it could apply to the underlying sales transaction.  In
13
   its opposition memorandum, it has discovered a fourth theory.  The fact that *if* it had
14
   acquired the right to enforce the obligations underlying the plaintiffs' checks, there *may* a
15
   legal theory of recovery it *might* have asserted, does not meet defendant's burden of
16
   proving that under California law it is permitted to collect both interest and a service
17
   charge on a dishonored check.

18 **III.IMPERIAL HAS NOT MET ITS BURDEN OF PROVING AN ASSIGNMENT THAT
        VESTED IT WITH THE RIGHTS OF THE MERCHANT**
19
          Under the California Commercial Code, Imperial may only enforce
20
   Safeway's rights in the underlying sales transaction, as opposed to the check, if it is a
21
   "person in the position of the seller."  Cal. Comm. Code § 2707.[1]  Defendant apparently
22

23  _____

24        1.  Comm. Code § 2707 provides:

25        (1)    A "person in the position of a seller" includes as against a principal an agent who
                 has paid or become responsible for the price of goods on behalf of his principal
26               or anyone who otherwise holds a security interest or other right in goods similar
                 to that of a seller.

   **PLAINTIFFS' REPLY MEMO IN  SUPPORT MOT. FOR PARTIAL SUMMARY JUDGMENT: Page 1**

concedes that if it wants to seek damages based on the sales transaction, rather than on the check. it must show, at a minimum, that Safeway orally assigned it all right, title and interest in both the check *and* in the underlying sales transaction.  Opp. Memo., p. 15:4-16.  Imperial has not provided any undisputed evidence of such an assignment.

The parties agree that Safeway refers checks to Imperial which Imperial then attempts to collect, and that the interest charge is added and retained by imperial.  Joint Statement of Undisputed Facts, No. 6.  Plaintiffs do not dispute that it is Safeway's business practice to have defendant collect its checks, but the existence of this practice does not establish that Imperial acquired any right in the goods "similar to that of the seller."  Cal. Comm. Code § 2707.  Imperial denies there is a written agreement and it has not presented evidence of any oral communications that would constitute an oral agreement.  Imperial relies solely on the testimony of a Safeway representative:

Q.   Did Safeway assign the account referenced in  Exhibit 3 to Collection Recovery Systems?

MR. ARONS:  Objection.  Calls for a legal conclusion.

THE WITNESS:  We assigned the -- this account to be collected by CRS.

Q.   As far as you know, did Safeway reserve any rights?

MR. ARONS:  Objection.  Calls for a legal conclusion.

THE WITNESS:  Don't know.

Deposition of William Johnson. pp. 59:22-60:6.  To establish the parameters of the relationship between Safeway and defendant, something more than the use of the word "assign" is needed. "Assign" has a number of ordinary English language meanings.[2]

---

(2)     A person in the position of a seller may as provided in this division withhold or stop delivery (Section 2705) and resell (Section 2706) and recover incidental damages (Section 2710).

2. **1.** To set apart for a particular purpose; designate: *assigned a day for the inspection.* **2.** To select for a duty or office; appoint: *firefighters assigned to the city's industrial park.* **3.** To give out as a task; allot: *assigned homework to the class.* **4.** To ascribe; attribute: *sorted the rocks by assigning them to different categories.* See synonyms at **attribute.** **5.** *Law* To transfer (property, rights, or interests) from one to another. **6.** To place (a person or a military unit) under a specific command.  American Heritage Dictionary of the English Language.  (2000).

Defendant has not provided evidence of any oral or written communication between Safeway and The mere fact that the deponent used the term "assign" does not mean Safeway made a legal assignment of an interest in the underlying sales transaction to Imperial.

In *Ballard v. Equifax Check.Servs., Inc.*, 27 F.Supp.2d 1201 (E.D.Cal. 1999), the court ruled that a debt collector that actually purchased the check from the merchant did not acquire an interest in the goods, and was limited to enforcing the instrument. *Id.*, at 1206-1207. Here, Imperial has not purchased any right. Defendant has not produced evidence that Safeway has done anything more than give it revocable permission to attempt to collect checks.

