United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUNT,<br><br>    Plaintiff,<br><br>  v.<br><br>CHECK RECOVERY SYSTEMS, INC.,<br><br>    Defendant. | No. C05-04993 MJJ<br>No. C06-02037 MJJ<br><br>**ORDER GRANTING PLAINTIFFS'**<br>**MOTION TO CERTIFY CLASS** |

## INTRODUCTION

Before the Court is Plaintiffs Brandy Hunt ("Hunt") and Brian Castillo's ("Castillo") (collectively, "Plaintiffs") Motion to Certify Class.[1] Defendant Imperial Merchant Services d.b.a. Check Recovery Systems ("Defendant" or "Imperial") opposes the motion. For the following reasons, the Court **GRANTS** Plaintiffs' Motion to Certify Class.

## FACTUAL BACKGROUND

**A.   Procedural History**

Hunt and Castillo filed their complaints on December 5, 2005 and March 16, 2006, respectively. On May 9, 2006, this Court issued a Related Case Order relating Plaintiffs' cases. Both Plaintiffs seek damages under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"). Plaintiffs allege that Imperial's practice of including an interest charge, in addition to their attempt to collect both a check amount and a statutory service charge violates the FDCPA. In

---

[1] Docket No. 45, filed September 19, 2006.

particular, Plaintiffs allege that Defendant's debt collection practices: (1) use false, deceptive or misleading representations in violation of § 1692e; (2) falsely represent the character, amount, or legal status of the debt in violation of § 1692e(2)(A); (3) use unfair or unconscionable means to collect or attempt to collect the debt in violation § 1692f; and (4) exceed the amount expressly permitted by law in violation of § 1692f(1). Plaintiffs now seek class certification, to create a class of similarly situated Plaintiffs, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b).

On behalf of the class, Plaintiffs seek the following forms of relief: (1) declaratory judgment that Defendant's practices violate the FDCPA; (2) actual damages pursuant to § 1692k; (3) statutory damages pursuant to § 1692k; and (4) costs and reasonable attorney fees pursuant to § 1692k.

**B.     The Parties**

On July 5, 2004, Hunt wrote a check in the amount of $137.15 to Pak 'n Save. (Joint Statement of Undisputed Fact ("JSUF") ¶ 2.) On November 28, 2004, Castillo wrote a check in the amount of $276.36 to Pak 'n Save. (*Id.* ¶ 1.) Both checks were written for personal, family, or household purposes, and both checks returned unpaid due to insufficient funds. (*Id.* ¶¶ 1-2, 5.) Pak 'n Save is operated by Safeway, Inc. ("Safeway"). (*Id.* ¶ 3.) After the Castillo and Hunt checks were returned unpaid, Safeway referred the checks to Imperial for collection. (*Id.* ¶ 4.) The parties agree that Imperial's debt collection conduct is governed by the FDCPA. (*Id.* ¶ 5.)

**C.     Defendant's Debt Collection Practices**

The principal purpose of Imperial is to collect debts. (*Id.* ¶ 5.) When Safeway refers unpaid checks written in California to Imperial, Safeway asks Imperial to collect the check amount and the service charge provided under California Civil Code § 1719. (*Id.* ¶ 6.) Imperial retains 27% of the amount collected for the check and the statutory service charge. (*Id.*) After a check has been referred to Imperial, Imperial adds an interest charge, which is calculated at the rate of 10% per annum, accruing from the date the check was written. (*Id.*) Imperial retains 100% of the interest that it collects. (*Id.*) Safeway and Imperial followed these practices in connection with the Hunt and Castillo checks. (*Id.*)

    **1.     Castillo's Check**

Safeway referred the Castillo check to Imperial to collect the check amount plus a $25.00

2

statutory service charge. (*Id.* ¶ 7.) Imperial mailed Castillo a collection letter, dated March 17, 2005, in which Imperial demanded $276.36 for the check amount, $25.00 as a "Misc." charge, and $8.99 as interest. (*Id.*) Subsequently, Imperial mailed Castillo a collection letter, dated December 2, 2005, in which Imperial demanded $276.36 for the check amount, $25.00 as a "Misc." charge, and $30.43 as interest. (*Id.*)

### 2. Hunt's Check

Safeway referred the Hunt check to Imperial to collect the check amount plus a $35.00 statutory service charge. (*Id.* ¶ 8.) Subsequently, Imperial mailed Hunt two collection demands. (*Id.*) The second demand, dated December 6, 2005, includes a demand for the check amount, a "Misc." charge of $35.00, and interest of $7.26, for a total of $179.41.

