Paul Arons, State Bar #84970
685 Spring Street, #104
Friday Harbor, WA 98250
Tel:  (360) 378-6496
Fax: (360) 378-6498
lopa@rockisland.com

Ronald Wilcox, State Bar #176601
LAW OFFICE OF RONALD WILCOX
2160 The Alameda, 1st Flr., Suite F
San Jose, CA 95126
(408) 296-0400

Attorneys for Plaintiffs

(Additional plaintiffs' counsel on last page)

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDY HUNT and BRIAN CASTILLO, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>IMPERIAL MERCHANT SERVICES, d/b/a CHECK RECOVERY SYSTEMS,<br><br>    Defendants. | Case No. 05-04993 MJJ<br>Case No. 06-02037 MJJ<br><br>CLASS ACTION<br><br>REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF CLASS NOTICE PLAN<br><br>Date: July 24, 2007<br>Time: 9:30 a.m.<br>Courtroom 11 |

## I. INTRODUCTION

    Defendant's only significant objection to the class notice plan proposed by plaintiffs is that part of the plan requiring defendant to advance notice costs.[1] This

---

 1.  Defendant also disputes the need for a court order compelling it to provide class information.  As explained below, plaintiffs believe that a court order should still be issued, but are hopeful that, with a court order, the parties can resolve class information issues.

PLAINTIFF'S REPLY MEMO. IN SUPPORT OF PROPOSED CLASS NOTICE PLAN: Page 1

opposition is based on the theory that this Court's rulings are only advisory, pending a determination by the Ninth Circuit, and by the claim that defendant does not have any money.  Neither argument has merit.

## II.  DEFENDANT SHOULD BE ORDERED TO ADVANCE NOTICE COSTS

### A.  This Court's Ruling that Defendant's Violated the FDCPA is Binding and Will Be the Basis for a Final Judgment

Throughout these proceedings, defendant has advanced the unusual theory that only federal appellate courts make binding decisions.  In defendant's view, it should not be responsible to pay any judgment until the Ninth Circuit rules on defendant's planned appeal.  Opp. Memo., 7:8-10, 9:8-10.  This is a bizarre notion.  In a federal question case, this Court has the authority to enter a final judgment against the defendant.  28 U.S.C. § 1331, Fed.R.Civ.P. 54, 58.  The Ninth Circuit will not have jurisdiction to hear an appeal until this Court's enters a *final* judgment.  28 U.S.C. § 1291.  Ten days after entry, the judgment will be enforceable by writ of execution.  Fed.R.Civ.P. 62, 69.  Defendant will not be able to stay enforcement of this Court's judgment unless it posts a bond.  Fed.R.Civ.P. 62(d).  Thus, this Court's summary judgment ruling establishes liability.  Aside from handling class issues, there is nothing further to do in this case other than calculate damages.

Defendant cites a lengthy excerpt from *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140 (1974).  *Eisen* is the seminal Rule 23 case establishing that the ordinary rule is that plaintiffs must advance class notice costs.  However, a district court is not bound by *Eisen* where the defendant's liability has been established.   Plaintiffs have cited a number of post-*Eisen* cases where district courts ordered defendants to advance notice costs after liability had been established.  Defendant's attempts to distinguish these cases are as odd as its claim that only the Ninth Circuit can establish

liability.  Whether the courts in those cases were deciding legal or factual issues is irrelevant.  Those cases were not decided based on the district court's conclusion that the defendant was not likely to prevail on appeal.  Therefore, defendant's estimation that its chances of having the Ninth Circuit reverse this Court are better in this case than in those cases is irrelevant.  Those courts decided that since defendants were liable, there was no reason to have plaintiffs advance class notice costs that defendants were ultimately going to have to pay.  In this case too, defendant's liability has been established, and there is no reason why plaintiffs should have to pay the costs of notice at this late stage in the litigation.

### B. Defendant's Claimed Precarious Financial Condition Militates in Favor of Requiring Defendant to Advance Notice Costs

Defendant estimates that notice costs will be approximately $22,341.00.  Opp. Memo., p. 7:16:19.  Although this is probably much less than the litigation costs defendant will be incur in continuing to contest this litigation before this court and the Ninth Circuit, defendant claims that it cannot afford to pay for class notice.

