IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HUNT,

    Plaintiff,

v.

CHECK RECOVERY SYSTEMS, INC.,

    Defendant.

No. C05-04993 MJJ

**ORDER MODIFYING CLASS CERTIFICATION AND GRANTING PLAINTIFF'S MOTION FOR APPROVAL OF CLASS NOTICE PLAN**

## INTRODUCTION

Before the Court is Plaintiffs Brandy Hunt and Brian Castillo's ("Plaintiffs") Motion for Approval of Class Notice Plan[1] ("Notice Motion"). Defendant Imperial Merchant Service, d/b/a Check Recovery Systems ("Defendant") opposes the motion. Also before the Court is Plaintiff's Motion for Clarification or Modification of Class Certification Order[2] ("Modification Motion"). Defendant does not oppose this motion.

For the following reasons, the Court **GRANTS** Plaintiffs' Motion for Approval of Class Notice Plan and **MODIFIES** the class certification as set forth below.

## FACTUAL BACKGROUND

Plaintiffs Hunt and Castillo filed their complaints on December 5, 2005 and March 16, 2006, respectively. On May 9, 2006, this Court issued a Related Case Order relating Plaintiffs' cases.

---

[1] Docket No. 94.

[2] Docket No. 97.

Plaintiffs seek declaratory judgment, damages and costs based on Defendant's violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Plaintiffs alleged that Defendants violated the FDCPA by attempting to collect an interest charge in addition to the check amount and a statutory service charge.

On March 20, 2007, the Court issued an order denying Defendant's motion for summary judgment and granting in part Plaintiffs' motion for summary judgment ("Summary Judgment Order"). In that order, the Court agreed with Plaintiffs that Defendant's collection letters violated the FDCPA because they demanded interest as well as the amount of the check and the statutorily authorized service charge, which violated 15 U.S.C. §§ 1682e(2)(A) and 1692f(1). The Court granted Plaintiff's motion for summary judgment as to Defendant's liability under those sections.

Also on March 20, 2007, by separate order, the Court granted Plaintiffs' motion to certify class ("Certification Order"). The class comprises all persons to whom Defendant mailed a collection demand at any time since December 5, 2004, (1) which included a demand for both interest and a statutory service charge on a dishonored check; (2) where the check was written in the State of California for personal, family or household purposes; and (3) whose mail was not returned as undeliverable. (Certification Order, p. 14.) The Court further certified, under Rule 23(b)(2), "issues of liability, declaratory relief, and statutory damages under the FDCPA for those class members who did not pay any portion of the *statutory service charge*." (*Id.*) (emphasis added.) In addition, the Court certified under Rule 23(b)(3) "the issues of actual damages under the FDCPA for those class members who paid any portion of the *statutory service charge* demanded." (*Id.*) (emphasis added.)

Taken together, Plaintiffs' motions constitute a request that the Court modify the definition of the class and approve Plaintiffs' notice to that class. Because the extent of the class will determine the nature of the notice, the Court will first analyze Plaintiffs' Motion for Clarification or Modification of Class Certification Order and will then turn to their Motion for Approval of Class Notice Plan.

2

# LEGAL STANDARD

## A. Modification of Class Certification

Rule 23 of the Federal Rules of Civil Procedure governs class actions in federal court. The rule requires a court to determine "at an early practicable time" whether the action merits class certification. Fed. R. Civ. P. 23(c)(1)(A). The order certifying the class must "define the class and the class claims, issues, or defenses . . .". Fed. R. Civ. P. 23(c)(1)(B). In addition, a court can divide a class into subclasses and treat each subclass as a class. Fed. R. Civ. P. 23(c)(4). The court has discretion to alter or amend the certification order "before final judgment." Fed. R. Civ. P. 23(c)(1)(C).

