1  LAW OFFICES OF CLARK GAREN,
   CLARK GAREN, CALIF. BAR #50564
2  P. O. BOX 1790,
   PALM SPRINGS, CALIFORNIA 92263
3  STREET ADDRESS-NO MAIL: 17100 N. INDIAN, PALM SPRINGS, CA. 92258
   TELEPHONE:    (760) 323-4901
4  Fax:          (760) 288-4080
   E-Mail: clarkgaren@msn.com
5
   ATTORNEYS FOR PLAINTIFFS
6  IMPERIAL MERCHANT SERVICES, a California
   corporation, doing business as
7  CHECK RECOVERY SYSTEMS

8              UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

10
   BRANDY HUNT, and BRIAN CASTILLO,    )   Case No. C 05 4993 SBA
11 et. al., on behalf of themselves    )   Case No. C 06 2037 SBA
   and others similarly situated.      )
12                                     )   DEFENDANTS MOTION TO
                 Plaintiff,            )   STAY ALL PROCEEDINGS
13                                     )   PENDING APPEAL OF
   -vs-                                )   LIABILITY ISSUES IN
14                                     )   9TH CIRCUIT CASE NUMBER:
   CHECK RECOVERY SYSTEMS, INC.,       )   07-15676 AND CLASS
15 et. al.,                            )   ACTION CERTIFICATION
                                       )   ISSUES IN 9TH CIRCUIT
16               Defendants.           )   CASE NUMBER: 07-16418
   _____)
17                                         Date:    JUNE 17, 2008
                                           Time:     1:00 P.M.
18                                         APPEARANCE BY PHONE
                                           APPROVED BY COURT
19
                                           HONORABLE SAUNDRA B.
20                                         ARMSTRONG

21     TO PLAINTIFF BRANDY HUNT, on behalf of herself and others

22 similarly situated, and to IRVING L. BERG; THE BERG LAW GROUP; O.

23 RANDOLPH BRAGG; HORWITZ, HORWITZ & ASSOCIATES; PAUL ARONS; and

24 THE LAW OFFICES OF PAUL ARONS, her attorneys of record and to

25 BRIAN C CASTILLO, on behalf of himself and others similarly

26 situated and to RONALD WILCOX; O. RANDOLPH BRAGG; AND HORWITZ,

27 HORWITZ & ASSOCIATES, his attorneys of record:

28

1    PLEASE TAKE NOTICE THAT on June 17, 2008 at 1:00 P.M. in an

2    appearance that will occur by telephone pursuant to order of

3    Judge Armstrong, Defendant Check Recovery Systems will move this

4    Court for an order to Stay these Proceedings pending resolution

5    of the appeal that will determine whether Defendant has any

6    liability to Defendant now pending before the Ninth Circuit Court

7    of Appeals as Case Number 07-15976 and the appeal of Class

8    Certification Issues now pending before the Ninth Circuit Court

9    of Appeals as Case Number 07-16418.

10

11    Dated: MAY 8, 2008

12                              LAW OFFICES OF CLARK GAREN

13                              BY
                                /s/ CLARK GAREN
14                              CLARK GAREN,
                                ATTORNEY FOR DEFENDANT

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

MEMORANDUM OF POINTS AND AUTHORITIES

2

TABLE OF CONTENTS

3

| CHAPTER NO. | TITLE | PAGE NO. |
|---|---|---|
| I | INTRODUCTION | 5 |
| II | THIS COURT HAS AUTHORITY TO GRANT DEFENDANTS MOTION TO STAY THIS PROCEEDING | 6 |
| III | THE STANDARD FOR REVIEW OF A STAY REQUEST | 6 |
| IV | DEFENDANT IS LIKELY TO SUCCEED ON THE MERITS | 7 |
| IV–A | APPEAL IN BANKRUPTCY CASE | 9 |
| IV–B | APPEAL OF CLASS ACTION CERTIFICATION ISSUES | 10 |
| IV–C | CONCLUSION | 13 |
| V | MOVANT WILL SUFFER IRREPARABLE INJURY IF THIS STAY IS NOT GRANTED | 14 |
| VI | THE STAY WILL NOT INJURE ANY OF THE PLAINTIFFS IN THIS CASE | 18 |
| VII | THE PUBLIC INTEREST LIES IN GRANTING THE STAY | 19 |
| VIII | CONCLUSION | 21 |

1

**TABLE OF AUTHORITIES**

2

**SUPREME COURT CASES:**                                                   **PAGE**

3
*Eisen vs. Carlisle & Jacquelin*, (1974),
417 U.S. 156, 177-178, 94 S. Ct. 2140, 2152-2153,                          10,
4

*Hilton vs. Braunskill*, 481 U.S. 770, 778,
5      107 S. Ct. 2113, 2120 (1987)                                       6, 7

6

**FEDERAL CASES:**

7      *Britton v. Co-Op Banking Group,*
       916 F. 2d 1405 (1990)                                              9, 10
8

*C.B.S. Employees Federal Credit Union vs.*
9      *Donaldson, Lufkin & Jenrette Securities*
       *Corporation*, (U.S.D.C., W.D. Tenn),                              7, 8, 13,
10     716 F. Supp 307, 309 - 310                                         20, 21

11     *Leyva vs. Certified Grocers of California, Ltd.,*
       593 F. 3d 857, 863-864, (9th Circuit, 1979,
12     citing *Keroltst Mfg. Co. Vs. C-O Two Fire*
       *Equipment. Co.*, 342 U.S. 180,                                    6
13     73 DS. Ct. 219 (1952)

14     *Pearce v. E. F. Hutton Group, Inc.,*
       828 F. 2d 826, 829                                                 8, 13
15

*Torres-Lopez vs. May,*
16     111 F. 3d 633, 638 (9th Cir., 1997)                               8, 9

17     **FEDERAL STATUTES:**

18     15 *United States Code* 1692k(a)(2)(B)(ii)                         18,

19     **FEDERAL RULES OF CIVIL PROCEDURE**

20     *Federal Rule of Civil Procedure, Rule* 23(b)(2)                   5, 10, 11,
                                                                          12, 19,
21

*Federal Rule of Civil Procedure, Rule* 23(b)(3)                         11, 12

22     **CALIFORNIA STATUTES**

23
       *California Civil Code Section* 1719                               5, 9, 14,
24                                                                        15, 19

25     *California Civil Code Section* 3287                               5, 9, 14,
                                                                          15, 19
26

27
                                     **I**
28

1

**INTRODUCTION**

2    The sole issue in this case and the case pending in the 9th

3 Circuit Court of Appeals as Case Number 07-15976 is whether the

4 victim of a dishonored check writer may **both** impose the service

5 charge permitted by *California Civil Code Section* 1719 **and** pre-

6 judgment interest permitted by *California Civil Code Section*

7 3287. This is an issue of first impression on which no binding

8 precedent exists.

9    The **primary** issue in the class action certification appeal

10 now pending in the 9th Circuit Court of Appeals as Case Number

11 07-16418 is whether a class action defendant can be ordered to

12 pay the class notice costs prior to entry of judgment. This is an

13 issue of first impression on which no binding precedent exists.

14 Numerous amicus curiae have filed briefs in support of the

15 position of Plaintiff in this appeal.

16    This appeal also raises the issue of whether claim of a

17 bankrupt protected by a bankruptcy permanent injunction is moot

18 and therefore disqualifies her from representing the class. This

19 is an issue of first impression on which no binding precedent

20 exists.

21    Furthermore, the appeal raises the issue of whether a class

22 can be certified in an F.D.C.P.A. action under F.R.C.P. Rule

23 23(b)(2) as seeking equitable relief when the F.D.C.P.A. does not

24 permit a private Plaintiff to seek equitable relief. The

25 significance of this issue is that if an F.D.C.P.A. class action

26 cannot be certified under F.R.C.P. Rule 23(b)(2) as seeking

27 equitable relief, class notices will have to be sent to every

28

1    prospective F.D.C.P.A. class action member. This is also an issue

2    of first impression on which no binding precedent exists.

3         Since both of these appeals involve the parties in this

4    litigation, and one is an interlocutory appeal in this

5    litigation, this Court should now stay all proceedings in this

6    action pending a resolution of both of the appeals now pending

7    before the Ninth Circuit Court of Appeals.

8                              **II**
     **THIS COURT HAS AUTHORITY TO GRANT DEFENDANTS**
9                **MOTION TO STAY THIS PROCEEDING.**

10        A trial court has inherent authority to control its own

11   docket and calendar. The Ninth Circuit has stated:

12            "A trial court may, with propriety, find it is
              efficient for its own docket and the fairest
13            course for the parties to enter a stay of an
              action before it, pending resolution of
14            independent proceedings which bear upon
              the case. This rule applies whether the
15            separate proceedings are judicial, administrative,
              or arbitral in character, and does not require that
16            the issues in such proceedings are necessarily
              controlling of the action before the Court."
17
              *Leyva vs. Certified Grocers of California, Ltd.,*
18            593 F. 3d 857, 863-864, (9th Circuit, 1979,
              citing *Keroltst Mfg. Co. Vs. C-O Two Fire*
19            *Equipment. Co.*, 342 U.S. 180, 73 DS. Ct. 219 (1952)

20
                             **III**
21           **THE STANDARD FOR REVIEW OF A STAY REQUEST**

22        In the case of *Hilton vs. Braunskill*, 481 U.S. 770, 107 s.

23   Ct. 2113 (1987), the United States Supreme Court established the

24   following factors to be considered in a request to stay a

25   proceeding in a civil case because of a pending interlocutory

26   appeal. The Court said:

27            "Different Rules of Procedure govern the power of
              district courts and courts of appeals to stay an order
28

pending appeal. *See Fed. Rule Civ. Proc* 62(c); *Fed. Rule app. Proc.* 8(a). Under both Rules, however, the factors regulating the issuance of a stay are generally the same:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

 (2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4) where the public interest lies."

*Hilton vs. Braunskill*, 481 U.S. 770, 778, 107 S. Ct. 2113, 2120 (1987)

## IV
## DEFENDANT IS LIKELY TO SUCCEED ON THE MERITS

To obtain a stay, a movant must establish a strong likelihood of success on the merits, or, failing that, must demonstrate that it has a substantial case on the merits and that the "harms" factors mitigate in its favor (*Hilton vs. Braunskill*, (1987) 481 U.S. 770, 778, 107 S. Ct. 2113, 2120)

In the case of *C.B.S. Employees Federal Credit Union vs. Donaldson, Lufkin & Jenrette Securities Corporation*, (U.S.D.C., W.D. Tenn), 716 F. Supp 307, Judge McRae, Senior District Judge, interpreted this requirement as follows:

"In applying the first prong of the *Hilton* test, it is unlikely that a district court would ever be able to find that defendants will be likely to succeed on the merits of their appeal. To make such a finding, the district court would be saying that it erred in not granting defendant's original motion to stay the proceedings pending arbitration, and that the court of appeals is likely to reverse its decision. This Court is not prepared to make such a statement and does not feel that it must in order to satisfy the first prong of the *Hilton* test. In *Washington Area Transit Commission v. Holiday Tours, Inc.,* 559 F. 2d 841 (D.C. Cir., 1977) the court stated:

> "A court, when confronted with a case in which the other three factors strongly favor interim relief, may exercise its discretion to grant a stay if the movant has made a substantial case on the merits. The court is not required to find that ultimate success by the movant is a mathematical probability, and indeed, as in this case, may grant a stay even though its own approach may be contrary to movant's view of the merits (559 F. 2d at 843).

> The *Washington Area Transit* court when on to state that the first prong of the test is satisfied when the movant presents a "serious legal question", regardless whether he has shown a mathematical probability of success."

> *C.B.S. Employees Federal Credit Union vs. Donaldson, Lufkin & Jenrette Securities Corporation*, (U.S.D.C., W.D. Tenn), 716 F. Supp 307, 309 – 310

In the case of *Pearce v. E. F. Hutton Group, Inc.*, 828 F. 2d 826, 829, the District Court stayed the action because the argument that "Pearce's claims were subject to arbitration raised "issues...of first impression," and that Hutton Group would suffer substantial harm if Pearce's action were not stayed pending appeal and the District Court was later reversed." (*Pearce v. E. F. Hutton Group, Inc.*, 828 F. 2d 826, 829)

Each appeal now pending before the Ninth Circuit presents **numerous** issues of first impression which, under the analysis of *Pearce,* in and of itself, satisfies the test for likelihood of success on appeal.

Each appeal now pending before the Ninth Circuit will require *de novo* review because each appeal is based **solely** on a legal issue (*Torres-Lopez vs. May*, 111 F. 3d 633, 638 (9th Cir., 1997). Neither appeal involves the review of any factual issues.

Since each appeal involves only issues of law, the appellate panel is required to disregard the decision of the District Court

1  and make a new, independent determination of the law. The scope

2  of review, when conbined with the fact that each issue on appeal

3  is an issue of first impression, tremendously increases the

4  likelihood of success on appeal.

5                **IV–A. APPEAL IN BANKRUPTCY CASE**

6        The **ONLY** issue in this appeal is whether or not the victim

7  of a dishonored check writer may impose both interest under

8  *California Civil Code Section* 3487 and a returned check charge of

9  either $25.00 or $35.00 under *California Civil Code Section* 1719.

10 **This is an issue of first impression and there is no binding**

11 **precedent on it.**

12       After granting this appeal expedited status (a very rare

13 occurrence for a civil appeal), the 9th Circuit Court of Appeal

14 heard oral arguments on April 17, 2008. **At oral argument, the**

15 **three judge panel indicated it intended to certify the question**

16 **to the California Supreme Court for purposes of comity.**

17       Defendant is asking this Court to take Judicial Notice of

18 the transcript of oral argument being filed concurrently with

19 this motion (Judicial Notice Request #6, Exhibit 1). A review of

20 the questions from the appellate panel to both counsel clearly

21 indicates that, in the opinion of the panel, the Defendant was

22 likely to succeed on the merits. More importantly, the transcript

23 of oral argument demonstrates beyond any question that the 9th

24 Circuit Panel did **not** find the Defendants appeal to be frivolous.

25 (*Britton v. Co-Op Banking Group,* 916 F. 2d 1405 (1990)*.*

26           **IV–B. APPEAL OF CLASS ACTION CERTIFICATION ISSUES**

27       Defendant objected to the class certification, but was

28

unable to appeal the order as an interlocutory order until
Plaintiff obtained an order requiring the Defendant to pay the
class notice costs in advance of the judgment. Under the case of
*Eisen vs. Carlisle & Jacquelin*, (1974), 417 U.S. 156, 177-178, 94
S. Ct. 2140, 2152-2153, this order allowed Defendants to
**immediately** appeal the class notice cost order, along with the
class certification issues.

Briefing on the class certification appeal was completed in
April, 2008.

