Paul Arons, State Bar #84970
685 Spring Street, #104
Friday Harbor, WA 98250
Tel: (360) 378-6496
Fax: (360) 378-6498
lopa@rockisland.com

Ronald Wilcox, State Bar #176601
LAW OFFICE OF RONALD WILCOX
2160 The Alameda, 1st Flr., Suite F
San Jose, CA 95126
(408) 296-0400

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDY HUNT and BRIAN CASTILLO, et al, on behalf of themselves and others similarly situated,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>IMPERIAL MERCHANT SERVICES, d/b/a CHECK RECOVERY SYSTEMS,<br><br>　　　　Defendants. | Case No. 05-04993 MJJ<br>Case No. 06-02037 MJJ<br><br>**CLASS ACTION**<br><br>**DECLARATION OF PAUL ARONS IN OPPOSITION TO DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS PENDING APPEAL OF LIABILITY ISSUES IN 9th CIRCUIT CASE NUMBER: 07-15676 AND CLASS ACTION CERTIFICATION ISSUES IN 9th CIRCUIT CASE NUMBER: 07-16418**<br><br>Date: June 17, 2008<br>Time: 1:00 p.m.<br>Courtroom 11 |

I, Paul Arons declare as follows:

1. I am an attorney of record for plaintiffs herein and I make this declaration in support of plaintiffs' opposition to defendant's motion for a stay of this action.

2. On March 21, 2007, the Court certified a class consisting of California check writers from whom defendant had collected, or attempted to collect interest.  In

April 2007, defendant provided plaintiffs a class list which supposedly contained, *inter alia*, the names and addresses of all class members and the amount of interest that each had paid. That list showed that there were approximately 21,000 class members, who had paid a combined total of approximately $260,000 in interest.

3. In September 2007, after the Court had ordered defendant to bear the cost of class notice, I was notified by defendant's counsel Clark Garen, that the information that defendant had provided in April 2007 was inaccurate, and included a large number of check writers from outside of California. Defendant provided a new list, which showed that there were only about 5,000 class members, who had paid slightly more than $100,000 in interest. Despite this correction, in its appellate papers, and before this Court, continues to represent that if it loses, it will have to pay $260,000 in damages for the unlawful interest charges it collected.

4. Defendant continually refers to the fact that there is "no binding authority" on a variety of issues. By "no binding authority", defendant means simply that there is no Ninth Circuit decision directly on point. It is true that the Ninth Circuit has not ruled on every conceivable issue that could arise under the FDCPA. For instance, until defendant raised the argument, no one ever thought to argue, in the Ninth Circuit or elsewhere, that the FDCPA did not allow class members to recover actual damages, since this is contrary to the statutory language, the logic of the statute, and thirty years of decisions awarding actual damages to class members. The fact that a defendant may conceive of a bizarre argument that is destined to lose does not mean a case should be stopped in its tracks while an appellate court considers the issue.

5. Defendant's counsel devised a strategy to avoid ever having to pay a class action judgment, by sidetracking the class action with a bankruptcy adversary proceeding, where the bankruptcy court is asked to decide the same issue that is already before the district court. This strategy has slowed down the class action somewhat, and has resulted in at least a doubling of the work involved. When I took a quick look at my

hours several months ago, I had spent over 700 hours on a case that should have taken much less time, and I am only one of the plaintiffs' attorneys. This strategy has also resulted in both the bankruptcy court and the district court having to consider the same issue concerning the same attempt to collect money from one of the plaintiffs, Brandy Hunt, and in this Court having to consider multiple motions to stay proceeding and await rulings in the bankruptcy action.

6. From the outset of the case, defendant's counsel has made statements to the effect that the class members will never be paid, and he has gone back and forth over whether the insurance company will cover whatever statutory attorneys' fees and costs are awarded to plaintiffs. I believe that defendant's counsel has some pre-existing business relationship with the defendant. For instance, defendant has provided copies of its tax returns in discovery, and these were prepared by Mr. Garen. Counsel has told me that he made an arrangement with the insurance carrier pursuant to which the carrier does not have to pay the costs of defense, and Mr. Garen is allowed free hand in handling the defense. He may have told me that he is not billing his client for his work.

7. Defendant makes a number of bizarre and unsupported accusations in its motion to which I feel compelled to respond, lest my silence be taken as agreement. I have never threatened to put defendant into involuntary bankruptcy, although this sounds like an idea worth considering, since defendant seems intent on dissipating its assets. There is no evidence supporting the claim that Safeway stopped doing business with defendant because of one three hour long deposition. I have taken the depositions of a number of creditors in FDCPA litigation. No debt collector has ever claimed that it lost the account because of the deposition. It would have made sense for defendant to settle early on, when its exposure was about $100,000, and the plaintiffs' attorneys' fees, which it will have to pay when if it loses, were minimal. However, my consistent experience in representing plaintiffs in class actions against debt collectors is that the defendants fight hard, and cases never settle early. I do not believe that I have ever settled a case

without a least a year of litigation, and usually only after prevailing on class certification and summary judgment. The actions in which plaintiffs have received large fee awards typically take five or more years and involve several thousand hours of work. Most of the FDCPA cases in which I am involved result in several published or unpublished decision on LEXIS, reflecting significant motion work. Counsel's statements that I am engaged in extortion are outrageous, and I request that defendants' counsel be admonished. Finally, I do not have a million dollars in fees pending in this and other cases based on the interest issue. I am involved in two other lawsuits in which interest is one of several issues. In one of the lawsuits, after almost four years of litigation, the court approved a class settlement in which plaintiffs' attorneys' fees are capped at $52,000. Defendant's million dollar figure is the product of an active imagination.

8. If defendant wanted a quick path to appeal, it should have never have gone off on the bankruptcy tangent. By this point in time, there would be a final judgment in this action, which defendant could have appealed. Without the distraction of a parallel bankruptcy action, the final judgment could have been entered in late 2006 or early 2007. Defendant's real goal is to avoid a class action judgment, which will include $100,000 or more in class damages that will not be covered by insurance. Rather than allow defendant to continue with its free ride toward an appeal on a liability issue that it is likely to lose, plaintiffs request that any stay be denied, or if granted, that it be conditioned on the posting of a bond sufficient to cover the judgment that is likely to result if defendant's appeal is unsuccessful.

I declare, under penalty of perjury, that the foregoing is true and correct, that if called as a witness I could competently testify thereto, and that this declaration is executed in Friday Harbor, Washington on May 28, 2008.

                               s/Paul Arons
                               PAUL ARONS