United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRANDY HUNT and BRIAN CASTILLO, on behalf of themselves and others similarly situated,

    Plaintiffs,

    v.

IMPERIAL MERCHANT SERVICES, d/b/a CHECK RECOVERY SYSTEMS,

    Defendant.
_____/

No. C-05-04993 DMR

**ORDER RE PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

### I. INTRODUCTION

Plaintiffs Brandy Hunt and Brian Castillo filed this consolidated class action against Defendant Imperial Merchant Services, Inc., doing business as Check Recovery Systems ("IMS"), for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Plaintiffs claimed that IMS' practice of demanding 10% interest, in addition to a statutory service charge for dishonored checks, was not permitted by California law and was unlawful under the FDCPA.

As described in more detail below, plaintiffs subsequently obtained class certification. In late 2009, the parties reached a class-wide settlement. After Rule 23 fairness proceedings, this Court granted final approval of the class settlement following a hearing on September 21, 2010. *See* Docket Nos. 193 and 194. The Court now addresses Plaintiffs' Motion for Reasonable Attorneys'

Fees and Costs, Pursuant to Stipulation of Settlement. *See* Docket No. 181. The Motion is unopposed. *See* Docket No. 187. The Court finds this matter appropriate for resolution without a hearing pursuant to Federal Rule of Civil Procedure 78(b), and hereby vacates the October 20, 2010 hearing.

The classwide settlement generated a $359,000 total settlement fund, to be disbursed in accordance with the Stipulation of Settlement, Plan of Distribution, Section 3. Docket No. 170, Exhibit 1. Specifically, the settlement funds are to be used first to pay class notice costs incurred by Plaintiffs' counsel as well as expenses for administering the class settlement. Next, the two class representatives shall receive $2,000 each, and qualifying class members shall be entitled to a pro rata share of the $100,000 Damages Class Fund, up to 100% of an individual class members' damages. The settlement funds shall then be used to pay attorneys' fees and expenses. Finally, any remaining settlement funds shall be distributed to designated *cy pres* recipients, subject to Court approval.

For the reasons stated below, the Court grants Plaintiff's motion and awards reimbursement of up to $23,539.31 in costs, and up to $287,589.25 in attorneys' fees, subject to the terms and limitations of the Plan of Distribution, as set forth above.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case has traveled a long and somewhat windy path to resolution. On July 5, 2005, Plaintiff Brandy Hunt wrote a $133.15 check to Pak 'n Save, which was returned unpaid due to insufficient funds. *Hunt v. Check Recovery Sys.*, 478 F. Supp. 2d 1157, 1159 (N.D. Cal. 2007). Subsequently, Check Recovery Systems sent Ms. Hunt a letter demanding payment of the check, along with a $35 service charge, and $3.26 in interest. On September 25, 2005, Ms. Hunt filed a Voluntary Petition for Bankruptcy. Nine weeks later, on December 5, 2005, on behalf of California check writers, Ms. Hunt filed a putative class action against "Check Recovery Systems, Inc." contending that it had violated the FDCPA by seeking both a statutory service charge and interest on a dishonored check. *Hunt*, 478 F. Supp. 2d at 1158. Ms. Hunt contended, consistent with two prior district court decisions, *Palmer v. Stassinos*, 348 F. Supp. 2d 1070, 1083 (N.D. Cal. 2004), and *Irwin v. Mascott*, 112 F. Supp. 2d 937, 947 (N.D. Cal. 2000), that a debt collector that sought statutory damages under California Civil Code section 1719 could not also seek interest. Shortly thereafter,

IMS initiated an adversary proceeding in the bankruptcy action, challenging the dischargeability of Ms. Hunt's check. Thereafter, the litigation proceeded on two tracks, in the bankruptcy court, where IMS was seeking a ruling that it could lawfully collect interest from Ms. Hunt, and in the FDCPA class action before the district court, where Plaintiffs were seeking a ruling that Defendant had unlawfully collected interest, and was required to compensate the putative class for the unlawful charges.

In the FDCPA class action, Ms. Hunt, along with co-Plaintiff Brian Castillo, succeeded in obtaining certification of a statewide class. On summary judgment, Plaintiffs prevailed on liability on the basis that for dishonored checks, IMS could not lawfully seek both a statutory service charge *and* prejudgment interest. *Hunt*, 478 F. Supp. 2d at 1169 (granting in part Plaintiff's motion for summary judgment); *Hunt v. Check Recovery Sys.*, 241 F.R.D. 505 (N.D. Cal. 2007) (granting class certification of certain claims under Fed. R. Civ. Proc. 23(b)(3) ("Damages Class"), and other claims under Fed. R. Civ. Proc. 23(b)(2)).