Defendant cites *Abels v. JBC Legal Group, P.C.*, 434 F. Supp.2d 763 (N.D. Cal. 2006), although it is not clear why. In *Abels*, in a case where, as here, a debt collector was attempting to rely on contract theories to justify its collection charges on dishonored checks, the court denied defendants' motion to dismiss because there was not sufficient information in the Complaint to determine what rights had been assigned to the debt collector's client, which had purchased the debts. *Id.*, at 766. In the present case, Imperial has not provided information sufficient to conclude that has acquired the seller's right to enforce the underlying sales agreement.

## IV. DEFENDANT'S INTERPRETATION OF COMMERCIAL CODE § 3310 IS CONTRARY TO THE EXPRESS LANGUAGE OF THE STATUTE AND THE OFFICIAL COMMENTARY

Defendant does not explain why in the 1996 amendments, the Division 3 Commercial Code exception was added to Section 1719 along with the service charge provision. Civil Code § 1719(k). Defendant vainly attempts, however, to explain it away. Section 1719(k) provides an express exception to Section 1719 remedies, allowing the payee of a dishonored check to utilize Division 3 of the Commercial Code. Cal. Comm. Code § 3310(b)(3) provides that: "the obligee may enforce either the instrument **or** the obligation." *Emphasis added.* The Official Commentary to this provision states:

> If the check or note is dishonored, *the seller may sue on either the dishonored instrument or the contract of sale* if the seller has possession of the instrument and is the person entitled to enforce it. *Emphasis added.*

Defendant argues that this really means that the seller may sue on both the check and the contract of sale, so long as the seller does not collect the check amount twice. That is not what the statute says. Defendant is correct when it states, "a merchant cannot . . . obtain a judgment for both a check and for the underlying contract. Opp. Memo., p. 20:112-14. Imperial goes on, however, and argues, citing Black's Law Dictionary, that the merchant can actually sue on both the instrument and the obligation, so long as it does not collect the check amount twice. If the drafters of Section 3310(b)(3) intended that result, they would have written that: "the obligee may enforce **both** the instrument **and** the obligation, but may only collect the principle due under one cause of action." Section 3310(b)(3) is a limitation on remedies, not a grant of permission for the seller to pursue overlapping remedies. Defendant's tortured interpretation of the Commercial Code is unavailing. Perhaps more notable is its failure to explain why Section 1719(k) was added if, as defendant argues, Comm. Code § 3310(b)(3) has no impact on the remedies that the check payee may seek.

## V. PRIOR TO 1997, CIVIL CODE 1719 DID NOT PROVIDE FOR A SERVICE CHARGE OR FOR 'INCIDENTAL DAMAGES"

In its attempt to explain that the service charge in Section 1719 does not supplant other remedies, defendant misinterprets *Newman v. Checkrite*, *supra*, and the genesis of the service charge amendment to Section 1719. In *Newman*, plaintiffs challenged, *inter alia*, defendant's practice of assessing a service charge. *Newman*, 912 F.Supp. at 1367. Since, at the time, there was no service charge provision in Section 1719, defendants in that action had to search elsewhere for to justify the charge. They attempted to justify their $25 to $30 service charge by arguing that Comm. Code § 2710[3]

---

3.  Comm. Code § 2710 provides:

**PLAINTIFFS' REPLY MEMO IN SUPPORT MOT. FOR PARTIAL SUMMARY JUDGMENT: Page 4**

allowed a seller to collect incidental damages, and that the service charge was an incidental damage.[4]  Reasoning that incidental damages are actual damages, not just an arbitrary fee that meets an undefined "commercially reasonable" standard, and without ruling on whether debt collectors could rely on Section 2710, Judge Karlton ruled that defendants would have to prove their incidental damages if they wanted to show that their services charges were permitted by law.  *Id.* at 1368.