### D. Proposed Definition of the Class

Plaintiffs define the proposed class as follows:

> All persons to whom defendant mailed a collection demand at any time since December 5, 2004, (1) which included a demand for both interest and a statutory service charge on a dishonored check; (2) where the check was written in the State of California for personal, family or household purposes; and (3) whose mail was not returned as undeliverable.

(Plaintiffs' Motion for Class Certification ("Mot. for Cert.") 2.)

## LEGAL STANDARD

Rule 23 of the Federal Rules of Civil Procedure outlines a two-step process for determining whether class certification is appropriate. First, Rule 23(a) sets forth four conjunctive prerequisites that must be met for any class:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). These four requirements are often referred to as numerosity, commonality, typicality, and adequacy. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982); *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 153 (N.D. Cal. 1991).

3

1    Second, assuming the requirements of subdivision (a) are satisfied, the party seeking class
2 certification must also demonstrate that the action is maintainable by falling within one of the three
3 kinds of actions permitted under Rule 23(b).  *See* Fed. R. Civ. P. 23(b); *In re Adobe Sys.*, 139 F.R.D.
4 at 153.  Specifically, the plaintiffs must demonstrate their claim is proper under Rule 23(b)(1),
5 (b)(2), or (b)(3).

6    An action is maintainable under Rule 23(b)(1) when there is either "a risk of prejudice from
7 separate actions establishing incompatible standards of conduct" or the judgment in an individual
8 lawsuit might adversely impact other class members.  *See generally* Hon. William W. Schwarzer,
9 *Federal Civil Procedure Before Trial* § 10:385 (2006).  This particular type of class action does not
10 permit the recovery of damages.  *See Alpert v. U.S. Industries, Inc*., 59 F.R.D. 491, 499 (C.D. Cal.
11 1973).

12    An action is maintainable under Rule 23(b)(2) if the defendant "has acted (or refused to act)
13 in a manner applicable to the class generally, thereby making injunctive or declaratory relief
14 appropriate with respect to the class as a whole."  Schwarzer, *supra*, § 10:398-406.  Rule 23(b)(2)
15 actions are common where injunctive or declaratory relief is the primary relief sought on behalf of
16 the class.  *See id.*  Recovery of damages is generally not available in a Rule 23(b)(2) class action.
17 *See Molski v. Gleich*, 318 F.3d 937, 949-50 (9th Cir. 2003).  The Ninth Circuit has required a careful
18 consideration of the facts of each case to ensure that a class certified under Rule 23(b)(2) is
19 primarily seeking injunctive relief.  *See id.*

20    Finally, an action is proper under Rule 23(b)(3) if questions of law or fact common to the
21 class "predominate" over questions affecting the individual members, and the court determines that a
22 class action is superior to other methods available for adjudicating the controversy.  *See* Fed. R. Civ.
23 P. 23(b)(3).  Recovery of damages is available under Rule 23(b)(3).  *See* Schwarzer, *supra*, §
24 10:410-479.  If a class is certified under Rule 23(b)(3), all absent class members must be notified of
25 the action and informed of their right to "opt-out" of the litigation.  *Id.*

26    In analyzing whether the putative class meets the requirements of Rule 23, a court is to take
27 the substantive allegations of the complaint as true, and may also consider extrinsic evidence
28 submitted by the parties.  *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).  Moreover, "[i]n

4

determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974) (quoting *Miller v. Mackey Int'l*, 452 F.2d 424, 427 (5th Cir. 1971)). Nonetheless, the plaintiffs bear the burden of establishing each of the required elements for class certification. *See id.* at 617 (citing *In re Northern Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982)).