The defendant's financial condition is not a factor that should be considered in deciding whether to order monetary relief, either for litigation costs or for actual damagers.  If it was, debt collectors could avoid judgments merely by pleading poverty.  In this case defendant illustrates this mischief that would result if financial condition was a factor.  Based solely on the declaration from its counsel in this litigation, defendant makes conflicting and unsupported claims about the state of its business, and the availability of insurance.  Defendant claims that its business has already terminated, Opp. Memo., p. 2:10-12, but it also claims that if the Court orders it to pay notice costs, its major client, Safeway, will recall accounts, and it will then have to go out of business.  Opp. Memo., p. 8:14-16.  Defendant also claims that its insurance will

not cover class notice costs if defendants are ordered to pay them, but that it may have

insurance coverage if notice costs are awarded to plaintiffs as part of the final judgment

in this action.  Opp. Memo., p.7:28-8:5.  However, defendant also argues that any

judgment this Court enters will be unenforceable, Opp. Memo., p. 8:8-19, and that it

would be inequitable to even enter a judgment until the Ninth Circuit decides

defendant's planned appeal.  Opp. Memo, p. 7:14-25.  Trying to pierce these

contradictions, it appears that for reasons that have nothing to do with this lawsuit,

defendant's largest, but not sole, client, shifted much, but not all, of its business to

another company.  Defendant is still in business.  Its representations concerning

insurance coverage are by nothing more than the hearsay interpretations of its counsel,

without reference to insurance documents.

Although defendant's current financial condition is largely irrelevant to the

issue of shifting class notice costs, its claims of impending financial doom militates in

favor of requiring defendant to pay notice costs sooner, rather than later.  Defendant is

going to be liable for notice costs, either now, or when a final judgment is entered.

There is no reason why plaintiff should have to bear the financial risk that defendant will

seek to avoid paying a final judgment by shifting all its profits to its shareholders, as it

did in December 2006,  Opp. Memo., p. 2:13-20.  Defendant should be ordered to pay

class notice costs at this point in the litigation.  It will then be up to defendant to decide

to what lengths it is willing to go to avoid paying a $22,000 cost.

III.  **EVEN THOUGH DEFENDANT HAS PROVIDED SOME CLASS DATA, IT
SHOULD BE ORDERED TO PROVIDE ALL THE DATA THAT PLAINTIFFS
REQUESTED. NECESSARY TO MAIL NOTICE**

In March and April 2007, defendant's agreed to provide the class data that

plaintiffs were requesting, which was to include each class member's last known

address and phone number, and for each check that defendant sough to collect, the check date, check amount, check payee and check number, and date and amount of all payments received.  Defendant did not provide any class information for three months. It was not until late June 2007, when it sent plaintiffs a computer disk, along with its opposition to the pending motion, that defendant sent any data.  The data that defendant provided did not include all the data fields that defendant had agreed to provide, and included a number of inexplicable entries, showing that some check writers had paid negative interest.[2]  Plaintiffs believe that the parties should be able to resolve these problems, but that a court order compelling defendant to produce complete and accurate information will focus defendant on responding without plaintiffs having to file another motion.

**IV.  CONCLUSION**

> WHEREFORE, plaintiffs Hunt and Castillo respectfully request that their motion be granted, and that the Court approve plaintiffs' class notice proposal.

Dated: July 10, 2007                    LAW OFFICE OF PAUL ARONS

                                        By s/Paul Arons
                                        Paul Arons
                                        Attorneys for Plaintiffs
                                        BRIAN CASTILLO and BRANDY HUNT

---

  2.  Defendant did not include any information for check writers who did not pay interest, and did not include any payment information other than interest payments.  The information that defendant did provide, if 100% accurate, is sufficient to identify class members and to calculate damages,  However, the additional information that plaintiffs seek allows plaintiffs to double check the accuracy of the class information that defendant provided.

**Additional Plaintiffs' Counsel**

Irving L. Berg (CA Bar No. 36273)
THE BERG LAW GROUP
433 Town Center, No. 493
Corte Madera, California 94925
(415) 924-0742
(415) 891-8208 (Fax)

O. Randolph Bragg, Ill. Bar #06221983
HORWITZ, HORWITZ & ASSOCIATES
25 East Washington, Suite 900
Chicago, IL 60602
(312) 372-8822