## B. Approval of Class Notice Plan

"For any class certified under Rule 23(b)(1) or (2), the court *may* direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A) (emphasis added). On the other hand, when a court certifies a class under 23(b)(3), the court "must" direct to class members "the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). This best practicable notice should include "individual notice to all members who can be identified through reasonable effort." *Id.*

In addition to requiring notice, the rules also dictate the style and substance of the notice. The notice must "concisely and clearly state in plain, easily understood language" several elements. *Id.* These include "the nature of the action, the definition of the class certified, the class claims, issue, or defenses, that a class member may enter an appearance through counsel if the member so desires, that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and the binding effect of a class judgment on class members under Rule 23(c)(3)." *Id.*

# ANALYSIS

## A. Modification of Class Certification

The Court, in its class certification order, created two subclasses of Plaintiffs. These subclasses are complementary. Each member of the class is in exactly one of the subclasses since each class member either "paid any portion of the statutory service charge," or did not. (Certification Order, p. 14.)

The Court certified under 23(b)(2) issues of liability, declaratory relief, and statutory damages for those who did not pay any service charge. The Court certified under Rule 23(b)(3) issues of actual damages for those that paid any portion of the service charge. Plaintiffs do not want to change the extent of the class overall, but rather move for a modification of the allocation of class members between subclasses. This allocation implicates the procedures for treating the subclasses, specifically the requirements for giving notice and allowing class members to opt out of the action.

Rule 23(b)(2) is appropriate when "the party opposing the class has acted . . . on grounds generally applicable to the class, thereby making appropriate final injunctive relief or *corresponding declaratory relief* with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2) (emphasis added). A Rule 23(b)(2) class action seeks to secure remedies "with respect to the class as a whole." The rule mentions both "injunctive relief or corresponding declaratory relief." *Id.* However, class actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive and declaratory relief; these cases may also seek monetary damages where the money damages are "merely incidental." *Probe v. State Teachers' Retirement Sys.*, 780 F.2d 776, 780 (9th Cir. 1986), cert. denied, 476 U.S. 1170 (1986). "Incidental" means that the monetary damages "flow directly from liability to the class as a whole on the claims forming the basis of the . . . declaratory relief." *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665 (M.D. Fla. 1999) (citing *Alison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998)).[3] The focus on a remedy that imposes liability on defendant for conduct generally applicable to the class makes the offer to class members of the opportunity to opt out of the lawsuit inappropriate. This lack of opt-out opportunity prevents a class member from opting out and bringing a separate suit for declaratory judgment, whose result would either be redundant or contradictory. Additionally, the FRCP makes direction of notice in a 23(b)(2) class

---

[3] More specifically, FDCPA class actions certified under Rule 23(b)(2) are also not limited to actions requesting injunctive and declaratory relief. *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589, 596-97 (E.D. Cal. 1999) (certifying FDCPA class under Rule 23(b)(2) on the issues of liability, declaratory relief, and statutory damages but reserving certification of actual damages for certification under Rule 23(b)(3)); *Gonzales v. Arrow Fin. Services, LLC*, 233 F.R.D. 577 (S.D. Cal. 2006) (certifying FDCPA class under Rule 23(b)(2) where plaintiffs received standardized demand letters and sought declaratory relief and statutory damages); *Borcherding-Dittloff v. Transworld Sys., Inc.*, 185 F.R.D. 558, 565-66 (certifying class under Rule 23(b)(2) for claims under FDCPA where plaintiffs sought declaratory relief and statutory damages); *Gammon v. GC Services Ltd. P'ship*, 162 F.R.D. 313, 319-22 (1995) (certifying class under Rule 23(b)(2) for claims under FDCPA seeking declaratory relief and statutory damages); *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665 (M.D. Fla. 1999) (same).

discretionary. Fed. R. Civ. P. 23(c)(2)(A).

In class action suits where actual damages predominate, on the other hand, courts certify the class under Rule 23(b)(3). *See* Fed. R. Civ. P. 23(b). When a court certifies a class or subclass under this section, it *must* direct notice of the action, including the opportunity, to class members. Fed. R. Civ. P. 23(c)(2)(B).

Plaintiff urges the Court to modify the class certification order to avoid overbreadth in the definition of the subclass certified under Rule 23(b)(3). Because the Court must direct notice to each member of this subclass, including an offer to opt-out, overbreadth would lead to the unnecessary cost of sending notices to "thousands of check writers who are not entitled to actual damages." (Modification Motion at p. 4.) Only those class members who suffered actual damages should receive notice or the opportunity to opt out.