The primary issues addressed in the class action appeal are:

1. Plaintiff has no standing to represent class members who
are seeking equitable or declaratory relief under F.R.C.P. Rule
23(b)(2) because Plaintiff's bankruptcy discharge **already
operates as a permanent injunction** against any further collection
activity based on the dishonored check issued by Plaintiff.
Defendant argues the preliminary injunction renders the claim of
Plaintiff to equitable or declaratory relief **moot,** and that
Plaintiff therefore has no standing to seek injunctive or
declaratory relief on behalf of the class certified under
F.R.C.P. Rule 23(b)(2). **This is an issue of first impression and
there is no binding precedent on it.**

2. The damage claim of Plaintiff is not typical of the
claims held by the members of the F.R.C.P. Rule 23(b)(3) class
because Plaintiff **did *not* sustain *any* actual damages**

3. Since no equitable or declaratory relief is allowed under
the Federal Fair Debt Collection Practices Act, the District

1  Court had no jurisdiction to certify a class for equitable relief

2  under F.R.C.P. Rule 23(b)(2) because **no** equitable or declaratory

3  relief is available under the Federal Fair Debt Collection

4  Practices Act to the members of this class. Therefore, the

5  District Court had no jurisdiction to certify this sub-class

6  under F.R.C.P. Rule 23(b)(2) as an equitable action that did not

7  require class notices. The District Court only had jurisdiction

8  to certify this class under F.R.C.P. 23(b)(3) as a class seeking

9  primarily monetary relief, and a class that must be issued class

10  notices. **This is an issue of first impression and there is no**

11  **binding precedent on it**.

12      4. While the F.D.C.P.A. does permit an award of actual

13  damages to a named Plaintiff, it **does _not_ permit** an award of

14  actual damages **to class members.** Since the final relief requested

15  for the class (actual damages) is not permitted under the

16  statute, the sub-class created for class members seeking actual

17  damages cannot be certified under F.R.C.P. Rule 23(b)(3).

18      5. There is a conflict of interest between the F.R.C.P. Rule

19  23(b)(2) class and the F.R.C.P. Rule 23(b)(3) class?

20      The liability of $260,000.00 owed to the members of the

21  F.R.C.P. Rule 23(b)(3) class for illegal interest they claim they

22  paid to Defendant must be deducted from $456,151.00 net worth

23  established by Defendants tax return to determine the net worth

24  on which any class action damage award in this litigation must be

25  based. When this liability of $260,000.00 for illegal interest

26  paid to Defendant by the F.R.C.P. Rule 23(b)(3) class members is

27  deducted from the net worth of Defendant, the net worth and

28

1  resulting damage award available to the F.R.C.P. Rule 23(b)(2)

2  class of 1% of the net worth of the Defendant will be reduced by

3  more than half.

4      This creates an **actual** conflict of interest between the

5  F.R.C.P. Rule 23(b)(2) class and the F.R.C.P. Rule 23(b)(3) class

6  and prohibits Plaintiff from representing **both** classes. **This is**

7  **an issue of first impression and there is no binding precedent on**

8  **it.**

9      6. It is in the best interests of the individual class

10  members to **individually control** the prosecution of **a separate**

11  **action.**

12      7. The cost of issuing the class notices, which will be

13  several times greater than the amount that will be recovered by

14  each class member, deprives the Court of jurisdiction to allow

15  this action to proceed as a class action because it would be in

16  the best interests of each class member to prosecute an action on

17  an individual basis.

18      8. The cost of sending the class notices is the obligation

19  of the Plaintiff.

20      9. Defendant cannot be ordered to pay the notice costs

21  before final liability is established. **This is an issue of first**

22  **impression and there is no binding precedent on it.**

23                    **IV-C. CONCLUSION**

24      Most of the foregoing issues are questions of first

25  impression on which no binding precedent exists. Under the

26  holding of *Pearce v. E. F. Hutton Group, Inc.*, 828 F. 2d 826,

27  829, this fact alone satisfies the requirement that movant is

28

1  likely to succeed on the merits.

2      Judge McCrae Judge McRae, in the *C.B.S.* opinion, held that

3  the movant has satisfied the obligation to show a reasonable

4  likelihood of success by presenting a "serious legal question",

5  regardless whether he has shown a mathematical probability of

6  success. The transcripts of oral argument at the Ninth Circuit

7  Court of Appeal establish beyond any reasonable question that the

8  bankruptcy appeal presents a "serious legal question". In

9  addition, each of the class action issues also presents a serious

10 legal question.

11     In addition, each of the issues now on appeal are an

12 important issue of widespread consumer concern that should be

13 resolved at the appellate level sooner rather than later.

14     Defendant has therefore established a strong likelihood of

15 success on the merits on each of these appeals, or, failing that,

16 has demonstrated that it has a substantial case on the merits and

17 that the "harms" factors mitigate in its favor on each of these

18 appeals.

19     Under these facts, Movant has satisfied the criteria

20 required to show a strong likelihood of success on the merits, or

21 that it has a substantial case on the merits and that the "harms"

22 factors mitigate in its favor.

23                              **V**
                **MOVANT WILL SUFFER IRREPARABLE INJURY**
24                **IF THIS STAY IS NOT GRANTED**

25     From the initiation of this case, Defendant has sought

26 appellate review to obtain binding precedent to determine whether

27 the victim of a dishonored check writer may impose both interest

28

1  under *California Civil Code Section* 3487 and a returned check

2  charge of either $25.00 or $35.00 under *California Civil Code*

3  *Section* 1719.

4      From the initiation of this case, counsel for Plaintiff have

5  sought to obtain a settlement with a large payment of attorney

6  fees. From the initiation of this case, counsel for Plaintiff has

7  diligently opposed any effort to allow immediate appellate review

8  to create binding precedent to determine whether the victim of a

9  dishonored check writer may impose both interest under *California*

10 *Civil Code Section* 3487 and a returned check charge of either

11 $25.00 or $35.00 under *California Civil Code Section* 1719.

12     Counsel for Plaintiff does not want to take the chance that

13 the appellate Court will accept the arguments of Defendant and

14 establish binding precedent against Plaintiff because that would

15 cost Counsel for Plaintiff more than one million dollars of

16 attorney fees in this and other cases on this theory of liability

17 now pending in various cases in the Northern District of

18 California. In addition, it will deprive Counsel for Plaintiff of

19 a very profitable extortion business where Counsel for Plaintiff

20 allies with bankruptcy attorneys to file suit against every

21 victim of a bankrupt who has written dishonored checks and been

22 asked to pay both fees by the victimized creditors.

23     Defendant believed that it is essential to establish binding

24 precedent on this issue so that consumers would be protected from

25 both charges if the position of Plaintiff was sustained at the

26 appellate level, and so that creditors would be on notice and not

27 subject to extortion suits from the attorneys for Plaintiff in

28

1  the event the position of Plaintiff was overruled at the

2  appellate level. It was for this reason that Defendant was able

3  to obtain an **expedited hearing** from the Ninth Circuit Court of

4  Appeals.

5       Defendant recognized that this case would be very

6  complicated on appeal because of all of the class action issues.

7  Therefore, Defendant filed a timely Complaint in the Plaintiff's

8  bankruptcy to have her debt declared to be non-dischargeable and

9  seek both both interest under *California Civil Code Section* 3487

10 and a returned check charge of either $25.00 or $35.00 under

11 *California Civil Code Section* 1719. Plaintiff did everything

12 possible to delay discovery, but eventually Defendant discovered

13 that Plaintiff wrote 47 consecutive returned checks over two and

14 one-half months without ever making a deposit to cover them.

15 Based on this evidence, Defendant obtained a judgment of non-

16 dischargeability, but Bankruptcy Judge Dennis Montali refused to

17 allow both interest under *California Civil Code Section* 3487 and

18 a returned check charge of either $25.00 or $35.00 under

19 *California Civil Code Section* 1719. Defendant then appealed the

20 portion of this judgment denying both charges, and was successful

21 in getting it before the Ninth Circuit and having the appeal

22 expedited while this F.D.C.P.A. case was still in the trial

23 court. Thus, the Defendant successfully defeated **all** the efforts

24 of the Plaintiff to prevent appellate review.

25      Plaintiff has continually used the legal system to make the

26 defense of this case more difficult than necessary. For example,

27 Plaintiff insisted on taking the deposition of an employee of

28

1  Defendant's assignor, Safeway, to try to establish that its

2  assignment to Defendant was less than a full and complete

3  assignment, which is contrary to the law of assignment. This

4  deposition involved Defendants Client and their in-house legal

5  department and outside legal counsel, all at a great cost to

6  Defendants Client. Plaintiff obtained no relevant or admissible

7  evidence from the taking of this deposition. Not surprisingly,

8  Defendants client terminated its relationship with Defendant

9  within four months after the deposition.

10      Defendant has errors and omissions insurance for everything

11  claimed by Plaintiff except the illegal interest Plaintiff claims

12  it has collected. In order to force Defendant to settle,

13  Plaintiff has pursued a judgment for recovery of the illegal

14  interest she claims were collected from class members, even

15  though the equitable remedy of disgorgment is not available under

16  F.D.C.P.A. actions and even through class members are not

17  entitled to receive actual damages under the statute. Plaintiff

18  has pursued these non-insured claims in an attempt to force

19  Defendant to settle and abandon its efforts to obtain appellate

20  review.

21      If this matter is allowed to proceed as to either the

22  interest liability issues or the class action issues, the

23  Defendant will suffer irreparable harm in the form of attorney

24  fees and costs to defend this action. Furthermore, if a judgment

25  is entered for the interest Plaintiff claims was illegally

26  collected, Defendant will be forced out of business before the

27  appeal on liability has been resolved or forced to pay money to

28

1   class members that cannot be recovered in the event Defendant

2   eventually succeeds on appeal. Plaintiff has even threatened to

3   place Defendant into involuntary bankruptcy to gain control of

4   the matters now on appeal and thereafter abandon them.

5        The Plaintiff is a formerly bankrupt worker with a criminal

6   record and without any special skills or high earning capacity.

7   Plaintiff has not even yet paid the fraud judgment of $614.45

8   that was entered against her. There is no way that Defendant will

9   **ever** be able to recover its costs and attorney fees expended to

10  defend this action from Plaintiff in the event Defendant succeeds

11  on appeal.

12       Finally, Defendant has requested that this Court take

13  judicial notice of the order it entered on April 28, 2008 in the

14  case of *Zoltan Steiner vs. Apple Computer*, Northern District Case

15  Number C-07-04486 SBA (Judicial Notice #6, Exhibit 2) wherein

16  this Court found that almost every California district court to

17  recently consider whether to stay a matter, pending an appeal of

18  an order denying a motion to compel arbitration, has issued a

19  stay. While this is not an appeal on a motion to compel

20  arbitration, this case does involve the very rare situation where

21  there are two interlocutory appeals pending before the appellate

22  court while the underlying civil proceeding is still active in

23  the District Court. The same standards that apply to the

24  interlocutory appeal of an order denying arbitration apply to

25  this case as well because both situations involve a civil

26  proceeding still pending in the District Court while the

27  appellate court considers an interlocutory appeal.

28

For the foregoing reasons, Defendant has established it will suffer irreparable harm if these proceedings are not stayed pending appeal.

## VI
## THE STAY WILL NOT INJURE ANY OF THE PLAINTIFFS IN THIS CASE

Plaintiff BRANDY HUNT has no actual damages, and is entitled only to a maximum statutory damage award of $1,000.00. However, Defendant has obtained a Bankruptcy Fraud Judgment against Plaintiff BRANDY HUNT for $614.45, together with interest from November 1, 2006. Therefore, Plaintiff BRANDY HUNT has no real financial interest in the outcome of this litigation because any judgment she may obtain will be offset by the money she already owes Defendant on the bankruptcy fraud judgment.

The members of the class certified under F.R.C.P. Rule 23(b)(3) have a claim for the interest they actually paid. However, each member of this class actually paid less than $10.00 in interest, and most of the members of this class paid less than $2.00 in interest.

Finally, 15 U.S.C. 1692k(a)(2)(B)(ii) limits a class action recovery to 1% of the net worth of the debt collector, or $500,000, whichever is **less**. According to its 2004 income tax return (the year before this litigation was filed), the net worth of Defendant was $456,151.00. Therefore, the maximum class action recovery is $4,561.51, which is divided among over 100,000 class members. This means that each class member has a potential recovery of four and one half cents.

The potential recovery of each Plaintiff is so small that none of these Plaintiffs will be injured if this stay is granted.

## VII
## THE PUBLIC INTEREST LIES IN GRANTING THE STAY

These pending appeals present **numerous** issues of great public interest.

The Bankruptcy Appeal will determine and create binding precedent to determine whether the victim of a dishonored check writer is entitled to receive both interest under *California Civil Code Section* 3287 and the returned check charge under *California Civil Code Section* 1719.

The class action appeal will determine whether a Plaintiff in an F.D.C.P.A. action can avoid the class notice requirements by having the class action certified as seeking equitable relief under F.R.C.P. Rule 23(b)(2) when equitable relief is not permitted as a remedy to an individual Plaintiff under the F.D.C.P.A.

The class action appeal will also determine whether a class action can be certified with the class notice costs are many times greater than the potential recovery of each class member.

Finally, the class action appeal will determine whether a class action defendant can be ordered to pay the class notice costs prior to the entry of a judgment.

Each of these issues is of great public interest, as evidenced by the great number of organizations that have filed an amicus curiae brief in support of the Plaintiff's position before the Ninth Circuit. There is currently no binding precedent on any of these issues. Therefore, it is in the public interest that a stay be granted to insure that the parties pursue the appellate process and obtain binding precedent on each of these issues.

1    In the case of *C.B.S. Employees Federal Credit Union vs.*
2  *Donaldson, Lufkin & Jenrette Securities Corporation*, (U.S.D.C.,
3  W.D. Tenn), 716 F. Supp 307, Judge McRae, Senior District Judge,
4  held:

5           "Though public policy generally favors prompt
            resolution of disputes, it also favors an efficient
6           allocation of judicial resources. It does not make
            sense for this Court to expend its time and energy
7           preparing this case for trial and possibly trying it
            only to learn at a later date from the court of appeals
8           that it was not the proper forum to hear the case. It
            should be noted that this Court remains firm that it is
9           the proper forum to determine whether an agreement
            exists between the parties. However, until the court of
10          appeals affirms that decision, these proceedings should
            be stayed as to all defendants, including the non-
11          appealing parties."

12          *C.B.S. Employees Federal Credit Union vs. Donaldson,*
            *Lufkin & Jenrette Securities Corporation*, (U.S.D.C.,
13          W.D. Tenn), 716 F. Supp 307, 310

14    The issuance of a stay will prevent the parties and the
15  Court from wasting taxpayer resources and personal resources on
16  litigation which will probably be mooted on appeal as set forth
17  by Judge McRae in the C.B.S. opinion.

18    Therefore, it is in the public interest that this stay be
19  granted.

20                              **VIII**
21                           **CONCLUSION**

22    Defendant satisfies each of the four factors established by
23  the United States Supreme Court in the *Hilton* case for the
24  issuance of a stay of a civil proceeding pending the outcome of
25  an interlocutory appeal.