The Damages Class was defined as follows: "All persons to whom Defendant mailed a collection demand at any time since December 5, 2004, (1) which included a demand for both interest and a statutory service charge on a dishonored check; (2) where the check was written in the State of California for personal, family or household purposes; and (3) whose mail was not returned as undeliverable."

In connection with class certification, the Court ordered Defendant to pay notice costs, since Defendant had been found liable for violating the FDCPA. Defendant pursued an interlocutory appeal of this ruling. The result was an appellate ruling permitting a district court to shift class notice to a defendant where liability was clear. *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1144 (9th Cir. 2009). Defendant provided collection records showing that during the class period, it collected $147,623.02 in unlawful interest charges.

In the bankruptcy action, after ten months of litigation, IMS prevailed on its claim that the debt was not dischargeable, but it was not awarded prejudgment interest. The Honorable Dennis Montali, United States Bankruptcy Court Judge, ruled that Check Recovery System was entitled to a judgment for the check amount, and either a service charge pursuant to Section 1719, *or*

3

1    prejudgment interest, but not both. IMS first appealed the bankruptcy court decision to the Ninth
2    Circuit Bankruptcy Appellate Panel. Plaintiff Hunt had the appeal transferred to the district court
3    where the FDCPA class action was proceeding. The district court affirmed the Bankruptcy Court
4    judgment, adopting the reasoning of its FDCPA summary judgment ruling.

5        IMS appealed the district court's affirmance of the bankruptcy court ruling to the Ninth
6    Circuit, which certified the state law question - whether a debt collector recovering on a dishonored
7    check may recover both a service charge under California Civil Code section 1719 and prejudgment
8    interest under California Civil Code section 3287 - to the California Supreme Court. The California
9    Supreme Court heard the matter and issued a decision fully adopting Ms. Hunt's argument that on a
10   dishonored check, a debt collector could seek either prejudgment interest, or a statutory service
11   charge, but not both. *Imperial Merch. Servs., Inc. v. Hunt*, 47 Cal.4th 381, 398 (2008). On
12   September 1, 2009, the Ninth Circuit, finding that the California Supreme Court's decision was
13   "self-explanatory and dispositive," affirmed the lower court. *Imperial Merch. Servs., Inc. v. Hunt,*
14   580 F.3d 893, 894 (9th Cir. 2009).

15       IMS claimed that it closed its doors in Fall 2009 and that its assets had little or no net worth.
16   In November 2009, the parties entered into a classwide settlement agreement, which Class Counsel
17   believed to be the best way to assure that class members are compensated for the unlawful fees they
18   paid to IMS.

19       The Honorable Saundra B. Armstrong granted Preliminary Approval of the Class Settlement
20   and Notice Plan on June 21, 2010.[1] The parties subsequently effectuated the Notice of Class
21   Settlement per the terms of the Settlement Agreement. Among other things, it notified class
22   members of their right to opt out and to file written objections to the class action settlement.

23       The Court conducted the hearing for final approval of the Stipulation of Settlement and Plan
24   of Distribution, and entry of Final Judgment on September 21, 2010. At the hearing, the Court noted
25   that it had received no written objections, and counsel confirmed that they were not aware of any
26   objections. No objectors or class members attended the hearing. The vendor selected to administer

---

28   [1] The parties subsequently consented to have the consolidated cases assigned to Magistrate Judge Donna M. Ryu for all purposes.

4

the notice and distribution of the class settlement funds submitted a sworn declaration stating that it had only received one request to opt out of the class. The Court granted final approval of the class settlement. The sole outstanding issue in these consolidated cases is the instant motion for attorneys' fees and costs.

### III. DISCUSSION

#### A. Legal Standard

The Fair Debt Collection Practices Act ("FDCPA") requires the payment of costs and reasonable attorneys' fees to successful plaintiffs. 15 U.S.C. § 1692k(a)(3). Although litigants in the United States generally pay their own attorneys' fees, regardless of the outcome of the proceedings, "[i]n order to encourage private enforcement of the law ... Congress has legislated that in certain cases prevailing parties may recover their attorneys' fees from the opposing side. ... The FDCPA is one such statute, providing that any debt collector who fails to comply with its provisions is liable 'in the case of any successful action ... [for] the costs of the action, together with a reasonable attorney's fee as determined by the court.'" *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The FDCPA's statutory language "makes an award of fees mandatory," because "congress chose a 'private attorney general' approach to assume enforcement of the FDCPA.'" *Id.*

The starting point for determining reasonable attorneys' fees is the "lodestar," which is calculated by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Camacho*, 523 F.3d at 978. In determining a reasonable amount of hours, the Court must review time records to decide whether the hours claimed by the applicant are adequately documented and whether any of the hours were unnecessary, duplicative or excessive. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds,* 808 F.2d 1373 (9th Cir. 1987). To determine reasonable hourly rates, the Court must look to the prevailing rate in the community for similar work performed by attorneys of comparable skill, experience and reputation. *Camacho*, 523 F.3d at 979.