The Legislative response to the ruling that a merchant would have to prove its actual damages to collect a fee above the face amount of a dishonored check was the 1996 amendment adding a service charge provision to Section 1719.  In adding a service charge, the Legislature intended to relieve merchants of having to prove any actual damages, not just incidental damages.[5]  Interest is an actual damage arising from the breach of an obligation to pay money.  Civil Code § 3302.[6]  Since the Legislature intended that for a merchant proceeding on the check, rather than on the underlying obligation, the Section 1719 service charge would be a substitute for all actual damages arising from dishonor of a check, and since interest is one category of actual damage,

---

Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyers' breach, in connection with return or resale of the goods or otherwise resulting from the breach.

The stated purpose of the statute is:

To authorize reimbursement of the seller for expenses reasonably incurred by him as a result of the buyer's breach. The section sets forth the principal normal and necessary additional elements of damage flowing from the breach but intends to allow all commercially reasonable expenditures made by the seller. Statement of Statutory Purpose, Comm. Code § 2710.

4.  In Ballard v. Equifax Check Servs., Inc., *supra*, that court was skeptical about defendant's argument that it could recover its alleged costs of collection as "incidental damages."  27 F.Supp.2d at 1206, n. 8.

5.  As defendant points out, the Legislature intended that the service charge would compensate the merchant for all damages incurred.  Opp. Memo, p. 17:19-22.

6.  Civil Code § 3302 provides: The detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon.

interest is subsumed within the service charge, and may not be added to it.  The

merchant who wants to recover interest must proceed on the underlying obligation.

## VI.  DEFENDANT HAS NOT PRESENTED ANY EVIDENCE OF SUPPORTING ITS ASSERTION THAT THE SERVICE CHARGE DOES NOT FULLY COMPENSATE A MERCHANT FOR ITS LOSSES WHEN A CHECK DOES NOT CLEAR

In their motion, plaintiffs explain that a merchant would reap a double recovery if it

could seek both a service charge and proceed on the underlying transaction.  In

response, defendant argues that the service charge does not fully compensate the

merchant.  Whether the service charge is fully compensable or not is not the issue, since

a merchant dissatisfied with the service charge may sue on the underlying transaction..

However, in support of its argument, defendant makes unsupported claims that

merchants incur a "substantial bank charge" and incur processing costs, knowing full well

that it has no evidence in support of its claim.  Moreover, just as there are some

circumstances in which the statutory service charge will not be fully compensable, there

are many instances in which it will be a windfall.  For instance, if a customer wrote a

$5.00 check to Safeway that did not initially clear, but which the customer made good the

next week, the customer would owe Safeway a $25.00 service charge.  Safeway's

processing costs for the mass electronic handling one of thousands of checks will be

nominal, and Safeway may be paying only a dollar or two to its bank as a service fee.

The fact that the service charge may result in a windfall in some circumstances, and will

no be adequate compensation in others, is not relevant in determining the exclusivity of

Civil Code § 1719 remedies.  The statutory service charge was enacted to relieve

merchants of the burden of having to prove actual damages.  A merchant who considers

this inadequate compensation may give up the service charge and  sue on the underlying

obligation.

## VII.  DEFENDANT HAS MISREPRESENTED BOTH THE SUBSTANCE OF CIVIL CODE 1717.5, WHICH IS IRRELEVANT TO THIS DISPUTE AND THE SUBSEQUENT HOLDING IN PALMER V. STASSINOS