## ANALYSIS

### I. Prerequisites of Rule 23(a)

As a preliminary matter, Defendant argues that Plaintiffs lack standing to bring this class action. Specifically, Defendant purports that Hunt and Castillo have discharged their debt to Defendant in a prior bankruptcy proceeding and, thus, Plaintiffs sustained no injury from Defendant's alleged unlawful acts.

The Court finds this argument unavailing. The conduct being litigated here is the alleged unlawful collection of interest by Defendant from Plaintiffs, and others similarly situated. In other words, the injury occurred upon Defendant's demand for interest on the dishonored checks. Plaintiffs' ability to sue Defendant for unlawful collection of interest under the FDCPA does not rest on Plaintiffs actually incurring debt as a result of Defendant's conduct. "The [FDCPA] is designed to protect consumers from the abusive, deceptive and unfair debt collection practices of unscrupulous debt collectors, regardless whether a valid debt actually exists." *Borcherding-Dittloff v. Transworld Sys., Inc.*, 185 F.R.D. 558, 564 (W.D. Wis. 1999) (citing *Baker v. G.C. Serv. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982)). Therefore, Plaintiffs have standing to sue and the Court will now determine if class certification is appropriate.[2]

#### A. Numerosity

Plaintiffs assert that the class is sufficiently numerous because Defendant mailed out

---

[2] Defendant admits that Plaintiffs meet all prerequisites of Rule 23(a) in the event that this Court finds that Plaintiffs have standing to bring this action. (*See* Decl. of Arons, Exh. 2.) The Court finds that Plaintiffs do have standing, creating a situation where class certification pursuant to Rule 23(a) is essentially unopposed. However, in the interest of justice, the Court will review all the necessary requirements under Rule 23 to ensure that class certification is appropriate. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982) (stating that a class may only be certified if the court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied").

5

thousands of collection letters demanding both interest and a statutory fee. Defendant conditionally concedes the issue of numerosity based on the Court's finding that Plaintiffs have standing to sue.

Under Rule 23(a), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). However, there must be a "statement of basic facts. Mere repetition of the language of the Rule is inadequate." *Gillibeau v. Richmond*, 417 F.2d 426, 432 (9th Cir. 1969).

Here, Plaintiffs make a "statement of basic facts" and show that the class is sufficiently numerous. Plaintiffs allege that Defendants mailed 67,108 collection letters for 43,536 checks referred to Defendants between November 2004 and May 2006. Plaintiffs' allegations show that the potential class is "so numerous that joinder of all members is impracticable."

### B. Commonality

Plaintiffs rely on the fact that Defendant mailed form collection letters demanding interest. Defendant does not contest the mailing or contents of the collection letters.

"A class has sufficient commonality 'if there are questions of fact and law which are common to the class'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988) (quoting Fed. R. Civ. P. 23(a)(2)). The Northern District has interpreted that to mean that commonality typically manifests "where… the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters." *Palmer v. Stassinos*, 233 F.R.D. 546, 549 (N.D. Cal. 2006) (quoting *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).

Here, Defendant allegedly committed the same "standardized conduct" found in *Palmer*. Defendant allegedly sent out form letters demanding Plaintiffs to pay statutory fees for dishonored checks as well as interest on the owed money. Defendants targeted this conduct at all Plaintiffs in the putative class, in the same manner. Based on Defendant's alleged standardized conduct, this Court concludes that common questions exist as to whether Defendant's conduct was unlawful.

### C. Typicality

For typicality, Plaintiffs rely on a similar argument as they did for commonality. Specifically, that typical claims amongst all potential class members exist because Defendant sent unlawful form collection letters to Plaintiffs.

6

The typicality requirement serves to "assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Typicality refers to the nature of the claim or defense of the class representative and not on facts surrounding the claim or defense. *Id.* The burden imposed by the typicality requirement is not great. *See Hanlon*, 150 F.3d at 1020. In fact, the Ninth Circuit has noted that "the commonality and typicality requirements of Rule 23(a) tend to merge." *Staton*, 327 F.3d at 957. "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595 (internal citations omitted).