After an analysis of legislative history, this Court found that the FDCPA is a "mandatory recovery scheme that does not provide for additional collection of *interest*." (Summary Judgment Order, p. 14.) (emphasis added.) The statutory charge, on the other hand, is not wrongful. *Id.* In fact, imposition of a statutory fee is part of the "mandatory and exclusive" scheme that the legislature intended for recovery by bad debt collectors. *Id.* Every member of the class received Defendant's demand for interest payments in addition to statutory charges. However, only those Plaintiffs who paid any of the demanded interest suffered actual damages as a result of Defendant's actions. Many of the class members who paid any portion of the *penalty* (who currently comprise the 23(b)(3) subclass) did not pay any portion of the demanded interest.[4] Those who did not pay interest did not suffer actual damages.

      **B.**      **APPROVAL OF CLASS NOTICE PLAN**

      **1.**      **BEST NOTICE PRACTICABLE**

Plaintiffs propose sending notice to class members by first-class mail. Determining the scope of "best notice practicable" is a fact-intensive inquiry. *In re Simon II Litigation*, 211 F.R.D. 86, 183

---

[4] Defendant only sought payment of: (1) the face amount of the check; (2) a statutory service charge; and (3) interest. Plaintiffs consider interest to be any amount of a class member's payment to Defendant that exceeds the check amount plus the service charge. (Memo. in Sup. of Motion to Modify, p. 5, n.2.) Under this calculation method, the group of class members that paid any interest will necessarily be smaller than the group that paid any penalty.

(E.D.N.Y. 2002). Delivery by first-class mail can satisfy the best notice practicable when there is no indication that any of the class members cannot be identified through reasonable efforts. *See Bourlas v. Davis Law Associates*, 237 F.R.D. 345, 356 (E.D.N.Y. 2006) (Delivery by first class mail to each individual class member satisfies Rule 23(c)(2)(B) when no indication that any of the class members cannot be identified through reasonable efforts.) The use of first-class mail is particularly appropriate for two reasons. First, the letters which give rise to the action reached class members through the mail. Second, membership in the class is predicated on the successful receipt of mail; only those people "whose mail was not returned as undeliverable" are part of the certified class. Delivery by first class mail satisfies the requirement for best notice practicable.

Having determined the mode of transmission, the Court next turns to the form of the notice. Plaintiffs submitted, with their motion for approval of class notice, a proposed form of notice. The purpose of the mandatory notice requirement in 23(b)(3) actions is to present a fair recital of the subject matter of the suit and to inform all class members of their opportunity to be heard. *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1125 (9th Cir. 1977) (citations omitted). The Court examines Plaintiff's proposed notice for compliance with Rule 23(c)(2)(B) and for its protection of the due process interests of the absent class members.

Plaintiffs' proposed notice includes a summary of the action, the plaintiffs, defendant, subject of the suit and a definition of the class certified. The notice lays out Plaintiffs' claim and informs class members of their right to opt out of the suit, the ability to obtain separate representation, and some of the reasons to opt out of the suit. The language in the notice informs recipients that "[a]ll rulings made by the Court will apply" to them and that they will share in any settlement. Accordingly, the operative language of the proposed notice satisfies Rule 23(c)(2)(B)'s elements and uses the necessary "plain, easily understood" language. The notice overall is clear and concise.[5]

The Court approves Plaintiffs' notice to 23(b)(3) subclass members.

### 2. COST OF NOTICE

The Court now turns to the allocation of the cost of providing notice to the class. According

---

[5] The final notice should contain real contact information for class counsel instead of the placeholder present in the Exhibit.

to Defendant's data, 22,341 people paid interest in response to demand letters in the class time period. At $1 per person, the cost of providing notice would be $22,341. While this amount is less than 10% of the total interest payments that Defendant processed, it is not a trivial amount for either party.