26    In addition, virtually ever California District Court has
27  granted a stay of proceedings when an interlocutory appeal is

28

1  pending.

2      Therefore, the stay of this action requested by Defendant

3  CHECK RECOVERY SYSTEMS must be granted.

4

5      Dated: MAY 8, 2008

6

7                              LAW OFFICES OF CLARK GAREN

8                              BY

9                              /s/ CLARK GAREN
                               CLARK GAREN,
10                             ATTORNEY FOR DEFENDANT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  LAW OFFICES OF CLARK GAREN,
   CLARK GAREN, CALIF. BAR #50564
2  P. O. BOX 1790,
   PALM SPRINGS, CALIFORNIA 92263
3  STREET ADDRESS-NO MAIL: 17100 N. INDIAN, PALM SPRINGS, CA. 92258
   TELEPHONE:     (760) 323-4901
4  Fax:           (760) 288-4080
   E-Mail: clarkgaren@msn.com
5
   ATTORNEYS FOR PLAINTIFFS
6  IMPERIAL MERCHANT SERVICES, a California
   corporation, doing business as
7  CHECK RECOVERY SYSTEMS

8              UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

10
   BRANDY HUNT, and BRIAN CASTILLO,   )   Case No. C 05 4993 SBA
11 et. al., on behalf of themselves    )   Case No. C 06 2037 SBA
   and others similarly situated.      )
12                                     )   DECLARATION OF CLARK
                                       )   GAREN IN SUPPORT OF
13                                     )   DEFENDANTS MOTION TO
                  Plaintiff,           )   STAY ALL PROCEEDINGS
14                                     )   PENDING APPEAL OF
   -vs-                                )   LIABILITY ISSUES IN
15                                     )   9TH CIRCUIT CASE NUMBER:
   CHECK RECOVERY SYSTEMS, INC.,       )   07-15676 AND CLASS
16 et. al.,                            )   ACTION CERTIFICATION
                                       )   ISSUES IN 9TH CIRCUIT
17                Defendants.          )   CASE NUMBER: 07-16418
   _____)
18                                         Date:    JUNE 17, 2008
                                           Time:    1:00 P.M.
19                                         APPEARANCE BY PHONE
                                           APPROVED BY COURT
20
                                           HONORABLE SAUNDRA B.
21                                         ARMSTRONG

22     I, CLARK GAREN, STATE AND DECLARE:

23     1. If duly called as a witness and sworn to give testimony

24 herein, my testimony would be as hereinafter stated.

25     2. All of the facts stated herein are within my own,

26 personal knowledge.

27

28
   _____
   DECLARATION OF CLARK GAREN IN SUPPORT OF DEFENDANTS MOTION TO STAY ALL
   PROCEEDINGS PENDING APPEAL OF LIABILITY ISSUES IN 9TH CIRCUIT CASE
   NUMBER: 07-15676 AND CLASS ACTION CERTIFICATION ISSUES IN 9TH CIRCUIT
   CASE NUMBER: 07-16418 Case No. C 05 4993 SBA & C 06 2037 SBA
                            - 1 -

1    3. I am the attorney of record for defendant.

2    **SUMMARY OF PROCEDURAL HISTORY**

3    4. Defendant Imperial Merchant Services, d/b/a Check

4    Recovery Systems is a debt collector that collects on dishonored

5    checks for retailers. Plaintiffs Brian Costello and Brandy Hunt

6    are two individuals, each of whom wrote a check to Safeway that

7    was dishonored; never paid; and eventually listed on a Chapter 7

8    Bankruptcy Petition. Defendant sent each Plaintiff a collection

9    letter demanding payment of: (1) the face amount of the check;

10   (2) statutory service charge, as permitted by California Civil

11   Code Section 1719; and (3) Interest as permitted by California

12   Civil Code Section 3287. Plaintiffs contend that California law

13   does not permit defendant to collect both a service charge under

14   California Civil Code Section 1719 and interest under California

15   Civil Code Section 3287. Each Plaintiff filed a class action

16   lawsuit alleging that Defendant had violated the Federal Fair

17   Debt Collection Practices Act, 15 United States Code Section 1692

18   et. seq. (FDCPA) by attempting to collect charges that are not

19   permitted by law. The two separate class actions were

20   subsequently consolidated (Order Granting Stipulation to

21   Consolidate, 8/25/2006), Docket No. 46).

22   5. At the outset, Defendant and I recognized that this case

23   represented a matter of great importance to creditors and debtors

24   alike. Defendant and I believed that the liability theory

25   advanced by Plaintiff's counsel was completely wrong, and we

26   recognized that Plaintiff's counsel would continue to extort

27

28
_____
DECLARATION OF CLARK GAREN IN SUPPORT OF DEFENDANTS MOTION TO STAY ALL
PROCEEDINGS PENDING APPEAL OF LIABILITY ISSUES IN 9TH CIRCUIT CASE
NUMBER: 07-15676 AND CLASS ACTION CERTIFICATION ISSUES IN 9TH CIRCUIT
CASE NUMBER: 07-16418 Case No. C 05 4993 SBA & C 06 2037 SBA
- 2 -

1  settlements from creditors based on this theory until binding

2  precedent was established at the appellate level. Defendant and I

3  decided that binding precedent must be obtained for the benefit

4  of the public and the entire credit industry. Defendant and I

5  therefore convinced the insurance carrier for Defendant to allow

6  Defendant assume **all** of the defense attorney fees and court costs

7  to defend this action in exchange for being given the latitude to

8  refuse to settle this case and instead pursue binding precedent

9  from an appellate court.

10      6. At the beginning of this case, I asked the attorney for

11  Plaintiff, PAUL ARONS, to agree to obtain a ruling on the issue

12  of liability only and have it certified for appeal to the Ninth

13  Circuit to establish binding precedent on the issue of liability.

14  PAUL ARONS refused, indicating that he wanted to first obtain a

15  judgment and require an appeal bond to stay execution if

16  Defendant wanted to appeal the case. It thus became apparent to

17  me that PAUL ARONS wanted to avoid an appellate decision at any

18  cost because he preferred to continue his ambush and extortion

19  operation of filing individual lawsuits in the Northern District

20  of California.

21      7. Prior to filing the FDCPA class action, Plaintiff BRANDY

22  HUNT had filed a bankruptcy petition, seeking to discharge, inter

23  alia, the debt from her dishonored $137.15 check to Safeway.

24  After she filed the FDCPA action, Defendant initiated an

25  adversary proceeding in the United States Bankruptcy Court in

26  which it sought both a service charge and interest. One of the

27

28

DECLARATION OF CLARK GAREN IN SUPPORT OF DEFENDANTS MOTION TO STAY ALL
PROCEEDINGS PENDING APPEAL OF LIABILITY ISSUES IN 9TH CIRCUIT CASE
NUMBER: 07-15676 AND CLASS ACTION CERTIFICATION ISSUES IN 9TH CIRCUIT
CASE NUMBER: 07-16418 Case No. C 05 4993 SBA & C 06 2037 SBA
- 3 -

1  principal purposes of this filing was to have an action pending

2  to challenge Plaintiff's theory of liability over which

3  Defendants insurance carrier had absolutely no control whatsoever

4  so that the carrier could not make a settlement against the

5  wishes of Defendant. During discovery, Defendant discovered that

6  Plaintiff BRANDY HUNT wrote 47 consecutive checks over a 2 and

7  one-half month period without making a single deposit.

8      8. As part of the bankruptcy adversary action, Plaintiff

9  BRANDY HUNT insisted on taking the deposition of an employee of

10 SAFEWAY, Defendants assignor, to attempt to prove that Defendant

11 did not have the right to collect the underlying obligation for

12 which the check was tendered. Plaintiff did not obtain any

13 relevant or admissible evidence in this deposition, as evidenced

14 by the Summary Judgment in both the bankruptcy court and in this

15 court. As a result of this discovery, SAFEWAY involved their

16 employee; their in-house counsel; and their outside counsel at

17 great expense. Not surprisingly, at the end of 2006, SAFEWAY

18 stopped assigning accounts to Defendant.

19     9. On October 31, 2006, Dennis Montali, Bankruptcy Judge,

20 ruled that Hunt's check was not dischargeable, but that Defendant

21 could not collect both the returned check charge under California

22 Civil Code Section 1719 and interest under California Civil Code

23 Section 3287. The bankruptcy judgment was originally appealed to

24 the Bankruptcy Appellate Panel, but it was transferred by

25 Plaintiffs to the District Court, found to be related to the two

26 pending F.D.C.P.A. cases, and then assigned to Judge Jenkins. The

27

28
_____

1  bankruptcy court ruling was affirmed by District Court Judge

2  Jenkins. (Judgment on 28 U.S.C. Section 158 appeal from final

3  judgment of the bankruptcy court, 5/17/2007, Docket No. 16 in

4  Civ. No. 06-7795. Defendant appealed the district Court

5  affirmance, and this appeal is now pending before the Ninth

6  Circuit Court of Appeals as Case Number 07-15676.

7      10. On April 17, 2008, the 9th Circuit held oral arguments,

8  after which the case was submitted. During oral argument, the 9th

9  Circuit panel indicated it was going to certify the question of

10 whether a creditor may collect both interest under California

11 Civil Code 3287 and a returned check charge under California

12 Civil Code 1719 to the California Supreme Court to obtain comity

13 because **all** parties before the Court indicated that this was an

14 important question (Judicial Notice #6, 7:5 - 8:2; 12:15 - 13:5;

15 17:22 - 20:15). The decision in this case will establish binding

16 precedent on the principal issue of liability.

17     11. Plaintiff Castillo also had a pending bankruptcy action

18 at the time he filed his FDCPA complaint, and Defendant brought

19 an adversary proceeding in the United States Bankruptcy Court

20 identical to the HUNT adversary proceeding. The Castillo

21 proceeding has been subject to a series of stays in the

22 bankruptcy court, and no date has been set for trial.

23     12. In the pending case, on March 21, 2007, Judge Jenkins

24 granted Plaintiff's Motion for Summary Judgment on all liability

25 issues and certified a class consisting of check writers living

26 in California from whom Defendant demanded both a service charge

27

28

1  and interest. (Hunt v. Check Recovery Sys., 478 F. Supp. 2d 1157,

2  (N.D. Cal., 2007)(Order Granting Partial Summary Judgment for

3  Plaintiff, Hunt v. Check Recovery Sys., 241 F.R.D. 505 (N.D.

4  Cal., 2007) (Order Certifying Class). There are approximately

5  7,000 of these class members.

6      13. On August 1, 2008, the district court granted

7  plaintiff's motion regarding class notice procedures, including

8  an order that defendant pay the cost of class notice Hunt v.

9  Check Recovery Sys., 2007 WI, 2220972, U.S. Dist LEXIS 58000 (N.

10  DE. Cal., Aug 1, 2007), (Docket No. 112). Defendant has appealed

11  the part of the August 1, 2008 order requiring it to pay class

12  notice costs. Defendant has included all issues of class

13  certification in this appeal. Plaintiff moved to limit the scope

14  of the appeal and the motion was denied. Briefing was completed

15  on April 17, 2008, and no hearing date has yet been set.

16      14. Even though the appeal on class notice costs was already

17  pending, in late December, 2007, Plaintiff threatened to

18  institute contempt proceedings against Defendant unless it

19  obtained a stay of the order that it pay the class notice costs.

20  On January 2, Defendant filed an ex parte application for a stay

21  order. In March, 2008, Plaintiff filed an order to show cause to

22  hold Defendant in Contempt. On March 21, 2008, in response to

23  that motion, the District Court granted a stay application of the

24  order requiring Defendant to reimburse Plaintiff for the class

25  notice costs conditioned on Defendant filing a $9,000 supersedeas

26  bond. (Order, Docket No. 132). Defendant has posted the bond.

27

28

1

2

**DEFENDANT IS LIKELY TO SUCCEED IN
THE NOW PENDING BANKRUPTCY APPEAL OF LIABILITY**

3

4

15. The parties in this case and the Bankruptcy

Case now on appeal as Case Number 07-15976 are the same. The

5

6

primary issue in **both** cases is whether or not the victim of a

dishonored check writer may impose both interest under *California*

7

8

*Civil Code Section* 3487 and a returned check charge of either

$25.00 or $35.00 under *California Civil Code Section* 1719. **This**

9

10

**is an issue of first impression and there is no binding precedent
on it.**

11

12

16. The appeal now before the 9th Circuit Court of Appeal

will create binding precedent resolving the principal issue in

13

14

this case and determine whether Defendant CHECK RECOVERY SYSTEMS

can impose both the *California Civil Code Section* 1719 charge and

15

16

pre-judgment interest under *California Civil Code Section* 3287.

17. The Ninth Circuit is either going to certify the

17

18

question to the California Supreme Court (as it indicated at oral

argument)(Judicial Notice #6, 7:5 – 8:2; 12:15 – 13:5; 17:22 –

19

20

20:15) or issue an opinion. In addition, the questions Justice

Steven Trott posed to PAUL ARONS at oral argument make it clear

21

22

that if the 9th Circuit does issue an opinion, the opinion will

be in favor of Defendant (Judicial Notice #6, 17:22 – 20:15;

23

24

19:18 – 24:19). Therefore, further proceedings in the F.D.C.P.A.

case now before this Court will merely duplicate the proceedings

25

26

now before the 9th Circuit Court of Appeal and will possibly

result in inconsistent results.

27

**DEFENDANT IS LIKELY TO SUCCEED IN**

28

1

**CLASS ACTION ISSUES NOW PENDING ON APPEAL**

2  18. Defendant claims Plaintiff has no standing to represent
3  class members who received a notice demanding interest but who
4  paid nothing and are seeking equitable or declaratory relief
5  under F.R.C.P. Rule 23(b)(2) because Plaintiff's bankruptcy
6  discharge **already operates as a permanent injunction** against any
7  further collection activity based on the dishonored check issued
8  by Plaintiff. This renders the claim of Plaintiff to equitable or
9  declaratory relief **moot.** Since Plaintiff's claim to equitable
10  relief is moot, Plaintiff has no standing to seek injunctive or
11  declaratory relief on behalf of the class certified under
12  F.R.C.P. Rule 23(b)(2) **because her claim is moot. This is an**
13  **issue of first impression and there is no binding precedent on**
14  **it.**

15  19. Defendant also claims Plaintiff has no standing to
16  represent the class members who sustained actual damages under
17  F.R.C.P. Rule 23(b)(3) by paying interest to Defendant **because**
18  **Plaintiff** *did not pay* **any interest and** *did not sustain* **any actual**
19  **damages.** The damage claim of Plaintiff is not typical of the
20  claims held by the members of the F.R.C.P. Rule 23(b)(3) class
21  because Plaintiff **did** *not* **sustain** *any* **actual damages** (Excerpts,
22  35:25 – 38:2).