The Court should consider any applicable factor listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) *cert. denied*, 425 U.S. 951 (1976). The *Kerr* factors for determining a

reasonable fee are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skills requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr*, 526 F.2d at 70; *Jordan v. Multnomah County,* 815 F.2d 1258, 1264 n. 11 (9th Cir. 1987) (Court need not address every *Kerr* factor).

Plaintiffs may also seek reasonable attorneys' fees for work performed on the application for attorneys' fees and costs ("fees on fees"). *Anderson v. Dir., Office of Workers Comp. Programs*, 91 F.3d 1322, 1325 (9th Cir. 1996); *Bernardi v. Yeutter*, 951 F.2d 971, 976 (9th Cir. 1991).

Plaintiffs seek an attorneys' fee award for the following number of hours and hourly rates:

| Atty or Paralegal (P) | Yrs of Practice | Rate | Hrs Claimed | Total Fee |
|---|---|---|---|---|
| O. Randolph Bragg | 37 | $ 480 | 56.4 | $ 27,072.00 |
| Paul Arons | 32 | $ 465 | 466.4 | $ 216,876.00 |
| Sharon Grace | 32 | $ 465 | 31.3[2] | $ 14,554.50 |
| Irving L. Berg | 45 | $ 425 | 14.81 | $ 6,294.25 |
| Ronald Wilcox | 15 | $ 350 | 59.85 | $ 20,947.50 |
| Craig Shapiro | 6 | $ 250 | 9.7 | $ 2,425.00 |
| Tammy Gulla (P) | | $ 125 | 5.0 | $ 625.00 |
| Shannon Carter (P) | | $ 120 | 3.6 | $ 432.00 |
| Carmel Payne (P) | | $ 90 | 1.0 | $ 90.00 |
| Marion Ramel (P) | | $ 90 | 1.9 | $ 171.00 |
| **TOTAL** | | | **649.96** | **$ 289,487.25** |

**B.     Reasonableness of Hourly Rates**

---

[2] Ms. Grace's time records contain a calculation error. Although she claims 32.4 hours in her declaration, her time records only indicate 31.3 hours worked.

6

Plaintiffs' counsel all have significant experience in consumer and/or bankruptcy cases. Although not necessary to the result, it is worth noting that the past work of many of the plaintiffs' lawyers in this case has resulted in numerous published opinions in their fields of expertise.

Based on the evidence submitted, including the Declarations of Paul Arons, O. Randolph Bragg, Ronald Wilcox, Irving L. Berg, Sharon Grace, Craig Shapiro and the supporting Declaration of Richard M. Pearl, the Court finds that the hourly rates sought by Plaintiffs' counsel are well within the range of reasonable hourly rates for attorneys of comparable skill, experience and reputation litigating similar cases in the San Francisco Bay Area. The rates sought for paralegal work in this case are also reasonable and within the range of market rates for services performed by paralegals of comparable experience.

### C. Reasonableness of Time Spent and Examination of *Kerr* Factors

The Court reviewed the billing records submitted by Plaintiffs' counsel. The billing records demonstrate that the time spent on compensable work is adequately documented. Moreover, the time spent does not appear to be unnecessary, duplicative or excessive. The Court finds that, with the exceptions noted below, the overall number of hours spent by each of the timekeepers in this matter is reasonable.

The amount of time and labor expended by Plaintiffs' counsel reflects hard-fought litigation before the district court as well as the bankruptcy court and appellate courts. The lawsuit presented novel questions, and resulted in precedent-setting rulings by both the Ninth Circuit Court of Appeals and the California Supreme Court. The Ninth Circuit ruled for the first time that the costs of class notice could be shifted to defendant after liability has become reasonably clear. *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1143-44 (9th Cir. 2009) ("We have never addressed when it is appropriate to place notice costs on a class action defendant."). The California Supreme Court held that statutory damages prescribed in California Civil Code section 1719 "are exclusive in the sense that a debt collector who recovers a service charge pursuant to section 1719 may not also recover prejudgment interest under [California Civil Code] section 3287." *Imperial Merch. Servs., Inc. v. Hunt*, 47 Cal.4th 381, 384 (2008). California's high court heard the matter after the Ninth Circuit certified the question of state law which it deemed "of the utmost importance to California creditors,

California consumers, and the California economy." *Imperial Merch. Servs., Inc. v. Hunt*, 528 F.3d 1129, 1131 (9th Cir. 2008).