Cal. Civil Code § 1717.5 allows the prevailing party to recover up to $660.00 on a book account.  In its opposition memorandum, defendant states repeatedly that "Civil Code Section 1717.5 permits a recovery for attorney fees on a dishonored check. . . ." Opp. Memo., p. 13:17-27.  Section 1717.5 does not refer to dishonored checks.  In connection with defendant's reference to Section 1717.5, defendant asserts that under the ruling on a motion for reconsideration in *Palmer v. Stassinos*, 419 F. Supp. 2d 1151 (N.D. Cal. 2005), a recovery under Section 1717.5 would be allowed.  Opp. Memo., p. 13:18-22.  That was not the *Palmer* court's ruling.  On reconsideration, in the face of defendant's argument that it should be allowed to collect prejudgment interest, the court continued to hold that Civil Code § 1719 was the mandatory and exclusive remedy.  The court went on to say that it had not made any ruling on the availability of "attorney's fees, post-judgment interest and contractual damages." *Id.*, at 1153.  Plaintiffs agree with that analysis.  If Safeway had chosen to proceed on the underlying transaction pursuant to Comm. Code § 3310, it might have been able to establish contractual dames, attorney's fees and a right to post-judgment interest.  However, if Safeway recovers contractual damages, it may not also recover a service charge.

## VIII.  SECTION 1719 IS NOT SILENT ON THE AVAILABILITY OF OTHER REMEDIES, AND IMPLICITLY PRECLUDES ANY CIVIL REMEDIES OTHER THAN THOSE PROVIDED FOR IN THE STATUTE OR IN DIVISION 3 OF THE COMMERCIAL CODE

Relying on *Currie v. Workers' Comp. Appeals Bd.*, 24 Cal. 4th 1109, 1116-1117, 104 Cal. Rptr. 2d 392, 399 (2001), defendant argues that unless a statute expressly precludes an award of interest, it must be allowed.  *Currie* does not stand for so broad a proposition.  In *Currie*, the Supreme Court had to determine whether Cal. Labor Code § 132a, providing "reimbursement for lost wages"  to a victim of discrimination, should include an award of prejudgment interest under the general interest provision in Civil

Code § 3287. The Supreme Court considered the remedial purpose of the statute, *along with the fact that the statute was silent on the issue of interest*, and ruled that Civil Code § 3287 applied. To hold otherwise, the court reasoned, would be to make the employee less than whole in cases where the employer's failure to pay the wages at the times due had diminished their value. In *Currie*, there was an objectively calculable wage loss that clearly did not already include interest and a statute that did not expressly or impliedly indicate any restriction on other compensatory remedies.

Here, § 1719 by expressly making Division 3 of the Commercial Code an alternative remedy, implicitly precludes other remedies. In contrast to the employee in *Currie*, the merchant is presumably made whole by the service charge, and if it is not, may pursue the underlying obligation.

**IX.  WHETHER OR NOT A DEBT COLLECTOR MAY COLLECT INTEREST ON A DISHONORED CHECK IN ADDITION TO A STATUTORY SERVICE CHARGE DEPENDS ON CIVIL CODE § 1719, NOT ON THE REPREHENSIBILITY OF THE DEBT COLLECTOR'S CONDUCT**

Defendant has made clear that it does not believe that published district court decisions mean anything unless the cases are appealed to the Ninth Circuit. Defendant attempts to distinguish *Palmer v. Stassinos*, 348 F.Supp.2d 1070 (N.D. Cal. 2004), and other unspecified cases, based on the claim that the defendants in those cases were engaged in other reprehensible conduct, and therefore did not bother appealing. Opp. Memo. 4:11-24.

Further, in what can only be an attempt to prejudice the Court, defendant dwells on Brandy Hunt's unfortunate history in 2004, arguing that the Legislature could not possibly have intended that someone like her should only have to paying a service charge. In contrast, defendant barely mentions plaintiff Brian Castillo.