Here, Plaintiffs share one legal theory with the rest of the class. Plaintiffs are suing Defendant under the FDCPA, alleging that Defendant engaged in unlawful standardized conduct toward Plaintiffs. Defendant's argument that Plaintiffs are only typical of a putative class that "have written dishonored check[s], paid no interest, and then discharged their debt in bankruptcy" is not only incorrect, but immaterial for a typicality analysis. (Defendant's Motion in Opposition to Plaintiff's Motion for Class Certification, 11:21-23.) "Typicality refers to the nature of the claim or defense of the class representative, and not the specific facts from which it arose or the relief sought." *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005) (quoting *Hanon*, 976 F.2d at 508). Factual variations among class members' grievances do not defeat a class action. *Keele*, 149 F.3d at 594 (citing *Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980)); *see also Irwin v. Mascott*, 96 F. Supp. 2d 968, 977 (N.D. Cal. 1999) (stating the fact that named plaintiffs may have a right to statutory damages, injunctive relief and declaratory relief, but not a right to actual damages, does not render their claims atypical). Accordingly, the typicality requirement is satisfied.

**D.    Adequacy**

Plaintiffs rely on their declarations, and those of their counsel, to satisfy the adequacy requirement. Plaintiffs allege no potential conflict of interest between them and the rest of the proposed class. Defendant contends that there is a conflict of interest between the Plaintiffs and the putative class because Plaintiffs discharged their debts in previous bankruptcy proceedings.

7

The Federal Rules require that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires the Court to ask two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957; *see also* Fed. R. Civ. P. 23(g)(1)(B) (stating that "class counsel must fairly and adequately represent the interests of the class").

Here, Defendant argues that since Plaintiffs discharged their debts to Defendant through bankruptcy proceedings, Plaintiffs have a conflict of interest with respect to the rest of the class. The Court finds this argument unconvincing. Discharging one's debt may ultimately effect the collection of damages, but it does not conflict with the legal merits of the claim with respect to class members who did not discharge their debt. Based on the record before the Court, the only conflict between Plaintiffs and any potential class member could be a difference in the amount of recovery.[3] However, a potential difference in recovery does not, in itself, create a conflict of interest. *See, e.g., Palmer,* 233 F.R.D. at 551. Additionally, any financial incentive to Plaintiffs or class counsel will likely lead them to "prosecute the action vigorously."[4]

Accordingly, Plaintiffs and their counsel have no conflict with potential class members and Plaintiffs' counsel has extensive experience in FDCPA class actions. Notwithstanding Defendant's concern with Plaintiffs' bankruptcy status, Plaintiffs satisfy the adequacy requirements.

**II.      Whether Certification is Appropriate Under Rule 23(b)(2) or Rule 23(b)(3)**

To be certified, a class must also satisfy the criteria of one of the three subsections of Rule 23(b). Plaintiffs request class certification pursuant to Rule 23(b)(2), or in the alternative, a hybrid class pursuant to Rule 23(b)(2) and (3). Defendant argues that certification under Rule 23(b)(2) would be improper by arguing that the FDCPA does not allow a private plaintiff to obtain equitable

---

[3] Named plaintiffs in FDCPA class actions would be entitled to up to $1,000 in statutory damages. 15 U.S.C. § 1692k(a)(2)(B)(i). Unnamed class members would be entitled to share statutory damages of up to 1 percent of Defendant's net worth. 15 U.S.C. § 1692k(a)(2)(B)(ii). Each class member would be entitled to any actual damages. 15 U.S.C. § 1692k(a)(1).

[4] Plaintiffs Counsel, Arons, Wilcox, and Bragg have been involved in many FDCPA class actions in this District and in other courts. *See generally Palmer,* 233 F.R.D. 546 (N.D. Cal. 2006); *Schwarm v. Craighead,* 233 F.R.D. 655 (E.D. Cal. 2006); *Irwin v. Mascott*, 96 F. Supp. 2d 968 (N.D. Cal. 1999).