Class representatives must be prepared, at the outset of the suit, to accept the responsibility of identifying absentee class members and paying for their individual notice. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. at 156, 176-79 (1974). This general rule that imposes cost of notice on the party seeking to maintain a class action can give way in "peculiar circumstances." *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1102 (5th Cir. 1977). At the end of the case, of course, the district court can allocate the cost of identifying and giving notice to class members "as it would any other item of costs." *Id.*

In *Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969), the district court dealt with how to allocate the cost of notice to the class. In that case, a consolidation of stockholders' actions based on fraud in the purchase of securities, the court noted that "no rigid rule as to allocation of expense of notice is advisable and that the better course is to decide the issue in each case on the basis of the relevant factors." *Id.* at 132. These factors include the merit of the claim and the defendant's desire to take advantage of the *res judicata* effect of the class action. *Id.* In addition, the *Berland* court considers the number of named plaintiffs and their financial responsibility, their interests compared with the entire class, and their ability to pay considering the cost of the notice. *Id.* Because factual underpinning of the present case differs from *Berland*, not all of the factors are applicable. Nevertheless, the *Berland* analysis provides a framework for the analysis here. The Court now turns to the relevant *Berland* factors.

Under *Berland*, the strength of the class action claim is a factor for deciding which party pays the cost of notice. When evaluating the strength of plaintiff's case on the merits, this Court need not resort to a preliminary hearing or examine the apparent merit in the claim. *See Eisen* (rejecting the use of a preliminary hearing for determining which party should pay cost of directing notice). Instead, the Court refers to its March 20, 2007 Summary Judgment Order. In that order, the Court found that "as a matter of law . . . Defendant's collection letters violated the FDCPA" and granted

7

Plaintiff's Motion for Summary Judgment as to Defendant's liability. (Summary Judgment Order, p. 17.) Several district courts have shifted the cost of notice to the defendant after a finding of liability. *See Meadows v. Ford Motor Co.*, 62 F.R.D. 98 (W.D.Ky. 1973) (Imposing the expense of notice on defendant after determining that the plaintiff and the class were entitled to recover on their demands for injunctive relief); *Catlett v. Mo. Hwy. and Transp. Comm'n*, 589 F.Supp. 949 (W.D.Miss. 1984) (Ordering defendant to bear expense of notice because the liability had been established and because cost involved was substantial); *Kyriazi v. Western Elec. Co.*, 465 F.Supp. 1141, 144 (D.M.J. 1979) (After a finding of liability, writing, "All costs of notification are, of course, to be borne by [defendant]"). In addition, a district court recently required a defendant to bear the cost of notice based on the *likelihood* that summary judgment would be entered against the defendant. *See Fournigault v. Independence One Mortg. Corp*, 2007 WL 1492848 (N.D.Ill. 2007). While Defendant devotes considerable effort to distinguish the case law, the Court does not find its arguments persuasive.

First, Defendant relies on *Eisen* for the proposition that "the costs of notice [must] be paid by Plaintiff" and that the Supreme Court "made no exception to this rule if liability was established." (Def.'s Opp. to Notice Motion, p. 5.) This reading overstates the Supreme Court's holding. The district court order in that case that imposed costs on defendant followed a "preliminary hearing." *Eisen*, 417 U.S. at 177. The Court rejected the propriety of such a hearing, writing that not only was there "nothing in either the language or history of Rule 23 that gives a court any authority" to conduct such an inquiry, but that "such a procedure contravenes the Rule." *Id.* The Court criticized the fact that a preliminary hearing allowed a plaintiff "to secure the benefits of a class action without first satisfying the requirements for it." *Id.* In addition, such a procedure creates the risk of "substantial prejudice to a defendant" of holding a hearing without "the traditional rules and procedures applicable to civil trials." *Id.* at 177-178. As noted above, the grounds on which the Court rejected the order are not present in the current case; summary judgment is authorized by Rule 56 and inflicts no prejudice on a defendant.

Second, Defendant argues that the "liability in this case is not yet established and will not be established until the Court of Appeals for the Ninth Circuit established binding precedent" on the

8

statutory interpretation of the FDCPA. (Def's Opp. to Notice Motion, p. 1.) On the contrary, Rule 56 empowers this Court to grant summary judgment when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In addition a summary judgment "may be rendered on the issue of liability." *Id.* In the absence of precedent from the Ninth Circuit, the Court reached its conclusion in granting partial summary judgment by examining two district court cases from this district and undertaking extensive analysis of the legislative history of the FDCPA. The Court's Summary Judgment Order establishes Defendant's liability.