23  20. The claims of Plaintiff align with the interests of the
24  proposed class because the only class members that are typical of
25  Plaintiff are those members who wrote a dishonored check,
26  received a notice demanding both the returned check charge and

27

28

interest, paid nothing on the claim, and then discharged the debt in bankruptcy. None of the members of the classes proposed by Plaintiff have any interests that align with those of the named Plaintiff.

21. A class consisting of class members who received a demand for interest from Defendant but who never actually paid anything to Defendant **cannot** be certified under F.R.C.P. Rule 23(b)(2) as a class action. A class certified under F.R.C.P. Rule 23(b)(2) must seek primarily equitable relief and therefore need not receive a notice of the class action. However, the F.D.C.P.A. prevents a private Plaintiff from obtaining equitable relief. **This is an issue of first impression and there is no binding precedent on it.**

22. The F.D.C.P.A. does permit an award of actual damages to a named Plaintiff, but it **does not permit** an award of actual damages **to class members.** Since the final relief requested for the class (actual damages) is not permitted under the statute, this class cannot be certified under F.R.C.P. Rule 23(b)(3).

23. There is a conflict of interest between the F.R.C.P. Rule 23(b)(2) class and the F.R.C.P. Rule 23(b)(3) class. The sole remedy for the F.R.C.P. Rule 23(b)(2) class is 1% of the net worth of the Defendant. The liability of $260,000.00 owed to the members of the F.R.C.P. Rule 23(b)(3) class must be deducted from $456,151.00 net worth established by Defendants tax return to determine the net worth on which any class action damage award in this litigation must be based. When this liability of $260,000.00

to the F.R.C.P. Rule 23(b)(3) class is deducted from the net worth of Defendant, the net worth and resulting damage award available to the F.R.C.P. Rule 23(b)(2) class will be reduced by more than half. This creates an **actual** conflict of interest between the F.R.C.P. Rule 23(b)(2) class and the F.R.C.P. Rule 23(b)(3) class and prohibits Plaintiff from representing **both** classes. **This is an issue of first impression and there is no binding precedent on it.**

24. It is in the best interests of the proposed class members to allow the individual class members to control the prosecution of their claims in a separate action because their recovery would be significantly larger.

25. The payment of the cost of sending the class notices must be the obligation of the Plaintiff. The Defendant cannot be ordered to pay the class notice costs before a final judgment is entered. **This is an issue of first impression and there is no binding precedent on it.**

26. Further proceedings in this case will merely duplicate the proceedings now before the 9th Circuit Court of Appeal and possibly result in inconsistent results.

27. The most efficient and fairest course for litigation of this case is to obtain binding precedent on **all** the issues now on interlocutory appeal. The issuance a stay of this FDCPA action to permit precedent on these issues will result in the earliest possible resolution of these issues at the appellate level.

**DEFENDANT WILL SUFFER IRREPARABLE HARM
IF THIS STAY IS NOT GRANTED**

28. When this litigation started, Defendant had a gross income of over $40,000.00 per month. After Plaintiff took the deposition of the SAFEWAY employee and SAFEWAY thereafter stopped assigning accounts to Defendant, Defendants income **drastically** decreased. Defendants monthly gross income now is less than $5,000.00 per month, and it is operating at a loss.

29. Defendant has no funds to pay for the continuing defense of this lawsuit. If Defendant is forced to continue the defense of this lawsuit during the appeal process, it will suffer irreparable harm in the form of court costs and attorney fees that it is unable to pay.

30. Defendant has no insurance that covers the Plaintiff's class action claim for the alleged illegal interest it was paid. Since the alleged illegal interest constitutes 50% of the gross income of the Defendant, Defendant has no resources with which to refund the interest charges to the class members. If Plaintiff is allowed to proceed with this litigation before the two pending appeals are concluded, Defendant will suffer irreparable harm because it will be forced to pay money to class action Plaintiff's that can never be recovered in the event Defendant succeeds on either pending appeal.

31. PAUL ARONS has previously stated he intended to force the corporate defendant into involuntary bankruptcy with the expectation that he would be able to convince the Bankruptcy Trustee to abandon the pending appeals. This will cause the Defendant and the public irreparable harm.

1  |  **PLAINTIFF AND THE CLASS MEMBERS WILL SUFFER**
**_NO_ IRREPARABLE HARM IF THIS STAY IS NOT GRANTED**

2

3    32. Plaintiff BRANDY HUNT has no actual damages, and is

4  entitled only to a maximum statutory damage award of $1,000.00.

5  However, Defendant has obtained a Bankruptcy Fraud Judgment

6  against Plaintiff BRANDY HUNT for $614.45, together with interest

7  from November 1, 2006. Therefore, Plaintiff BRANDY HUNT has no

8  real financial interest in the outcome of this litigation because

9  any judgment she may obtain will be offset by the money she

10  already owes Defendant on the bankruptcy fraud judgment.

11    33. The members of the class certified under F.R.C.P. Rule

12  23(b)(3) have a claim for the interest they actually paid.

13  However, each member of this class actually paid less than $10.00

14  in interest, and most of the members of this class paid less than

15  $2.00 in interest.

16    34. Finally, 15 U.S.C. 1692k(a)(2)(B)(ii) limits a class

17  action recovery to 1% of the net worth of the debt collector, or

18  $500,000, whichever is **less.** According to its 2004 income tax

19  return (the year before this litigation was filed), the net worth

20  of Defendant was $456,151.00. Therefore, the maximum class action

21  recovery is $4,561.51, which is divided among over 100,000 class

22  members. This means that each class member has a potential

23  recovery of four and one half cents.

24    35. The potential recovery of each Plaintiff is so small

25  that none of these Plaintiffs will be injured if this stay is

26  granted.

27

28

**THE PUBLIC INTEREST FAVORS GRANTING A STAY**

36. At oral argument in the bankruptcy appeal, all parties agreed that whether the victim of a dishonored check may collect both a service charge under California Civil Code Section 1719 and interest under California Civil Code Section 3287 was a matter of importance and great public interest (Judicial Notice #6, 7:5 – 8:2; 12:15 – 13:5; 17:22 – 20:15). Granting this stay will insure that Plaintiff will not be able to interfere with the progression of this appeal and allow binding precedent on this issue to be established. This result is in the public interest.

37. The class action appeal will determine whether a Plaintiff in an F.D.C.P.A. action can avoid the class notice requirements by having the class action certified as seeking equitable relief under F.R.C.P. Rule 23(b)(2) when equitable relief is not permitted as a remedy to an individual Plaintiff under the F.D.C.P.A.

38. The class action appeal will also determine whether a class action can be certified with the class notice costs are many times greater than the potential recovery of each class member.

39. Finally, the class action appeal will determine whether a class action defendant can be ordered to pay the class notice costs prior to the entry of a judgment.

40. Each of these issues is of great public interest, as evidenced by the great number of organizations that have filed an amicus curiae brief in support of the Plaintiff's position before

1    the Ninth Circuit. There is currently no binding precedent on any

2    of these issues. Therefore, it is in the public interest that a

3    stay be granted to insure that the parties pursue the appellate

4    process and obtain binding precedent on each of these issues.

5

6        I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE

7    STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT.

8

9        EXECUTED ON MAY 8, 2008 AT PALM SPRINGS, CALIFORNIA

10

11

12                        /s/ CLARK GAREN
                          CLARK GAREN, DECLARANT
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF CLARK GAREN IN SUPPORT OF DEFENDANTS MOTION TO STAY ALL
PROCEEDINGS PENDING APPEAL OF LIABILITY ISSUES IN 9TH CIRCUIT CASE
NUMBER: 07-15676 AND CLASS ACTION CERTIFICATION ISSUES IN 9TH CIRCUIT
CASE NUMBER: 07-16418 Case No. C 05 4993 SBA & C 06 2037 SBA
                        - 14 -

1  LAW OFFICES OF CLARK GAREN,
   CLARK GAREN, CALIF. BAR #50564
2  P. O. BOX 1790,
   PALM SPRINGS, CALIFORNIA 92263
3  STREET ADDRESS-NO MAIL: 17100 N. INDIAN, PALM SPRINGS, CA. 92258
   TELEPHONE:    (760) 323-4901
4  Fax:          (760) 288-4080

5  ATTORNEYS FOR PLAINTIFFS
   IMPERIAL MERCHANT SERVICES, a California
6  corporation, doing business as
   CHECK RECOVERY SYSTEMS

7

8                UNITED STATES DISTRICT COURT

9      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

10

11 BRANDY HUNT, on behalf of herself  )   Case No. C 05 4993 SBA
   and others similarly situated,     )   Case No. C 06 2037 SBA
                                       )
12                                     )   REQUEST FOR JUDICIAL
                                       )   NOTICE #6 IN SUPPORT OF
13                                     )   DEFENDANTS MOTION FOR
                Plaintiff,             )   STAY OF ALL PROCEEDINGS
14                                     )   PENDING APPEAL
   -vs-                                )
15                                     )   Date:     June 17, 2008
   CHECK RECOVERY SYSTEMS, INC.,       )   Time:     1:00 P.M.
16 et. al.,                            )   APPEARANCE BY PHONE
                                       )   APPROVED BY COURT
17              Defendants.            )
                                       )
18                                     )
                                       )
19 _____)

20

21      TO PLAINTIFF BRANDY HUNT, on behalf of herself and others

22 similarly situated, and to IRVING L. BERG; THE BERG LAW GROUP; O.

23 RANDOLPH BRAGG; HORWITZ, HORWITZ & ASSOCIATES; PAUL ARONS; and

24 THE LAW OFFICES OF PAUL ARONS, her attorneys of record and to

25 BRIAN C CASTILLO, on behalf of himself and others similarly

26 situated and to RONALD WILCOX; O. RANDOLPH BRAGG; AND HORWITZ,

27
   _____
28 Request for Judicial Notice #6 - Case Number C 05 4993 SBA & C 06 2037 SBA

                                  1

HORWITZ & ASSOCIATES, his attorneys of record:

PLEASE TAKE NOTICE THAT on June 17, 2008 at the hour of 1:00 P.M. before Judge Armstrong, Defendant will move the Court to take Judicial Notice of the following documents:

EXHIBIT #1. Transcript of Oral Argument held on April 17, 2008 before the Ninth Circuit Court of Appeals in Ninth Circuit Case Number 07-15676

EXHIBIT #2. Order dated April 18, 2008 by Judge Saundra Brown Armstrong in Case Number C-07-04486 SBA that stayed civil action pending interlocutory appeal

Dated: May 7, 2008

LAW OFFICES OF CLARK GAREN

BY

_____

CLARK GAREN,
ATTORNEY FOR DEFENDANT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

```
 1                      CASE NUMBER: 07-15976

 2        UNITED STATES COURT OF APPEALS FOR THE 9th CIRCUIT

 3


 4     In re:                              )
                                           )
 5     BRANDY G. HUNT,                     )
                                           )
 6             Bankrupt.                   )
       _____)
 7                                         )
       IMPERIAL MERCHANT SERVICES, INC.,   )
 8     a California corporation, doing     )
       business as CHECK RECOVERY SYSTEMS, )
 9                                         )
                   Plaintiff and Appellant,)
10                                         )
               vs.                         )
11                                         )
       BRANDY G. HUNT,                     )
12                                         )
                   Defendant and Respondent.)
13     _____)

14

15

16

17

18                      TRANSCRIPT OF

19                 ORAL ARGUMENT ON APPEAL

20

21

22
       ATKINSON-BAKER, INC.
23     COURT REPORTERS
       (800) 288-3376
24
       TRANSCRIBED BY:  KRISTINA HOFSTAD
25     FILE NO:  A203F46

                                                      1
```

Request for Judicial Notice #6 - Case Number C 05 4993 SBA & C 06 2037 SBA

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Request for Judicial Notice #6 - Case Number C 05 4993 SBA & C 06 2037 SBA

1                              APPEARANCES

2

3    FOR PLAINTIFF & APPELLANT - IMPERIAL MERCHANT SERVICES:

4    LAW OFFICES OF CLARK GAREN
     BY:  CLARK GAREN, ESQ.
5    P.O. Box 1790
     Palm Springs, California  92263

6

7    FOR AMICUS CURIAE:
     HEFNER, STARK & MAROIS, LLP
8    BY:  RONALD H. SARGIS, Esq.
     2150 River Plaza Drive
9    Suite 450
     Sacramento, California  95833

10

11   FOR APPELLEE:
     LAW OFFICES OF PAUL ARONS
12   BY:  PAUL ARONS, ESQ.
     685 Spring Street
13   Suite 104
     Friday Harbor, Washington  98250

14

15

16

17

18                               INDEX

19

20   ARGUMENT                                        PAGE

21   By Mr. Garen                                   3, 18
     By Mr. Sargis                                      7
22   By Mr. Arons                                      13

23

24

25
                                                        2

Request for Judicial Notice #6 - Case Number C 05 4993 SBA & C 06 2037 SBA

1    1            MR. GAREN:  Good morning, your Honor.  Clark

2    2   Garen appearing for the Appellant, Imperial Merchant

3    3   Services.  I would like to reserve five minutes of my

4    4   time.

5    5            THE COURT:  As a preliminary matter, you may

6    6   have anticipated this from our discussion in earlier

7    7   cases, why isn't this appropriate -- isn't this case

8    8   appropriate for certification in California Supreme

9    9   Court?

10   10            MR. GAREN:  Well, I think it certainly is

11   11   something that's appropriate for certification if there

12   12   is any doubt about what the rule should be.  We didn't

13   13   have the -- we looked into that at the trial court level.

14   14   We didn't have the ability to make that request at the

15   15   trial court level, but I certainly think under the

16   16   doctrine of abstention that --

17   17           THE COURT:  It's not abstention, it's more

18   18   comedy, but it's -- we could say whatever we wanted in

19   19   terms of either of your positions.  But if the California

20   20   Supreme court says we're wrong, then that's --

21   21           MR. GAREN:  I have contemplated that problem

22   22   with this case.  So I certainly am not going -- I

23   23   certainly would concur that referral to the California

24   24   Supreme Court would certainly be an appropriate procedure

25   25   to do.

26                                         3

27

1           THE COURT:  Well, as long as you're here, let's

2  hear the merits.

3           MR. GAREN:  Okay, your Honor.

4           The one thing I would like to do to amplify the

5  briefs is my opponent's primary contention is that 1719

6  is an exclusive remedy.  Now, if it is an exclusive

7  remedy -- and he points to the enactment of subsection

8  (K) which incorporated certain defenses from the UCC, and

9  I mean, it can't be a piecemeal thing.  Either it's

10  exclusive for everything or it's exclusive for nothing.

11  If it's exclusive for everything, it excludes all other

12  defenses too.

13           Let me give you a real-life scenario because

14  this is a case that I'm dealing with now, not exactly

15  these facts, but pretty close.  Let's pretend my office

16  is burglarized.  My checkbooks are taken back in 2003.  I

17  file a police report.  And then somebody takes one of my

18  stolen checks and negotiates it; they forge my name to

19  it.  I start getting the notices of a bad check.  I get a

20  notice under 1719.  I'm inundated with stuff.  I ignore

21  it.  They file a suit against me.  I ignore it.  They get

22  a judgment against me, and they record an abstract in

23  2005.  I get that stuff.  I call up, I complain, but I

24  really don't do anything about it.

25           Then in 2008 when they start levying all my

4

1    wages, I start really protesting.  And I -- I send them

2    the copy of the police report I filed in 2003 which

3    pretty well shows this was an identity theft claim.

4         Now, under the straight law of a judgment,

5    that's a final judgment.  I didn't know -- I knew about

6    it for six months, didn't do anything.  I'm stuck.  But

7    California realized that there's something new with that,

8    with identity theft so they enacted Civil Code Section

9    1798.92 and a few other sections along there.  Identity

10   theft, they said anyone who is an identity theft victim,

11   which is somebody who had their identity stolen and filed

12   a police report, has certain extra rights.

13        One of those rights are that I can come in at

14   any time even after a judgment.  I can file a case.  I

15   can say, hey, I was a victim of identity theft.  And if I

16   show that by a preponderance of the evidence, I can make

17   that judgment go away.  I can have it enjoined, even

18   though my time for doing it is past, even though I was

19   really not diligent in pursuing my rights at the time, I

20   can still do that.  And not only that if the creditor

21   doesn't fully -- and, by the way, I get my attorney fees

22   paid if I win the case.  And if I can show that the

23   creditor didn't diligently investigate that claim, I can

24   get up to a $30,000 penalty.

25        Now, under my opponent's case, he says it's an

5

1   exclusive.  He's trying to help somebody who wrote 47 bad

2   checks.  And if his theory is correct, all these efforts

3   of the California legislature to help victims of identity

4   theft, bye-bye.

5         THE COURT:  I don't see that happening here.

6   This isn't a case about that.

7         MR. GAREN:  No.  But if the statute is

8   exclusive, it excludes all other remedies.

9         THE COURT:  That's not the question in front of

10   us.  You've got a different statute involved in your

11   hypothetical; right?

12         MR. GAREN:  Well, yeah.  But what he's saying is

13   that 1714.19 excludes all other statutes.  It's the sole

14   remedy.  If it's not -- if it doesn't say so in 1719, it

15   doesn't apply.  He is saying it supercedes every other

16   defense, every other statute.

17         For example, if you had a check that was written

18   by a minor and disaffirmed, under his argument that 1719

19   is the exclusive remedy, it would supercede a minor being

20   able to disaffirm his rights.  I think that's his

21   argument.  His argument is that --

22         THE COURT:  I think he'll probably say his

23   argument doesn't go anywhere near that.

24         MR. GAREN:  I'm sure he will, but that is what

25   the argument -- that is the logical extension of his

                                          6

1    argument.

2            I'll reserve my time for rebuttal.

3            THE COURT:  Thank you.

4            MR. GAREN:  Thank you.

5            MR. SARGIS:  May it please the court, Ronald

6    Sargis; Hefner, Stark & Marois for the California

7    Association of Collectors who was granted the permission

8    to appear as Amicus Curiae in this case.

9            Our brief addressed directly the legislative

10   history and the statutory interpretation issues.  And so

11   first following your question on what's my intention or

12   my thought on it being certified to the Supreme Court, if

13   this court were to look at it and say that from looking

14   at the plain language from the statute and the

15   legislative history and the existing case law in

16   California of how statutes are treated, we can't really

17   define or divine what the California Supreme Court would

18   do, then, yes, you would turn it over to the Supreme

19   Court and give them a chance.

20           But I think when you look through the

21   legislative history and what the California legislature

22   did every step of the way when a state court either --

23   when someone questioned or the state court attempted to

24   limit the penalty imposed under 1719, you come to the

25   inescapable conclusion that 1719 is not an exclusive

7

1    remedy as to every other obligation a debtor may have

2    when they have a dishonored check, but is intended to

3    impose an additional penalty on top of that that they are

4    going to pay.

5           And if you go back to the legislative history

6    when member Katz brought the statute, it expressly states

7    in there 1719 and the treble damages were enacted to give

8    merchants leverage in getting bad check writers to pay

9    the obligation.  And the statute was written to have a

10    30-day window in it in which notice would be given so the

11    average wage earner who has two checks coming in a month

12    would get a chance to make good on it.  But if they

13    didn't, on top of everything else you owe out there, you

14    end up having to pay the treble damages.

15           THE COURT:  I take it you view this as an

16    important case in terms of it --

17           MR. SARGIS:  We do view this as an important

18    case.

19           THE COURT:  Even though the amounts at issue, of

20    course, are small.

21           MR. SARGIS:  Well, the amounts are -- each

22    individual check at issue is small, but also it goes to

23    the principal that when someone writes a bad check, the

24    check doesn't replace the other obligations they have

25    arising under contract, goods had and received, other

8

1  statutory provisions that relate to it.  So there's a

2  broader principal that comes into play here where we have

3  a debtor that's trying to say, well, really, I can

4  bifurcate or separate -- segment out my obligations and

5  just say, I'm obligated on this one.

6          And as we identified in our brief that even a

7  check in and of itself, the California courts have said,

8  is a contract.  So we've got a check that's a contract.

9  We've got -- we have an implied contract.  We can have an

10  express contract underlying it as part of it.  But a

11  debtor owes all these different obligations, and the

12  creditor has the right to be paid on all of those

13  obligations.

14          Now, the district court and the bankruptcy court

15  in this case and the cases they relied on looked back and

16  said, well, we know we couldn't allow the treble damages

17  plus interest because that would be double damages.  And

18  the California Supreme Court has said, no, you can't do

19  that, and they cited back to the Greater Westchester case

20  for that.  Well, in that case, the California Supreme

21  Court said, we are addressing the pain and suffering

22  damages.  An essential element of the jury in coming to

23  those damages is to look at the time period over which

24  the pain and suffering was incurred to come to that

25  number.

9

1       You cannot give someone pain and suffering

2   damages for a period of time and also say we want to give

3   you interest on top of that because interest is built

4   into that calculation.  But if you look at the other

5   cases talking about where you have a fixed amount that's

6   owed, the California Supreme Court has said,

7   Mr. Creditor, you have the absolute right to prejudgment

8   interest.  They told L.A. County that in the earlier

9   cases with the firemen pension cases that came up.  And

10  the fire district hadn't paid.  And it's continued

11  through saying you have a right.

12      Now, if we look at the statute, then we know

13  that when the legislature went through enacting it, it

14  knew that was well established law.  And at no point in

15  time did it step up and say, we're trying to limit the

16  obligations of the debtor when they write a bad check.

17  They said we're trying to increase it.

18      Also with respect to Paragraph (K) that's been

19  discussed whether that shows it's intended to be an

20  exclusive remedy and exclude all others, you cannot --

21  and that came in at the very last minute.  There's no

22  legislative history on it.  But at the same time, there's

23  the Cohen case that had come down where in that case, a

24  plaintiff had argued that an attorney who had written a

25  check on his trust account had strict liability under

                                                    10

1    1719 and that all of the other defenses under Division

2    III were waived or excluded.  And the court in Cohen

3    said, no, it's not intended that way.

4        Well, now, if you look at Paragraph (K), what

5    Paragraph (K) says is -- and, oh, the court in Cohen

6    said, even though we have the rule of statutory

7    construction which says when there's a specific provision

8    with respect to an issue it will control over the

9    general, Cohen said, no, that doesn't apply here.

10    Clearly, the legislature did not intend to override all

11    of Division III.

12        So when the legislature amends to add Paragraph

13    (K), the only reason they make reference to Division III

14    is because they are dealing with the general versus

15    specific issue with respect to negotiable instruments,

16    but they aren't tinkering with any of the other

17    obligations and liabilities a debtor has.

18        So in looking at it and in trying to line up the

19    legislative history for the court, I kind -- I ended up

20    coming to a simple analogy to look at it.  If the court

21    were to say that the legislature's intent was to remove

22    all the obligation to pay interest and other obligations

23    and instead have a static amount of money that would be

24    owed, the legislature would be turning the whole statute

25    on its head because they would be telling a debtor, okay,

                                                    11

1    look, bounce whatever check you want.  You want to bounce

2    a $10,000 check, you want to bounce a $100,000 check, you

3    are not going to owe any more interest.  You are not

4    going to have to pay the creditor for the time value of

5    the delay because that's all that prejudgment interest is

6    if the courts say to the date of the judgment we're going

7    to give you the present value; instead, Mr. Debtor, what

8    we're going to let you do is bounce the check, say you

9    owe $500 as additional damages, delay as long as you want

10   and don't pay it.  Ultimately when you pay the underlying

11   debt, you are going to pay it in discounted future

12   dollars.  So we're going to give you a break, and we are

13   going to give you incentive to delay by overriding the

14   other part of the California law dealing with prejudgment

15   interest.

16          That's clearly not what the legislature

17   intended.  That's not what they have said in each of the

18   amendments that have been made along the way.

19          THE COURT:  Of course if a creditor went in and

20   got a judgment, then interest would attach to the

21   judgment.

22          MR. SARGIS:  Well, when the creditor ultimately

23   obtains the judgment, they would get a judgment for the

24   face amount of the check and then interest going forward

25   on the judgment at ten percent.  But they would have to

12

Request for Judicial Notice #6 - Case Number C 05 4993 SBA & C 06 2037 SBA

1    first go to court, they would have to get a judgment.

2    And their judgment would only then be for the face amount

3    of the check, which we know, through simple economics, is

4    not their actual damages out of that date because it

5    hasn't compensated them with prejudgment interest for the

6    loss of that money.  They have been forced to make an

7    interest-free loan until they can get to court and get a

8    judgment.

9            THE COURT:  Okay.  You have about two minutes

10   left.  Do you want to reserve?

11           MR. SARGIS:  Reserve those, your Honor.  Thank

12   you.

13           MR. ARONS:  Good morning, your Honor.  Paul

14   Arons representing Appellee.

15           Just to correct something Mr. Sargis just said,

16   when -- when the creditor went to court and got a

17   judgment, they would be getting a judgment for the check

18   amount plus the treble damage amount.

19           THE COURT:  Right.  And then they would be

20   entitled to interest from that point on.

21           MR. ARONS:  Right.  Interest at that point only.

22           And counsel for Amicus, I think, has stated our

23   position also on the certifications of the Supreme Court.

24   If this court feels -- it feels interpretation of the

25   statute is troubling, perhaps certification is

                                                13

1    appropriate.  But there's a reason that four different

2    judges have looked at this and come away --

3            THE COURT:  So is the answer pretty much the

4    same reading between the lines for both of you; if you

5    are going to rule against me, then certify?

6            MR. ARONS:  No.  No.

7            THE COURT:  But if you are going to rule in my

8    favor, then it's based on the fine arguments, and you

9    should just plunge ahead.

10            MR. ARONS:  If --

11            THE COURT:  My real question:  Is this an

12    important issue in California?  I mean it's purely a

13    question of state law.

14            MR. ARONS:  It's an important -- it's an

15    important issue to the collection industry, which is why

16    Amicus is here.  It's an important issue to consumers

17    because even though consumers individually may not be

18    losing very much if there is an unlawful interest charge,

19    cumulatively it adds up to quite a bit of money.

20            THE COURT:  I gather from your client's

21    perspective, you would just as soon get the case over as

22    soon as possible, I suppose.

23            MR. ARONS:  Well, we have -- we would -- I mean,

24    this is part of a larger case, a class action involving

25    the same parties plus additional plaintiffs in which more

14

1    money is at stake.  And the longer this goes on, the less

2    likely it is we'll ever be able to get money back to the

3    class of plaintiffs.

4          THE COURT:  Well, if I understand your position,

5    the large -- the bigger the check, the greater the

6    windfall to the person who passed it?

7          MR. ARONS:  No.  No.  No, not at all.  First of

8    all, there's -- this is -- to understand the statute, you

9    have to look at the legislative history.  But the

10    legislative history is not the language of the statute.

11          THE COURT:  I write a million dollar bad

12    check --

13          MR. ARONS:  Yes.

14          THE COURT:  -- what happens?

15          MR. ARONS:  Well, someone can come after you for

16    a million dollars plus a $25 service charge.

17          THE COURT:  Plus a what?

18          MR. ARONS:  Plus a $25 service charge.

19          THE COURT:  Now I'm delighted.  I'm not upset

20    anymore.

21          MR. ARONS:  Or they can sue you on the

22    underlying sales transaction and get all damages

23    including interest.

24          THE COURT:  So you get it that way.

25          MR. ARONS:  Right.

15

Request for Judicial Notice #6 - Case Number C 05 4993 SBA & C 06 2037 SBA

1          THE COURT:  So I have to go to court.

2          MR. ARONS:  So you have an alternative.  1719

3     and the service charge there are to provide an easy

4     remedy for merchants who feel they have damage as a

5     result of a dishonored check.

6          THE COURT:  Easy remedy is only available if

7     it's small checks.

8          MR. ARONS:  Yeah.  That's -- I mean, more or

9     less.  The easy remedy is there so the merchant going

10    after a 10 or a 20 or a 50 or a 100 or $500 check doesn't

11    also have to prove their actual damages.  They have a

12    statute that says you automatically get --

13         THE COURT:  It doesn't talk in terms of damages.

14    It talks about service charges, and it talks about

15    damages.

16         MR. ARONS:  No.  The legislative history makes

17    it clear that this service charge amendment was made in

18    response to the case Newman vs. Check Rite where the

19    district court judge was ruling that if a merchant wanted

20    money in addition to the amount of the check, the

21    merchant was going to have to prove their actual damages.

22         And the legislative response to that was to say,

23    we will simply establish the service charge as the amount

24    of actual damages.  So that's how they got over the

25    problem of the merchant who is out money from a

                                              16

1      dishonored check in addition to the face amount, but not

2      out enough to actually pursue an action on the sales

3      transaction.  They simply want to get compensated for the

4      problem the check has been to them, and that's what the

5      service charge stands for.

6           If there is additional loss -- if there is -- if

7      there is a million dollar check, the merchant has other

8      remedies the merchant can pursue on the underlying sales

9      transaction.  The Commercial Code -- in the case of a

10     negotiable instrument, the Commercial Code gives the

11     recipient of the check the option of an action on the

12     check or an action on the sales transaction.

13          What 1719 does is it says in California if what

14     you are pursuing is a check, what you get is the easy

15     remedy of the service charge.  If the service charge

16     isn't adequate, the option of going forward on the

17     underlying sales transaction is always available.

18          But getting back to the language of the statute,

19     the statute has -- it says notwithstanding any other

20     penal sanctions which may apply.  And then later there

21     was added the section that makes clear that Division III

22     Commercial Code remedies and claims are available.

23          Now, when they added Section (K), they could

24     have -- instead of restricting it to Division III, they

25     could have said this statute is not in derogation of any

17

1     other rights available under civil law or something to

2     that effect.  They didn't say that.  They very

3     specifically singled out Division III.  And that must

4     mean something.

5           And what we've heard from Appellants and from

6     Amicus is that that exception actually means all other

7     civil remedies are available except the problem with that

8     is that is not what subsection (K) says.  Subsection is

9     restricted to Division III remedies.

10          THE COURT:  I think we have your argument at

11    hand.

12          You have two minutes.

13          MR. GAREN:  Two minutes.  Thank you, your Honor.

14          The important thing I want to say is:  Is this

15    an important issue in California -- yes.  Does it apply

16    to just collection agencies -- no.

17          One of the basic concepts is is that when people

18    don't pay bills, all of us pay them.  Businesses pass

19    those bills on to other customers who do pay their bills.

20    It is a very important issue in California.

21          And I want to draw the distinction between a

22    remedy and damages.  I made that point in my brief.

23    Subdivision (K) applies to remedies.  It doesn't have

24    anything to do with what the damages are.  Damages is an

25    entirely different theory.

                                          18

1    I'll conclude by saying he just made my same

2 argument.  He says Subsection (K) means that's the only

3 other provision that applies.  None of the other laws do.

4 He says that the identity statute doesn't apply, and he

5 says 1782, the one on the interest, doesn't apply.

6 That's his argument.  I think it's wrong.

7    I certainly think if you don't think it's wrong,

8 you -- I agree with your comments on comedy because we

9 can keep going all over these courts, keep bouncing

10 around and get as many different opinions as there are

11 jurists.  We tried from the beginning to get this to the

12 9th Circuit because that was the only place we could go.

13 I really think the proper judicial body to resolve this

14 once and for all is the California Supreme Court, as you

15 have suggested, in the event -- as my co-counsel Amicus

16 has said, in the event you are not absolutely persuaded.

17    Thank you, your Honor.

18    THE COURT:  I have one question.  Do you have

19 anything in response to his allegation that you can elect

20 to go against the sales transaction in court and just not

21 use this?

22    MR. GAREN:  Well, that's been --

23    THE COURT:  (Inaudible) the problem?

24    MR. GAREN:  That's been one of his whole

25 theories is that a creditor has to sit there at the

19

1   outset and pick and choose.  If they elect to go under

2   1719, they have automatically made an intelligent waiver

3   of every other possible remedy.  We contested that in the

4   trial court.  We contested it in our brief.  We contest

5   it here now.

6          There is nothing in this legislation, nothing in

7   1719 that would have the effect of saying, Mr. Creditor,

8   you are on notice, you proceed under 1719.  You have

9   absolutely no other remedy.

10          This is one of the problems that we have when

11   attorneys try and make up the laws instead of -- and

12   expand what the legislature wrote on.  We -- you know,

13   the interpretation is is that all the laws are to be read

14   together.  When you read the laws all together, we don't

15   have this problem with 1719.  We only have this problem

16   with 1719 when he tries to read some other words in it

17   that the legislature didn't put there.

18          I see "stop."

19          THE COURT:  Thank you.

20          Thank you both for your arguments.  The cases

21   heard will be submitted.  And we'll be in recess for the

22   morning.

23                              -o0o-

24

25

                                                    20

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____          _____
Kristina Hofstad, Transcriber             Date

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Request for Judicial Notice #6 - Case Number C 05 4993 SBA & C 06 2037 SBA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# EXHIBIT 2

27
28

Request for Judicial Notice #6 - Case Number C 05 4993 SBA & C 06 2037 SBA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| **ZOLTAN STEINER,** et. al., | No. C 07-04486 SBA |
| **Plaintiff,** | **ORDER** |
| v. | [Docket No. 63] |
| APPLE **COMPUTER,** INC., *et. al.,* | |
| Defendant. | |

### REQUEST BEFORE THE COURT

Before the Court is defendant AT&T Mobility, LLC's Motion to Stay Proceedings Pending Appeal (the "Motion") [Docket No. 63]. Defendant AT&T Mobility, LLC ("AT&T"), seeks to stay these proceedings until the Ninth Circuit Court of Appeals disposes of AT&T's appeal of this Court's March 12, 2008 Order [Docket No. 59]; *Steiner* v. *Apple Computer, Inc.,* No. C 07-04486 SBA, slip op., 2008 WL 691720 (ND. Cal. Mar. 12, 2008).[1] denying AT&T's Motion to Compel Arbitration and to Dismiss Claims Pursuant to the Federal Arbitration Act [Docket No. 38]. The Court finds this matter appropriate for resolution without a hearing under Federal Rule of Civil Procedure 78(b). For the following reasons, the Court follows the general practice in the California district courts, and GRANTS the Motion.

### BACKGROUND

On August 29, 2007, plaintiffs the Stieners sued, individually and on behalf of all others similarly situated, AT&T and Apple, Inc.[2] ("Apple") for breach of contract, violation of the implied warranty of merchantability, fraudulent concealment, and unfair competition under section 17200 c/ *seq.* of the California Business and Professions Code. Docket No. 1 at 1, ¶~[ 45-59 (Compl.). They alleged Apple's iPhone, sold by AT&T, has a battery inside which cannot be removed by consumer,

_____

[1] No LEXIS citation is available.

[2] Apple has not filed any pleadings regarding the Motion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

but Chism was never placed in arbitration; it went away once the carrier corrected its error. *Id.* They

further alleged they were not informed of these charges at or before purchase. *Id.* ¶¶ 30-31.

On November 21, 2007, AT&T filed a Motion to Compel Arbitration and to Dismiss Claims

Pursuant to the Federal Arbitration Act. *See* Docket No. 38. On March 12, 1008, the Court denied

this motion , holding AT&T's class arbitration waiver was unconscionable under *Shroyer v. New*

*Cingular Wireless Services, Inc.*, 498 F. 3d 976 (9th Cir., 2007), which construing *Discover Bank v.*

*Superior Court*, 36 Cal. 4th 148, 113 P. 3d 1100 (2005)m had held a prior version of AT&T'S class

arbitration waiver were unconscionable. *See* Docket No. 59, *Steiner*, 2008 WL 691720. On

March 18, 2008, it filed the motion seeking to stay these proceedings, pending the Ninth

Circuit's disposition of its appeal. *See* Docket No. 63. In response, the Steiners filed their

Memorandum in Opposition re: Motion to Stay (the "Opposition"). *See* Docket No. 76.

**LEGAL STANDARD**

Under the Federal Arbitration Act, (The 'FAA"), 9 U.S.C. § 1 *et. Seq.*, a party may take an

interlocutory appeal from an order denying a motion to compel arbitration, but not an order granting

Such a motion. 9 USC. § 16(a)(1)(B), (b)(2); *see Britton v. Co-Op Banking Group*, 916 F. 2d 1405,

1409-10 (9th Cir., 1990). "[A]n appeal of an interlocutory order does not ordinarily deprive the

district court of jurisdiction except with regard to the matters that are the subject of the appeal." *Id.*

at 1412. If this were not the case:

a defendant [could] stall a trial simply by bringing a frivolous motion to compel

arbitration. The system created b the Federal Arbitration Act allows the district

_____

3.    In its Motion, AT&T noted the Third, Seventh, Tenth, and Eleventh Circuits have held stays
are automatic for interlocutory appeals arising from the denial of a motion to compel arbitration,
while the Second and Ninth Circuits have held such stays are discretionary. Mot. At 4 n.2 (citing
*Ehleiter v. Grapetree Shores, Inc.*, 482 F. 3d 207, 215 n.6 (3d Cir. 2007); *McCauley v. Halliburton*
*Energy Servs., Inc.*, 413 F. 3d 1158, 1160 (10th Cir., 2005); *Blinco v. Green Tree Servicing, LLC,* 366
F. 3d 1249, 1251 (11th Cir. 2004)l *Bradford-Scott Data Corp. V. Uzan*, 388 F. 3d 39, 54 (2nd Cir. 2004),
*cert. Denied*, 544 U.S. 1044 (2005); *Britton*, 916 F. 2d 1405). AT&T also brought to this Court's
attention an unpublished, or at least unreported, two-sentence per curiam opinion from the District
of Columbia Circuit, appearing to side with the "automatic" camp. Mot. At 4 n.2 (citing *Bombardier*
*Corp. V. Nat'l R,.R. Passenger Corp*., No. 02-7125, 2002 WL 31818924 (indicating unreported),
2002 U.S. App. LEXIS 25858 (indicating unpublished) (D.C. Cir., Dec. 12, 2002) (per curiam)).

merits of the movant's claim, and if it finds that the court finds that the motion presents a substantial question, to stay the proceedings pending an appeal from its refusal to compel arbitration.

*Id.*

The factors regulating the issuance of a stay pending appeal are:

(1) whether the stay applicant has made a strong showing that he [or she] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill,* 481 U.S. 770,776 (1987)

### ANALYSIS

For the following reasons, the Court finds a stay is warranted.

**1.      AT&T has not made a strong showing it is likely to succeed on the merits.**

AT&T failed to address this issue, and instead merely argued its appeal raised a "substantial" and "non-frivolous" question. Mot. at 4:10-5:12. While the Court agrees with AT&T, it argued the wrong legal standard. Further, for the following reasons, the Court finds AT&T is unlikely to succeed on appeal. In making its argument, AT&T apparently misinterpreted *fin//on's* holding. The Ninth Circuit, in *Bnitton,* held the FAA allows a court to stay proceedings, pending an appeal from the denial of motion to compel arbitration, if the court "finds that the motion presents a substantial question." *Britton,* 916 F.2d at 1412. The Ninth Circuit did not define the term "substantial" but instead cited to two cases, *Pearce v. E.F. Hutton Group, Inc.,* 828 F.2d 826 (D.C. Cir. 1987) and *C.B.S. Employees Fed. Credit Union v. Donaldson,* 716 F. Supp. 307 (W.D. Tenn. 1989).

In relying on *Pearce,* the Ninth Circuit noted in that case, the district court, after denying appellant's motion to compel arbitration, granted its motion for stay pending appeal because appellant's claim raised issues of first impression, and because appellant would suffer substantial harm if the action were not stayed." *fin/ton,* 916 F.2d at 1412 (citing *Pearce,* 828 F.2d at 829).

///

---

Request for Judicial Notice #6 - Case Number C 05 4993 SBA & C 06 2037 SBA

///

AT&T's appeal presents no issue of first impression,[4] so this aspect of *Pearce,* does not support its motion to stay. As for the issue of substantial harm, the Court addresses it in part II, *supra.*

In regards to *C.B.S.,* the Ninth Circuit noted the Western District of Tennessee had developed a test to determine whether a district court should stay trial proceedings, pending an appeal from the denial of a motion to stay proceedings, pending arbitration. *fin/ton,* 916 F.2d at 1412. In *C.B.S.,* the court adopted the four-pronged *Hilton* test noted *supra. C.B.S.,* 716 F. Supp. at 309. The *C.B.S.* court said the Supreme Court had adopted this test to determine whether a stay was appropriate, under Federal Rule of Civil Procedure 62©), which addressed whether an injunction or modifications thereto, should stand, pending appeal taken against that injunction or those modifications. *C.B.S.,* 716 F. Supp. at 309.

The *C.B.S.* court also held where an appellant could not show it would *likely succeed* on the merits, but could show it had made a *substantial case* on the merits, then a district court had the *discretion* to grant a stay, if the other three *Hilton* factors *strongly favored* interim relief. *Id.* at 309-10 (citing *Wash. Area Transit Comm 'n v. Holiday Tours, Inc.,* 559 F.2d 841 (D.C. Cir. 1977)).~

In its Motion, AT&T argued the question of whether its class arbitration waiver was unconscionable or not, under California common law, was a substantial one, and certainly not frivolous, in essence because reasonable persons could disagree as to the answer.[6] *See* Mot.

_____

4.       AT&T argued the Ninth Circuit has not yet addressed its allegedly new and improved version of its arbitration agreement, which was struck down in this matter. *See* Mot. at 4. The Court agrees, but notes AT&T has not fundamentally altered or cured the defects in its class arbitration waiver, which led to its demise in *Shnoyer.* In other words, AT&T may have painted its house a different color, but the Ninth Circuit has been inside the house before.

5.       In contrast to AT&T, the Stieners correctly noted this applicable standard of law in their Opposition. Opp'n at 3:22-24. They also alleged, however, "the law in this Circuit does not favor the granting of a stay pending appeals[.j" Opp'n at 5:16. They did not, however, provide any legal support for their allegation, so the Court is unable to consider it.

6.       In support of this point, AT&T pointed the Court to a slip opinion from the Eastern District of Arkansas, construing Arkansas law, claiming it upheld the "provision" struck down by this Court. Mot. at 4:22-5:1 (citing *Davidson v. Cingular Wireless LLC,* No. 2:06CV00133-WRW, slip op., 2007 WL 896349, 2007 U.S. Dist. LEXIS 21040 (E.D. Ark. 2007)). As the Stieners correctly note, in this matter, the application of unconscionability must turn on the law of California, not Arkansas. Opp'n at 5:16-20.

at 4:15-19. AT&T based its argument on two allegedly disputed issues. First, whether the purported

enhancements to its arbitration agreement allow it to survive *Shrover.* And second, whether or not

in light of *Preston v. Ferrer,* _ U.S. _ 128 S. Ct. 978 (2008), the FAA preempts the alleged

California requirement that arbitration agreements not have class arbitration waivers.[7] *Id.* at 5:1-12.

In opposition, the Stieners argued AT&T was essentially relitigating the same class arbitration

waiver struck down in *Shroyer,* and thus its question was unsubstantial. Opp'n at 4:27-5:15.

The Court partially agrees with the Stieners, in that AT&T is not likely to succeed on appeal.

With regards to its first issue of the alleged "enhanced" arbitration agreement, under *Shrover,* the

Ninth Circuit is quite likely to strike it down. In regards to AT&T's second issue, the Ninth Circuit

already dispensed with any and all preemption concerns in *Shroyer,* as discussed in this Court's

previous Order. *See* Docket No. 59 at Analysis part III; *Steiner,* 2008 WL 691720 at *16.A~17

Further, although *Preston* was unsettled law when AT&T submitted the opinion to the Court, just

prior to the Court issuing its Order, the Court did note *Preston* did not address unconscionability.

*See* Docket No. 59 at 8 n.7; *Steiner,* 2008 WI. 691720 at ~5 n.7.

Despite the foregoing, the Court also agrees with AT&T that it is reasonable to take the first

issue up on appeal, not only because of its nature, but also to resolve an important issue of

widespread consumer concern, at the appellate level, sooner rather than later. Because the Court

finds AT&T's question is substantial, however, AT&T is only entitled to a stay, under *fin/ton,* if it

is *strongly* favored under *Hilton's* three other factors. The Court now turns to address them.[8]

_____

7.      The Court notes California has never absolutely banned class arbitration waivers. *See* Docket No. 59 at 10; *Steiner,* 2008 WL 691720 at *6. Nor, does it condition the enforcement of an arbitration agreement on the absence of a class waiver. *See* Mot. at 5:10-12. Further, AT&T expressly provided if its class arbitration waiver failed, its entire arbitration agreement would fail. *See* Docket No. 59 at part III.E; *Steiner,* 2008 WL 691720 at *3 Thus, it is AT&T's unconscionable class arbitration waivers and its own non-severability clauses, which have caused it problems. Not any alleged blanket ban instituted by California.

8.       As an additional argument regarding the substantial nature of the issue giving rise to its appeal, AT&T argued the fact that section 16 of the FAA provides for interlocutory appeals from the denial of a motion to compel arbitration, but not the grant of such a motion, showed a Congressional preference for such appeals, which suggested its appeal must be substantial. Mot. at 2:27-4: 1. As the Stieners correctly noted, AT&T was attempting to carve out an exception which would swallow the rule. Opp'n at 4:24-25. AT&T erred here by arguing public policy, rather than the merits of its appeal. *Hilton* considers the former under its fourth factor, not its second.

*///*

_____

Request for Judicial Notice #6 - Case Number C 05 4993 SBA & C 06 2037 SBA

Turning to the second *Hilton* factor, AT&T argued if this matter were to go forward, it would incur the cost of certain discovery processes which would generally not be allowed in arbitration. Mot. at 5:22-6:2. Further, if this matter were to proceeded to trial, and then the Ninth Circuit reversed the Court's prior Order, then AT&T will have lost substantial time and money. Mot. at 6:2-7:19. AT&T admitted that litigation expenses usually do not constitute "irreparable harm," but argued they do in this context, as this is the "harm" arbitration is designed to avoid. *Id* at 6:25-28 (citing *C.B.S.,* 716 F. Supp. at 310). Further, AT&T argued, this is exactly the harm to which it would be exposed, absent a stay. *Id.*

In Opposition, the Stieners concede AT&T would suffer irreparable injury, but not a "substantial" irreparable injury, were this matter to proceed forward. Opp'n at 6:3-5. They argue all litigation entails the risk of costs, and using this basis to justify a stay here would justify a stay in every case where a court denied a motion to compel arbitration. *Id.* at 6:5-9. This, they argue, would nullify *fin/ton's* discretionary standard. *Id.* Lastly, they argue AT&T failed to provide any case law providing litigation costs are "ordinarily" considered "irreparable harm." *Id* at 6: 10-11.

Taking the Steiners's arguments in reverse order, AT&T did direct the Court to three appellate cases, *Alascom, Inc. v. ITT!'!. Elec. Co.,* 727 F.2d 1419, 1422 (9th Cir. 1984), *Bradford-Scott Data Corp. v. Physician Computer Network,* 128 F.3d 504, 505-06(7th Cir.1997), and *Lummus Co. v. Commonw. Oil Ref Co.,* 273 F.2d 613, 613-14 (1st Cir. 1959),~ which AT&T alleged held litigation costs would constitute irreparable harm, under the circumstance presented here. Mot. at 6:21-7:13. And, it urged the Court to follow other California districts which had granted stays in similar situations. Mot at 6:3-25 (citing *Winig v. Cingular Wireless LLC,* No. C-06-4297 MMC, 2006 WL 3201047, *3, 2006 U.S. Dist. LEXIS 83116, *10 (ND. Cal. Nov. 6, 2006) (unreported); *Sasik v. AT&T Wireless Servs.. Inc.,* CV 05-2346 ABC, slip op. at 1 (CD. Cal.

_____

9.        Bound by *Britton,* the Court does not analyze this case, nor does not it address *Trefnv v. Bear Sterns Sec. Corp.,* 243 BR. 300 (S.D. Tex 1999), also raised by AT&T in discussing this *Hilton* factor.

Nov. 1,2006); *Stern v. Cingular Wireless LLC,* No. CV 05-8842 CAS, 2006 WI. 2790243, at *2,

*Inc.,* No. CV 05-1167 DMS AJB, 2006 U.S. Dist. LEXIS 88855, *1 (S.D. Cal. Mar. 14, 2006)

(unreported);[1*] *Cervantes v. Pac. Bell Wireless,* No. CV 06-0 1469 JM (RBB), slip op. at 3 (S.D. Cal.

Mar. 8,2006); *Fordv. Verisign, Inc.,* No. CV 05-0819 JM (RBB), slip op. at 5 (S.D. Cal. Mar. 8,

2006) (unreported)).

Putting aside the Stieners' third argument for the moment, the Court turns to their second

argument that all litigations pose a risk of costs spent prior to a reversal on appeal. While the

Stieners did not direct the Court to legal support for their argument, it nonetheless exists in

*Bradbenty v. T-Mobile USA, Inc.,* No. 06-6567 CW, 2007 WL 2221076, *3 2007 U.S. Dist. LEXIS

58801, *11 (ND. Cal. Aug. 2,2007) (unreported). In *Bnadberrv,* the court held too many district

courts, including *Winig, Laster,* and *Ford,* had given this factor's analysis short shrift, by simply

deferring to *Alascom." Bradberrv,* 2007 WL 2221076 at *3, 2007 U.S. Dist. LEXIS 58801

at *10~* 11. In *Alascom,* the Ninth Circuit considered a denied motion to compel arbitration, and

held it would constitute "serious" irreparable harm for the defendant to proceed all the way to trial,

then appeal, then find out the parties should have arbitrated, after having already lost the   "    "

advantages of arbitration-- speed and economy[.]" *Alascom,* 727 F.2d at 1422.

In *Bradberry,* however, the court noted *Alascom* preceded 1988 and 1990 amendments to the

FAA which added the right of interlocutory appeal. *Bradberrv,* 2007 WL 2221076 at *3 n.4, 2007

U.S. Dist. LEXIS 58801 at *10 n.4. And, the court in *Bradberrv* noted that in 1990, *Britton's*

discretionary grant to the district courts, clearly modified *Alascom,* to the extent anyone previously

read it as applying automatically. *Bradberry,* 2007 WL 2221076 at *3, 2007 U.S. Dist. LEXIS

58801 at *10 - **11.** Lastly, in *Bradberry,* the court addressed *Alascom'* s concern by denying the

defendant's motion to stay without prejudice, so it could file it again should the matter proceed

close to trial. *Bradberry*, 2007 WL 2221076 at *4, 2007 U.S. Dist. LEXIS 58801 at *11-*12.

_____

10.    No Westlaw citation is available

11.    *Sasik* and *Cervantes* also rely on *Alascom*, *Sasik*, CV 05-2346 ABC at *1; *Cervantes*, CV

06-01469 JM at *2 - *3

The Court in *Bradberry* also noted parties or courts in the Ninth Circuit should not rely on *Bradford-Scott Data Corp.,* for guidance in this area, as it expressly criticized and rejected *Bnitton*'s holding.'[2] *Bradberty,* 2007 WL 2221076 at *4 2007 U.S. Dist. LEXIS 58801 at *11.

While the analysis in *Bradberry* is well reasoned, it is possible to find the costs of litigation, in the face of a denied motion to compel arbitration, will generally constitute irreparable harm, without nullifying *Britton*'s discretionary grant to the district courts. In doing so, a court should distinguish between this *Hilton* factor, and the *Hilton* test as a whole. Just because this factor will generally be satisfied in the special context of the denied motion to compel arbitration, does not mean the entire *Hilton* test will generally be satisfied. All this means is that appellants who make a *strong showing they are likely to succeed on the merits,* will generally prevail on this second *Hilton* factor. In contrast, appellants who merely have *substantial questions* on appeal, will have to show this factor *strongly* favors them, which will turn on the facts and circumstances of each case.

Turning to this issue, and the Stieners' first argument, that AT&T has not shown it would suffer *substantial* irreparable harm, the Court notes, as just discussed, *Hilton* only requires a showing of irreparable harm, not *substantial* irreparable harm. Clearly, AT&T has met this burden, as it will suffer lost time and money, were the Ninth Circuit to reverse. At the same time, however, because AT&T will not likely succeed on appeal, it must show the irreparable harm "strongly" favors a stay. In this case, it has. Were this matter to proceed, in addition to the standard costs and burden associated with consumer litigation, the Stieners would seek class certification, probably opposed by AT&T and Apple, possibly leading to another interlocutory appeal, or alternatively, to expensive and burdensome notification and certification procedures.

In addition, the Court finds almost every California district court to recently consider whether to stay a matter, pending appeal of an order denying a motion to compel arbitration, has issued a stay. In addition to *Wing, Sasik, Stern, Laster, Cervantes* and *Ford,* stays were issued in

_____

12. *Ford* relies on *Btradford-Scott* to find irreparable harm. *Ford*, CV 05-0819 JM at *3, *4

*Polozum v. Quixtar, Inc.,* No. 07-00201 SC, 2008 WL 57871±¹, ¹ (ND Cal. Apr. 17, 2008);¹³

*Mundi v. Union Security Life Insurance Co.,* No. CV-F-06-l493 OWW TAG, 2007 WL 2385069,

*6, 2007 U.S. Dist. LEXIS 64012, *1&*17 (ED. Cal. Aug. 15 or 17, 2007) 14 and Jones v. Deutsche

*BankAG,* No. C 04-05357 JW, 2007 WL 1456041. *1,2007 U.S. Dist. LEXIS 39094, *1 (ND. Cal.

May 17, 2007).15  The only case the Court found denying a stay, besides *Bnadberrv,* was *Dunham v.*

*EnvironmentalChemical Corp.,* No. C06-03389 JSW, 2007 WL 39317, *1,2007 U.S. Dist. LEXIS

3092, *3 (ND. Cal. Jan. 04, 2007), though the opinion provided little analysis as to how the court

reached its conclusion. Thus, considering the parties' arguments, the applicable law, and the

practice in the California districts, the Court finds AT&T has made a strong showing it would suffer

irreparable harm absent a stay.

**III.      A stay would not substantially injure other parties.**

      Turning to the third *Hilton* factor, AT&T argued the Stieners' possible damages were about

$115, each, and thus a stay posed no harm to them. Mot. at 7:22-26. It also argued any harm to any

potential class members would also be individually small, speculative to consider, and could be

ultimately addressed were the Stieners to prevail on the merits. *Id.* at 8 n.3 The Stieners did not

address this issue. The Court thus finds this factor strongly favors granting a stay.

**IV. The public interest strongly favors a stay.**

       Turning to the fourth *Hilton* factor, AT&T argued there was a strong public policy favoring

arbitration, as evidenced by 9 U.S.C. § 16, which provides for interlocutory appeals when a motion

to compel arbitration is denied, but not when one is granted. Mot. at 2:27-4:1. AT&T also argued

this policy reflected the benefits arbitration provided, including saving time and money. *Id.* at 3:7-

10 (citing l5B Charles Alan Wright, *et aL, Federal Practice & Procedure* § 3914.17 (2d ed. 1992)).

_____

13      No LEXIS citation is available.

14      Westlaw indicates a filing date of August 17, while LEXIS indicates a date of August 15. 26

15       In addition, although outside of California, the court in *Lowden v. T-Mobile USA, Inc.,* No. C
05-1482P, 2006 WL 1896678, *2 [no LEXIS cite availablel (W.D. Wash. Jul. 10, 2006), also
granted a stay, pending appeal. As discussed in the Court's prior Order, in *Lowden,* the Ninth
Circuit voided one of AT&T's class arbitration waivers. *See* Docket No. 59 at 8 n.7; *Steiner,* 2008
WL 691720 at *5 n.7.

Further, AT&T noted a stay would avoid the parties and the Court wasting taxpayer resources on a litigation which might be mooted on appeal. *Id.* at 8:10-16 (citing *C.B.S.,* 716 F.Supp. at 310 (a court should not waste its resources on matters which did not belong before it in the first place)). The Stieners did not address this factor.[6] On the reasons presented by AT&T. the Court finds this factor strongly favors granting a stay.

## CONCLUSION

Accordingly, the Court GRANTS defendant AT&T Mobility, LLC's Motion to Stay Proceedings Pending Appeal [Docket No. 63]. All matters calendared in this action are VACATED. Defendant AT&T Mobility, LLC shall notify the Court in writing, within ten days of any disposition of its appeal by the Ninth Circuit.

IT IS SO ORDERED.

April 28, 2008                                    /s/ Saundra Brown Armstrong
                                                  Saundra Brown Armstrong
                                                  United States District Judge

_____

[6]        The Stieners did argue the Court should not stay this matter, as this would only stay it regarding AT&T, but not regarding Apple, leading to "a chaotic state of affairs...."   Opp'n at 6:14-16.  The Stieners did not indicate where in AT&T's motion it only requested a stay for the portions of this matter directed at itself, as opposed to the matter as a whole. As such, the stay granted operates to stay the *entire* matter.

_____

Request for Judicial Notice #6 - Case Number C 05 4993 SBA & C 06 2037 SBA

1   LAW OFFICES OF CLARK GAREN,
    CLARK GAREN, CALIF. BAR #50564
2   P. O. BOX 1790,
    PALM SPRINGS, CALIFORNIA 92263
3   STREET ADDRESS-NO MAIL: 17100 N. INDIAN, PALM SPRINGS, CA. 92258
    TELEPHONE:      (760) 323-4901
4   Fax:            (760) 288-4080

5   ATTORNEYS FOR PLAINTIFFS
    IMPERIAL MERCHANT SERVICES, a California
6   corporation, doing business as
    CHECK RECOVERY SYSTEMS

7

8                    UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

10

11  BRANDY HUNT, on behalf of herself  )   Case No. C 05 4993 SBA
    and others similarly situated,     )   Case No. C 06 2037 SBA
12                                      )
                                        )
13                                      )   ORDER GRANTING MOTION OF
                                        )   DEFENDANT FOR STAY OF
14                      Plaintiff,      )   ALL PROCEEDINGS PENDING
                                        )   APPEAL (PROPOSED)
    -vs-                                )
15                                      )   Date:      June 17, 2008
    CHECK RECOVERY SYSTEMS, INC.,       )   Time:      1:00 P.M.
16  et. al.,                            )   APPEARANCE BY PHONE
                                        )   APPROVED BY COURT
17                      Defendants.     )
                                        )
18                                      )
    _____)
19

20

21                  **REQUEST BEFORE THE COURT**

22        Before the Court is defendant CHECK RECOVERY SYSTEMS'S

23  Motion to Stay Proceedings Pending Appeal (the "Motion").

24  Defendant CHECK RECOVERY SYSTEMS (C.R.S.), seeks to stay

25

26

27

28  _____

    ORDER GRANTING MOTION OF DEFENDANT FOR STAY OF ALL PROCEEDINGS PENDING
    APPEAL (PROPOSED) - Case Number C 05 4993 SBA & C 06 2037 SBA

                                1

these proceedings until the Ninth Circuit Court of Appeals

disposes of C.R.S.'s appeal of whether the victim of a

dishonored check writer may impose a charge for both

interest under *California Civil Code Section* 3287 and the

returned check charge permitted by *California Civil Code Section*

3287 and the appeal of class action cost issues and class action

certification issues. The Court finds this matter appropriate

for resolution without a hearing under Federal Rule of Civil

Procedure 78(b). For the following reasons, the Court follows

the general practice in the California district courts, and

GRANTS the Motion.

### BACKGROUND

Plaintiffs, individually and on behalf of

all others similarly situated, sued Defendant IMPERIAL MERCHANT

SERVICES, INC., d/b/a CHECK RECOVERY SERVICES for violation of

the Federal Fair Debt Collection Practices Act. Plaintiffs

claimed Defendant violated the act by imposing a charge on the

maker of a dishonored check of either $25.00 or $35.00 under

*California Civil Code Section* 1719 and interest under *California*

*Civil Code Section* 3287.

ORDER GRANTING MOTION OF DEFENDANT FOR STAY OF ALL PROCEEDINGS PENDING
APPEAL (PROPOSED) - Case Number C 05 4993 SBA & C 06 2037 SBA

2

Prior to filing the FDCPA class action, Plaintiff BRANDY HUNT had filed a bankruptcy petition, seeking to discharge, inter alia, the debt from her dishonored $137.15 check to Safeway. After she filed the FDCPA action, Defendant initiated an adversary proceeding in the United States Bankruptcy Court in which it sought both a service charge and interest. Defendant discovered that Plaintiff BRANDY HUNT wrote 47 consecutive checks over a 2 and one-half month period without making a single deposit.

On October 31, 2006, Dennis Montali, Bankruptcy Judge, ruled that Hunt's check was not dischargeable, but that Defendant could not collect both the returned check charge under California Civil Code Section 1719 and interest under California Civil Code Section 3287. The bankruptcy judgment was originally appealed to the Bankruptcy Appellate Panel, but it was transferred by Plaintiffs to the District Court, found to be related to the two pending F.D.C.P.A. cases, and then assigned to Judge Jenkins. The bankruptcy court ruling was affirmed by District Court Judge Jenkins. (Judgment on 28 U.S.C. Section 158 appeal from final judgment of the bankruptcy court, 5/17/2007,

ORDER GRANTING MOTION OF DEFENDANT FOR STAY OF ALL PROCEEDINGS PENDING APPEAL (PROPOSED) - Case Number C 05 4993 SBA & C 06 2037 SBA

3

Docket No. 16 in Civ. No. 06-7795. Defendant appealed the district Court affirmance, and this appeal is now pending before the Ninth Circuit Court of Appeals as Case Number 07-15676.

On April 17, 2008, the 9th Circuit held oral arguments, after which the case was submitted. During oral argument, the 9th Circuit panel indicated it was going to certify the question of whether a creditor may collect both interest under California Civil Code 3287 and a returned check charge under California Civil Code 1719 to the California Supreme Court to obtain comity because **all** parties before the Court indicated that this was an important question (Judicial Notice #6, 7:5 - 8:2; 12:15 - 13:5; 17:22 - 20:15). The decision in this case will establish binding precedent on the principal issue of liability.

Plaintiff Castillo also had a pending bankruptcy action at the time he filed his FDCPA complaint, and Defendant brought an adversary proceeding in the United States Bankruptcy Court identical to the HUNT adversary proceeding. The Castillo proceeding has been subject to a series of stays in the bankruptcy court, and no date has been set for trial.

In the pending case, on March 21, 2007, Judge Jenkins

ORDER GRANTING MOTION OF DEFENDANT FOR STAY OF ALL PROCEEDINGS PENDING APPEAL (PROPOSED) - Case Number C 05 4993 SBA & C 06 2037 SBA

4

granted Plaintiff's Motion for Summary Judgment on all liability
issues and certified a class consisting of check writers living
in California from whom Defendant demanded both a service charge
and interest. (Hunt v. Check Recovery Sys., 478 F. Supp. 2d
1157, (N.D. Cal., 2007)(Order Granting Partial Summary Judgment
for Plaintiff, Hunt v. Check Recovery Sys., 241 F.R.D. 505 (N.D.
Cal., 2007) (Order Certifying Class). There are approximately
7,000 of these class members.

On August 1, 2008, the district court granted plaintiff's
motion regarding class notice procedures, including an order
that defendant pay the cost of class notice Hunt v. Check
Recovery Sys., 2007 WI, 2220972, U.S. Dist LEXIS 58000 (N. DE.
Cal., Aug 1, 2007), (Docket No. 112). Defendant has appealed the
part of the August 1, 2008 order requiring it to pay class
notice costs. Defendant has included all issues of class
certification in this appeal. Plaintiff moved to limit the scope
of the appeal and the motion was denied. Briefing was completed
on April 17, 2008, and no hearing date has yet been set.

Even though the appeal on class notice costs was already
pending, in late December, 2007, Plaintiff threatened to

_____

ORDER GRANTING MOTION OF DEFENDANT FOR STAY OF ALL PROCEEDINGS PENDING
APPEAL (PROPOSED) - Case Number C 05 4993 SBA & C 06 2037 SBA

institute contempt proceedings against Defendant unless it obtained a stay of the order that it pay the class notice costs.

On January 2, Defendant filed an ex parte application for a stay order. In March, 2008, Plaintiff filed an order to show cause to hold Defendant in Contempt. On March 21, 2008, in response to that motion, the District Court granted a stay application of the order requiring Defendant to reimburse Plaintiff for the class notice costs conditioned on Defendant filing a $9,000 supersedeas bond. (Order, Docket No. 132). Defendant has posted the bond.

On May 8, 2008, Defendant filed the motion seeking to stay these proceedings, pending the Ninth Circuit's disposition of both of its pending, interlocutory appeals.

**LEGAL STANDARD**

An appeal of an interlocutory order does not ordinarily deprive the district court of jurisdiction except with regard to the matters that are the subject of the appeal. *see Britton v. Co-Op Banking Group*, 916 F. 2d 1405, 1412 (9th Cir., 1990), This allows the District court to evaluate the merits of the movant's claim, and if, for instance, the court finds that the motion

ORDER GRANTING MOTION OF DEFENDANT FOR STAY OF ALL PROCEEDINGS PENDING APPEAL (PROPOSED) - Case Number C 05 4993 SBA & C 06 2037 SBA

6

1
2

presents a substantial question, to stay the proceedings pending

an appeal.

3
4
5

The factors regulating the issuance of a stay pending

appeal are:

6
7

(1) whether the stay applicant has made a strong showing
that he [or she] is likely to succeed on the merits;

8
9

(2) whether the applicant will be irreparably injured
absent a stay;

10
11

(3) whether issuance of the stay will substantially injure
the other parties interested in the proceeding; and

12

(4) where the public interest lies.

13

*Hilton v. Braunskill,* 481 U.S. 770,776 (1987)

14
15

**ANALYSIS**

16
17

For the following reasons, the Court finds a stay is

warranted.

18
19
20
21

**1.  DEFENDANT has made a strong showing it is likely to
succeed on the merits.**

22
23
24
25
26
27

Most of the foregoing issues are questions of first

impression on which no binding precedent exists. Under the

holding of *Pearce v. E. F. Hutton Group, Inc.*, 828 F. 2d 826,

829**,** this fact alone satisfies the requirement that movant is

28

ORDER GRANTING MOTION OF DEFENDANT FOR STAY OF ALL PROCEEDINGS PENDING
APPEAL (PROPOSED) - Case Number C 05 4993 SBA & C 06 2037 SBA

7

likely to succeed on the merits.

Judge McCrae Judge McRae, in the *C.B.S.* opinion, held that the movant has satisfied the obligation to show a reasonable likelihood of success by presenting a "serious legal question", regardless whether he has shown a mathematical probability of success. The transcripts of oral argument at the Ninth Circuit Court of Appeal establish beyond any reasonable question that the bankruptcy appeal presents a "serious legal question". In addition, each of the class action issues also presents a serious legal question.

In addition, each of the issues now on appeal are an important issue of widespread consumer concern that should be resolved at the appellate level sooner rather than later.

Defendant has therefore established a strong likelihood of success on the merits on each of these appeals, or, failing that, has demonstrated that it has a substantial case on the merits and that the "harms" factors mitigate in its favor on each of these appeals.

Under these facts, Movant has satisfied the criteria required to show a strong likelihood of success on the merits, or

ORDER GRANTING MOTION OF DEFENDANT FOR STAY OF ALL PROCEEDINGS PENDING APPEAL (PROPOSED) - Case Number C 05 4993 SBA & C 06 2037 SBA

8

that it has a substantial case on the merits and that the "harms" factors mitigate in its favor.

**II. Defendant would suffer substantial irreparable harm absent a stay.**

Turning to the second *Hilton* factor, Defendant argued if this matter were to go forward, it would incur the cost of certain discovery processes. Further, if this matter were to proceeded to trial and judgment, and then the Ninth Circuit reversed the either prior Order, then Defendant will have lost substantial time and money.

The costs of litigation will generally constitute irreparable harmwithout nullifying *Britton's* discretionary grant to the district courts. In doing so, a court should distinguish between this *Hilton* factor, and the *Hilton* test as a whole. Just because this factor will generally be satisfied in the special context of the denied motions does not mean the entire *Hilton* test will generally be satisfied. All this means is that appellants who make a *strong showing they are likely to succeed on the merits,* will generally prevail on this second *Hilton* factor. In contrast, appellants who merely have *substantial*

ORDER GRANTING MOTION OF DEFENDANT FOR STAY OF ALL PROCEEDINGS PENDING APPEAL (PROPOSED) - Case Number C 05 4993 SBA & C 06 2037 SBA

9

*questions* on appeal, will have to show this factor *strongly* favors them, which will turn on the facts and circumstances of each case.

Turning to this issue, the Court notes, as just discussed, Hilton only requires a showing of irreparable harm, not *substantial* irreparable harm. Clearly, Defendant has met this burden, as it will suffer lost time and money, were the Ninth Circuit to reverse.

In addition, the Court finds almost every California district court to recently consider whether to stay a matter, pending an interlocutory appeal has issued a stay. In addition to *Wing, Sasik, Stern, Laster, Cervantes* and *Ford,* stays were issued in *Mundi v. Union Security Life Insurance Co.,* No. CV-F-06-1493 OWW TAG, 2007 WL 2385069, *6, 2007 U.S. Dist. LEXIS 64012, *1&*17 (ED. Cal. Aug. 15 or 17, 2007) 14 and *Jones v. Deutsche BankAG,* No. C 04-05357 JW, 2007 WL 1456041. *1,2007 U.S. Dist. LEXIS 39094, *1 (ND. Cal. May 17, 2007).15  The only case the Court found denying a stay, besides *Bnadberrv,* was *Dunham* V. *EnvironmentalChemical Corp.,* No. C06-03389 JSW, 2007 WL 39317, *1,2007 U.S. Dist. LEXIS 3092, *3 (ND. Cal. Jan. 04,

ORDER GRANTING MOTION OF DEFENDANT FOR STAY OF ALL PROCEEDINGS PENDING APPEAL (PROPOSED) - Case Number C 05 4993 SBA & C 06 2037 SBA

10

2007), though the opinion provided little analysis as to how the court reached its conclusion. Thus, considering the parties' arguments, the applicable law, and the practice in the California districts, the Court finds DEFENDANT has made a strong showing it would suffer irreparable harm absent a stay.

**III. A stay would not substantially injure other parties.**

Turning to the third *Hilton* factor, Defendant argued the Plaintiffs' possible damages were about $1,000.00, but that these damages would be offset by the Bankruptcy Fraud Judgment, and that Plaintiff therefore has no financial interest in this litigation. It also argued any harm to any potential class members would also be individually small and less than $10.00 and mostly less than $1.00, speculative to consider, and could be ultimately addressed were the Plaintiffs to prevail on the merits. The Court thus finds this factor strongly favors granting a stay.

**IV. The public interest strongly favors a stay.**

Turning to the fourth *Hilton* factor, Defendant argued there was a strong public policy favoring a stay.

ORDER GRANTING MOTION OF DEFENDANT FOR STAY OF ALL PROCEEDINGS PENDING
APPEAL (PROPOSED) - Case Number C 05 4993 SBA & C 06 2037 SBA

11

1    These pending appeals present **numerous** issues of great
2    public interest.

3    The Bankruptcy Appeal will determine and create binding
4    precedent to determine whether the victim of a dishonored check
5    writer is entitled to receive both interest under *California*
6    *Civil Code Section* 3287 and the returned check charge under
7    *California Civil Code Section* 1719.

8    The class action appeal will determine whether a
9    Plaintiff in an F.D.C.P.A. action can avoid the class notice
10   requirements by having the class action certified as seeking
11   equitable relief under F.R.C.P. Rule 23(b)(2) when equitable
12   relief is not permitted as a remedy to an individual Plaintiff
13   under the F.D.C.P.A.

14   The class action appeal will also determine whether a
15   class action can be certified with the class notice costs are
16   many times greater than the potential recovery of each class
17   member.

18   Finally, the class action appeal will determine whether
19   a class action defendant can be ordered to pay the class notice
20   costs prior to the entry of a judgment.

21   Each of these issues is of great public interest, as
22   evidenced by the great number of organizations that have filed an
23   amicus curiae brief in support of the Plaintiff's position before
24   the Ninth Circuit. There is currently no binding precedent on any
25   of these issues. Therefore, it is in the public interest that a
26   stay be granted to insure that the parties pursue the appellate

27

28

---

ORDER GRANTING MOTION OF DEFENDANT FOR STAY OF ALL PROCEEDINGS PENDING
APPEAL (PROPOSED) - Case Number C 05 4993 SBA & C 06 2037 SBA

12

process and obtain binding precedent on each of these issues.

Granting a stay would avoid the parties and the Court wasting taxpayer resources on a litigation which might be mooted on appeal. *Id.* at 8:10-16 (citing *C.B.S.,* 716 F.Supp. at 310 (a court should not waste its resources on matters which did not belong before it in the first place)).

On the reasons presented by Defendant, the Court finds this factor strongly favors granting a stay.

### CONCLUSION

Accordingly, the Court GRANTS the motion of Defendant IMPERIAL MERCHANT SERVICES, INC., d/b/a CHECK RECOVERY SYSTEMS for a stay pending the resolution by the Ninth Circuit of the Appeal now pending as Case Number 07-15676 and the Appeal now pending as Case Number 07-16418. All matters calendared in this action are VACATED.

Plaintiff or Defendant shall notify the Court in writing, within ten days of any disposition of either appeal by the Ninth Circuit.

IT IS SO ORDERED.

Dated:

_____

ORDER GRANTING MOTION OF DEFENDANT FOR STAY OF ALL PROCEEDINGS PENDING
APPEAL (PROPOSED) - Case Number C 05 4993 SBA & C 06 2037 SBA

1

2                                        _____
                                         Saundra Brown Armstrong
3                                        United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   _____

ORDER GRANTING MOTION OF DEFENDANT FOR STAY OF ALL PROCEEDINGS PENDING
APPEAL (PROPOSED) - Case Number C 05 4993 SBA & C 06 2037 SBA