The successful prosecution of this litigation required significant skill and experience on the part of Plaintiffs' counsel not only with the FDCPA, but also with bankruptcy law and Rule 23 class action procedures. Plaintiffs' counsel were willing to take on the financial risks inherent in prosecuting a class action case on a contingency fee basis. These risks became even greater after Defendant declared that it was going out of business.

Plaintiffs' counsel obtained a good result for the members of the class. Plaintiffs ultimately were successful before the bankruptcy court, the district court, the Ninth Circuit, and the California Supreme Court. Plaintiffs' counsel estimate that class members will recover upwards of 70% of their damages through the class settlement fund.

### D.     Non-Compensable Time

The Court finds that the following time entries are not compensable, and must be subtracted from Plaintiffs' counsel's fee application.

| Time Keeper | Date | Hours | Description of Work |
|---|---|---|---|
| O. Randolph Bragg | 10/4/06 | 0.1 | Review invoices for payment of litigation expenses |
| | 7/10/07 | 0.1 | Review invoice for litigation expenses and approve for payment |
| | 9/19/07 | 0.1 | Review and approve invoice for overnight shipping expense |
| | 2/23/09 | 0.1 | Review and approve litigation expense invoice for payment |
| | 3/17/09 | 0.1 | Review invoice for litigation expenses and approve for payment |
| | 6/22/09 | 0.1 | Review and approve litigation expense invoice for payment |
| Ronald Wilcox | 11/20/09 | 4.5 | [No Entry] |
| | 8/4/10 | 0.1 | [No Entry] |

In summary, the Court approves Plaintiffs' counsel's attorneys' fees in the following amounts:

| Atty or Paralegal (P) | Yrs of Practice | Rate | Hrs Claimed | Total Fee |
|---|---|---|---|---|
| O. Randolph Bragg | 37 | $ 480 | 55.8 | $ 26,784.00 |
| Paul Arons | 32 | $ 465 | 466.4 | $ 216,876.00 |
| Sharon Grace | 32 | $ 465 | 31.3 | $ 14,554.50 |
| Irving L. Berg | 45 | $ 425 | 14.81 | $ 6,294.25 |
| Ronald Wilcox | 15 | $ 350 | 55.25 | $ 19,337.50 |
| Craig Shapiro | | $ 250 | 9.7 | $ 2,425.00 |
| Tammy Gulla (P) | | $ 125 | 5.0 | $ 625.00 |
| Shannon Carter (P) | | $120 | 3.6 | $ 432.00 |
| Carmel Payne (P) | | $ 90 | 1.0 | $ 90.00 |
| Marion Ramel (P) | | $ 90 | 1.9 | $ 171.00 |
| **TOTAL** | | | **644.76** | **$ 287,589.25** |

E. **Plaintiffs' Costs**

Plaintiffs' counsel also seek reimbursement of litigation costs. Having reviewed the cost records, the Court finds that all costs are reasonable and subject to reimbursement.

Paul Arons incurred costs in the amount of $16,569.37.

O. Randolph Bragg incurred costs in the amount of $6,641.14.

Ronald Wilcox incurred costs in the amount of $328.80.

Plaintiffs' counsel are thus entitled to a total cost award of $23,539.31.[3]

**ACCORDINGLY IT IS ORDERED AS FOLLOWS:**

---

[3] This cost award includes reimbursement of some expenses related to class-wide settlement notice and administration that had been advanced by Plaintiffs' counsel. Other costs related to the class settlement process will be paid directly from class settlement funds to the vendor charged with administering the settlement, rather than as reimbursement for advances made by Plaintiffs' counsel. Because the briefing was not clear on this point, the Court directed Plaintiffs' counsel to submit an additional pleading setting forth the incurred and estimated costs of administering class settlement that were *not* included as part of Plaintiffs' instant Motion for Reasonable Attorneys' Fees and Costs. *See* Docket No. 196. According to Plaintiffs' additional pleading, the incurred and remaining estimated cost of class settlement administration is $18,888.66. Plaintiffs' counsel have not advanced these costs. These expenses will be paid directly to the vendor from the settlement proceeds.

Plaintiffs' counsel are hereby awarded up to $287,589.25 in reasonable attorneys' fees and up to $23,539.31 in costs. These amounts are subject to the terms and limitations of the Stipulation of Settlement, Plan of Distribution as approved by this Court.

IT IS SO ORDERED.

Dated: October 7, 2010

_____
DONNA M. RYU
United States Magistrate Judge