The interest issue before the courts in *Irwin v. Mascott*, *Ballard v. Equifax Check Servs., Inc., Palmer v. Stassinos,* and now before this Court, does not depend on whether the defendant is a "good" debt collector or a "bad" debt collector, any more than

it matters whether the plaintiffs are "good" debtors or "bad" debtors. As plaintiffs have explained, and as other courts have ruled, a debt collector may not collect both interest and a service charge. If a debt collector is collecting both interest and a service charge, it is violating the FDCPA, regardless of its other conduct, or the conduct of the person who wrote the check.

## X.  THE WICHITA EAGLE CASE IS IRRELEVANT TO THE PENDING MOTION

In *Wichita Eagle & Beacon Publishing Co. v. Pacific Nat'l Bank*, 493 F.2d 1285, 1287 (9th Cir. 1974), the Ninth Circuit ruled that prejudgment interest was due as liquidated damages on a performance bond that required payment of $250,000.00 in the event of default. From this brief ruling defendant concludes that "the Ninth Circuit Court of Appeals believes California law awards interest under Civil Code § 3287 on an award for a penalty." Defendant's Memorandum, p. 14:22-24. Defendant's conclusion is wrong, since a liquidated damages provision is generally not considered a penalty. Cal. Civil Code § 1671. Moreover, there is no obvious connection between *Wichita Eagle* and the current dispute. In the present case, there is no contract, and there is no liquidated damages provision. The service charge provision in Section 1719 is not a penalty. Whether interest may be awarded on a contractual liquidated damages award is irrelevant.

## XI.  DEFENDANT MAY NOT RELY ON THE BONA FIDE ERROR DEFENSE TO INSULATE ITSELF FROM LIABILITY FOR ATTEMPTING TO COLLECT UNLAWFUL CHARGES

Relying on nothing more than certainty in its own interpretation of the law, Imperial argues that if its interpretation is wrong, it is excused from liability by reason of the bona fide error defense. 15 U.S.C. § 1692k(c). This defense is a narrow exception to strict liability. *Clark v. Capital Credit & Collection Servs., Inc.*, 2006 U.S. App. LEXIS 21594, *24 (9th Cir. 8/24/2006). Defendant's belief, however sincere, that district court's do not have the authority to interpret state laws, does not give rise to this defense.

**PLAINTIFFS' REPLY MEMO IN  SUPPORT MOT. FOR PARTIAL SUMMARY JUDGMENT: Page 9**

1

## XII.  CONCLUSION

2          Defendant's creative opposition does not negate the fact that Civil Code § 1719

3  provides a remedy which is exclusive, if for no reason other than the express exception

4  for Division 3 Commercial Code remedies demonstrates the Legislative intent to exclude

5  other civil remedies.  If further support is necessary, the Legislative history shows that

6  service charges were added to Section 1719 as an alternative to a merchant having to

7  prove a broad range of actual damages, that include interest.  Many of defendant's other

8  points are based on misinterpretations of the law, and its view that rulings of other federal

9  district courts with which defendants do not agree, should be disregarded because the

10 rulings are "flawed" and lead to "ridiculous results."

11         WHEREFORE, for the reasons stated above, plaintiffs respectfully request that

12 their motion for partial summary judgment be granted.

13 Dated:  October 11, 2006              LAW OFFICE OF PAUL ARONS

14                                       By   s/Paul Arons
15                                          Paul Arons
                                            Attorneys for Plaintiffs
16                                          BRIAN CASTILLO and BRANDY HUNT

17 **Additional Plaintiffs' Counsel**

   Irving L. Berg (CA Bar No. 36273)
18 THE BERG LAW GROUP
   433 Town Center, No. 493
19 Corte Madera, California 94925
   (415) 924-0742
20 (415) 891-8208 (Fax)

21 O. Randolph Bragg, Ill. Bar #06221983
   HORWITZ, HORWITZ & ASSOCIATES
22 25 East Washington, Suite 900
   Chicago, IL 60602
23 (312) 372-8822

24

25

26

**PLAINTIFFS' REPLY MEMO IN  SUPPORT MOT. FOR PARTIAL SUMMARY JUDGMENT: Page 10**