8

1 relief. Defendant argues that certification under Rule 23(b)(3) would be improper because common
2 questions of law and fact do not predominate and because a class action is not superior to alternative
3 methods of adjudication of the controversy. As fully explained below, the Court finds that
4 certification under Rule 23(b)(2) is appropriate on the issues of liability, declaratory relief, and
5 statutory damages, and that certification under Rule 23(b)(3) is appropriate on the issue of actual
6 damages.

**A.  Rule 23(b)(2)**

Plaintiffs' primary request is for the entire class to be certified pursuant to Rule 23(b)(2). Defendant argues that certification on these grounds is improper because Plaintiffs' claims for declaratory and injunctive relief are not available under the FDCPA and not appropriate for class certification under Rule 23(b)(2).

A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) generally does not extend to cases in which the appropriate final relief relates primarily to money damages. *See Arnold v. United Artists Theatre Circuit, Inc*., 158 F.R.D. 439, 450-51 (N.D. Cal. 1994) (citing Rules Advisory Committee Notes to 1966 Amendments to Rule 23, reprinted at 39 F.R.D. 69, 102 (1966)); *see also Molski*, 318 F.3d at 949-50. The Ninth Circuit has required a careful consideration of the facts of each case to ensure that a class certified under Rule 23(b)(2) is primarily seeking injunctive relief. *See id.*

However, class actions certified under Rule 23(b)(2) are not limited to actions requesting injunctive and declaratory relief, but may include cases that also seek monetary damages where the money damages are "merely incidental." *Probe v. State Teachers' Retirement Sys*., 780 F.2d 776, 780 (9th Cir. 1986), *cert. denied*, 476 U.S. 1170 (1986). "Incidental" means that the monetary damages "flow directly from liability to the class as a whole on the claims forming the basis of the… declaratory relief." *Swanson v. Mid Am, Inc*., 186 F.R.D. 665 (M.D. Fla. 1999) (citing *Alison v. Citgo Petroleum Corp*., 151 F.3d 402, 413 (5th Cir. 1998). More specifically, FDCPA class actions certified under Rule 23(b)(2) are also not limited to actions requesting injunctive and declaratory

9

1 relief. *Ballard v. Equifax Check Services,* Inc., 186 F.R.D. 589, 596-97 (E.D. Cal. 1999) (certifying
2 FDCPA class under Rule 23(b)(2) on the issues of liability, declaratory relief, and statutory damages
3 but reserving certification of actual damages for certification under Rule 23(b)(3)); *Gonzales v.*
4 *Arrow Fin. Services, LLC*, 233 F.R.D. 577 (S.D. Cal. 2006) (certifying FDCPA class under Rule
5 23(b)(2) where plaintiffs received standardized demand letters and sought declaratory relief and
6 statutory damages); *Borcherding-Dittloff*, 185 F.R.D. at 565-66 (certifying class under Rule 23(b)(2)
7 for claims under FDCPA where plaintiffs sought declaratory relief and statutory damages); *Gammon*
8 *v. GC Services Ltd. P'ship*, 162 F.R.D. 313, 319-22 (1995) (certifying class under Rule 23(b)(2) for
9 claims under FDCPA seeking declaratory relief and statutory damages); *Swanson v. Mid Am, Inc*.,
10 186 F.R.D. 665 (M.D. Fla. 1999) (same).

11 Here, Plaintiffs' request for statutory damages is secondary to their primary claim of
12 declaratory relief for three reasons. First, the declaratory relief requested will affect more persons
13 and have consequences over a greater period of time than monetary damages. *See Ballard*, 186
14 F.R.D. at 596. These claims will affect not only those class members who received Defendant's
15 demand letters who may be entitled to statutory damages, but also those class members who
16 received the demand letters and then subsequently incurred additional actual damages[5] by paying the
17 alleged illegally demanded amounts. The principal criteria guiding the policy in favor of rendering
18 declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and
19 settling of legal relations between the parties, and (2) when it will terminate and afford relief from
20 the uncertainty, insecurity, and controversy giving rise to the proceeding. *Gammon*, 162 F.R.D. at
21 320; *see also Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986); Schwarzer*, supra at* § 10:5. In
22 the instant case, a declaratory judgment would settle the issue of the legality of Defendant's behavior
23 with respect to the entire class. Given that the very purpose of class actions is to promote judicial
24 efficiency and economy, the Court finds that Plaintiff's request for declaratory judgment to be
25 appropriate. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 149 (1982).

26 Second, the Court notes that Plaintiffs' monetary damages, and those of the putative class, all
27 flow directly from the demand letters sent by Defendant and are therefore secondary to the claim for
28

---

[5]The inquiry regarding actual damages is more appropriate as a class under Rule 23(b)(3) as discussed below.

10

declaratory relief. *See, e.g., Borcherding-Dittloff*, 185 F.R.D. at 566 (stating "[c]ourts have found requests for declaratory relief to predominate over requests for monetary relief where the award of damages flows directly from the declaratory relief and where damages are easily calculated by a formula that is uniformly applicable to the class") (citing *Rice v. City of Philadelphia*, 66 F.R.D. 17, 20 (E.D. Pa. 1974)). Here, because Plaintiffs request statutory damages and declaratory relief arise from Defendant's repeated violation of the FDCPA, the resulting statutory damages flow directly from Defendant's underlying FDCPA liability. The calculation of statutory damages will be a mechanical task and is therefore readily calculable for the entire class. *See* 15 U.S.C. § 1692k(a)(2)(B).

Third, the statutory damages for each class member is comparatively nominal. As the court noted in *Gammon*, because the FDCPA caps the maximum award at $500,000 or 1 percent of the net worth of the debt collector, each class member would receive a nominal amount. *See Gammon*, 162 F.R.D. at 320. As a result, the court concluded that the plaintiff's request for declaratory relief predominated over the request for monetary relief. *See id*. Similarly, the proposed class here results from 67,108 demand letters between November 2004 and May 2006 based on a total of 43,536 checks referred. Since Defendant's net worth is approximately $456,151,[6] the maximum amount of recovery for each class member would approximately be between 7 cents and 10 cents. The Court finds this amount to be de minimus and not sufficient to sustain Defendant's arguments that Rule 23(b)(2) certification is inappropriate.

In conclusion, because the statutory damages flow from the declaratory judgment, the readiness with which the statutory damages can be calculated, and the de minimus amount of statutory damages that each class member would potentially receive, the Court concludes that Plaintiffs' request for non-monetary relief predominates over the request for statutory damages. Accordingly, certification under Rule 23(b)(2) on the issues of liability, declaratory relief, and statutory damages under the FDCPA is appropriate.

**B.    Rule 23(b)(3)**

---

[6] Defendant states that its net worth has not yet been established. However, Defendant's balance sheet on its Federal 1120S Income Tax Return, provided in discovery, shows a net worth of $456,151.00. (Defendant's Motion in Opposition to Plaintiff's Motion for Class Certification, 16:1-4.)

11

In the event that this Court does not certify the entire class under Rule 23(b)(2), Plaintiffs alternatively seek to certify the issue of actual damages pursuant to Rule 23(b)(3). Defendant relies on the *Palmer* case, 233 F.R.D. 546, and argues that common questions of law and fact do not predominate, and that a class action is not superior to alternative methods of adjudication of the controversy.

Class certification pursuant to Rule 23(b)(3) requires a determination that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Court now turns to the issues of predominance and superiority.

### 1.   Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)). "Rule 23(b)(3) focuses on the relationship between the common and individual issues. 'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Id*. (quoting 7A Charles Alan Wright, *et al.*, *Federal Practice & Procedure* § 1778 (2d ed. 1986)). The primary and predominating question in this case is whether Defendant's conduct in demanding statutory charges, in addition to the debt amount and interest, was contrary to California law and therefore in violation of the FDCPA. As to actual damages, the question will be how much actual damage was sustained by each class member. 15 U.S.C. 1692k(a)(1).

Here, the legal issues arising from Defendant's demand letters are the same for each class member. As Plaintiffs correctly point out, the only individual issues are ministerial, *e.g*. identifying class members and calculating actual damages. Plaintiffs explain that the calculation of actual damages will not require individualized issues of proof, because the amounts collected will be reflected in Defendant's collection records. Defendant does not substantively respond to Plaintiff's arguments on predominance and does not present availing arguments regarding any individualized

issues. As a result, the Court finds that the predominant common questions in this case present a clear justification for handling the dispute on a representative rather than on an individualized basis.

### 2. Superiority

Plaintiffs argue that a class action is superior in this context because putative class members would not ordinarily file individualized actions. In particular, Plaintiffs contend that most putative class members would not be aware of their rights and would not have the time and resources to locate knowledgeable counsel wiling to represent them. Defendant counters that an individualized action, seeking $1,000 in statutory damages, accompanied by a claim under § 17200 of the California Business and Professions Code for disgorgement of profits is the superior method of adjudicating this case.

In determining superiority of a class action to individual litigation, courts consider the interests of the individual members in controlling their own litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action. Fed. R. Civ. P. 23(b)(3); *see also Amchem Prods., Inc.*, 521 U.S. at 615. In determining whether a class action may be superior to individual litigation, the Court notes that the FDCPA specifically provides for and contemplates class action relief. 15 U.S.C. §§ 1692k(a)(2)(B), (b)(2). Courts have found that individual consumers are most likely unaware of their rights under the FDCPA. *Ballard*, 186 F.R.D. at 600. Moreover, class action certifications to enforce compliance with consumer protection laws are "desirable and should be encouraged." *Id*. (citing *Duran v. Credit Bureau of Yuma, Inc.*, 93 F.R.D. 607, 610 (D. Ariz. 1982) (citing *Watkins v. Simmons and Clark, Inc.*, 618 F.2d 398, 404 (6th Cir. 1980))).

Here, the Court finds that a class action in this context is superior to individual claims. First, the Court agrees that individual consumers are most likely unaware of their rights under the FDCPA and that the likelihood of individual actions is remote. *See Ballard*, 186 F.R.D. at 600. Second, the drafters of the FDCPA contemplated class action recovery within the liability portion of the act. Third, the size of any individual damages claims under the FDCPA are usually so small that there is little incentive to sue individually. *See id.* (citing *Amchem Prods., Inc.*, 521 U.S. at 615). Fourth, efficiency and consistency of concerns favor litigating the legality of Defendant's standardized

conduct by all class members in one suit, rather than forcing each class member to sue individually. *Id.* (citing *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 188-89 (N.D. Ill. 1992)). Finally, as was the case in *Ballard*, while valid concerns regarding the manageability of the class exist in relation to liability, they are not sufficient to defeat certification. Manageability is not a separate area of inquiry in considering certification under Rule 23(b)(3), but merely a secondary problem to consider. *Id.* (citing *Gulish v. United States*, 78 F.R.D. 515, 518 (W.D. Pa. 1978)). The more important considerations are the predominance of common questions and superiority of the class action. *Id.* "Manageability problems must be factual, unavoidable obstacles to the litigation before they can be considered obstacles to class certification." *Id.* (citation omitted). Accordingly, the Court finds certification of the issue of actual damages is proper under Rule 23(b)(3).

**CONCLUSION**

1. For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion to Certify the Class. Named Plaintiffs Castillo and Hunt are **CERTIFIED** as the representatives of the class defined as follows: All persons to whom Defendant mailed a collection demand at any time since December 5, 2004, (1) which included a demand for both interest and a statutory service charge on a dishonored check; (2) where the check was written in the State of California for personal, family or household purposes; and (3) whose mail was not returned as undeliverable.

2. It is **FURTHER ORDERED** that the issues of liability, declaratory relief, and statutory damages under the FDCPA for those class members who did not pay any portion of the statutory service charge demanded is **CERTIFIED** under Rule 23(b)(2).

3. It is **FURTHER ORDERED** that the issues of actual damages under the FDCPA for those class members who paid any portion of the statutory service charge demanded is **CERTIFIED** under Rule 23(b)(3).

**IT IS SO ORDERED.**

Dated: March 20, 2007

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

14