Third, Defendant claims that the standard of appellate review for a question of law renders the Court's conclusions uncertain. The findings of liability in *Kyriazi* and *Meadows* that preceded the order that defendant's pay notice costs were based on factual findings that the defendants' conduct violated the law. Such findings receive appellate review under an abuse of discretion standard, and, as Defendant correctly states, the Ninth Circuit would review *de novo* the Court's finding of defendant's liability as a matter of law. However, while the standard of appellate review may influence Defendant's chances of success on appeal, it does not undermine the finality of this Court's summary judgment.[6]

Because the Court has issued a final ruling finding Defendant liable, Plaintiffs will prevail on their claims. Accordingly, this factor weighs in favor of Defendant bearing the cost of the notice.

Having shown the certainty of Plaintiffs' success on the merits, the Court now turns to the other *Berland* factors: the defendant's desire to take advantage of the *res judicata* effect of the class action, the number of named plaintiffs and their financial responsibility, the named plaintiffs' interests compared with the entire class, and their ability to pay considering the cost of the notice. On the current record, the Court cannot determine the extent of Defendant's desire to take advantage of the res judicata effect of the class action. The other *Berland* factors support an order that Defendant pay for the cost of notice. The named Plaintiffs received demands for total interest payments of $37.69. (Summary Judgment Order, at p. 3.) This amount constitutes only a fraction of

---

[6] In fact, this Court has already expressed confidence in its ruling. In denying Defendant's motion for certification for immediate appeal of the issue of liability under the FDCPA, the Court wrote that "there is no substantial ground for difference of opinion." (Summary Judgment Order, p. 18.)

9

the over $260,374.76 that Defendant characterizes as interest. The Plaintiffs have a small absolute stake in the class action, and their claims are minuscule compared with the cumulative claims of the class. The overall estimated cost of notice is a substantial $22,341. Therefore, ordering Plaintiffs to pay the cost of notice on Plaintiffs would impose a burden out of proportion to their personal stakes in the lawsuit. These factors, while not dispositive, support a decision to order Defendant to bear the cost of sending notice to class members.

The *Berland* factors weigh in favor of Defendant bearing the costs, and the Court has already made a final decision on the merits of Plaintiffs' claim. It would be unreasonable to order Plaintiffs to pay the cost of notice when the Court has already found Defendant liable.[7]

## CONCLUSION

Because the current class certification is overbroad in its allocation of class members into the 23(b)(3) subclass, the Court modifies the class certification as follows:

1. Named Plaintiffs Castillo and Hunt are **CERTIFIED** as the representatives of the class defined as follows: All persons to whom Defendant mailed a collection demand at any time since December 5, 2004, (1) which included a demand for both interest and a statutory service charge on a dishonored check; (2) where the check was written in the State of California for personal, family or household purposes; and (3) whose mail was not returned as undeliverable.[8]

2. It is **FURTHER ORDERED** that the issues of liability, declaratory relief, and statutory damages under the FDCPA for those class members who did not pay any portion of the *interest* demanded is **CERTIFIED** under Rule 23(b)(2).

3. It is **FURTHER ORDERED** that the issues of actual damages under the FDCPA for those class members who paid any portion of the *interest* demanded is **CERTIFIED** under Rule 23(b)(3).

The Court **ORDERS** Plaintiffs to send notice, by first-class mail, to all class members who paid any portion of the demanded interest. The language in the notice must conform to that in the

---

[7] Defendant argues that it is unable to pay the notice costs and that the Court should therefore refrain from imposing costs. Defendant's ability to pay is not a relevant factor in deciding the motions before the Court.

[8] This certification of the class as a whole is unchanged.

10

exhibit that Plaintiffs submitted with their motion. The Court **ORDERS** Plaintiff to account for the actual cost of producing and sending the notices, and the Court **ORDERS** Defendant to pay the cost of producing and sending the notices.

**IT IS SO ORDERED.**

Dated: July 25, 2007

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE